## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES, | § | |
| | § | |
| PLAINTIFF | § | CASE NUMBER: 1:16-cv-00572-RP |
| | § | |
| v. | § | |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | Honorable Robert Pittman |
| LLC, and WESTERN SURETY CO., | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, JEAN JONES ("Plaintiff," or "Jones"), by and through her attorneys, pursuant to Federal Rule of Civil Procedure 56, submits this Memorandum Opposing Defendants' Motion for Summary Judgment, as follows:

### I.    INTRODUCTION

Plaintiff Jones submits this memorandum of law opposing Defendants' motion for summary judgment on liability on her claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"); on her claims under the Texas Debt Collection Act, Tex. Fin. Code § 392 *et seq*. ("TDCA"); and on Defendants' FDCPA *bona fide* error defense.

First, Defendants' so-called "bare procedural violations" of the FDCPA and TDCA are neither bare nor procedural, and instead case law shows these alleged violations establish Plaintiff's standing before this Court.  Second, Plaintiff has offered ample evidence to establish that Defendants violated the FDCPA and TDCA claims by ignoring Plaintiff's dispute letter. Third, PRA's *bona fide* error defense fails as a matter of law, because Defendants do not believe

they made an error in ignoring Plaintiff's dispute letter.  For these three reasons, the Court should deny summary judgment to Defendants.

The Fair Debt Collection Practices Act ("FDCPA") is a consumer protection statute, the purpose of which is "to eliminate abusive debt collection practices by debt collectors . . ." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 602 (2010) (quoting 15 U.S.C. § 1692(e)). Congress created the FDCPA in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  Defendants' MSJ concedes that The Texas Debt Collection Act, Tex. Fin. Code § 392 *et seq.* (the "TDCA") mirrors the FDCPA, i.e., prohibited conduct that violates the FDCPA will also violates applicable mirror provisions in the TDCA. (Def's. MSJ, p. 9, ¶ 23.)

Section 1692e(8) of the FDCPA provides that a debt collector may not use false or misleading representations in connection with the attempt to collect a debt, namely, a debt collector may not communicate or threaten to communicate "credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).   This is precisely the conduct Plaintiff alleges of Defendants.

## II.    FACTS

Defendant Portfolio Recovery Associates, LLC ("PRA") is a debt collector. (*See* Statement of Uncontested Material Facts in Support of Plaintiff's Motion for Summary Judgment ("SOF"), ¶¶ 3-4). Plaintiff incurred a credit card debt of some amount, used for personal purposes, and the debt was later sold to PRA after it had entered default. (SOF ¶ 6-7).

Due to Plaintiff's dire financial situation, she met with the legal aid attorneys at Debtors Legal Clinic and reviewed her credit report and saw a trade line in her report from PRA, stating

that Plaintiff owed $8,642.00, and also listing the original creditor and date of last payment. (SOF ¶ 8-10). Plaintiff did not believe the amount was accurate, and also did not recognize PRA as she had not done business with them. (SOF ¶ 10).

Plaintiff told her attorneys that they could dispute the debt on her behalf, which they did on December 1, 2015 by faxing a letter to PRA stating, in part, that the amount reported is not accurate. (SOF ¶ 11). PRA received the letter sent by Debtors Legal Clinic by fax the same day. (SOF ¶ 12).

PRA communicated credit information regarding the alleged debt to the Experian consumer reporting agency, including the name of the original creditor, a balance and an account number; thus, the credit communication was a "communication" as defined by 15 U.S.C. § 1692a(2) that was made in connection with the collection of the alleged debt. (SOF ¶ 15).

On or about February 2016, PRA communicated credit information regarding the alleged debt to the Experian consumer reporting agency. (SOF ¶ 15). PRA communicated a balance of $8,642.00 on the alleged debt, but failed to communicate that Plaintiff's alleged debt was disputed. (SOF ¶¶ 16-17). On or about December 1, 2015, PRA knew or should have known that Plaintiff's alleged debt was disputed because it had received Plaintiff's dispute letter on or about April 4, 2015.

### III.  STANDARD OF REVIEW

#### A.  Summary Judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986*); Davis v. Fort Bend Cnty.,* 765 F.3d 480, 484 (5th Cir.2014). Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The substantive law of the issues raised by the claims asserted in the complaint determines what is "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (198*6).* By these standards, Defendants' motion for summary judgment should be denied.

B. **The Fair Debt Collection Practices Act**

In enacting The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), Congress recognized the universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.
S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e).

The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); The FDCPA broadly prohibits unfair or unconscionable

collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.

**C.  The Fifth Circuit Applies the "Unsophisticated Consumer" / "Least Sophisticated Consumer" Standard to FDCPA Cases.**

The Fifth Circuit has held that when evaluating a consumer's FDCPA claim, courts apply an "unsophisticated" or "least sophisticated consumer" standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). We "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* The least sophisticated consumer standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin, Landry deLaunay & Durand,* 103 F.3d 1232, 1236 (5th Cir.1997). The 'unsophisticated consumer standard' "serves the same purposes and apparently would lead to the same results in most cases, except that it is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder."[3] *Id. (quotation marks and citation omitted).* Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *N.C. Freed Co. v. Board of*

*Governors*, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case.  *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000). The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." See, e.g., *Reich v. Van Ru Credit Corp.*, No. 4-15-CV-2. (E.D. Texas, June 8, 2016); *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).

## IV.  ARGUMENT & AUTHORITY

### A.  Despite *Spokeo*, Plaintiff has standing to bring her FDCPA claims, because the injury she alleges is both particularized and concrete.

The issue here is whether the FDCPA violations alleged by Plaintiff are sufficient to confer Article III standing, in light of *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).  According to Defendants, the statutory language of the FDCPA cannot confer standing to Plaintiff because she alleges only a "bare procedural violation … that the U.S. Supreme Court specifically sought to eliminate in [*Spokeo* at 1550]." (Def.'s MSJ, p. 5, ¶18.)

Federal courts have limited jurisdiction and a party must have an injury in fact to invoke the Court's jurisdiction. To demonstrate an injury, the plaintiff must suffer "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation and quotation marks omitted).

An injury does not have to be tangible to be concrete. *Spokeo* at 1549. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact." *Id.* The Court specified that the procedural violation must result in some harm. *Id.* at 1550.

In the instant case, Plaintiff alleges that Defendant PRA violated the FDCPA § 1692e(8), which prohibits false and misleading statements by debt collectors.  Specifically, Plaintiff alleges that Defendant PRA (a debt collector) reported credit information about the debt to Experian, without also communicating that Plaintiff had disputed the underlying debt.  Congress intended this provision of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors.  Indeed, "[a] debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).  Plaintiff's alleged injury is more than a "bare procedural violation" of the FDCPA; in fact, "[FDCPA § 1692e(8) violations are] the very type of injury Congress sought to eradicate via the FDCPA." *Sayles v. Advanced Recovery Systems Inc*., 2016 WL 4522822 (S.D. Miss. Aug. 26, 2016),

Here, Plaintiff's alleged injury is both particularized and concrete. Plaintiff's injury is particularized because the alleged conduct—PRA's failure to report to Experian that the debt was disputed—affected her in an individual, concrete way (harming her credit), and was not a generalized grievance.

Additionally, this was a material violation of the FDCPA because it was a direct violation of a specifically enumerated section of the FDCPA (§ 1692e(8)), and whether an individual disputes a debt is by its own nature material.  In fact, the Eighth Circuit held that whether or not a debt is disputed is "a piece of information that is always material" and that "if a debt

collector elects to communicate 'credit information' about a consumer" it must communicate the dispute if a consumer made the dispute. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, at 418 (8th Cir., 2008); *also see Baker v. I.Q. Data Int'l, Inc.*, 14-cv-0114-WJM-MEH (D. Colo., 2015).

FDCPA standing, post-*Spokeo*, is not an issue of first impression in the federal courts. In fact, Defendants ignore, without a single mention, the extensive body of post-*Spokeo* case law which has specifically held that enumerated violations of the FDCPA can constitute concrete injury sufficient to confer Article III standing. Indeed, since *Spokeo*, no less than <u>ten</u> district and appellate courts (across six circuits, including the Fifth), have ruled in various FDCPA Plaintiffs' favor when it comes to issues of Article III standing.

Most notably, Defendant PRA unsuccessfully made the exact same standing arguments in *Bowse v. Portfolio Recovery Associates, LLC,* No. 15 C 4037, 2016 WL 6476545 (N.D. Ill. Nov. 2, 2016). The fact pattern in Bowse was identical to the fact pattern here in the case at bar. In *Bowse*, PRA also moved for summary judgment, arguing as they do here, that the consumer Plaintiff had no Article III standing based on her allegations of an FDCPA § 1692e(8) violation. But the *Bowse* court explicitly rejected the same standing arguments that PRA uses here. "Because Bowse has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, Bowse has Article III standing to bring this suit." *Id.* The court then granted consumer Bowes' motion for summary judgment, and denied PRA's motion for summary judgment. *Id.* The Court take the same actions in the case at bar.

In *Sayles* (a case which *Bowes* cites), the Mississippi federal district court held that Plaintiff's allegations of FDCPA § 1692e(8) violations by the debt collector (failing to report to a credit bureau that a debt was disputed) were sufficient to confer Article III standing on that

plaintiff.  The *Sayles* fact pattern was virtually identical to the case at bar.  Sayles, like the instant Plaintiff, disputed a debt he allegedly owed, yet the debt collector reported the debt to a credit bureau without communicating that the Sayles had disputed the debt.  The district court held that this was a sufficiently concrete and particularized allegation of an FDCPA § 1692e(8) violation to confer Article III standing on Sayles, even post-*Spokeo*.

Post *Spokeo*, other federal district and appellate courts which have ruled for the FDCPA Plaintiff, on highly similar standing issues, include: *Church v. Accretive Health*, 2016 WL 3611543 (11th Cir. July 6, 2016); *Hill v. Accounts Receivable Services*, 2016 WL 6462119 (D. Minn. Oct. 31, 2016); *Allah-Mensah v. Law Office of Patrick M. Connelly*, 2016 WL 6803775 (D. Md. Nov. 17, 2016); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, (N.D. Ill. Sept. 20, 2016); *Linehan v. Allianceone Receivables Management*, 2016 WL 4765839 (W.D. Wash. Sept. 13, 2016); *Prindle v. Carrington Mortg. Servs.*, No. 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016); *Daubert v. Nra Grp.*, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016); *Irvine v. I.C. System*, 2016 WL 4196812 (D Colo. July, 29, 2016); *Lane v. Bayview Loan Servicing*, No. 2016 WL 3671467 (N.D. Ill. July 11, 2016).

Defendants fail to acknowledge any of these cases, all of which are on point, and all of which contradict Defendants' position on standing.  Given these numerous decisions, and given the specific nature of Plaintiff's FDCPA allegations, to hold that she does not have standing would contravene Congress' remedial purpose in establishing the FDCPA.

**B.  Plaintiff's Letter Was More Than Sufficient to Provide Defendant PRA Notice that Plaintiff Disputed the Debt.**

Defendants do not dispute that Plaintiff has satisfied the first two elements of an FDPCA and TDCA claim, i.e., that the Plaintiff is a consumer alleging harm from a debt collector, and

that the Defendant is a debt collector.  Rather, Defendants focus their attention on the third element of an FDCPA / TDCA claim: whether the debt collector has engaged in conduct proscribed by the FDCPA / TDCA.

In sum, Defendants argue that Plaintiff's dispute letter (<u>Def's. Doc. 1-2</u>, at 2) was insufficient to put Defendant PRA on notice that Plaintiff disputed the debt that PRA was reporting to Experian.. Notably, PRA readily admits that it did not communicate to Experian that Plaintiff's account was disputed. (SOF ¶ 17.)  Defendants instead attempt to excuse this conduct because Defendant PRA arbitrarily decided Plaintiff's letter did not contain a dispute of the debt, even though the letter asserted to PRA "the amount reported is not accurate."

Multiple federal district courts have held that the precise statement contained in Plaintiff's letter, i.e., "the amount reported is not accurate" evinces the intention to dispute the validity of a debt.  *Emerson v. Fid. Capital Holdings, Inc.,* No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015); *Rodriguez v. I.Q. Data Int'l, Inc.,* No. 15-CV-383, 2015 WL 7351925, at *1 (N.D. Ill. Nov. 4, 2015) ("It is hard to figure out what it means to complain that a debt is `inaccurate' without disputing the amount of the debt"); *Gomez v. Portfolio Recovery Associates, LLC,* 15-cv-4499 (N.D. Ill., June 20, 2016) ("[i]t was as clear as day based on a plain reading of the Letter from a lay person perspective that [the consumer] was disputing the Debt" when the letter to the defendant stated "the amount reported is not accurate"); *Paz v. Portfolio Recovery Associates, LLC,* No. 15-C-5073 (E.D. Ill., November 21, 2016)("By stating that the amount reported was not accurate, Paz's attorney communicated a dispute on behalf of Paz.").

Instead of acknowledging any of this contrary legal authority, Defendants instead try to hide the ball by asking the Court to look at everything contained in Plaintiff's letter <u>except the plain dispute language</u>.  Defendants also make the puzzling argument that Plaintiff did not

actually intend to dispute the debt, because her attorneys sent the dispute letter.  However, Defendants ignore the fact that Plaintiff specifically directed her attorneys to send the dispute letter to PRA on her behalf.  (Ex. A, Jean Jones Decl., ¶ 10.)  Fulminations aside, a rose is a rose is a rose[1], and here, a letter whose contents explicitly challenge the amount of a debt as "not accurate" most certainly qualifies as a dispute of that debt.

Defendants therefore cannot credibly argue they did not know, or should not have known, that Plaintiff had disputed the debt.  Since Defendants readily admit that they failed to communicate to Experian that Plaintiff's debt was disputed, if the Court finds a dispute inside the contents of Plaintiff's letter, the Court must find an FDCPA and TDCA violation in Defendant's refusal to communicate the fact of that dispute to Experian.

### C. PRA's *Bona Fide* Error Defense Fails as a Matter of Law Because PRA Does Not Believe It Made an Error by Ignoring Plaintiff's Dispute Letter.

Section 1692k(c) of the FDCPA, the *bona fide* error provision, provides:

**A debt collector may not be liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.**

15 U.S.C. § 1692k(c).

Defendant PRA asserts that any violation of the FDCPA was not intentional and resulted from a *bona fide* error in spite of procedures reasonably adapted to avoid such error. Specifically, PRA asserts the *bona fide* error defense based on their policies and procedures that "any correspondence it receives wherein a debtor (or his/her counsel) disputes an account, the account is marked as disputed, forwarded to Defendant's Disputes department, and Defendant informs the credit bureaus that the account is disputed when communicating any information to

---

[1] "Sacred Emily," poem by Gertrude Stein, 1913.

the bureaus." (SOF ¶ 27). PRA attempts to assert the affirmative defense of *bona fide* error, which is an affirmative defense under the FDCPA. (SOF ¶ 27).

Under the FDCPA, the *bona fide* error defense requires a defendant to show that (1) the violation was not intentional, (2) the presumed violation resulted from a *bona fide* error, and (3) it maintained procedures reasonably adapted to avoid any such error. *Lee v. Credit Management, LP*, 846 F. Supp. 2d 716, 723 (S.D. Tex. 2012), citing, e.g., *Kort v. Diversified Collection Services, Inc.*, 394 F. 3d 530, 537 (7th Cir. 2005).

As a threshold issue, PRA's *bona fide* error defense cannot prevail because PRA does not believe that an error actually occurred. (SOF ¶¶ 20-22, 26). PRA claims that its procedures include reading and processing incoming letters and facsimiles for "clear" dispute statements. (SOF ¶¶ 17-18.)  However, PRA has said that if it does not find the language to indicate what it claims is a "clear dispute", it does nothing further to determine whether the consumer intended to dispute the account, and PRA reports it as undisputed. (SOF ¶ 17). Even when there is a dispute statement, if followed by statements indicating a desire to settle or the consumer's inability to pay, PRA considers the letter as a whole to not be a dispute. (SOF ¶ 18).

PRA, thus, intentionally ignores dispute language and focuses on another purpose of the letter.  Whether this is an intentional disregard of Plaintiff's dispute, or a mistake of law, is irrelevant. In *Jerman*, the Supreme Court reiterated that "ignorance of the law will not excuse any [person's liability], either civilly or criminally." 559 U.S. at 582. The Supreme Court inferred that Congress chose to permit consumers to recover damages under the FDCPA "for 'intentional' conduct, including violations resulting from mistaken interpretation of the FDCPA." *Id.* at 584. Thus, the Supreme Court held that the "*bona fide* error defense in 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the

requirements of the statute." *Jerman*, 559 U.S. at 605-06; *see also Nielson v. Dickerson*, 307 F. 3d 623 (7th Cir. 2002); *Backer v. G.C. Services Corp.*, 677 F. 2d 775 (9th Cir. 1982); *Diaz v. Kubler Corp.*, 2013 WL 6038344 (S.D. Cal. 2013); *New v. Gemini Capital Group*, 859 F. Supp. 2d 990 (S.D. Fla. 2012); *Register v. Reiner & Bendett, PC*, 488 F. Supp. 2d 143 (D. Conn. 2008); *Patzka v. Viterbo College*, 917 F. Supp. 654 (W.D. Wis. 1996).

Even if there were a mistake, PRA did not have policies and procedures reasonably adapted to ensure that a consumer's communication that the amount of an alleged debt is not accurate is communicated to credit bureaus as a dispute. (SOF ¶ 26). If there was a mistake in the analysis of Plaintiff's letter, it would be a mistake of law and thus not a proper *bona fide* error defense under the FDCPA. For this reason, this Court should reject PRA's *bona fide* error defense as an excuse for a violation of the FDCPA and deny Defendants summary judgment on this issue.

## CONCLUSION

Under the FDCPA and TDCA, debt collectors are prohibited from making any false or misleading representations, including the communication of credit information that is known or should be known to be false, such as the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).  Case law post-*Spokeo* illustrates that FDCPA plaintiffs alleging such prohibited conduct will have Article III standing.  Defendant PRA has not denied receiving Plaintiff's dispute letter nor denied reviewing it, nor does PRA deny communicating credit information regarding the alleged debt to the Experian consumer reporting agency without communicating that the alleged debt was disputed.  Instead, PRA defies common sense and denies Plaintiff's dispute letter actually contained a dispute, despite ample authority to the

contrary.  Lastly, PRA's *bona fide* error defense fails, because PRA denies there was an error.

Even if there were an error, it would not be covered by the *bona fide* error defense -- because

PRA does not have policies and procedures reasonably adapted to ensure that a consumer

dispute, such as the one at issue, is properly communicated to credit reporting bureaus.

 WHEREFORE, Plaintiff, JEAN JONES, respectfully requests that this Court deny

summary judgment in Defendants' favor on her FDCPA and TDCA claims, as well as deny

summary judgment on Defendant's affirmative defense of *bona fide* error, and for any other or

further relief the Court deems just and proper.

Respectfully submitted,

By:   /s/ *Robert Zimmer*
One of Plaintiff's Attorneys

Robert Zimmer
**Zimmer & Associates**
707 West 10th Street
Austin, TX  78701
Phone: (512) 434-0306
Fax: (310) 943-6954
zimmerlawTX@gmail.com

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
University Park
3300 N. Interstate Hwy 35, Suite 7018
7th Floor
Austin, TX 78722
Ph: (512)524-9352
Fx: (512)593-5976
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

**PLAINITFF'S REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## CERTIFICATE OF SERVICE

I, Robert Zimmer, an attorney, hereby certify that on February 21, 2017, I electronically filed the foregoing document, including the following attachments: Exhibits A-C, and Statement of Facts, by using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: February 21, 2017**                                    Respectfully submitted,


By:    /s/ *Robert Zimmer*