IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 1:16-cv-00572-RP |
| | § | |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | |
| LLC and WESTERN SURETY COMPANY | § | |
| *Defendant.* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Portfolio Recovery Associates, LLC ("PRA") and Western Surety Company ("Western"), and file this Response to Plaintiff's Motion for Summary Judgment:

## I.
## INTRODUCTION

1.      Despite Plaintiff's assertion, Plaintiff's Motion is unsupported and insufficient to allow her to prevail on summary judgment. Plaintiff's counsel has created at best a "technical violation" of the FDCPA through a form letter that does not give Plaintiff standing before this Court or defeat PRA's bona fide error defense.

## II.
## OBJECTIONS TO PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

### A.  Plaintiff's dispute letter has not been authenticated.

2.      Plaintiff seeks to admit her dispute letter to PRA into evidence. Doc. 1-2 at 2.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Authentication is a condition precedent to admissibility, and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Robinson v. City of Garland*, *Texas*, 3:10-CV-2496-M, 2016 WL 7396048, at

*4 (N.D. Tex. 2016).  The proponent seeking to admit evidence bears the burden of making a *prima facie* showing of genuineness.  *United States v. Alejandro,* 354 F. App'x 124, 128 (5th Cir. 2009). Language patterns can indicate that proffered evidence is not genuine.  Fed. R. Evid. 901 advisory committee's note Example (4).

3.       Plaintiff alleges in her Complaint that, "[i]n response to collection attempts by Defendants, Plaintiff sent a letter to PRA informing it that the amount they were reporting on the debt was not accurate."  Doc. 1 at 6, ¶ 17.  The letter is unsigned, there is no accompanying affidavit, and there is nothing in the letter to indicate that Plaintiff drafted the letter[1].  As a matter of procedure, the Plaintiff has failed to lay proper foundation and it must be stricken from the record.  Furthermore, the authenticity of Plaintiff's dispute letter must be called into question because it is unsigned and it uses verbatim, boilerplate language:

> Dear Sir or Madam:
> I am writing to you regarding the account referenced above. I refuse to pay this debt.
>
> My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.
>
> Sincerely,
>
> Jean Jones

*Compare* Doc. 1-2 *with* identical letters in Defendants' Motion for Summary Judgment Ex. A (Palomo letter) and Ex. B (Cousins letter). All three letters were sent by the two same firms: Community Lawyers Group, Ltd. in conjunction with Law Office of Tyler Hickle.  *Id.*  All three letters contain identical formatting and language, save for the consumer's specifics.

4.       The identical patterns of language in the letters raise doubts as to whether Plaintiff actually authored the letter.  Without waiving subsequent objections, *infra*, if the Court finds Plaintiff's

---

[1] Weighing this fact against Plaintiff's allegation in her Motion that she asked her attorneys to dispute the debt and they did so by faxing. Doc. 31 at 2. While not supported by evidence, this assertion further calls the letter into question.

Declaration is admissible, this declaration by Ms. Jones states, "I authorized my lawyers to fax a letter to PRA on my behalf, stating in part that the amount reported on the alleged debt is not accurate." Doc. 30-1 at 2, ¶ 10. By Ms. Jones' own declaration she states she did not author and sign the dispute letter. *Id.* Even though the "standard for authentication is not a burdensome one," *United States v. Davis,* 754 F.3d 278, 281 (5th Cir. 2014), this letter tests the credulity of the Court. Because Plaintiff failed to lay the foundation for the letter and because of the circumstances surrounding the letter show it is not genuine, this Court should find Plaintiff's letter is inauthentic.

### B. Defendants object to Plaintiff's Experian Report attached to the Complaint.

3.      Based on the same authentication requirements cited *supra*, Defendants also object to Plaintiff's alleged Experian Report (Doc. 1-2 at 4-5). Plaintiff provides no business record affidavit to authenticate and prove up the alleged report. The document along with Plaintiff's scant sham declaration do not show where it came from, who created it, where the information came from, when it was created, *et cetera*. Without these critical details, but more importantly a business record affidavit to establish credibility, the document is inadmissible hearsay and must be stricken.

### C. Defendants object to the deposition testimony of Nyetta Jackson.

4.      Plaintiff seeks to admit the deposition of Nyetta Jackson, a PRA employee, taken in the matter of *Acosta v. Portfolio Recovery Associates, LLC*, 1:15CV02441 (N.D. Ill. 2015). Doc. 31-2. Plaintiff's use of the Nyetta Jackson deposition is improper because it violates Rule 32(a)(8), as the deposition of Ms. Jackson was taken in a matter involving a different subject matter with different parties. This Court cannot hold there is a common subject matter as it does not involve Plaintiff. Further, there is no way to tell the contents of the letter, the circumstances surrounding the letter, and other admissibility issues. The Court cannot find common subject matter as it is presented. The only party to that case that is also a party in this case is PRA so admission of this deposition would violate both provisions of Rule 32(a)(8). Finally, Plaintiff failed to provide this

deposition in her initial disclosures and mandated supplements to disclosure under Fed. R. Civ. P. 26. Plaintiff is required to produce such a statement in disclosures and Plaintiff has failed to do so. Under *McMillan*, a failure to include the Deposition results in the Plaintiff being unable to rely upon it as summary judgment evidence. *McMillan,* CV 15-500-SDD-RLB, 2017 WL 477969 at *1. For the foregoing reasons, the Court must hold the Nyetta Jackson Deposition inadmissible.

### D. Defendants object to Plaintiff's Statement of Facts and Declaration.

5.    Plaintiff's Motion for Summary Judgment includes a Statement of Uncontested Material Facts. Doc. 31-4. Defendants object to this Statement and requests Plaintiff proffer proof in support of each statement contained therein. Specifically, Defendants object to, and require supporting proof to Paragraphs 4, 6, 7, 8, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26. As such, Defendants object to these statements and their incorporation, and request this Court not consider such Statement of Facts as evidence in support of Plaintiff's Opposition.

6.    Plaintiff also attached an unsworn and unsigned declaration to her Motion as evidence. Doc. 31-1. Federal law permits the use of unsworn declarations as substitute for an affiant's oath if the statements contained therein are made "under penalty of perjury" and verified as "true and correct." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n2 (5th Cir. 2013). However, under the "sham affidavit" doctrine, a can prevail on a motion for summary judgment by submitting an affidavit or declaration which contradicts, without explanation, previous testimony. *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011).

7.    Plaintiff's Declaration is a "sham." First, the Declaration contains a typed "signature" and statements that are clearly drafted by an attorney. While declarations may be used under the rule, it still must meet reasonable authenticity tests. Plaintiff's declaration in this forum attempts to circumvent all of them to defeat summary judgment.

8.      Second, the Declaration contains several inconsistent statements with those made in her deposition.  The Declaration states "I did not have previous statements from the original creditor or from PRA, nor was I sure I ever received all statements from the original creditor.  I did not believe that the alleged debt that PRA claimed I owed was accurate ($8,642.00).  I thought this was amount was too high."  <u>Doc. 31-1</u> at 2, ¶ 9.  However her deposition testimony states:

| | |
|---|---|
| Q. | Did you know what account [the dispute letter] was referring to with this account number? |
| A. | No. |
| Q. | Okay. Do you know where that account number came from? |
| A. | No. |
| […] | |
| Q. | Did you know what account [the dispute letter] was actually referring to? |
| A. | Well, it was Portfolio, as far as I remember. |
| Q. | Did you do anything to look into what that account may have been? |
| A. | I don't remember whether I did or not. |
| [. . .] | |
| Q. | Are there any credit cards you did not pay off? |
| A. | No. |
| Q. | You can't think of any other credit cards besides the Mileage Plus card and the Target card? |
| A. | No. |
| [. . .] | |
| Q. | Again, in this letter, you state you refuse to pay this debt. |
| A. | Yes. |
| Q. | Did you do anything to try to find out what the debt actually was? |
| A. | I didn't know—no I did not. |
| Q. | Why not? |
| A. | Because Jesse was handling that for me, and Tyler. |

<u>Exhibit A</u> at 16:4-13; 19:5-11; 20:21-21:1; 25:2-10.   The Declaration attempts to show that Plaintiff carefully considered her credit report, her debts, and intentionally disputed the specific debt owned by PRA.  However, her deposition testimony shows that she cannot remember if she did anything to review the delinquent debt in her credit report. It is within the Court's discretion to simply disregard a sham declaration.  *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 513 (4th Cir. 2011).

9.      Third, Defendants object to ¶ 5 of Plaintiff's Declaration. Plaintiff's Declaration states she "used [her Synchrony Bank credit card] for personal, family and household expenses.  At no time did [she] use the credit card for any business purposes, nor for purchasing items for resale."  Doc 31-1 at 1, ¶ 5.  "Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Mobile Telecommunications Techs., LLC v. Blackberry Corp*., 3:12-CV-1652-M, 2016 WL 6271717, at *3 (N.D. Tex. May 6, 2016). Plaintiff's statement does not allege any specific facts, but rather alleges general and conclusory facts which appear to be a recitation of the FDCPA.

10.     Last, Defendants object to ¶ 11 of Plaintiff's Declaration. Plaintiff's Declaration states "[she] was extremely upset and worried that [her] credit score had been negatively impacted by both the debt and PRA's failure to mark the debt as disputed."  Doc. 31-1 at 2, ¶ 11. Fed. R. Evid. 701 states, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge . . . ."  District courts within this circuit have recognized "credit reporting" as a form of expertise for purposes of Rule 702.  *See, e.g., Neel v. Fannie Mae*, 1:12CV311-HSO-RHW, 2014 WL 1338382, at *1 (S.D. Miss. Apr. 2, 2014).  Because Plaintiff is not a credit reporting expert, her opinion testimony must be limited to that which is not based on any technical or specialized credit reporting knowledge. Therefore, ¶ 11 of her Declaration is improper testimony and must be stricken from the record.

### III.
### ARGUMENT AND AUTHORITIES

**A.  Plaintiff cannot establish the debt was a "consumer debt" for standing.**

11.     Plaintiff jumps to the conclusion that the debt at issue is a "debt" under the FDCPA or TDCA. The FDCPA defines a debt as "…any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which

are the subject of the transaction are primarily for personal, family, or household purposes….” 15 U.S.C. § 1692a(5). The TDCA defines a “consumer debt” as “an obligation or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction.” Tex. Fin. Code § 392.001(2). While Plaintiff cites to her statement of facts to support this, it is contradicted by her sworn testimony given prior to the declaration. Plaintiff’s statement of facts Paragraph 5 (mis-cited in Plaintiff’s Motion for Summary Judgment as Paragraph 7) states “I used the credit card solely for personal, family, and household expenses. At no time did I use the credit card for any business purposes, nor for purchasing items for resale.” Doc. 31-1 at 2. However, she gave sworn and contradictory testimony in her deposition that she was unfamiliar with the account, does not remember looking into what the account may have been, that there were no credit cards she did not pay off besides the Mileage Plus and Target cards, and **she did not do anything to find out what the debt actually was**. Ex. A at 16:4-13; 19:5-11; 20:21-21:1; 25:2-10 (transcribed *supra*). Plaintiff cannot establish the debt meets the definition required in 15 U.S.C. § 1692a(5) or Tex. Fin. Code § 392.001(2) for her to have standing under the FDCPA or TDCA. PRA requests this Court deny Plaintiff’s Motion for Summary Judgment.

**B.  The least sophisticated consumer standard does not apply.**

12.    This Court should not view Plaintiff’s § 1692e(8) claim under the least sophisticated consumer standard. The least sophisticated consumer standard is inapplicable because it only applies to collection letters *from* a debt collector *to* a consumer. *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (holding that the least sophisticated consumer standard is used to analyze whether a debt collector engaged in any false, deceptive, or misleading collection activities). This standard of review does not apply to a debtor’s dispute letter to a debt collector or between credit reporting agencies and debt collectors. In the present case, the

communication Plaintiff alleges to be a violation of § 1692e(8) concerns a communication between

PRA and a credit reporting agency, not a communication to Plaintiff. <u>Doc. 1</u> at 6 ¶ 36.

**C. Plaintiff lacks injury-in-fact to establish standing.**

13.      Plaintiff is not entitled to summary judgment because this Court does not have standing to

hear Plaintiff's complaint. Article III of the U.S. Constitution limits the power of the federal court

by limiting the court's power to actual "cases" and "controversies." U.S. Const. art. III, § 2.

Consequently, the party seeking federal jurisdiction has the burden of establishing each elements

of standing and, at the pleading stage, "must clearly . . . allege facts demonstrating each element."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518

(1975)). The elements of Article III standing include the requirement that a plaintiff sustain

"personal injury." *Id.* at 1547; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). "Injury

in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's

standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise

have standing.'" *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Consequently,

"[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 (internal quotation marks omitted)).

14.      The U.S. Supreme Court delineated that an injury must be not only "concrete," but also *de

facto*—that is, the injury actually exists. *Id.* A concrete injury need not be tangible. *Id.* at 1549;

*see, e.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi

Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise). However, "[i]n determining

whether an intangible harm constitutes injury in fact, both history and the judgment of Congress

play important roles." *Id.* But "Congress' role in identifying and elevating intangible harms does

not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute

grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Consequently, an allegation of bare procedural violation cannot establish an injury in fact to satisfy plaintiff's standing under Article III. *Id.* at 1550.

15.     Here, Plaintiff fails to allege or show this Court that she has suffered any injury-in-fact. Doc. 1; *Spokeo*, 136 S. Ct. at 1550. Plaintiff limits her pleading to an allegation that PRA violated single provisions of the FDCPA and the TDCA. Doc. 1 at 6–7. However, the fact that the FDCPA authorizes civil liability—independent of whether a plaintiff has claimed actual injury—does not suspend the constitutional standing requirement. *Raines v. Byrd*, 521 U.S. 811, 820 n.3; *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979)); *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.24 (1982); 15 U.S.C. § 1691k.

16.     Both history and the judgment of Congress embedded into the FDCPA highlight to this Court that Plaintiff needs to allege more than a mere violation of a provision in FDCPA. *See Spokeo*, 136 S. Ct. at 1549. Congress enacted the FDCPA in 1977 to combat abusive collection practices and the statute lists the specific types of injuries that it sought to prevent:

> (a)  Abusive practices
> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. *Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.*
> (b)  Inadequacy of laws
> Existing laws and procedures for redressing *these injuries* are inadequate to protect consumers.

§ 1691(a)–(b). Nowhere in Plaintiff's Original Complaint does Plaintiff put forth any evidence that shows this Court that Plaintiff suffered something more than a "bare violation of a statutory right"—insufficient to meet the concrete injury requirement. *See* Doc. 1; *Spokeo*, 136 S. Ct. at 1549; *contra, e.g.*, *Perrill v. Equifax Info. Servs., LLC*, No. A-14-CA-612-SS, 2016 WL 4572212, at *3–5 (W.D. Tex. Aug. 31, 2016) (finding concrete injury in plaintiffs' FCRA claim that

specifically alleged an injury to plaintiffs' privacy right). Even though Plaintiff alleges that PRA violated the FDCPA and TDCA by failing to communicate to Experian that Plaintiff disputed the account, Plaintiff has made no allegation that this reporting resulted in a *de facto* concrete—actually existing—injury. Doc. 1 at 6–7. In fact, when deposed and questioned about how PRA's alleged failure to communicate her debt to a credit reporting agency caused her harm, Plaintiff is unable to give an answer. PRA's Motion for Summary Judgment at Exhibit E at 27:10–14. Moreover, Plaintiff acknowledges that there were other—possibly more than three—debts itemized in her credit report. *Id*. at 27:18–24. Plaintiff is unable to connect PRA's failure to report her alleged dispute with her alleged harm—drop in her credit score:

> Q.    Okay. How did that cause you harm?
> A.    Well, again, my credit score and my credit.
> Q.    But you don't know if this specifically affected your credit score?
> A.    I don't know.

PRA's Motion for Summary Judgment at Exhibit E at 29:15–18.

17.    Plaintiff alleges a bare procedural violation that fails to establish an injury in fact and fails to meet the constitutional standing requirement. In addition to this testimony, Plaintiff actually testified that she had not seen the Offer of Judgment PRA made to her for $1,101.00 on June 9, 2016. Exhibit E at 39:8-22. She testified while at her deposition, it was the first time she had seen it. Exhibit E at 40:11-21. Her attorney asked "Do you see how the relief – what they are offering as relief does not include wiping the debt away" and clarified "[w]iping the debt away off of your credit report?" to which she responded, "Oh, yes, it does not." *Id*. at 40:22-41:3.[2] Under the FDCPA and TDCA, this is not any type of relief obtainable under either statute. 15 U.S.C. §1692k(a); Tex. Fin. Code § 392.403. Viewing this testimony, the relief Plaintiff seeks is outside

---

[2] Following this, when asked if she knows "whether or not this tradeline is still on [her] credit report?" she replied "I don't know." PRA's Motion for Summary Judgment at Exhibit E at 40:10-25.

of the power of this Court, a jury, and the law, thus she has no concrete or particularized injury that can be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Plaintiff cannot establish standing, this Court must deny summary judgment.

**D. Plaintiff fails to meet her burden of proof establishing the necessary elements of her FDCPA and TDCA claims.**

18.     Since Plaintiff bears the burden of proof on her claims at trial, she must establish beyond peradventure all of the essential elements of each claim to warrant summary judgment in her favor. *Fontenot* 780 F.2d at 1194. A prima facie FDCPA claim requires the plaintiff to satisfy three elements: "(1) [the plaintiff] has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. Sko Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2014 WL 1462443, at *3 (N.D. Tex. Apr. 15, 2014). "The conduct prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar as '[t]he same actions that are unlawful under the FDCPA are also unlawful under the TDCA.'" *Gomez v. Niemann & Heyer, L.L.P*, No., 2016 WL 3562148, at *6 (W.D. Tex. June 24, 2016).

19.     Plaintiff's FDCPA claim under § 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is *known* or which *should be known* to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (emphasis added); Doc. 1 at 6 ¶ 36. However, she fails to present evidence PRA knew that Plaintiff was disputing the alleged debt, which is an essential element of her claims.

20.     Similarly, Plaintiff's TDCA claims center on her alleged dispute. Doc. 1 at 7 ¶ 39–40. The Texas Finance Code presumes that the consumer has made a dispute. Tex. Fin. Code Ann. § 392.202(a) (emphasis added) ("If the third-party debt collector reports information *related to the dispute* to a credit bureau, the reporting third-party debt collector shall . . . cease collection efforts

until the investigation determines the accurate amount of the debt, if any."); *id.* § 392.301(a)(3)

(emphasis added) ("representing . . . to any person other than the consumer that a consumer is

willfully refusing to pay a nondisputed consumer debt *when the debt is in dispute and the consumer*

*has notified in writing the debt collector of the dispute*."); Doc. 1 at 7 ¶ 39–40. Without a "dispute,"

Plaintiff has no claim under these provisions of the TDCA. *See* Tex. Fin. Code Ann. §§ 392.202(a),

392.301(a)(3).

21.     The FDCPA and the TDCA, however, do not define "dispute." *See* 15 U.S.C. § 1692a

(silent on the definition of dispute); § 1692e(8) (same); Tex. Fin. Code Ann. § 392.001 (same).

When a court interprets a statute, the court inquires into both the language and "the design, object

and policy" of the statute. *Hightower v. Tex. Hosp. Ass'n*, 64 F.3d 443, 448 (5th Cir. 1995);

*Crandon v. United States*, 494 U.S. 152, 158 (1990)). The explicit purpose of the FDCPA is to

"eliminate *abusive* debt collection practices by debt collectors, to insure that those debt collectors

who refrain from using *abusive* debt collection practices are not competitively disadvantaged, and

to promote consistent State action to protect consumers against debt collection *abuses*." 15 U.S.C.

§ 1692(e) (emphasis added). In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, the

U.S. Supreme Court stated:

> When construing a federal statute, courts should be mindful of the effect of the
> interpretation on congressional purposes explicit in the statutory text. The
> [FDCPA's] statutory purpose was to 'eliminate abusive debt collection practices'
> and to ensure that debt collectors who refrain from using those practices 'are not
> competitively disadvantaged.' 15 U.S.C. §1692e ("Purposes").  The practices
> Congress addressed involved misconduct that is deliberate, see § 1692a ('abusive,
> deceptive, and unfair debt collection practices'); § 1692c ('misrepresentation or
> other abusive debt collection practices') or unreasonable, see . . . § 1692e(8)
> (prohibiting the communication of credit card information 'which should be known
> to be false'). *That explains the statutory objective not to disadvantage debt
> collectors who 'refrain' from abusive practices—that is to say, debt collectors who
> do not intentionally or unreasonably adopt them.*

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 618–19 (2010) (emphasis

added). The focus of the FDCPA is to prohibit "abusive debt collection practices." *Id.*  Congress

did not intend to prohibit or penalize fair and reasonable debt collection practices. *See id.*; *see also*

*Gomez*, 2016 WL 3562148, at *6 (quoting *Bullock*, 2009 WL 4598330, at *2 n.3 ("The conduct

prohibited under the TDCA is coextensive with that prohibited under the FDCPA, at least insofar

as '[t]he same actions that are unlawful under the FDCPA are also unlawful under the TDCA.'").

22.     Here, the evidence before the Court does not indicate that Plaintiff disputed the debt but

instead explains why she was unwilling to pay her debt:

> Dear Sir or Madam:
>
> I am writing to you regarding the account referenced above. I refuse to pay this debt.
>
> My monthly expenses exceed my monthly income; as such there is no reason for you to continue contacting me, and the amount you are reporting is not accurate either. If my circumstances should change I will be in touch.
>
> Sincerely,
>
> Jean Jones

Doc. 1-2 at 2. Plaintiff's alleged refusal to pay this debt is because she does not have the means to

pay the debt, not because the debt does not exist. *Id.* Specifically, Plaintiff states: "My monthly

expenses exceed my monthly income; as such there is no reason for you to continue contacting

me." *Id.* Further, in conclusion, she states: "If my circumstances should change I will be in touch."

*Id.* Both sentences focus on the fact that Plaintiff is not paying her debt, not because she disputes

the debt but because she does not have the means to pay it. *Id.* In the context of the entire letter,

the phrase, "and the amount you are reporting is not accurate either" seems to be an after-thought

rather than a dispute of her debt. *Id.* For example, the last sentence of Plaintiff's letter—"If my

circumstances should change I will be in touch"—evinces that Plaintiff is not disputing the letter,

and once she has money to spend she will repay her debt. *Id.* Had the accuracy of the amount of

debt been the focus of the letter, Plaintiff would have had no reason to include this last sentence.

23.     Further emphasizing the fact that Plaintiff is not disputing the debt, Plaintiff's letter above is a boilerplate letter to PRA sent by the same law firms. *Compare* <u>Doc. 1-2</u> at 2, *with* PRA's Motion for Summary Judgment <u>Exhibit A</u> (Palomo's letter) (identical letter) and <u>Exhibit B</u> (Cousins's letter). All three letters were sent by the same firms: Community Lawyers Group, Ltd. in conjunction with Law Office of Tyler Hickle. *Id.* All three letters contained identical formatting and language, save for the consumer's name, account number, and date. *Id.* This boilerplate letter raises doubts as to whether Plaintiff actually considered the amount of the debt, recognized that there was a disparity in amount, and made a challenge.

24.     Given that Plaintiff did not dispute her debt but instead highlights a refusal to pay due to her current financial circumstances, Plaintiff presents neither evidence she disputed the debt nor evidence PRA knew or should have known she was disputing the alleged debt. Consequently, this Court must find PRA is entitled to summary judgment and dismiss Plaintiff's claim.

   **E. Even if this Court finds sufficient evidence to support Plaintiff's FDCPA and TDCA claims, PRA's bona fide error defense makes summary judgment improper.**

25.     Regardless of the evidence supporting Plaintiff's FDCPA and TDCA claims, PRA is not liable to Plaintiff for any violation of the FDCPA, because PRA's failure to report that Plaintiff's debt was in dispute was an unintentional bona fide error. To protect debt collectors who abstain from abusive practices, the FDCPA provides, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also* § 1692k(e) ("No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau . . . ."). Likewise, the TDCA also includes a "bona fide error" exception: "A person does not violate this chapter if the

action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." Tex. Fin. Code Ann. § 392.401.

26.     A defendant seeking a bona fide error defense must show that the violation was: (1) unintentional; (2) bona fide error; and (3) made despite maintenance of procedures reasonably adapted to avoid error. 15 U.S.C. § 1692k(c); *see also* Tex. Fin. Code Ann § 392.401; *FIA Card Servs., N.A. v. Gachiengu*, 571 F. Supp. 2d 799, (S.D. Tex. 2008) "The debt collector only has to show that its violation of the statute was unintentional, not that its actions were unintentional." *Liu v. Arrow Fin. Servs., LLC*, No. CIV.A. H-08-3116, 2010 WL 1994190, at *3 (S.D. Tex. May 17, 2010); *see also Nielsen v. Dickerson,* 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense."). Moreover, the intent prong of the bona fide error defense is a subjective test, while the procedures prongs are objective tests. *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006); *Coleman v. Credit Mgmt., LP*, No. 3:10-CV-2312-M, 2011 WL 5248219, at *4 (N.D. Tex. Nov. 2, 2011). PRA satisfies all three elements of the bona fide error defense.

27.     PRA did not intend to violate any provision of either the FDCPA or the TDCA, and did not intend to report any credit information that might be false. Intent is determined under a subjective test. *See Johnson*, 443 F.3d at 727–28; *Coleman*, WL 5248219, at *4; *Smith*, 2011 WL 1375667, at *6; *Cole*, 2010 U.S. Dist. LEXIS 142667, at *23. PRA received the alleged dispute letter from Plaintiff. Doc. 1-2 at 2. Even though Plaintiff alleges that she disputed her debt, Plaintiff's letter—as demonstrated above—does not indicate a dispute. *Id.* Rather, through the

letter, Plaintiff informs PRA the reason why she is unwilling to pay the debt: because "[her] monthly expenses exceed [her] monthly income." *Id.* At minimum, Plaintiff's letter is ambiguous. And based on this ambiguity, PRA believed that Plaintiff did not dispute the debt and thus, did not report the alleged dispute to Experian.

28.     Had PRA known that Plaintiff was disputing her debt, PRA would have followed its established internal policy and reported the dispute. The bona fide error and maintenance of procedures prongs of the defense are analyzed under an objective test and "an inquiry is needed to assess whether any procedures were actually implemented and whether such procedures 'were reasonably adapted to avoid the specific error at issue.'" *Smith v. ProCollect, Inc.*, No. 6:09-CV-0350, 2011 WL 1375667, at *6 (E.D. Tex. Apr. 12, 2011). As demonstrated above, at minimum, Plaintiff's letter is ambiguous. <u>Doc. 1-2</u> at 2. And PRA operated under the assumption that the letter submitted by Plaintiff did not contain a dispute. This was a genuine error. *See Bona Fide*, BLACK'S LAW DICTIONARY (20th ed. 2016) ("1. Made in good faith; without fraud or deceit. 2. Sincere; genuine.").

29.     Moreover, any bona fide error was made despite PRA's procedures reasonably adapted to avoid error. PRA trains its employees and has standards and procedures in place to ensure full compliance with the FDCPA. PRA's Motion for Summary Judgment at <u>Exhibit C</u>. PRA's "Dispute Department Policies" announces: "The following procedures provide PRA associates adequate and consistent processes to understand how to make decisions regarding the customer's account when that account is disputed for any reason while also adhering to PRA's policies and all industry regulatory laws." *Id.* at 5. PRA specifically defines what constitutes as a "dispute" and designates Disputes Specialists who are "responsible to receive, address and process incoming written disputes received from customers." *Id.* at 5–6. In its policy, PRA has two-and-a-half pages of

procedure solely dedicated to handling written disputes as a procedure reasonably adapted to avoid any error. *Id.* at 13–15. Further, PRA has a separate manual dedicated to its dispute department. PRA's Motion for Summary Judgment at <u>Exhibit D</u>. In PRA's "Disputes Department Supplemental Training Manual," PRA clearly delineates and trains its personnel on what constitutes as a dispute. *Id.* at 4–5. PRA includes a six-step procedure that its dispute specialists must follow when PRA receives a written dispute. *Id.* at 27–29.

30.    All these procedures were reasonably adapted to identify a dispute made by a customer and thus, a violation of the FDCPA or TDCA, if any, was a genuine mistake arising from an ambiguous letter sent by Plaintiff. Plaintiff alleges "PRA's *bona fide* error defense cannot prevail because PRA does not believe that an error actually occurred." <u>Doc. 31</u> at 14. Plaintiff cites no precedent stating a debt collector must "believe that an error actually occurred" in order to raise the bona fide error defense. <u>Doc. 31</u> at 14.  In effect, Plaintiff is mistakenly reading an extra element into the bona fide error defense. There is no requirement that PRA "believe that an error actually occurred." PRA must only show that it did not subjectively intend to violate the statute, which it has shown. Next, Plaintiff claims PRA "intentionally ignores dispute language and focuses on another purpose of the letter." *Id.* However, as shown by its detailed procedures in identifying and handling disputes, PRA does not intentionally ignore dispute letters. <u>Exhibit C</u>.

31.    Plaintiff then characterizes PRA's practices as "an intentional disregard of Plaintiff's dispute or a mistake of law." <u>Doc. 31</u> at 14-15. PRA's failure to identify Plaintiff's alleged due to the ambiguities in her letter presents a mistake of fact, not law. Also, PRA does not intentionally disregard debtor disputes, and it points to its detailed dispute policy and employee training as evidence of this fact.  Lastly, incorporating by reference herein PRA's argument found at Def.'s Reply to Pl.'s Opp'n 3-4, Plaintiff relies on *inadmissible* deposition testimony to support the

conclusory and mistaken allegation that "PRA [does] not have policies and procedures reasonably adapted to ensure that a consumer's communication that the amount of an alleged debt is not accurate is communicated to credit bureaus as a dispute." <u>Doc. 31</u> at 15. Contrary to Plaintiff's conclusory allegation, PRA maintains detailed policies and procedures reasonably adapted to identify and handle disputes. PRA's Motion for Summary Judgment at <u>Exhibit C</u>. Had Plaintiff's letter been clearer, PRA would have noted and reported the dispute. As shown above, PRA has met each element of the bona fide error defense.

### F.  Whether PRA maintained procedures reasonably adequate to avoid a bona fide error presents, at minimum, a genuine issue of material fact.

32.     In the alternative, if the Court does not find PRA is entitled to summary judgment, then the question of whether PRA may avoid liability under the bona fide error defense presents a genuine issue of material fact for trial.  This Court cannot grant summary judgment for the Plaintiff if a genuine dispute as to any material fact remains. *Celotex*, 477 U.S. at 322–23. A material fact dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248. The court must construe the facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci*, 557 U.S. at 586.

33.     Based on the arguments *supra*, PRA can defeat Plaintiff's Motion because a rational jury could find that the bona fide error defense applies to the case at bar.  A defendant seeking a bona fide error defense must show that the violation was: (1) unintentional; (2) bona fide error; and (3) made despite maintenance of procedures reasonably adapted to avoid error. 15 U.S.C. § 1692k(c); *see also* Tex. Fin. Code Ann § 392.401; *FIA Card Servs., N.A.*, 571 F. Supp. 2d  at 799. PRA's alleged FDCPA violation was unintentional, as Plaintiff's ambiguous letter did not indicate a dispute. <u>Doc. 1-2</u>. "The debt collector only has to show that its violation of the statute was

unintentional, not that its actions were unintentional." *Liu*, No. CIV.A. H-08-3116 at *3.  Intent is

determined under a subjective test. *Johnson*, 443 F.3d at 727–28.  The content of Plaintiff's letter

is evidence of subjective intent that shows PRA did not find a dispute in the letter. Therefore, its

alleged failure to report a dispute to Experian would be an unintentional violation of the statue.

Accordingly, a trier of fact could reasonably find that PRA establishes its bona fide error defense.

34.     The error was bona fide because, had PRA known that Plaintiff was disputing her debt,

PRA would have followed its established internal policy and reported the dispute. The bona fide

error and maintenance of procedures prongs of the defense are analyzed under an objective test

and "an inquiry is needed to assess whether any procedures were actually implemented and

whether such procedures 'were reasonably adapted to avoid the specific error at issue.'" *Smith v.

ProCollect, Inc.*, No. 6:09-CV-0350, 2011 WL 1375667, at *6 (E.D. Tex. Apr. 12, 2011). PRA

operated under the assumption that the letter submitted by Plaintiff did not contain a dispute. This

was a genuine error. *See Bona Fide*, Black's Law Dictionary (20th ed. 2016) ("1. Made in good

faith; without fraud or deceit. 2. Sincere; genuine."). Therefore, a trier of fact could reasonably

find that PRA has met the second element of the bona fide error test.

35.     The final element of the bona fide error test is whether PRA maintained procedures

reasonably adapted to avoid error.  As shown above, PRA has established a detailed policy to

handle disputes. Doc. 21 at Exhibit C. These procedures were reasonably adapted to identify a

dispute made by a customer, to communicate the dispute to credit reporting agencies, and

consequently avoid violating the FDCPA or TDCA.  However, when a debtor's letter primarily

focuses on a refusal to pay a debt because her "monthly expenses exceed [her] monthly income"

and does not use the word "dispute" anywhere in its language, this can result in a debt collector

mistakenly reporting her debt without a dispute, despite procedures reasonably adapted to avoid

the mistake.  Because PRA maintained procedures reasonably adapted to avoid the mistake, a trier of fact could reasonably find that PRA has met the third element of the bona fide error test, which—at minimum—present a genuine issue of material fact, which must result in a denial of Plaintiff's motion for summary judgment.

## VI.
## CONCLUSION

36.     Based on the foregoing, Plaintiff is not entitled to summary judgment. Plaintiff alleges bare procedural violations that fail to satisfy the concrete injury requirement established by the U.S. Supreme Court. Plaintiff also fails to present any evidence to support her conclusory statements to satisfy the essential elements of her FDCPA and TDCA claims. Even if she had satisfied both the standing and element requirements, this Court must still deny summary judgment due PRA's bona fide error defense. In the alternative, PRA's bona fide error defense—at minimum—presents genuine issues of material fact for trial.

WHEREFORE, PREMISES CONSIDERED, for the reasons above, Defendant Portfolio Recovery Associates, LLC and Western Surety Company request this Court to deny Plaintiff's Motion for Summary Judgment.

**[SIGNATURE BLOCK ON NEXT PAGE]**

Respectfully submitted,

**MALONE AKERLY MARTIN, LLC**

*/s/* Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
MALONE AKERLY MARTIN PLLC
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
T: (214) 346-2630 | F: (214) 346-2631
***COUNSEL FOR PORTFOLIO RECOVERY***
***ASSOCIATES, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to known counsel of record **via ECF** on this 7th day of March to:

Michael Wood
Celetha Chatman
Community Lawyers Group, Ltd.
University Park
3300 N. Interstate Hwy 35, Suite 7018
Austin, TX 78722
P. 512-524-9352 | F. 512-593-5976
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com
*ATTORNEYS FOR PLAINTIFF*

Tyler Hickle
Law Office of Tyler Hickle
4005C Banister Lane, Ste. 120C
Austin, TX 78704
P: 512-289-3831 | F: 512-870-9505
tylerhickle@hicklelegal.com

*/s/* Robbie Malone
ROBBIE MALONE