UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JEAN JONES,                              )
                                         )
                Plaintiff,               )
                                         )
        vs.                              )Case No. 16-CV-572-RP
                                         )
PORTFOLIO RECOVERY ASSOCIATES, LLC,      )
WESTERN SURETY COMPANY,                  )
                                         )
            Defendants.                  )
_____)

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE ROBERT PITMAN
TUESDAY AUGUST 29, 2017 8:37 A.M.

FOR THE PLAINTIFF:  ROBERT A. ZIMMER, ESQ.
                    AMY E. CLARK, ESQ.

FOR THE DEFENDANTS:  ROBBIE MALONE, ESQ.

Proceedings recorded by mechanical stenography, transcript
produced using computer aided transcription.

_____

Pamela J. Andasola, CSR/RMR/FCRR
FEDERAL OFFICIAL COURT REPORTER
355 EAST CESAR E. CHAVEZ BLVD.
SAN ANTONIO, TEXAS 78210

# I N D E X   P A G E

**VOIR DIRE EXAMINATION:**

      Voir Dire Examination By Ms. Clark      54
      Voir Dire Examination By Ms. Malone     65

**OPENING STATEMENTS:**      **PAGE**

  By Ms. Clark      93
  By Ms. Malone     137

**WITNESSES:**      **PAGE**
  For the Plaintiff:
    **JEAN JONES**
      Direct Examination By Ms. Clark    103
      Cross-Examination By Ms. Malone    122
      Redirect Examination By Ms. Clark   127

  For the Defendant:
    **MERYL DREANO**
      Direct Examination By Ms. Malone   140
      Cross-Examination By Mr. Zimmer   164

**EXHIBITS:**

  For the Plaintiff:      OFFERED RECEIVED REFUSED

A    Dispute Letter    165
D2   Customer Dispute   143    143
    Procedures Manual
D3   Disputes Department   144    144
    Supplemental Training
    Manual
D1   Screen Shots from Host   150    150

**MOTIONS:**

Motion for Directed Verdict By Ms. Malone...........131
Rulint on Motion for Directed Verdict By The Court..135

**CLOSING ARGUMENTS:**

  By By Mr. Zimmer      190
  By By Ms. Malone      195

1            **MORNING SESSION, AUGUST 29, 2017**

2                            *****

3            (The following proceedings were had in

4            open court with all parties present at

5            the hour of 8:37 a.m.)

6                            *****

7            THE CLERK:  Court calls A:16-CV-572, Jean Jones

8    versus the Portfolio Recovery Associates, LLC, and others,

9    for final preconference and jury selection and trial.

10           THE COURT:  If we can have announcements for the

11   record, please.

12           MS. CLARK:  Amy Clark for plaintiff, Jean Jones.

13           MR. ZIMMER:  Robert Zimmer for plaintiff, Jean

14   Jones, as well.

15           MS. MALONE:  Robbie Malone on behalf of PRA, the

16   defendant, and I also have the client representative with me

17   from their general counsel's office, Keith McGurkin.

18           THE COURT:  Thank you very much.

19           So thank you also for your flexibility with

20   rescheduling this hearing.  We ended up closing the

21   courthouse yesterday because of weather-related issues, so

22   thank you for being here early today to have this hearing.

23           I know that we have a number of important matters

24   to attend to before we do select the jury, so let's just get

25   right into this.  One of the things that I want to address

1   is -- that affect some of what we're going to be doing this

2   morning -- is the issue of plaintiff's failure to respond to

3   requests for admissions.  And I have a number of concerns

4   about all that.  Let's just go ahead and tell me, because I

5   think that's going to inform many of the rulings that I'll

6   make.  Tell me so I'll have an understanding of what that

7   situation is; and since you've alleged, Ms. Malone, that

8   failure, could you kind of be clear to me about what the

9   failure was on their part and what the status is as we speak

10  today?

11          MS. MALONE:  Yes, Your Honor.  Would you like for

12  me to --

13          THE COURT:  Yes, please.

14          MS. MALONE:  Your Honor, I have copies of the

15  green card and the service documents where we served

16  discovery on plaintiffs back on September 9th of 2016.  They

17  were served with a set of Interrogatories, Request for

18  Production and Request for Admissions.  If the Court would

19  like, I'm happy to give it to you for review.

20          In the Request for Admissions, there are some

21  specific facts, obviously, that we believe are deemed

22  admitted, including among those is that she did not author

23  the letter, that she did not authorize the letter to be sent

24  to my client, that she didn't have the fax number in

25  question, and things along that line.

1    With regard to the Interrogatories and Requests

2    for Admission, I think those are particularly important in

3    light of their attempt to put in Nyetta Jackson's deposition

4    because we asked them to provide us with any explanation of

5    people who have knowledge to show that my client violated

6    the FDCPA and the Texas Debt Collection Act.  Both

7    Interrogatories and Requests for Production would have

8    called on them to produce the deposition if they intended to

9    use it from the other case, as well as to identify facts

10   that may have been given by Ms. Jackson in regards to that.

11   And we sent this also by email, Your Honor, as we

12   put in one of our motions in limine, as well to Mr. Hickle,

13   who at that time was lead counsel on the case.

14   I never received any communications from them as

15   to why they did not respond to the discovery.  I will tell

16   you that there were three other cases involving the same

17   group of folks that are in Judge Sparks' court and the same

18   thing happened.

19   In one of those cases, I believe it's the *Polomo*

20   case, Judge Sparks has ruled that they cannot answer

21   discovery at this point because they didn't seek any

22   extension or assistance from the Court until after we had

23   brought it up in motions for summary judgment.

24   THE COURT:  So was this a failure to respond in

25   whole or were there just individual questions?

1          MS. MALONE:   In whole, Your Honor.

2          THE COURT:   Well, to your last statement, you said

3   until you brought it up in Judge Sparks' case.

4          Why didn't you bring it up when I was -- because

5   some of the findings that you allowed me to make I wouldn't

6   have found if you had told me that they hadn't responded.

7   So now I'm in a situation where I have found certain things

8   and I'm stuck and it makes me look ridiculous for having

9   found these things, and now you come in on the day of trial

10  and want me to make findings that are opposite of what I've

11  already found.

12         MS. MALONE:   Your Honor, in the Request for

13  Admissions they don't go directly to liability.   They do go

14  to whether or not they authored the letter.   And I don't

15  think the Court's ruling is inconsistent with that because

16  you've said she still has to prove her consumer status.   And

17  the Court found that PRA did not handle the letter

18  correctly, so I don't think that is inconsistent, Judge.

19         Because -- I mean, I think that -- I obviously

20  think we should have brought them up in the summary judgment

21  as well, Judge, and that was just an oversight on my

22  office's part because we did raise it in the other cases.

23  And I don't know why we missed it in this one because we did

24  it in the other three.

25         But I don't think it's inconsistent, Judge,

1  because you still haven't found the final liability question

2  because you said that they still have to presume -- prove

3  consumer status.  We didn't have a specific request for

4  admission on that.

5          THE COURT:  There are two requests in particular,

6  first, that at no time between March 2013 and April 21,

7  2016, did plaintiff notify the defendant that the debt was

8  inaccurate and, similarly, that the debt was disputed.

9  Those two things were specifically asked and unresponded to

10  and I was led to make findings that are inconsistent with

11  that.

12          So, to your --

13          MS. MALONE:  Your Honor, I can -- this is the way

14  I read it, Judge, and honestly I could be wrong.  But our

15  position has been all along that Jean Jones didn't actually

16  do either of those two things, her counsel did.  Her counsel

17  wrote the letter that the Court found that my client

18  mishandled and so that's how I read that, Judge.

19          If I'm reading it too narrowly, I apologize.  But

20  our position all along has been that Jean Jones did not

21  personally dispute anything based on her testimony, which we

22  did cite to the Court in our Summary Judgment, that she

23  didn't have any idea what this debt was about, and she

24  didn't know if she had a dispute.  She wasn't sure if it was

25  inaccurate.  She denied even knowing about the debt.

1    That testimony was in our summary judgment, Your

2  Honor.

3    THE COURT:  Okay.  Thank you.  You're fighting

4  over who has to respond to this?

5    Ms. Clark.

6    MS. CLARK:  Sorry.  The new girl.

7    Your Honor, the Motion for Summary Judgment didn't

8  bring up the Request for Admission and that would have been

9  the proper time, is plaintiff's argument.

10    Instead, the motions in limine time is when you're

11  supposed to exclude evidence that would be overly

12  prejudicial.  That's really what the motions in limine are

13  to be limited to.

14    Instead, I guess it's not a surprise because --

15  for the plaintiff's group as a whole -- as Mr. Hickle had

16  known that they were not answered and even though he's not

17  of counsel, that knowledge is, of course, passed on to us.

18    But, the responses -- this is just not the

19  appropriate time to bring them up.  The consumer -- whether

20  or not it's consumer debt and whether or not the bona-fide

21  error process is the bona-fide error defense is allowed,

22  those are the only two things which remained after the

23  Motion for Summary Judgment.

24    So largely in the Motion in Limine filed by

25  defendant, I believe defendant is trying to sort of re-try

1  the Motion for Summary Judgment.  Many things that may have

2  been pertinent at that time or were already argued, like

3  whether or not that deposition of a witness from another --

4  from Portfolio Recovery Associates, in a similar but not

5  this case, should come in.  Again, that's something that was

6  already decided at the Motion for Summary Judgment.

7          So I don't believe this is the proper time to

8  relitigate everything that could have been in a motion to

9  have them deemed admitted, would have been a proper motion

10  to have been filed; or the Motion for Summary Judgment,

11  bring it up in the opposition, bring it up in a Motion to

12  Exclude Evidence.  All of those things, the time has passed

13  for all of those matters.

14          THE COURT:  Let me ask you first, you don't

15  dispute that this discovery was not responded to?

16          MS. CLARK:  I don't dispute.  It's not my personal

17  knowledge, but that's my firm understanding.

18          THE COURT:  Okay.  Do you know anything in the

19  rules or in case law that prevents them from urging this

20  relief today?

21          MS. CLARK:  Yes.  It's past the motion discovery

22  deadline and it's also -- the motions in limine as I stated

23  they're for excluding evidence, not for admitting -- they're

24  not for -- I guess they're not for admission, they're not

25  for having facts be brought in and it's just the wrong time,

1  the timing is off under the Rules of Civil Procedure.

2          THE COURT:  Yeah, what rule tells me when it's too

3  late to deem matters admitted?

4          MS. CLARK:  I don't know.  I would have to look

5  that up.

6          THE COURT:  I don't think there is one.  I think

7  that it's unfortunate that it didn't happen before today

8  because I think we might not be here today had it happened

9  before today.  But I don't know anything in the rules or law

10  that prevents them from seeking the relief that they're

11  asking today.  So unless you're able to tell me what that

12  is, then I'm going to grant their Motion in Limine with

13  regard to the unresponded-to discovery and prevent you from

14  introducing evidence that is contrary to the deemed

15  admissions by that ruling.

16          So, that -- is that clear?

17          MS. CLARK:  Yes and no, to be honest.

18          How does that go as far as the fact that some --

19  the majority of those admissions, if not all of them, do not

20  deal with the issues that we're arguing about today.  So I

21  don't know if by excluding the evidence what that has to

22  do -- I guess why don't I ask it this way:  Is the Motion

23  for Summary Judgment ruling changed in any way?

24          THE COURT:  It's not at this point.

25          I think what we're talking about now is that order

1   is in place and now we're at a different point, and we're

2   using sort of a different lens, one that I wish I had had

3   the benefit of when I issued my ruling there, but I can't

4   deny now that what I do know is that these things should

5   have been deemed admitted and for purposes of what gets to

6   the jury, that's where we are now.

7           MS. CLARK:  Okay.

8           THE COURT:  So, with that, I will grant

9   defendant's Motion in Limine with regard to the

10  unresponded-to -- given that ruling, do you need time to see

11  if you can work this out?  And do you have a case?  Do you

12  have anything to submit to the jury?

13          MS. CLARK:  I don't -- I guess we would need time

14  to look it over and see.

15          Frankly, it is something we already looked at, the

16  fact that this could be granted.  I mean, obviously we try

17  to look at both sides.  And how it pertains to consumer debt

18  and the bona-fide error, I'm not really sure.  Especially

19  with the limited definition of "authorized the letter to go

20  out" that the defendants have been putting forth.

21          THE COURT:  Okay.  Well then what we need to do

22  then is let's go through and I'll make rulings on everything

23  else that's outstanding and we'll take a break and give you

24  time to digest.

25          MS. CLARK:  Yes.

1        MS. MALONE:  Your Honor, if I may?

2        THE COURT:  Sure.

3        MS. MALONE:  There is one thing that I would like

4   to talk to the Court about that might actually speed things

5   up a little bit.  I am looking at the plaintiff's

6   identification of exhibits.  The only two exhibits that they

7   have identified is the despite letter.  We do have objection

8   about hearsay based upon her testimony about the letter.

9        But the second thing they've identified and the

10  only thing they've identified that would go to the issue of

11  whether or not she is a consumer is Bates Numbers 34 through

12  71 -- I understand that they have narrowed that down to 34

13  to 50, which I have no objection to.

14       Here is the problem, Your Honor, and I'm happy to

15  show you based on defendant's exhibits.  They have nothing

16  to deal with the consumer status because there were two

17  accounts.  The first account, the only account which the

18  letter was sent on, is not the documents that they are

19  producing.

20       The documents they are producing was an account

21  that was not purchased by my client until three weeks after

22  the letter was sent, and that's in the exhibits that we

23  provided to the Court that are unobjected by the plaintiffs,

24  so I believe under our rules are then admissible by the

25  Court.

13

1              So -- and to the extent that they're offering

2    this, I think they have a huge hearsay problem as well.  But

3    the reality is, Judge, they don't have any exhibits and no

4    testimony from their client which would address the last

5    issue about consumer status based on her testimony that she

6    doesn't know anything about it, and the only documents they

7    proffered to the Court are not the accounts that were the

8    basis of the letter.  So -- and I'm happy to show the Court

9    how I know that on the exhibits that have been admitted.

10             If you look in Defendant's Exhibit Number A, Your

11   Honor, on Page 5, there is an entry that says -- over on the

12   left-hand side -- it says "purchased."  It's on Page 5.

13             And over on the left-hand side, about halfway

14   down, there's a line that says "purchased."  It shows the

15   date of the purchase, which is December 24, 2015.

16             That would be for the Home Shopping Network credit

17   card, which is the information they provided.  The letter,

18   Your Honor, which they have proffered into evidence in their

19   Exhibit Number 1 is dated December 1st, 2015.

20             So their own offers to the Court are not

21   sufficient to meet the definitions of consumer that is left

22   from the Summary Judgment Motion.

23             THE COURT:  Well, maybe, maybe not.  I mean,

24   they're going to get to try their case and if it doesn't

25   work, it doesn't work.

1          Your response to that?

2          MS. CLARK:  Yes, I think that was my -- a good

3  part of my argument is whether or not something is hearsay

4  and whether or not it's relevant, sounds like what we are

5  doing at the trial not at the motion in limine, and I'll --

6  yeah.

7          THE COURT:  Okay.  Thank you.

8          Let's go through, then, the Motions in Limine

9  then.  We've started, I suppose, with the defendant's and so

10 let's -- we just dealt with the first one.  Let's go through

11 with regard to the second, the -- having to do with the

12 facts.  I'm going to deny that with leave to reurge it if

13 the plaintiff doesn't lay the proper foundation.

14         With regard to the next one, the Experian report,

15 same.  I'm going to deny with leave to reurge.

16         MS. MALONE:  Your Honor, on the Experian report,

17 they -- our -- if you recall, our Motion in Limine was filed

18 before theirs and they did not offer it as an exhibit, so

19 it's not relevant.

20         THE COURT:  Okay.  Thank you.

21         MS. MALONE:  So --

22         THE COURT:  Next, with regard to evidence

23 regarding the 2015 consent order, I'm going to grant that.

24         Next with regard to the evidence supporting

25 statutory damages, attorney's fees and other costs, I am

1    going to -- given the failure to respond -- I'll go ahead

2    and grant that as well.

3             Moving then to the plaintiff's Motions in Limine,

4    one with regard to exclusion of evidence regarding

5    attorney's fees, I'm going to grant that.

6             Next, with regard to evidence about the existence

7    and validity of the underlying debt, I'm going to grant

8    that -- excuse me -- I'm going to deny that insofar as it

9    relates to the issue of whether this is a consumer debt.  I

10   think that's obviously relevant.  But as to anything else,

11   I'm going to grant that.  So, if you have any questions

12   about that let me know.  But I'm going to let in evidence

13   that is directly related to whether -- the obligation to

14   demonstrate that this was consumer debt.

15             MS. MALONE:  Your Honor, and that was the exhibit

16   that I was talking about, specifically.  I would ask the

17   Court that they be required to lay a foundation that this

18   was the specific debt that was the basis of the letter,

19   because otherwise it's not relevant under the Federal Rules.

20             I understand -- our objection on hearsay, I

21   understand the Court's position on that.  But if this is not

22   the correct account, then they have a relevancy problem,

23   Your Honor.  And until I saw the exhibit this morning, I

24   wasn't a hundred percent sure exactly what they were trying

25   to offer, and it didn't -- I would ask the Court if we

1  could, since the limine is only they have to approach the

2  bench before they go into evidence, I would ask that you

3  give -- the Court give a variation on the limine until they

4  show that this was the account that was subject to the

5  letter.  And if they can do that through their witness, and

6  at that point if they can, then the Court ruling would be

7  certainly relevant.  But if they can't show that this was

8  the debt in question, Judge, it's not relevant to the

9  lawsuit.

10         THE COURT:  In the event that they attempt to

11  admit it into evidence, you can make that objection at that

12  time.

13         MS. MALONE:  Thank you, Your Honor.

14         THE COURT:  Next with regard to plaintiff's

15  seeking to exclude evidence regarding status, character and

16  motives of the plaintiffs, I'm going to grant that.

17         With regard to plaintiff's seeking to exclude

18  claims references to attorney motives, I'm going to grant

19  that.

20         And finally, plaintiff's seeking to exclude

21  evidence on matters which defendants have admitted, that's

22  unopposed.  I think I'll grant that.

23         And then, finally, plaintiff's seeking to exclude

24  evidence regarding settlement offers or offers of judgment,

25  I will grant that.

17

1          I will now be happy to hear any argument that you
2    would like to make that you haven't made already about the
3    proposed deposition testimony.

4          Would you like to address that, Ms. Malone?
5          MS. MALONE:  Yes, Your Honor.

6          There are a number of problems, and I won't rehash
7    the motion because I know the Court is fully aware of it.
8    But there's an additional problem with the Nyetta Jackson
9    deposition besides the fact it involved the other case.
10   It's not the same letter.  It's not even the same letter,
11   Your Honor.

12         On Page 90 of the Nyetta Jackson deposition, they
13   describe what the letter was involved in that particular
14   case and in that case it was a letter on a law firm's
15   letterhead that was sent to PRA that included representation
16   and made some comment about whether or not the account
17   amount was in dispute.  That is not even the same letter we
18   have here.  So it's not even apples to apples that they're
19   asking the Court to consider.

20         In addition to that, in discovery they did not
21   identify Nyetta Jackson under their disclosures.  They did
22   not identify her.

23         We attached a copy of their actual disclosures.
24   Nyetta Jackson's name is never named.  They did not identify
25   her at any point of time in discovery to give us proper

1  notice whether or not we wanted to re-depose her or depose

2  her related to this particular issue.  They never asked her

3  for her deposition in this case or anyone from PRA.  They

4  never produced her in response to any discovery questions we

5  asked -- and there were a number of them, Your Honor.

6  Specifically in response to Request for Interrogatory Number

7  6, we asked them to provide the factual basis of their FDCPA

8  violation.

9          Number 7, we asked for them to provide the factual

10  basis of their Texas Debt Collection Act violation.

11          And, Number 10, we asked them to describe any

12  documents they would have to support their allegation of a

13  violation.

14          In Request for Production Number 4, we asked for

15  all documents supporting an FDCPA violation.

16          Five, all documents supporting a Texas Debt

17  Collection Act violation.

18          And, Number 6, all documents supporting a specific

19  provision of the Texas Collection Act, 392.301.

20          In all three cases, that would have caused them to

21  provide a copy of a deposition that they believed was

22  appropriate to show the factual basis of their claims that

23  PRA had some glitch in their system that resulted in the

24  manner in which this letter was handled.  They never

25  responded with that at any point in time.

1    The only discovery they ever gave to us, Your

2  Honor, was their disclosure which we've attached to the back

3  of our motion requesting striking for Nyetta Jackson's

4  deposition.  And if the Court looks, you will see there's no

5  reference to either Ms. Jackson or any deposition testimony

6  that she may have given in another case.

7    And it's a little bit -- it would also be in

8  violation of the Motion in Limine you just granted.  Your

9  Honor, you granted a Motion in Limine in our favor saying

10 they could not discuss the CFPB and other lawsuits related

11 to PRA.

12    If you put Nyetta Jackson's deposition in, it's

13 talking about three other cases that were consolidated to

14 take one deposition in Illinois over a different letter.

15 It's not even the same letter.  So it would violate the very

16 Motion in Limine that the Court just granted in our favor

17 with regard to other exposures.

18    It would also be very inconsistent with the Court

19 ruling that we can't talk about Ms. Jones' character, to

20 allow other testimony or other issues related to other

21 lawsuits in here in some way to impugn the character of my

22 client.

23    So, I don't think they have any explanation for

24 why it was not provided to us anywhere in discovery.  The

25 first time that they identified Ms. Jackson to be a witness

1   in this trial was on the 17th, which as the Court knows was

2   late for their designation at that time.

3        That was the first time they ever indicated they

4   intended for her to testify.  They never reached out to us

5   to see if we can make her available for trial, or any other

6   30(b)(6) witness, at any point in time.

7        Ms. Jackson was also never identified by us as a

8   person who had specific knowledge.  The person that we used

9   for interrogatories in this case is Meryl Dreano and she's

10  here to testify.  But they did not provide any indication

11  they wanted Ms. Jackson.

12        THE COURT:  Thank you very much.

13        Mr. Zimmer?

14        MR. ZIMMER:  Thank you, Your Honor.

15        I would like to point out that this evidence was

16  offered at Summary Judgment on, I believe, if memory serves

17  correctly, there was actually a motion to strike his

18  deposition.  The Court, you know, presumably considered that

19  motion to strike and elected to consider this deposition

20  anyway as evidence during the Summary Judgment proceedings.

21        But I would also like to point out that the

22  contents of the deposition testimony, Ms. Malone suggests

23  that it covers a different dispute letter or different type

24  of dispute letter than the one that's at issue here.  And,

25  in fact, the dispute letter at issue here contains virtually

1    identical language to the dispute letter that's discussed in

2    the deposition.

3            And the purpose of the deposition isn't to prove

4    the merits of the FDCPA or the Texas Debt Collection Act

5    claim but rather we wanted to use it to show that they could

6    not qualify for the bona-fide error defense so we would not

7    have had to produce that in discovery in response to

8    requests for documents that would go to prove RDTCA or FDCPA

9    claim.  This is only going to show that they are not

10   eligible for the bona-fide error defense; and, like I say,

11   Your Honor, you did allow this evidence in at the Summary

12   Judgment stage and you considered it.

13           THE COURT:  Thank you very much.

14           I think for -- frankly for all the reasons that

15   the defendant suggests, this is inadmissible for a variety

16   of reasons.  I am going to grant their motion with regard to

17   deposition testimony and I will disallow that testimony.

18           That takes us to *voir dire* questions.  I will -- I

19   have selected certain of your *voir dire* questions that I

20   will incorporate into the Court's *voir dire* and then I will

21   allow each side twenty minutes to engage in your own *voir*

22   *dire* of the panel and so you can cover any ground that you

23   believe that I did not cover in questioning the potential

24   jurors.

25           With that, do you have any questions?

1       We're going to -- if we go to trial, we're going

2  to seat a panel of three over here that will be our panel.

3  We will -- initial panel.

4       The way I do it is we'll focus on those folks.  If

5  at any point they are dismissed during the process, we will

6  fill their seat with folks from the back and at the end

7  we'll have three qualified jurors -- excuse me -- thirteen

8  qualified jurors from which you will exercise -- each

9  exercise three strikes and we will seat a seven-person jury.

10             MS. CLARK:  Your Honor --

11             THE COURT:  Yes, Ms. Clark?

12             MS. CLARK:  I know this is a bit unconventional,

13  but we would like to withdraw Motions in Limine three and

14  four.

15             THE COURT:  Okay.

16             MS. CLARK:  They were filed before I came on board

17  and -- that is the ones regarding the plaintiff's character

18  and motives and also the attorney motives.

19             MS. MALONE:  I'm sorry, what?

20             MS. CLARK:  The plaintiff's character and motives

21  and the attorney motives.  They were opposed by defendant

22  and we would like to withdraw those.

23             THE COURT:  Okay.

24             MS. MALONE:  So it's fair game then, Your Honor?

25             THE COURT:  That's what I understand.

1    MS. MALONE:  I do have a question, Your Honor.

2    THE COURT:  Yes.

3    MS. MALONE:  Are we preadmitting the exhibits that

4  there were no objections to?

5    THE COURT:  I would like to do that unless you

6  have an objection, Ms. Clark.

7    MS. CLARK:  Let us look them over, but I think so,

8  as long as we're breaking for a few minutes.

9    THE COURT:  That will be great.  You can go over

10  your witness list.

11    MS. MALONE:  Judge, because they only had two

12  exhibits, both of which I'm objecting to, they're going to

13  be admitted at the time, so I can make my objection,

14  correct?

15    THE COURT:  That is correct.  I am going to

16  withhold my judgment.  I need a predicate to make an

17  informed decision about the admissibility of both of those,

18  so I'll be glad to hear those objections at the time they're

19  submitted.

20    MS. MALONE:  And one through seven on the

21  defendant's are admitted; is that correct, Your Honor?

22    THE COURT:  Are those unobjected to?

23    MS. MALONE:  It is --

24    MS. CLARK:  Wait.  Wait.  I just said I wanted

25  time to look at them, as long as we're meeting -- we're

1    breaking for a minute.

2             MS. MALONE:  Maybe.

3             Am I correct, Your Honor, that there are no

4    objections made to exhibits?  They are -- those objections

5    are waived, so they made no objections to our exhibits.

6             THE COURT:  That's correct.  But whether or not

7    they're preadmitted, I don't know.

8             MS. CLARK:  Okay, yes.  I'm sorry, I thought I

9    somehow jumped ahead that they are admitted also.

10            Yes, there's no objection.

11            THE COURT:  Okay, very good.

12            I'm going to give you a fifteen-minute opening

13   statement.  And let's see what else?  Any other questions?

14            We'll go seamlessly from jury selection into

15   seating the jury and making opening statements.

16            MS. CLARK:  Actually, Your Honor, there is one

17   question.  As far as the -- and this is something Ms. Malone

18   and I had spoken about before, but I wanted to ask you how

19   you prefer to have it run.

20            When there is so many already-decided-upon issues,

21   how -- will that be brought up just in the jury verdict in

22   the questionnaires, or will we limit -- I mean, are we still

23   bringing in evidence on those as well?

24            THE COURT:  No, those would have been limined out.

25   So if they feel that you are attempting to introduce

1   evidence that's been limined out, they will make an

2   objection at that time.

3          MS. CLARK:  No.  I'm sorry.

4          What I'm asking about is the issues that have

5   already been decided, like all the elements that have

6   already been decided on, are we bringing in evidence again

7   for the jury or explaining to the jury, are you -- or are

8   you telling the jury what's already been decided?  I guess

9   that's my question.

10          MS. MALONE:  Your Honor, they have to put on the

11   evidence or it doesn't have a context for bona-fide error.

12          THE COURT:  So it will come in.

13          MS. CLARK:  And are we allowed to tell the jury,

14   though, that it's already been decided?

15          THE COURT:  No.

16          MS. CLARK:  The dispute issue?

17          THE COURT:  No.

18          Okay.  Anything else?

19          MS. CLARK:  No.

20          THE COURT:  We'll give you a few minutes -- or is

21   the jury ready?  So, if we can -- let's take a ten-minute

22   break and in the interim if you need me, let me know;

23   otherwise, we'll be back out in ten minutes.

24          Thank you.

25          (Whereupon, a recess was then taken

1           after which the jury veniremen entered

2           the courtroom.)

3           THE CLERK:  Court calls A:16-CV-572, Jean Jones

4    versus Portfolio Recovery Associates, LLC and Western Surety

5    Company for jury selection and trial.

6           THE COURT:  If I can have announcements for the

7    record, please.

8           Ms. Clark?

9           MS. CLARK:  Amy Clark for Plaintiff Jean Jones.

10          MR. ZIMMER:  Robert Zimmer for Plaintiff Jean

11   Jones.

12          MS. MALONE:  Robbie Malone on behalf of defendant

13   PRA, Your Honor.

14          THE COURT:  Thank you very much.

15          And good morning ladies and gentlemen of the jury.

16          My name is Robert Pitman.  I'm a United States

17   District Judge here in the Austin Division of the Western

18   District of Texas, and on behalf of other judges of this

19   court I want to welcome you for your jury service today and

20   thank you so much for being here this morning.

21          As Ms. Demings explained to you, the Austin

22   Division of the Western District of Texas is comprised of

23   seventeen counties around Travis County and some of you, I

24   know, have traveled significant distances to be here today,

25   and I particularly appreciate those of you who had to get up

1   a little early this morning to make it here, and I

2   appreciate that very much.

3           Persons are selected at random for jury service to

4   assure that you -- to assure the parties that we have a

5   cross-section representation from the community in hearing

6   cases, and it was this random process that brought you here

7   today.

8           Your participation in this process is vital not

9   only to the parties to this dispute but also to the

10  community because we rely on folks like you to bring your

11  good judgment to the disputes that people in our community

12  have and I want to, again, thank you on their behalf for

13  being here today.

14          We're about to select a jury for the case styled

15  Jones versus Portfolio Recovery Associates.  You have been

16  arranged this way, thirteen of you in the jury box and the

17  remainder of you back in the gallery.  And the way we do

18  this is that we will first ask questions of this group of

19  thirteen.  This is the presumptive group of potential

20  jurors.  But don't get too confident back there yet because

21  part of this process is for us to ask questions that may

22  result in one or more of you being excused from hearing this

23  particular case.

24          So, what we will do is I will ask questions and

25  the attorneys will have an opportunity to ask some questions

1  of this group of thirteen.  As we go along, as I said, if

2  one or more of these folks is excused, then what we will do

3  then, the clerk will call at random a name from those of you

4  who are back in the gallery.  You will replace those who are

5  excused.  And the disadvantage you have is that you will

6  have to remember all the questions that were asked up to

7  that point and whether or not you would have answered any of

8  the questions.  I'll help you by giving you a few prompts in

9  that event.  But just the message there is, please be

10  attentive as the questions are being asked of this group

11  because if you are chosen to come up later, I will have to

12  solicit answers to all of those questions of you.

13          At the end of this process of jury selection we

14  will be left with a group of thirteen who have answered all

15  the questions and remain in that group.  The lawyers will

16  then be given an opportunity to exercise strikes; that is to

17  identify those jurors who they think would not be

18  appropriate for hearing this particular case.  And at the

19  end of the day what will happen is we will end up with a

20  jury of seven folks who will stay, be sworn in, and hear the

21  case as jurors.

22          The process of *voir dire* requires that the Court

23  and the attorneys for each party ask potential jurors

24  questions about their background, knowledge, biases and

25  prejudices.  In the process of doing so, questions that

1    sometimes -- at some point may feel intrusive to you.

2    Please understand that it's certainly not the Court's or the

3    parties' intentions to intrude on your personal business;

4    however, it's to ensure that the jury selected for this case

5    has no knowledge of the facts or the parties in the case and

6    holds no bias or prejudices about any of the issues in the

7    case so it's necessary to ask some of these questions.

8              If at any time you would like to give your

9    response to any of the questions in private, then simply

10   indicate that you want to do that.  I will ask you then to

11   make your way around here to this side of the bench, and you

12   will be able to give me the answer in -- only in the

13   presence of the attorneys to whatever question you would

14   like to remain private.

15             In addition, before any of you answer questions,

16   if I could ask for the purposes of the court reporter for

17   you to indicate your name and your juror number so that we

18   will have a record of who is responding.

19             First, let me introduce the counsel and the

20   parties in this case.  First, Ms. Clark, will you please

21   stand.  This is Amy Clark and she represents the plaintiff

22   in this case, Jean Jones.

23             Ms. Clark, if you could introduce your co-counsel,

24   your client, and anyone else who is seated at the table.

25             MS. CLARK:  Yes, Your Honor, thank you.  This is

 1  my co-counsel, Robert Pitman [sic] -- that's the Judge.

 2          MR. ZIMMER:  I wish.

 3          MS. CLARK:  This is my co-counsel, Robert Zimmer.

 4  He is not the judge today.

 5          He is representing our client, Jean Jones.

 6          THE COURT:  Ms. Clark, would you please read to

 7  the members of the panel any witnesses that you expect to

 8  call in the case?

 9          MS. CLARK:  The witness today will be Jean Jones,

10  and that's it.

11          THE COURT:  All right.  Thank you.

12          Members of the jury panel, do any of you recognize

13  or are any of you or any member of your family familiar

14  with, personally acquainted with, related to, had any

15  business dealings with or ever been employed by either the

16  plaintiff in this case, Ms. Jones, her lawyers, Ms. Clark or

17  Mr. Zimmer, their law firms, or any of the persons who have

18  been named?  If so, please raise your hand.

19          Any familiarity with any of those folks?  Okay.

20  Thank you.

21          Now, Ms. Malone, will you please stand, introduce

22  yourself and anyone at the table with you.

23          MS. MALONE:  Thank you, Your Honor.

24          My name is Robbie Malone.  I'm from a law firm

25  called Malone Akerly and Martin.  I have with me Mr. Keith

1   McGurkin, who is a representative from my client PRA.

2              THE COURT:  Thank you.  And could you please list

3   for the jury any witnesses that you expect you may call?

4              MS. MALONE:  Yes, Your Honor.  We're going to call

5   Meryl Dreano.

6              THE COURT:  Thank you.

7              Members of the jury panel, do any of you recognize

8   or are any of you or any member of your family familiar

9   with, personally acquainted with, related to, have any

10  business dealings with, or ever been employed by either

11  Portfolio Recovery Associates or Western Surety Company

12  and/or any of the persons that have just been named?  If so

13  if, you can raise your -- any familiarity with them?  Okay.

14  Thank you.

15             To the best of your knowledge, have any of the

16  attorneys in this case or members of their firms or offices

17  acted as your attorney or the attorney for any of your

18  immediate family or close friends?

19             No responses.  Thank you.

20             Now, you would expect that this would be kind of

21  unusual, but believe it or not it's not, and that is in an

22  area this size, you would expect that you would be unlikely

23  to know other members of your panel but sometimes we do have

24  folks who will show up on a -- in this case Tuesday

25  morning -- and recognize neighbors or coworkers, folks who

1  are on the panel with you.

2          Do any of you recognize today any of the -- your

3  fellow panel members as neighbors?  Associate's?  Okay.

4  Great.  Thank you very much.

5          The attorneys have estimated that this case will

6  take no more than two days to try.  As a result, let me ask

7  whether or not any of you would suffer any undue hardship or

8  any special problem serving on a jury for that length of

9  time?  We all understand that there are places that you

10  would probably rather be than here and it's taking time out

11  of your busy schedules to be here, but do any of you face

12  any undue hardship or is there anything that you would like

13  to bring to my attention that would prevent you from serving

14  on a jury for that period of time?

15          Yes, sir?  Your name and juror number?

16          JUROR:  It's XXXXXX XXXXXXX, Number 8.

17          THE COURT:  Okay.

18          JUROR:  Just because the nature of my work, I'm a

19  physician, so if this trial goes more than a day or two, I

20  have to reschedule patients and look for my own coverage,

21  so, just to consider that, sir.

22          THE COURT:  Okay.  If we do stick to the two days,

23  though, is that something that you can manage?

24          JUROR:  If it goes more than today, I have to look

25  for coverage tomorrow.  I work twelve-hour shifts and our

1    schedule is made two months in advance.

2              THE COURT:  Okay.  Thank you.

3              Anyone else like to bring anything to my

4    attention?  Okay, thank you very much.

5              Next, related to this, do any of you have any

6    illness in your family or any other personal concern that

7    would make it difficult for you to be attentive to the

8    evidence in this case for a period of two days?

9              No?  Thank you.

10             Do any of you have any problems with your

11   eyesight, your hearing, or any other physical disability

12   which in any manner would prevent you from either seeing or

13   hearing the evidence presented at trial?

14             All right, thank you very much.

15             I want to give you a brief summary of the claims

16   in this case.  The defendant, Portfolio Recovery Associates,

17   we'll call it PRA, is a debt-collection agency.  Defendant

18   Western Surety Company is the surety company for the bond

19   PRA was required to file with the Texas Secretary of State.

20             Plaintiff Jean Jones alleges that the defendants

21   violated the Fair Debt Collection Practices Act and the

22   Texas Finance Code in several ways:  First, that PRA failed

23   to communicate the fact that plaintiff disputed her debt to

24   the Experian Consumer Reporting Agency when it knew or

25   should have known plaintiff disputed her debt.

1     Second, that PRA failed to make a written record

2  of plaintiff's dispute with Experian.

3     Third, that PRA failed to cease collection efforts

4  on the alleged debt when it continued collecting the alleged

5  debt while not reporting the information related to the

6  dispute to Experian.

7     And fourth, that PRA represented the plaintiff was

8  willfully refusing to pay a nondisputed consumer debt when

9  it failed to communicate the fact of plaintiff's dispute to

10  Experian.

11     The plaintiff -- excuse me -- the defendant's

12  position is that PRA communicated any reported information

13  to the credit bureau accurately at the time of the

14  reporting, PRA denied that plaintiff authored any letter

15  disputing the debt.

16     Finally, if PRA failed to relate any dispute, it

17  asserts that such error would be the result of a bona-fide

18  error.  That is a mistake for which PRA had policies and

19  procedures in place to prevent.

20     Later today the lawyers will give their opening

21  statement, which are more detailed renditions of their

22  understanding of the facts involved in this case.  But based

23  upon the short summary that I've just provided you, I want

24  to ask you a few questions, first, concerning any knowledge

25  you might have of this case.

1       I don't believe that there has been any coverage

2    of this case in newspaper or the media of any kind, but does

3    anything about the description of the case that I've just

4    given you ring a bell, that you think you've heard of this,

5    of either the parties or this dispute in any other context

6    other than hearing it for the first time today?

7       Have any of you heard about this before today?

8       No response.  Thank you.

9       Now I want to inquire about any prior service that

10   any of you may have had on juries and grand juries, but

11   first of all let me ask whether or not any of you have had

12   any experience serving on a grand jury.  Now those of you

13   who have been on juries like this may not know what a grand

14   jury is, and that is a grand jury is a group of jurors that

15   are especially selected to sit in a jurisdiction to review

16   criminal cases for potential indictment.

17      Typically they are juries that meet for a regular

18   setting over some period of time of weeks or in some cases

19   even years.  Have any of you served on grand juries in the

20   past?  Any former grand jury members?  Okay.

21      Now I want to talk to you about any prior service

22   that any of you may have had on trial juries or petit juries

23   like you are serving on today.  First of all, have you --

24   have any of you ever served on any trial juries like the one

25   that you are serving on a panel for today?

36

1          Anybody on the front row?  Any prior jury service?

2          Yes, sir, your name?  Juror number?

3          JUROR:  XXXX XXXXX, Juror Number 7.  I served on a

4   jury on a felony weapons and drug possession charge in U.S.

5   District Court several years ago.

6          THE COURT:  Okay.  And where was that?

7          JUROR:  It was back in Iowa.  In Des Moines, Iowa.

8          THE COURT:  Now, were you the foreperson of that

9   jury?

10          JUROR:  No.

11          THE COURT:  Did that jury deliberate and arrive at

12   a verdict?

13          JUROR:  Yes.

14          THE COURT:  Is there anything about service on

15   that jury that would affect your ability to be a fair and

16   impartial juror in this case?

17          JUROR:  No, I don't think so.

18          THE COURT:  Thank you very much.

19          Anyone else in the front row?  Prior jury service?

20          Anyone on the second row, any prior service on a

21   jury?

22          Yes, your name?

23          JUROR:  XXXXXX XXX XXXXX.

24          THE COURT:  Ms. XXXXX.

25          JUROR:  Juror 11.  A civil case that lasted a day,

1    downtown Austin.

2            THE COURT:  Okay.  Was that in state court then?

3            JUROR:  Yes.

4            THE COURT:  Okay.  And were you the foreperson of

5    that jury?

6            JUROR:  No, I wasn't.

7            THE COURT:  Okay.  Did that jury deliberate and

8    reach a verdict?

9            JUROR:  We did.

10           THE COURT:  Is there anything about that service

11   that would affect your ability to be a fair and impartial

12   juror in this case?

13           JUROR:  No.

14           THE COURT:  Okay.  Thank you very much.

15           Anyone else?  Okay.  Thank you.

16           For those of you who have any military background,

17   did any of you serve on a general or special court martial?

18   All right.  Thank you.

19           Let me ask whether any of you or a member of your

20   immediate family ever participated in a lawsuit as a party,

21   a witness, or another capacity?  Anyone in your -- any -- of

22   you, or a member of your immediate family participate in a

23   lawsuit as a party, a witness, or in any other capacity?

24           Any one in the front row?  Yes, sir?

25           JUROR:  Yes.

38

1    XX XXXXX, Number 3.  I am involved in a lawsuit

2  currently right now, real estate.

3    THE COURT:  Okay.  Are you a party to the lawsuit?

4    JUROR:  Yes.

5    THE COURT:  And what's the nature of the lawsuit?

6    JUROR:  It's a contract dispute.  I had some

7  property and there's a developer and we thought we had

8  reached a deal and they pulled out so we're suing to get our

9  land back.

10    THE COURT:  Okay.  Anything about your experience

11  in that lawsuit, since it's ongoing, that would prevent you

12  from being fair and impartial in this case?

13    JUROR:  No.

14    THE COURT:  Okay.  Thank you very much.

15    Anyone else in the front row?

16    Anyone in the second row?  You or a member of your

17  immediate family?

18    Yes, sir.

19    JUROR:  XXXXX XXXXXXXX, Juror Number 9.

20    Your Honor, I was a party in a lawsuit after a

21  traffic accident some years ago.  I was sued by the person

22  in the traffic accident.

23    My wife has had one -- one -- one lawsuit against

24  her business here in Austin.

25    THE COURT:  Okay.  Anything about your experience

1  in the process or with the folks involved in either of those

2  lawsuits that would prevent from you being fair and

3  impartial in this case?

4          JUROR:  No, I don't think so, Your Honor.

5          THE COURT:  Thank you very much.

6          Anyone else?

7          Let me ask now whether any of you attended law

8  school, taken any law or business-law courses, or received

9  any legal education or training or worked for a law office

10  or for a court?

11          Anyone in the front row?  Any prior legal

12  experience or training or working for a legal-related

13  entity?

14          All right.

15          Any one in the second row?  Yes, sir?

16          JUROR:  XXXX XXXXXXXX again, sir.  I took business

17  law in college but then for the last five years of my work

18  for a previous employer I was a contract negotiator and then

19  was -- and I failed to mention this, was also a party to a

20  lawsuit when our firm was sued and I was deposed as part of

21  that lawsuit, so I was -- I have a lot of work with the

22  legal team -- wasn't a lawyer, but was a lead negotiator on

23  a number of contracts.

24          THE COURT:  Okay.  Good.  Thank you.

25          Let me ask then whether any of those experiences

1  would prevent you from following the Court's instructions on

2  the case even if you disagreed with what those instructions

3  would be?

4          JUROR:  No.

5          THE COURT:  And anything about those prior

6  experiences, again, would prevent from you being a fair and

7  impartial juror in this case?

8          JUROR:  No, I don't think so, sir.

9          THE COURT:  Anyone else in the back row?

10          Okay.  Thank you.

11          Let me ask a few more targeted questions related

12  to this case.  And, again, if any of you would like to make

13  any of your responses on the sidebar, that's fine, just let

14  me know that and we'll bring you up here.

15          First of all, let me ask whether or not any of you

16  have been in default on a debt in the past, if you would

17  share that.  Anyone in the front row?

18          And if you had been in default on a debt in the

19  past, anyone in the second row?

20          All right.  Yes, sir.

21          JUROR:  Sorry I get to be the favorite.

22          THE COURT:  That's all right.

23          JUROR:  I defaulted on student loans coming out of

24  college, had a car repossessed, had a variety of debts early

25  in my life.

41

1          THE COURT:  Okay.

2          JUROR:  That I had to work through.

3          THE COURT:  Okay.  Great.  Thank you very much.

4          Related to that, let me ask any of you whether or

5   not you have ever been contacted by a debt collector in the

6   past related to any outstanding debt or loans that you had?

7   Have you been contacted by a debt collector?  Anyone?

8          Yes, sir?

9          JUROR:  XXXXX XXXXXX, Juror 6.

10          About three years ago I was contacted by a debt

11   collector working with Brackenridge Hospital on a -- it was

12   a -- almost a public intoxication.

13          What basically happened, I was brought to a

14   hospital.  They checked me out -- the nurse checked me out,

15   sent me home with my parents, and then the debt collector

16   called me about three weeks later attempting to get $4500

17   for a twenty-minute visit to look at me.

18          And I'm currently in a dispute with Texas Tolls

19   and their debt collection agency.

20          THE COURT:  Let ask you, then, following up on

21   that, given your experiences with debt collectors, do you

22   think that knowing generally what this case is about, would

23   you be able to set aside whatever your personal experiences

24   are with those folks and be a fair and impartial juror in

25   this case?

42

1          JUROR:  I'm not confident that I could.  It wasn't

2   a good experience.

3          THE COURT:   Okay.  And again, this is something

4   that, you know, as my colleague downstairs often says, you

5   know, there's nothing wrong with, you know, admitting that

6   our prior experiences may affect our perceptions of things.

7   And his example that he gives is that being a UT grad if he

8   ever was on a jury where A&M was one of the parties, he

9   would have to confess that that might not be the right jury

10  for him to sit on.

11         So having a bias one way or the another is just

12  the nature of having experiences in the world and being

13  aware of them and knowing that this may not be the right

14  case for you to be completely fair and impartial, that may

15  be the case and I appreciate your candor.

16         So with that, I'm going to go ahead and excuse you

17  from this jury, so you can make your way to the back.  In

18  fact, I'll release you for the day, if you have somewhere

19  else to go.

20         And I'm going to get the clerk to call one of

21  these folks that have been listening very carefully in the

22  back, and we're going to ask you to come up and take a seat.

23         Thank you very much.

24         THE CLERK:  Juror Number 6, XXXXX XXXXXX, is

25  replaced by Juror Number 14 -- 13, XXXXXX XXXXX -- no, I'm

43

1   sorry, 14, XXXXX XXXXX.

2           THE COURT:  Number 13 is already over here.

3           You get somebody's hopes going up and down.

4           Sir, if you will come forward and take a seat.

5           I'm going to first ask whether or not -- and,

6   again, I'll prompt you in a minute -- but is there anything

7   that you recall that I asked the other folks that if you had

8   been sitting there you would have had a response to?

9           JUROR:  XXXXX XXXXX, Juror 14.  I think the last

10  question only because my brother, he had a lot of problems

11  with collection agencies and just caused a lot of trouble

12  almost his whole life, so I think it might -- I would try to

13  be as unbiased as possible but I have kind of a little

14  history with collection agencies.

15          THE COURT:  Sure.

16          Well given the perspective that you have, again

17  the question is whether or not you would be able to set

18  aside those feelings and hear the evidence in this case and

19  not hold against either of the parties in this case what

20  your brother or your experiences might have been, and for

21  you to sort of look at this just with what happened here

22  rather than what other experiences have been.

23          Would you be able to do that?

24          JUROR:  I think I would be able to do so.

25          THE COURT:  Okay.  All right.  Thank you.

44

1          Any other questions with regard to knowing anyone?

2   Legal training?

3          JUROR:  Okay.  Yes, I was a police officer for

4   nine years.

5          THE COURT:  Okay, where were you a police officer?

6          JUROR:  New Jersey.

7          And I also have a degree in criminal justice, so I

8   have a little bit of criminal background.

9          THE COURT:  Sure.  Okay.

10          Given your background in law enforcement and your

11   familiarity with the law and courts, would you be able to

12   follow my instructions even if you had disagreed with those

13   instructions?

14          JUROR:  Yes.  Absolutely.

15          THE COURT:  Is there anything about those prior

16   experiences that would otherwise prevent from you being fair

17   and impartial in this case?

18          JUROR:  No, nothing.

19          THE COURT:  Okay, great.  Thank you.

20          JUROR:  Thank you.

21          THE COURT:  All right.  Let me resume questioning

22   then of the larger group and go back to the issue of whether

23   or not you have had any prior experiences with debt

24   collection agencies?

25          Anyone in the front row?

1          All right.

2          Anyone in the back row?

3          All right.

4          Yes, sir, in the context of what we were talking

5   about before?

6          JUROR:  Yes, sir.  XXXXX XXXXXXXX, Juror Number 9.

7          So I've dealt with multiple collection agencies,

8   had to deal with my kids as they towed the car out of the

9   front driveway, those kinds of things.

10          THE COURT:  Sure.  Well again, looking at those

11  experiences, are you confident that you can set aside

12  whatever your personal experiences have been and be fair and

13  impartial and limit your views to what the evidence in this

14  case will be?

15          JUROR:  No, Your Honor, I don't think I could.

16          THE COURT:  Okay.  Well that's why we go through

17  this process.  Thank you very much.  I'll excuse you.  You

18  can go ahead and make your way out and we will call our next

19  lucky juror.

20          JURY COMMISSIONER:  Juror Number 9, XXXXX

21  XXXXXXXX, is replaced by Juror Number 15, XXXX XXXXXXX.

22          THE COURT:  If you would come forward, please, and

23  have a seat in the back row there.

24          JUROR:  Your Honor, may I approach the bench?

25          THE COURT:  Yes, please.

1          Around this way.

2                    ===================
                     BENCH CONFERENCE
3                    ===================

4          (The following proceedings occurred at

5           the bench, outside the presence of the

6           petit jury, with only counsel and Juror

7           No. 15 present.)

8          THE WITNESS:  Your Honor, I have numerous

9    experiences with collection agencies that were not

10   adjudicated well and I don't know that I can be impartial

11   toward -- I heard specific in this case where they were

12   claiming that they got money from this woman.  I've actually

13   experienced that.  I would try to communicate with the debt

14   release agency and be ignored and I don't think I can be

15   partial in this case.

16         THE COURT:  I appreciate your candor.  Thank you

17   very much.

18                    ===========
                     OPEN COURT
19                    ===========

20         (The following proceedings occurred in

21          open court, in the presence of the jury,

22          with all parties present.)

23         JURY COMMISSIONER:  Juror XXXX XXXXXXX is replaced

24   by Juror No. 16, XXXXX XXXXXXX.

25         THE COURT:  These have already been randomized?

1            JURY COMMISSIONER:  Oh, yeah.

2            THE COURT:  Now you know you're next, so --

3            If you can take a seat there.

4            That takes all the suspense out if they already

5    know they're going to be next.

6            All right, sir, thank you for your patience.  Let

7    me go back and ask whether or not any of the preliminary

8    questions that I asked, that you would have had answers for?

9    Do you have any to your recollection?

10           JUROR:  Yes.  XXXXXX XXXXXXXX, Juror 16.

11           I have worked for a law firm, Brown McCarroll,

12   dealing with asbestos litigation.

13           THE COURT:  What were you doing there?

14           JUROR:  I was actually a consultant, categorizing

15   evidence on behalf of defendants in asbestos litigation,

16   essentially internet consulting, doing information --

17   IT-related work.

18           THE COURT:  Good.

19           Anything about that experience that would affect

20   your ability to be fair and impartial in this case?

21           JUROR:  No.

22           THE COURT:  Would you be able to follow my

23   instructions even if you disagreed with them?

24           JUROR:  Yes.

25           THE COURT:  Okay.

1        Any other questions with regard to knowing any of

2   the parties, with regard to any experiences you had with

3   debt collection?

4        JUROR:  I haven't had experiences with debt

5   collection.  I've been harassed repeatedly by debt

6   collectors because of a name confusion, so it's been

7   challenging to answer the phone and not be the person that

8   they're looking for, but I -- I have not had any experience

9   actually being in that or being subject to any type of

10  collection.  It's just been confusion.

11        THE COURT:  Given your experiences, then, even if

12  you weren't the person they were looking for, would you be

13  able to set aside the experiences you've had and be fair and

14  impartial and listen to the evidence in this case?

15        JUROR:  I would like to believe so.

16        THE COURT:  All right.  Well, we all like to

17  believe so, but I'll need more than that.

18        JUROR:  It has been a negative experience and I do

19  have some preconceived biases against debt collectors.

20        THE COURT:  And are those biases that you would be

21  able to overcome if you were seated on this jury?

22        JUROR:  Probably not.

23        THE COURT:  Okay.  Well that's what we're looking

24  for, so, thank you very much.

25        You can be excused, and I think we know who is

49

1  going to be next.

2          JURY COMMISSIONER:  Juror XXXXXX XXXXXXX is

3  replaced by Jury Number 17, XXXXX XXXXX.

4          THE COURT:  All right, good morning, ma'am.  Let

5  me ask whether or not anything comes to mind without

6  prompting that you would have answered if I had asked?

7          JUROR:  Slight scheduling conflict, but if it's

8  only a couple of days that should be workable.

9          Collection issues, fifteen or so years ago, but I

10  also -- as part of my job is sending people to collections.

11          THE COURT:  Okay.  What do you do?

12          JUROR:  I'm a veterinary emergency technician that

13  also has management so I do the payment plans and the lack

14  of payments and sending them to our agency --

15          THE COURT:  Sure.

16          JUROR:  -- and trying to work with them and do

17  recovery.

18          THE COURT:  Anything about your personal

19  experiences, either employment or otherwise, that would

20  prevent you from being a fair and impartial juror to the

21  parties in this case?

22          JUROR:  I don't think so.

23          THE COURT:  Okay.  You wanted to say more about

24  that?

25          JUROR:  Having been on both sides and seeing how

1  some of them work, I am not fully confident but I would like

2  to think that I could get past it and not be biased in any

3  way.

4          THE COURT:  Having seen both sides, that gives me

5  a little encouragement because at least you see both sides,

6  so I don't want to -- if you do think that this would be a

7  case that you think you would not be well suited for then I

8  certainly respect that, but, you know, as all of us do, that

9  these parties expect and deserve folks who will be able to

10  put aside whatever their personal experiences are and hear

11  the case that is presented today and not have your personal

12  experiences interfere.  And if you tell me that you would

13  have trouble doing that, then I will accept that.

14          Is that what you are telling me?

15          JUROR:  I would like to believe I would be open to

16  hear both sides and be able to make a realistic judgment.

17          THE COURT:  Okay.  All right.  Thank you.

18          Anyone else in the back row?

19          JUROR:  The -- I think the question was -- what

20  was the question -- interaction with debt collection

21  agencies.

22          THE COURT:  Yes, ma'am.

23          JUROR:  XXXXXX XXXXX, 11.

24          And around 1984, when I graduated from college

25  they used to have all the credit cards and I signed up for

1  all of them when I left there.  I had every department store

2  and I ended up getting -- contacting with consumer credit

3  consolidation and consolidated everything and paid all

4  department stores off.

5          THE COURT:  Okay.  Great.

6          Anything about your interaction with anyone along

7  the way that you think you would not be able to set aside

8  and that would affect your ability to be a fair and

9  impartial juror?

10         JUROR:  No, I will be able to be fair and listen

11  to the evidence.

12         THE COURT:  Okay.  Thank you very much.

13         Anyone else?  All right.  Thank you very much.

14         Let me ask now whether any of you have had any

15  family or friends who worked for a debt-collection agency or

16  whether any of you have worked for a debt-collection agency?

17         Anyone?  All right.  Thank you very much.

18         Okay.  Now I'm going to go back to some more

19  general questions about the process.

20         Members of the panel who have served on juries

21  before are already aware that as jurors you become the

22  judges of the facts in this case, the judges of the

23  credibility of the witnesses, the judges of the weight to be

24  given the testimony of the witnesses.

25         It's your prerogative as jurors to believe all of

52

1   a witness' testimony, only a part of that testimony, or you

2   may totally disbelieve a witness' testimony.  It's

3   completely up to you.  As juror, you are the exclusive

4   judges of the facts, the credibility of the witnesses, and

5   weight to be given their testimony.

6            Whereas the jury is the exclusive judge of the

7   facts, the Court, represented by me, is the sole judge of

8   the law that applies in this case.

9            At the conclusion of all the testimony and after

10   the attorneys' for both sides have presented their summary

11   of the case to you in their closing arguments, the Court

12   will explain the law controlling the issues involved in this

13   lawsuit.  You are to be governed by the Court's explanation

14   of the applicable law which will be set out in what is

15   called the Court's Instructions and The Charge.

16            If you are selected to sit as jurors on this case,

17   will you be able to, and willing, to render a verdict based

18   solely on the evidence presented at trial and the law as I

19   give it to you in my Instructions, disregarding any other

20   ideas, notions, or beliefs about the law you may have

21   encountered in reaching your verdict?  If you will be unable

22   or unwilling to render a verdict based solely on the

23   evidence presented at trial and the law as I give it to you

24   in my instructions, please indicate by raising your hand.

25            All right.  No responses.  Thank you.

1          I want to talk to you now about the burden of

2    proof that applies in this case.  This is a civil case.  As

3    a result, the plaintiff has the burden of proving her case

4    by what is called a preponderance of the evidence.  Those of

5    you who served on criminal juries are familiar with the

6    requirement of the burden of beyond a reasonable doubt.

7    Please bear in mind that in civil cases the "proof" standard

8    is not beyond a reasonable doubt but rather the plaintiff

9    must prove her case by a preponderance of the evidence.

10         This means that the plaintiff has to produce

11   evidence which, considered in the light of all the facts,

12   leads you to believe that what the plaintiff claims is more

13   likely true than not true.

14         Is there anyone among you who would be unable to

15   require the plaintiff to prove the case by a preponderance

16   of the evidence as I have explained that term to you?

17         No hands.

18         Is there anyone among you who would hold the

19   plaintiff to a greater or lesser standard of proof than the

20   one that I have described?

21         No hands.  Thank you.

22         At this time the attorney for each party will have

23   an opportunity to ask you questions.  I have limited the

24   time to fifteen -- twenty minutes each.  Please remember as

25   I have stated earlier that the nature of some of the

54

1   attorneys questions may seem intrusive, and I assure you

2   that the lawyers have no intention to pry into your

3   background unnecessarily but are doing so to ensure that

4   each of you can act independently and without bias in

5   serving as a juror in this case.

6          Further, as I said, the attorneys are given

7   certain peremptory strikes which they can exercise and their

8   questions will give them information on which to base those

9   strikes.

10          Please remember that if at any time you don't want

11  to answer a question publicly, you may ask to answer it at

12  the bench.

13          All right.  Ms. Clark?

14          MS. CLARK:  Yes, thank you, Your Honor.

15          All right.

16                  =====================
                    **VOIR DIRE EXAMINATION**
17                  =====================

18  BY MS. CLARK:

19      **Q.**   I'm going to try to ask basically some follow-up

20  to some of the things that we've already talked about.  One

21  of the questions that I would like to know is how many of

22  you all check your -- have checked your credit report in the

23  past year?

24          Have you checked it sort of recently, or not

25  recently?

55

1           You are making a face there.

2           So, let's see, Juror Number 13?

3      A.   I checked it probably in the past two years.

4      Q.   Okay.  So, have you ever checked it and found that

5  there was anything surprising on the account?

6      A.   No.

7      Q.   Anything you were not expecting?

8           Why did you check that for?

9      A.   I don't remember.

10     Q.   Okay.

11          And so juror number -- jury -- are you Number 12?

12     A.   Yes.

13     Q.   I will just hold it a little away.

14          Juror Number 12, have you ever had any surprise on

15  your credit report?

16     A.   Yes.

17     Q.   And can you tell us about that a little?

18     A.   It was years ago.  Identity.  Somebody stole my

19  identity.

20     Q.   Oh, man.

21     A.   And so I disputed it and it was resolved fairly

22  quickly.  They took it off of my report.

23     Q.   Okay.  Did you do that on your own?

24     A.   On my own.

25     Q.   Okay.  Let me get these numbers right.  I'm sorry.

1    Juror -- if you would pass the mike to Juror

2    Number 2.  I don't believe we've heard from you yet.

3    Juror Number 2, have you ever had any surprises on

4    your report?

5    A.   I have not.

6    **Q.**   You have not.

7    Have -- have you ever had -- heard about someone

8    like a family member who had problems with their report?

9    Can you all hear me without this?

10   Okay.

11   THE COURT:  As long as the court reporter can,

12   too.

13   MS. CLARK:  I'll try to speak loud and slow.

14   Sorry.

15   JUROR:  I do not recall any family members or

16   friend going through.

17   Q.   (By Ms. Clark)  Excellent.

18   Has anyone had any problems on their report where

19   they ended up hiring someone to get help with getting

20   resolution on your reports?

21   No.  Excellent.

22   I have another question for you all, have any of

23   you ever worked at a financial institution, a bank or credit

24   union in any way, or have a relative that works in a credit

25   union or a bank?

1    A.    My husband's at Frost here.

2    **Q.**    Oh, at Frost Bank?

3    A.    He pulls our credit report and he's very strict on

4    that, so...

5    **Q.**    He keeps that in line.  Excellent.

6         And as -- do you feel in any way that that

7    makes -- do you feel that you have -- we looked at people

8    that were telling us they had biases.  They felt that they

9    might be biased because they had collectors.  Do you feel at

10   all that you might be biased because of your fear about

11   banking and you work hard to keep things in line?

12   A.    We are a very organized family in that regard and

13   we value our credit score and we definitely look at assets

14   and 401Ks and work hard for that.

15   **Q.**    Yeah.  Is there anyone that feels like sort of the

16   flip side of the feeling biased, because you've been

17   harassed by debt collectors, as some people have been

18   willing to say earlier, that you feel you might be a little

19   biased against those who maybe you have some family members

20   that have problems with finance and you feel that you might

21   be a little biased against someone who needs help with debt

22   resolution or is being harassed by creditors?

23        None at all.  Okay.

24        You look a little unsure.  You are making a face.

25   But then again, maybe you are just biting your lip.

1          This is Juror Number 5?

2     A.   Yes.

3     Q.   Okay.  So Juror Number 5, what's your -- have you

4  ever -- you have never worked in a bank.  What's your

5  current profession?

6     A.   I work technical support at Apple.

7     Q.   At Apple?

8     A.   Uh-huh.

9     Q.   And at Apple do they offer any type of financial

10 planning type?

11    A.   They do.

12    Q.   What do they offer?  Have you taken advantage of

13 any of them?

14    A.   There's a lot of options and classes they offer

15 for financial, for 401Ks for first-time homeowners.  It's

16 minor classes.  They also offer services if you are already

17 in trouble, financial trouble.  There's a phone number or

18 line that we can call for assistance, to speak to someone, a

19 lawyer, I think.

20         I've never used them, personally, so I'm not

21 really familiar with it.  I know it exists.  I know it's

22 there.

23         They also offer us assistance with -- recently I

24 was able to go through them for financing for one of my

25 student loans, so they're helping me with that.

1    They also partner with some banks to give us

2 waived fees for transfers, overdrafts and things like that.

3 The only one that I've ever used is the refinancing of the

4 student loans.

5 **Q.**   Right.  Okay.  Cool.

6    But you are aware?

7 **A.**   Yes.

8 **Q.**   Now I want a new job.

9 **A.**   They are good to us.

10 **Q.**   Yeah, definitely.  Definitely.

11    Do you -- do you -- let me look at your numbers

12 again.  I'm sorry.

13 **A.**   Five.

14 **Q.**   Sorry.  Juror Number 5 has brought up that there

15 are a lot of different types of debt programs, and I believe

16 that Juror Number -- probably 11 has brought up them as

17 well.  Have any of the rest of you gone through a way of

18 refinancing the debt and settling the debt in the past?

19    Yes, Juror Number --um -- 17?

20 **A.**   The same one, actually, she used.

21 **Q.**   Okay.  Was that Consumer Credit Counseling of

22 Austin or wherever you work?

23 **A.**   Of America, or something.

24 **Q.**   Of America?

25 **A.**   I don't know.

60

1    **Q.**    And can you tell us about that experience at all?

2    **A.**    I mean, it helped me at the time.  Looking back on

3    it, it was -- I feel it was a little, maybe -- I was a

4    little, maybe, taken advantage of, the fees and the way it

5    went, but I did get myself there, so --

6    **Q.**    And by "there," you mean you got yourself --

7    **A.**    I got myself into the debt and that was an option

8    to get out, and I kind of had to go with it in order to get

9    to the other side.

10   **Q.**    Okay.  And how long ago was that?

11   **A.**    Fifteen-ish-plus years ago.

12   **Q.**    Okay.  And so do you think that -- it sounds like

13   you have sort of positive and negative feelings about the

14   organization that was helping you and charging you, I guess,

15   at the same time?

16   **A.**    It was helping.  I wish there would have been

17   another way but, like I said, I did get myself there.  Most

18   of it was medical, but I still got myself there so I had to

19   take care of it.  I wish there would have been a better

20   means of the out.

21   **Q.**    Right.  And that -- during that process, do you

22   recall if there was any difficulties with certain creditors

23   more than others?

24   **A.**    Certain credit cards weren't so agreeable to

25   working with them so some of them were a little more

1    difficult.  But, as you had asked earlier, I have disputed

2    things on my credit before.  I've never had to call anyone.

3    But late payments and things have popped up where the

4    payment was not late and I've had to argue that or there was

5    something on there that was paid and paid in full that I had

6    to actually write off because they wouldn't get rid of it.

7        **Q.**    Oh, man.  Yeah.

8        A.    So --

9        **Q.**    And all -- on all different sides.  And I'm going

10   to go ask you to pass to Juror Number -- I believe Mr. --

11   are you 1?

12       A.    Seven.

13       **Q.**    Okay.  Pass to Juror Number 7, if you don't mind.

14              Good morning, sir.  And where do you work?

15       A.    I work for Atkins.  They are an engineering

16   consulting firm.

17       **Q.**    Okay what kind of engineering?

18       A.    Civil engineering is what I do.  I'm in the

19   transportation group.

20       **Q.**    Okay.  And I'm going to ask you a question.  In

21   your family, who takes care of the finances?

22       A.    I will admit my wife does.

23       **Q.**    Oh, yeah?

24       A.    For the most part.

25       **Q.**    And do you -- you may just let her be the one in

62

1  charge if she's the one that is better at it.

2          But do you have, in your family, different things

3  you do to make sure that you stay in line?  You haven't been

4  called by creditors, right?

5      A.   We track our monetary situation very closely.

6  Both myself and my wife are very cautious on what we do,

7  pretty conservative when it comes to financial issues, so

8  we've been fortunate we have not had any issues.

9          We have had trouble in the past with my daughter

10  when she was going through school.  She got into some

11  trouble on some credit cards that we had to work with her on

12  getting resolved.

13      Q.   And you were able -- so, did you -- did you and

14  your wife help your daughter, or did you ever get any

15  outside assistance to help?

16      A.   No, we didn't get any outside assistance.  It

17  was -- we worked with our daughter and calling up the credit

18  card companies and working out arrangements for payment.

19      Q.   I experienced that vicariously, I guess.

20      A.   Yes.

21      Q.   And has anyone else had to help a family member

22  come through a debt situation or financial issues?  Props

23  for family members.  I wish I didn't have to take care of

24  people.

25          I'll tell you, the reason I'm asking so many

1    questions about finances and asking for help is partly that

2    I just want to -- I'm worried that in the back of people's

3    minds I think all of us, even me -- I know definitely people

4    in my family -- are very hesitant about hiring a lawyer or

5    hiring a law firm.  They are like, Oh, what did you do if

6    you hired a law firm?

7           And this is a situation where debt and credit --

8    some of you have experienced it, some of you haven't -- and

9    there's different -- I'm concerned, I don't want anyone to

10   have bias in their head that is going to hurt their ability

11   to, you know, judge this trial, find and come to a verdict

12   one way or the other because my client went for outside

13   help, because she did hire a nonprofit law firm.

14          And does anyone feel like you have a little, hum,

15   what was that all about, thought in your head, a little bit

16   of bias of hiring a law firm rather than doing it on your

17   own?

18          Okay.  I think -- I don't know that I have -- do

19   you have anything, Robert?  I think that's all.

20          Actually I guess you can probably keep it because

21   Ms. Malone is going to be asking you questions.

22          Thank you so much.

23          MS. MALONE:  Your Honor, may we approach?

24          THE COURT:  Yes.

25

1      ===================
       BENCH CONFERENCE
2      ===================

3              (The following proceedings occurred at

4              the bench, outside the presence of the

5              peitit jury, with only counsel present.)

6              MS. MALONE:  She just said it was a nonprofit law

7      firm and since the attorney fees are what they're seeking to

8      get from my client, I wanted to ask the jury if anyone has a

9      problem with attorneys doing work where they are getting all

10     the money and the consumer may not get anything.

11             She opened the door, Judge.

12             MS. CLARK:  Nonprofit doesn't mean you don't get

13     paid.  I don't think anyone thinks that.

14             MS. MALONE:  Oh, Judge --

15             MS. CLARK:  And, plus, we already have a motion in

16     limine about attorney's fees.

17             MS. MALONE:  You just violated it.

18             MS. CLARK:  It's a nonprofit law firm, it doesn't

19     mean there are no fees.

20             THE COURT:  I think you just opened the door.  I

21     can't -- I was shocked when you said "nonprofit" because the

22     impression that that leaves the jury is that you are doing

23     this for free or at a substantial --

24             MS. CLARK:  I don't even work there.

25             I'm not even the one they hired.

65

1          THE COURT:  I understand.

2          I agree.  I think you opened door and I'm going to

3    let you do it.

4          MS. MALONE:  Thank you.

5          MS. CLARK:  Okay.

6                    ===========
                     OPEN COURT
7                    ===========

8          (The following proceedings occurred in

9          open court, in the presence of the jury,

10          with all parties present.)

11                ======================
                  **VOIR DIRE EXAMINATION**
12                ======================

13   BY MS. MALONE:

14      **Q.**   Hi.  I want to start off with talking about

15   something Ms. Clark just said.  Does anybody know of lawyers

16   who don't get fees for doing stuff?

17          Mr. XXXXX, do your lawyers get fees?

18      **A.**   Yes.

19      **Q.**   Does anyone have a problem if a law firm is

20   getting all the money in a case?  For example, Ms. XXXXX,

21   have you heard about class-action attorneys who get all the

22   money and people who are allegedly the plaintiffs get

23   nothing in the case?

24      **A.**   I've heard, maybe, about class-action suits but

25   not about particular lawyers getting everything.

1    **Q.**   Anybody here have a problem with law firms that

2   may create lawsuits so that they can get money, considerably

3   more money than a consumer might get?

4         Miss XXXXX, how about you?  Do you have a problem

5   with a firm that does that?

6    **A.**   That gets more money than the person that's

7   getting --

8    **Q.**   Um-hum.

9    **A.**   When you said nonprofit, I would think the

10  consumer would hire somebody in order to cover them for

11  higher cost than what the attorney firm would get, but yet

12  they would get some sort of the income for their time and

13  expertise, yes.

14        But when she said "nonprofit," that -- I thought,

15  well, if we are defending somebody that's in debt, I didn't

16  know that there was a nonprofit, I guess, law firm.

17  That's --

18   **Q.**   If there is a situation where the law firm is

19  going to be seeking money, not from Ms. Jones but from my

20  client, does that make a difference to you?

21   **A.**   Repeat.

22   **Q.**   Sure.  If this is a situation where the law firm

23  is involved in the process of creating the lawsuit and then

24  seeks money from my client and not from Ms. Jones, would

25  that cause you any concern?

1      A.   Yes.

2      **Q.**   Mr. XXXXX, how about you?

3      A.   Would I be okay with a law firm creating a lawsuit

4  and seeking money from a business?

5           I don't fully follow the question.

6      **Q.**   Sure.  What if a law firm creates a lawsuit that

7  causes something to make it look like a lawsuit and then

8  seeks money from the business to cover the attorney's fees,

9  way more than what the consumer would get.  Do you follow

10 me?

11     A.   I think if you put it like that, that might bother

12 me.

13     **Q.**   How many of you folks seen those signs around,

14 that, I think Governor Perry had up about stop lawsuit

15 abuse.  Do you remember seeing those?  There were a lot of

16 them in San Antonio.

17          Ms. XXXXX, did you see those?

18     A.   (No verbal response.)

19     **Q.**   Ms. XXXXX, did you ever see any of those?

20     A.   I haven't seen them.

21     **Q.**   Anybody else see them?

22          Let's change gears a little bit and talk about a

23 couple of things.  I'm really kind of sorry Mr. XXXXXXXX is

24 gone because he said that his wife was a certified

25 matchmaker.  He said his wife's business got sued.  I said,

68

1   how does that work?  If you recommend someone who has a

2   really bad date, do you sue the matchmaker?  I was just

3   curious about that.

4            But I do have a few questions for you.

5            Mr. XXXXX, you listed on your forms that your wife

6   is an executive director.  Where does she work?

7       A.    She actually works for a nonprofit organization in

8   the State of the Iowa, the Iowa Land Title Association.

9       Q.    And you also are a civil engineer; is that

10  correct?

11      A.    Correct.

12      Q.    My husband is a mechanical engineer and so I'm

13  guessing that you probably take a long time to do your

14  honey-do list, too, right?  Is that the way it works?

15      A.    I can be pretty meticulous, yes.

16      Q.    Are there quality-assurance programs in your

17  business?

18      A.    Yes, there are.

19      Q.    And, Ms. XXXXXXXX -- am I saying that right?  You

20  guys work for Apple.  Do you guys have a quality-assurance

21  program?

22      A.    Yes.

23      Q.    And what's the idea behind the quality-assurance

24  program?

25      A.    Well, there's different ones, considering we deal

1  with software and hardware.

2          We have to have people test that and we have

3  programs internally that need to be tested.  There's

4  quality-assurance products that need to be shipped to the

5  store, service products that need to be shipped to the store

6  for the service provider.  So there's -- as far as my

7  knowledge goes, there's a lot of quality assurance.

8      Q.   And in your company, do you, like, for example,

9  like airplanes, do you know airplanes have a lot of quality

10 assurance.  They go out, make sure the planes fly, right?

11     A.   Yes.

12     Q.   And they do that because airplanes are worked on

13 by people, just like computers, justing like civil

14 engineers, and people make mistakes, right?

15     A.   Yes.

16     Q.   So would it matter to you if a company had a

17 robust policy, procedures and quality assurance to make sure

18 that most of the time, as reasonable as possible, people try

19 to do their job correctly?  Would that matter to you?

20     A.   Yes.

21     Q.   Mr. XXXXX?

22     A.   Yes.

23     Q.   I know you worked for a police department, but you

24 guys are subject to all kinds of second guessing, right?

25     A.   Yes.

1  **Q.**   And, again, you know that police officers are

2  going to make mistakes, right?

3  A.   Right.

4  **Q.**   Because we are all human; but you would hope that

5  they would be able to do the best they can under most

6  circumstances --

7  A.   Yes.

8  **Q.**   -- right?

9  A.   That's right.

10  **Q.**   Okay.  Ms. XXXXXX, what kind of work do you do,

11  generally?

12  A.   I'm a caregiver.

13  **Q.**   And caregiver for children?

14  A.   Adults.

15  **Q.**   Adults.  Okay.

16       I think there's going to be a few folks that need

17  care with all of the stuff that's going on, so I bet you are

18  going to be busy pretty soon.

19       Ms. XXXXXX?

20  A.   Yes.

21  **Q.**   You said that you work at home; is that right?

22  A.   I'm a student.

23  **Q.**   You're a student?

24  A.   Yes.

25  **Q.**   What do you study?

1      A.    Being a social worker.

2      Q.    Being a social worker?

3      A.    Yes.

4      Q.    Where are you going to school?

5      A.    ACC.

6      Q.    All right.  Cool.

7            Ms. XXXXX, program manager, that's one of those

8   engineering jobs.  So where do you work?

9      A.    I'm employed as a manager with the Department of

10  AG and disability.

11     Q.    You need to talk to Ms. XXXXXX.  She needs a job.

12           So there you go.  All right.

13           Ms. XXXXX, you listed that you're a sales rep; is

14  that right?

15     A.    Yes.

16     Q.    Where do you work?

17     A.    Alcon.  I work for Alcon as an outside sales rep

18  for Alcon calling on eye doctors in the medical-device

19  division; contact lenses.

20     Q.    Yes, I use your product.  Great.  Good stuff.

21           All right.  I want to talk to you, Ms. XXXX, for a

22  moment.  You mentioned to us that you have a problem with

23  something that showed up on your credit report, right?

24     A.    Right.

25     Q.    And you corrected it yourself.  You went to the

1  credit bureau and they took care of it right away?

2       A.   That's right.

3       Q.   There's a simpler way to do it with simply a

4  Consumer Rights to Dispute and it goes to the credit bureau.

5       A.   Yes.

6       Q.   You found that to be helpful?

7       A.   Yes.

8       Q.   Anybody else do anything like that?  Dispute,

9  Mr. XXXXX?

10      A.   I did.  I just had a couple of credit cards that

11 were closed and they said they were open but I went through

12 them and they just took care of it, but it took a little bit

13 of time.

14      Q.   Okay.  But it was just you requesting it through

15 the credit bureau and taking care of it?

16      A.   Yes, that's right.

17      Q.   And if there were a simple way to do it, that was

18 the easy way to do a dispute that a company automatically

19 knows and corrects it, would you expect lawyers to know

20 about that?

21      A.   Yes.

22      Q.   I'm going to ask what I would like to call my

23 favorite three questions, and I'm going to start with you,

24 Mr. XXXXXXX.  And I don't mean to pry, but this actually

25 does matter.  And I'm going to share, so this is just not me

1   talking about it.  I want you to tell me the current book

2   you are reading, what radio station you listen to, and if

3   you have a bumper sticker on your car.

4          If you do -- if everybody here says they listen to

5   NPR, I'm not going to believe you because somebody has to

6   listen to a radio station that involves sports or something

7   else, right?

8          I will tell you, currently I'm reading a book by

9   Harlan Coben, who is one of my favorite writers, and I think

10  the name of it is *Closer*.  I also read my bible because

11  that's what I got to do.  I don't have any bumper stickers

12  on my car, and I listen to The Ticket in Dallas, which is

13  the sports talk radio; worried about the Rangers not making

14  the playoffs.

15         How about you?

16  A.   Well -- can you hear me?

17         The book is *A Song of Ice and Fire*, George R. R.

18  Martin, Radio station 101X, Austin.

19  Q.   What kind of music is that?  I'm not from Austin.

20  A.   Alternative rock.

21  Q.   Okay.  That's good.

22  A.   What was the last question?

23  Q.   Bumper sticker.

24  A.   No bumper stickers.

25  Q.   Ms. XXXXX, how about you?

1       A.    No bumper sticker.  I listen to Dave Ramsey and

2   I'm not reading anything.  I'm raising two young children.

3       Q.    No captain underpants?

4       A.    Okay, all those books.

5       Q.    Okay.

6             Mr. XXXX?

7       A.    I'm reading a Joe Nesbo thriller right now.  I

8   don't remember the title.

9       Q.    This is a good way to get your summer reading

10  selection set up, folks, so listen.

11      A.    No bumper stickers.  I do listen to KUT most of

12  the time.

13      Q.    Okay.  Ms. XXXXXX?

14      A.    Reading books from the school; no bumper sticker;

15  and I listen to Pandora.  I don't listen to the radio.

16      Q.    Ms. XXXXXXXX?

17      A.    XXXXXXXX, yeah.  It's kind of complicated.

18      Q.    Okay.  Thank you.

19      A.    I'm currently reading the *Game of Thrones* book as

20  well.  I listen to Pandora or Apple Music, not radio.

21      Q.    Aren't you required to listen to Apple Music?

22      A.    I know, right?  I'm surprised I can listen to

23  Pandora.

24            Anyway, I have a bumper sticker for a local pet

25  store.

1    **Q.**   Okay.

2         Mr. XXXXX?

3    A.   I have no book right now.

4    **Q.**   What do you normally read?  Magazines?

5    A.   Usually just like web magazines, auto magazines

6    and stuff, nothing political or anything like that.  But I

7    listen to 103.5.

8    **Q.**   Which is?

9    A.   I forgot the stations.

10        No bumper stickers.

11   **Q.**   Mr. XXXXX?  Am I saying it right?

12   A.   It's XXXXX.

13   **Q.**   Okay.

14   A.   I read -- I am currently reading about five or six

15   different books.  I read a wide variety from mysteries,

16   documentary-type stuff, or biographies.  So I've got several

17   things I'm going on right now.

18        As far as the radio station, I listen, again, to a

19   wide variety of music and news.  I listen to a lot of news

20   stations and I kind of flip around, depending on what's

21   going on or what my interests that day; and I have no bumper

22   stickers.

23   **Q.**   Okay.  On your books, are they mostly fiction?

24   A.   Mostly fiction.  I -- every now and then I throw

25   in a nonfiction book just for variance.

76

1      **Q.**    Why don't we give it to the good doctor back

2    there.

3             Is it XXXXXXX?

4      **A.**    XXXXXXX.

5      **Q.**    What kind of medicine do you practice?

6      **A.**    I do family medicine and urgent care.

7      **Q.**    That was the wrong answer.  You were supposed to

8    say good medicine.

9      **A.**    Good medicine.  I don't make bad medicine.

10            No currents books, just medical literature and

11   continuing medical certification, just stuff we have to do.

12   No bumper stickers.  All sorts of music.

13     **Q.**    Just music, are you a -- when the radio station

14   goes to commercial, you flip to another channel?

15     **A.**    Pretty much, and some sports.

16     **Q.**    Good to know.

17            Ms. XXXXX?

18     **A.**    Current book, Alice Hoffman, *Faithful*.

19            A very faded dragon on my back window, and they've

20   changed it, I don't know, it's country.

21     **Q.**    That's all right.  I can do some country.  All

22   right.

23            Did you put the dragon on your back window?

24     **A.**    Uh-huh.

25     **Q.**    You just don't remember why now?

1    A.   My car is twenty years old.  That was from the

2  beginning.

3    Q.   Have you seen the commercial with the ladies where

4  they have the spring break tattoo on their back?  One of

5  those?

6    A.   Yes.

7    Q.   Ms. XXXXXX, how about you?

8    A.   I'm re-reading "The Shack," the movie one, because

9  I already done read the other one.

10       I don't have any bumper stickers, and I do not

11  listen to the radio because I don't like commercials so I'm

12  always listening to CDs in my car.

13    Q.   What kind of music do you like?

14    A.   Everything.  It just -- it ranges from country to

15  light rock to rock.  I love the '80s.

16    Q.   The '80s weren't that great.

17    A.   Well, to me they were --

18    Q.   Okay.

19    A.   -- the music anyway.

20    Q.   Okay.  All right.

21       Ms. XXXXX?

22    A.   Just started *I Declare* by Joel Osteen.

23       I don't have any bumper stickers on my car, and

24  occasionally I listen to CNN but mostly Pandora, depending

25  on what mood I am in, and I love all kinds of music.

1    **Q.**   Ms. XXXX, how about you?

2    A.   Can you hear me?

3    **Q.**   Can you hear me?

4    A.   Let's see, I listen to Christian radio.  Mostly

5  talk sermons on apps.

6         I read my bible.  Primarily that's what I read.

7  And I do have a bumper sticker, "Jesus is the Way the Truth

8  and the Life."

9    **Q.**   That's a great sticker.

10         Ms. XXXXX?

11    A.   I'm reading *The Good Thief* by Hannan Tinti.  I

12  listen to KBTT, and my bumper sticker is my son's school.

13    **Q.**   Your son's school.  How old is your son?

14    A.   Ten.

15    **Q.**   That's a good age.

16         Has anybody here ever lent money to family

17  members?  Everybody.

18         Anybody have trouble getting that money back?

19  Ms. XXXXXX?  Ms. XXXXX?

20         It's not always -- it's not always easy to ask

21  people to pay money back to you, correct?  Does anybody in

22  their job besides Ms. XXXXX have the responsibility of

23  getting money from people they do work for?  No.

24         Ms. XXXXX?

25    A.   Yes.

1    **Q.**   So what -- do you bill, or what do you?

2    A.   I bill.

3    **Q.**   And people sometimes don't want to pay you?

4    A.   I usually don't have money -- trouble getting

5 money from people.

6    **Q.**   It is awkward to send out the letter and say:  Pay

7 me?  And do that kind of stuff, it can be?

8    A.   In my line of work, not really.

9    **Q.**   All right.

10       You've all had an opportunity to hear us talk a

11 little bit now and you've seen a little bit about us.  Is

12 there anything that we've said to cause you to question or

13 feel like there's something that you -- there's some things

14 we can't answer but feel like there's something you feel you

15 need to tell us now before the Judge lets us continue with

16 this process?

17       Thank you.

18       THE COURT:  All right, ladies and gentlemen, I'm

19 now going to ask some sort of the questions that you might

20 be thinking:  If they had only asked so and so, I would have

21 been able to say that I have a certain feeling about this

22 case or some issue.  So we have these questions that we save

23 to the very end to kind of capture that possibility.

24       So the questions are these:  First, do you know of

25 any reason why you may be prejudiced for or against the

1  plaintiff or for or against the defendant because of the

2  nature of this lawsuit or for any other reason that we

3  haven't covered so far?

4          All right.  No responses.

5          Another way of asking that is:  If you were one of

6  the parties in this case, do you know of any reason why you

7  would not be content to have the case tried by someone in

8  your frame of mind?

9          No responses.

10          And then, finally, can you think of any other

11  matter not yet touched upon which you should call to my

12  attention which may have some bearing on your qualifications

13  as a juror or which may prevent from you rendering a fair

14  and impartial verdict in this case?  If so, please let me

15  know.

16          All right.  Thank you very much.

17          If I could have the attorneys at the bench,

18  please.

19                    ===================
                      BENCH CONFERENCE
20                    ===================

21          (The following proceedings occurred at

22          the bench, outside the presence of the

23          jury, with only counsel present.)

24          THE COURT:  Any challenges for cause?

25          MS. MALONE:  I don't.

1          MS. CLARK:  Number 2, with the lending background

2     and the -- yeah -- the lending background and the comments

3     about credit reporting, keeping in line.

4          MS. MALONE:  Judge, she also says she listened to

5     Dave Ramsey, which a super-friendly program, and she brought

6     that up very quickly.  She's not part of the financing

7     background, it's just her husband, so I didn't think she

8     said anything about it.

9          MS. CLARK:  I think the Dave Ramsey -- I love Dave

10    Ramsey but he is -- if that's the book that she went to, is

11    talking about that she reads, it's a self-help

12    financial-planning book.

13         MS. MALONE:  She said that's what she listened to.

14         MS. CLARK:  She listens to Dave Ramsey, so it's a

15    big part of her life in keeping the financing in order.

16         Dave Ramsey does have some views, like against

17    debt.  You shouldn't take out debt.  Don't worry about your

18    credit report unless you need it.  So I understand he's not

19    up and down the line like Capital One, but it is like

20    really, really focused on finance and I think that would be

21    biased.

22         THE COURT:  I don't think the record was developed

23    in such a way that she is challengeable for cause.  I don't

24    think we quite got there.  That's a pretty liberal way at

25    getting to folks for cause, so I think I'll keep her.

82

1          MS. CLARK:  Okay.

2                  ===========
                   OPEN COURT
3                  ===========

4          (The following proceedings occurred in

5          open court, in the presence of the jury,

6          with all parties present.)

7          THE COURT:  All right, ladies and gentlemen of the

8   jury, we are now going to take a fifteen-minute break during

9   which the lawyers are going to review the information they

10  have now about all of you and exercise the strikes that they

11  have.

12          Now, those of you in the back of the room, I think

13  I just heard a sigh of relief -- or was it disappointment?

14  I couldn't tell.

15          I'm going to ask you to stay through that

16  fifteen-minute period only because it has happened in the

17  past that something arises during the break that might

18  necessitate us calling one of you.  It's very unlikely at

19  this point, frankly, but you've come this far, you might as

20  well stick around for another fifteen minutes if you don't

21  mind so in the event we do run into difficulties we do have

22  you here.  I appreciate that very much.

23          So, with that, we'll take a fifteen-minute break.

24  If you wouldn't mind leaving the courtroom for that period

25  so that they can talk freely among themselves, and if you

1  can gather in fifteen minutes to be readmitted, please.

2                    (Whereupon, the jury exited the

3                    courtroom and a recess was taken at

4                    10:48 a.m. and the trial resumed at the

5                    hour of 11:07 a.m.)

6              THE COURT:  Does anyone want to get anything on

7  the record before we bring the jury in?

8              All right, bring the jury in, please.

9                    (Whereupon, the jury panel entered the

10                   courtroom.)

11             All right.  Ladies and gentlemen, the lawyers have

12 exercised their strikes and now we are going to call those

13 of you who have made it onto the final jury.  If your name

14 is called, would you please come forward and the Courtroom

15 Security Officer will seat you in the jury box.

16             JURY COMMISSIONER:  Juror Number 1, XXXXXX

17 XXXXXXX.

18             Juror Number 2, XXXXX XXXXX.

19             Juror Number 3, XXXXXX XXXXX.

20             Juror Number 4, XXXXX XXXXX.

21             Juror Number 5, XXXXXX XXXXXXX.

22             Juror Number 6, XXXXXX XXX XXXXX.

23             And Juror Number 7, XXXXXX XXXX.

24             THE COURT:  Ladies and gentlemen, I want to thank

25 all of you, particularly who weren't chosen to serve on this

1  jury because you have come all this way and gone through

2  this process and won't have the excitement of serving on

3  this jury.  And I'm sorry for that but your day will come, I

4  promise, at some point in the future.  You know, to be one

5  of the lucky few among all the people in the Austin Division

6  to have been called for service, you know, it's kind of like

7  winning the lottery, so you used up all your luck today.  So

8  I wouldn't play the lottery if I were you because you've

9  used it all up.

10          I'm now going to excuse you.  You're welcome to

11  stay through the opening statements and the trial in this

12  case, but if you need to go about your business, you're free

13  to go now with my sincere thanks.  I -- this process could

14  not run if it were not for good citizens like you who take

15  time and effort to be here in response to the summons, and I

16  appreciate that very much.

17          So with that I'll excuse you.  I will tell those

18  of you who took the day off, I will tell you that I tell the

19  jury clerk not to call your employer and mention that you

20  were let out at eleven o'clock.  So for all they know -- but

21  you can't tell them you served on the jury all week, we are

22  not going to back you up on that, but at least for the rest

23  of the day we'll give you some cover.

24          So with that, thank you very much and I'll excuse

25  you from your service.

85

1          If you wish to go at this time.

2          (Whereupon, the petit jury exited the

3     courtroom.)

4          THE COURT:  Ladies and gentlemen of the jury, if

5  you will please stand and raise your right hand to be sworn.

6          THE CLERK:  Each of you do solemnly swear that in

7  the trial of the case of Jones v. Portfolio Recovery

8  Associates, LLC, now before the Court, you will a true

9  verdict render according to the law as it may be given to

10  you and charged by the Court and to the evidence as

11  submitted to you under the rulings of the Court, so help you

12  God?

13          ALL:  I do.

14          THE COURT:  Thank you.  Please be seated.

15          Now that you've been sworn, I will give you some

16  preliminary instructions to guide you in your participation

17  in this trial.

18          As the Judge, I will decide all questions of law

19  and procedure.  As the jury you're the judges of the facts.

20  It will be your duty to find from the evidence what the

21  facts are.  You and you alone are the judges of the facts.

22          You will then have to apply those facts to the law

23  as I give it to you and you must follow that law, whether

24  you agree with it or not.

25          Nothing that I say or do during the course of this

86

1    trial is intended to indicate nor should it be taken by you

2    as indicating what your verdict should be.

3            The evidence from which you will find the facts

4    will consist of the testimony of witnesses, documents and

5    other things received into the record as exhibits and any

6    facts the lawyers agree or stipulate to or that the Court

7    may instruct you to find.

8            Certain things, however, are not evidence and must

9    not be considered by you.  First, the statements, arguments

10   and questions by lawyers are not evidence.  Second,

11   objections to questions are not evidence.  Lawyers have an

12   obligation to their client to make an objection when they

13   believe evidence is being offered improperly under the Rules

14   of Evidence.

15           You should not be influenced by the objection or

16   by the Court's ruling on it.  If the objection is sustained,

17   ignore the question.  If it's overruled, treat the answer

18   like any other.

19           If you are instructed that some item of evidence

20   is received for a limited purpose only, you must follow that

21   instruction.

22           Third, testimony that the Court has excluded or

23   told you to disregard is not evidence and must not be

24   considered.

25           Fourth, anything you may have seen or heard

1   outside the courtroom is not evidence and must be

2   disregarded.  You're to decide the case solely on the

3   evidence presented here in the courtroom.

4           There are two kinds of evidence, direct and

5   circumstantial.  Direct evidence is direct proof of a fact

6   such as the testimony of an eyewitness.  Circumstantial

7   evidence is proof of facts from which you may infer or

8   conclude that other facts exist.

9           I'll give you further instructions on these as

10  well as other matters at the end of the day, but have in

11  mind that you may consider both kinds of evidence.

12          It will be up to you to decide which witnesses to

13  believe, which witnesses not to believe, and how much of any

14  witness' testimony to accept or reject.  I will give you

15  some guidance for determining the credibility of witnesses

16  at the end of the case.

17          This is a civil case.  The plaintiff, Ms. Jones,

18  has the burden of proving her case by a preponderance of the

19  evidence.

20          To establish by a preponderance of the evidence

21  means to prove something is more likely so than not so.  To

22  put it differently, if you were to put the plaintiff's and

23  the defendant's evidence on opposite sides of the scale, the

24  plaintiff would have to make the scale tip somewhat on her

25  side.

88

1      If you find the plaintiff has failed to prove any

2 element of her claim by a preponderance of the evidence,

3 then she may not recover on that claim.

4      If, at the end of the case, you will -- excuse me.

5  At the end of the case you will be asked several questions

6 and you must answer them by determining which side met its

7 burden.

8      Those of you who have served in criminal cases

9 will have heard of proof beyond a reasonable doubt, which,

10 as I said earlier, does not apply in this case and you

11 should therefore put it out of your mind.

12      At the end of the case I will give you detailed

13 instructions concerning the law that applies and those

14 instructions will control your deliberations and decisions.

15      Now, a few words about your conduct as jurors.

16 You should give careful attention to the testimony and the

17 evidence presented for your consideration during trial but

18 you should not form or express any opinion about the case

19 one way or the other until you've heard all the evidence and

20 have the benefit of the closing arguments of the lawyers and

21 my instructions at the end of the case.

22      Although exhibits which I admit into evidence

23 during the course of the trial will be available to you for

24 your inspection and review during your deliberations on a

25 verdict, under normal circumstances no written transcript of

1  the testimony of a witness will be made available for your

2  review during your deliberations, nor under normal

3  circumstances can all or any significance portion of a

4  witness' testimony be read to you once you commence your

5  deliberations.

6            It is therefore very important that you pay strict

7  attention to the testimony given by each witness during the

8  trial in this case.  Until this trial is over, do not

9  discuss this case with anyone and do not permit anyone to

10  discuss this case in your presence.  This includes your

11  spouse, children, friends, coworkers and people with whom

12  you commute to court -- to work each day.

13            During your jury service you must not communicate

14  any information about this case by any means, by

15  conversation or with tools of technology.  Do not have any

16  face-to-face conversations or communicate by electronic

17  device or media such as telephone, iPod, iPhone, camera,

18  recording device, Blackberry, PDA, internet, internet

19  service, any messaging service, blog, Facebook, you name it.

20            We have three pages of this but you get what I

21  mean.  You can't communicate with anyone any information

22  about this case until I accept your verdict or excuse you as

23  a juror.  Do not even discuss this case with your fellow

24  jurors until the end of the case when you retire to

25  deliberate.  It would be unfair to discuss the case before

90

1   all the evidence is in because you may become an advocate

2   for one side or the other.

3          The parties, the witnesses, the attorneys and

4   persons associated with the case are not allowed to

5   communicate with you and you may not speak with anyone else

6   in or around the courthouse other than your fellow jurors or

7   court personnel.

8          Do not make any independent investigation of this

9   case.  You must rely solely on what you see here and hear in

10  this courtroom.

11         Do not try to learn anything about this case from

12  any other source.  In particular, do not use any electronic

13  device/media such as telephones, computer to research any

14  issue touching on this case.

15         Don't go online, read any newspaper account, if

16  there were any, or listen to any media about it.  Don't

17  Google it.  Don't visit any place discussed in the case.

18  Don't use any internet programs or devices to investigate

19  any issue in the case.

20         You may not research any information about the

21  case, the law, the people involved, including the parties,

22  the witnesses, the lawyers or the Judge until after you've

23  been excused as jurors.

24         The reasons for these cautions of course lie in

25  the fact that it will be your duty to decide the case solely

1  on the basis of the testimony and evidence presented during

2  the trial without consideration of any other matters

3  whatsoever.

4          You've been provided with notebooks and pens so

5  that you may take notes during the trial if you so choose.

6          In taking the notes, please keep in mind the

7  following instructions:  First, whether you take notes is

8  entirely up to you.

9          Second, if you choose to take notes, the notes are

10 only aids to your memory.  If you do not take notes, in

11 deliberating on the case you should rely on your own

12 independent recollection of the evidence and should not be

13 unduly influenced by other jurors' notes.

14         Finally, please remember that the notes are not

15 evidence and they should not be given any more weight in

16 your deliberations than the recollection or impression of

17 other juror about the testimony that you hear.

18         From time to time during the trial I may be called

19 upon to make rulings, rulings of law on motions or

20 objections made by the lawyers.  You should not infer or

21 conclude from any ruling I make that I have any opinions on

22 the merits of this case favoring one side or another.

23         And if I sustain an objection to a question, it

24 goes unanswered by the witness, you should not speculate on

25 what answer might have been given nor should you draw any

92

1    inferences or conclusions from the question itself.

2            During the trial it may be necessary for me to

3    confer with the lawyers from time to time out of your

4    hearing concerning questions of law or procedure that would

5    require consideration by me alone.

6            On some occasions you may be excused from the

7    courtroom as a convenience to you while I discuss such

8    matters with the lawyers.  I will try to limit such

9    interruptions as much as possible but please remember that

10   at all times these matters are important and sometimes are

11   inevitable.

12           The trial will now begin.  The lawyers for each

13   side will be given an opportunity to make opening statements

14   in which they may explain the issues in the case and

15   summarize the facts that they expect the evidence will show.

16           First the plaintiff will make an opening statement

17   which, again, is simply an outline to help you understand

18   the evidence that the plaintiff's attorneys expect to

19   introduce.

20           Next the defense attorney may elect to make an

21   opening statement.

22           The plaintiff will then present her witnesses and

23   counsel for defendants may cross-examine them.  Following

24   the plaintiff's case, the defendants may, if they elect,

25   present witnesses and the plaintiff will have an opportunity

93

1   to cross-examine them.  Subsequently, the plaintiff may

2   decide to present rebuttal witnesses.

3           After all the testimony and evidence has been

4   presented, the lawyers will then be given another

5   opportunity to address you and make their final arguments in

6   the case.

7           The statements the lawyers make now as well as the

8   arguments they present at the end of trial are not to be

9   considered by you as either evidence in the case, which only

10  comes from witnesses and exhibits, or as your instruction on

11  the law which will come only from me.

12          Nevertheless, these statements and arguments are

13  intended to help you understand the issues and the evidence

14  as it comes in as well as the positions taken by both sides.

15          Before we begin, would anybody like to invoke the

16  rule?

17          All right, if not, that's great.

18          All right, then, if you are prepared?

19          MS. CLARK:  Yes, Your Honor.

20                  =================
                    OPENING STATEMENT
21                  =================

22  BY MS. CLARK:

23          Welcome back, ladies and gentlemen of the jury.  I

24  think probably the first question on your mind is, Why are

25  we here?  There is a hurricane going on.  Luckily most of us

1   weren't too affected here but probably have family members,

2   things on your mind.  You have work.  My kids were home from

3   school yesterday.  Maybe some of yours were.  There's a lot

4   going on and you're here instead dealing with not a huge

5   matter like this courtroom has seen but an important matter

6   for my client.

7         And so what I want to talk to you about this

8   morning pretty quickly, is just give you a rough overview of

9   what we're going to try to show happened.  And I believe the

10  evidence will support -- when I say "we're going to try,"

11  it's your job to tell us if we've succeeded, but I believe

12  we have the evidence to show our story is correct.

13        Several years back my client, Jean Jones, had a

14  pretty simple task for her day.  She went to the bank to

15  open a bank account.  Unfortunately when she got there she

16  was told she had quite a few open or late debts on her

17  credit and she was actually refused to open an account.

18        Well, she was shocked.  She didn't know this was

19  going on.  She didn't know these things were there.  She

20  didn't recognize them.  Some of them were from names she had

21  never even heard of because they were debit buyers.

22        So, like many of us probably would, Ms. Jones went

23  home and she looked online trying to figure out what's going

24  on.  And she's going to tell you how she went to the credit

25  reporting websites, checked things out and saw that there

1  were accounts that she didn't recognize or she didn't think

2  had that much money on them.  So she didn't know what to do.

3  And I'll -- she did make some calls.  Unfortunately, it

4  wasn't effective.

5          And I'll tell you it wasn't the best time in

6  Ms. Jones' life for that to have been happening.  Her

7  husband for over thirty years had passed away just a few

8  months before and just as she was starting to get to work,

9  her stepson who she had raised as a son, he also passed.

10          And so with all this on her plate, getting

11  everything on her credit in order was one more kick, one

12  more down in a time where she actually had to take time off

13  from work just to recover herself.

14          And so Ms. Jones, again, went online looking to

15  see what kinds of things were available and she found a

16  legal group based in Chicago but with a local attorney here,

17  so she could meet with somebody.  And that's who she hired

18  to help her with the credit disputes and with these debts,

19  trying to figure out what was going on.

20          Now, I'd like to kind of take a little break from

21  the story of what happened just to tell you a fear I have

22  that while we're listening to evidence, something I hope --

23  and I have a pretty good confidence that y'all can get past

24  this, but do you know that there's definitely a bias in some

25  people stronger than others -- my dad, for example, oh, my

1   goodness -- but a bias against hiring somebody to help with

2   a dispute, hiring somebody to help with anything, especially

3   a lawyer.

4           I honestly think my dad can be accused with murder

5   and he wouldn't want to have anything to do with a lawyer.

6   There's a lot of bias against lawyers and I hope that in

7   this case that won't be a factor, but I have a feeling that

8   it's probably in -- it's just in the society that we live

9   in.

10          And defendants, they're going to be talking about

11  things, it will be on the edges.

12          You know, Ms. Jones is a nice lady.  I don't think

13  anyone is going to stand here and accuse her of all this

14  stuff, but you might hear some sort of some slurs, some

15  implications that she was trying to get something for

16  nothing or that she was doing something incorrect by seeking

17  help.

18          And, like I said, I do have this fear but I'm

19  also -- I'm also pretty confident that we can get past it.

20  I can get past it and that y'all will look aside for that,

21  you know, kind of put those feelings aside, that she did

22  hire a lawyer and lawyers did do some of the procedures for

23  her, trying to help her with this process.

24          And the first thing -- getting back to the

25  story -- she met with the lawyer, looked over some things.

1   Okay, this might be accurate.  This seems -- I don't know

2   what this is.  And she did not personally write the letter.

3   She's going to tell you she didn't write a letter.  She

4   didn't mail a letter.  She doesn't probably have a fax

5   machine.  But she hired the attorney on her behalf to send

6   out the letters with the information that she had provided.

7          Now, why write letters that say that this is being

8   disputed, other than the obvious.  One thing that -- because

9   it's important to start live communication, but another

10  thing that you're going to learn is that when anyone that's

11  a creditor or a debt buyer in this case, has a duty when

12  they're reporting to a credit reporting agency, they're

13  going to tell the credit reporting agency, say, Experian

14  when something is disputed.

15         And the evidence is going to show in this case the

16  letter was received by Portfolio Recovery Associates that

17  says a lot of sentences, it has multiple sentences, and

18  defendants may make a big deal about that.  But one of the

19  sentences does say that she doesn't believe the amount of

20  the debt is accurate.

21         MS. MALONE:  Your Honor, may we approach?

22         THE COURT:  Yes.

23                  ===================
                    BENCH CONFERENCE
24                  ===================

25         (The following proceedings occurred at

1          the bench, outside the presence of the

2          jury, with only counsel present.)

3          MS. MALONE:  I don't believe it's proper for her

4 to be reading from evidence that she challenged that she

5 hasn't laid the predicate.

6          MS. CLARK:  I'm not going to read.

7          MS. MALONE:  You were reading a sentence from the

8 letter.

9          MS. CLARK:  No, I didn't.  I'm sorry. I didn't

10 mean to quote the letter.

11          MR. ZIMMER:  You didn't quote the letter.

12          MS. CLARK:  I don't think it was an accurate quote

13 some of the words might be the same.

14          THE COURT:  Okay.  If a party uses in their

15 opening something that ultimately doesn't come in, then the

16 remedy for that is for you to later remind the jury that

17 they never -- so you can do whatever you want in opening at

18 your peril if it doesn't come in.

19          MS. MALONE:  Okay, Judge.

20          MS. CLARK:  Thank you.

21                    ===========
                      OPEN COURT
22                    ===========

23          (The following proceedings occurred in

24          open court, in the presence of the jury,

25          with all parties present.)

1          MS. CLARK:  Sorry.  I got interrupted.

2          So getting back.  There was a letter which was

3   presented to Portfolio Recovery Associates.  And the

4   evidence is going to show that when Portfolio Recovery

5   Associates got this letter -- they don't denied receiving

6   it -- they did not tell the credit reporting agency that

7   there was a disputed debt.

8          Every month they made a report.  They didn't say

9   it was disputed.  The next month didn't say it was disputed.

10  Next month didn't say it was disputed.

11         And this has consequences on how the credit report

12  is read by any lender or anyone looking to try to evaluate

13  Ms. Jones for anything, anything, anything related to

14  credit.  Sorry.  I didn't finish that sentence.

15         So now I'll tell you there's sort of another fear

16  I have as I talk to you about the evidence that's going to

17  come in regarding Portfolio Recovery Associates.  I don't

18  believe -- I believe that we all agree that there was no --

19  there was a letter received and there was no dispute passed

20  on, no information about the dispute passed on to the credit

21  bureau.  I think the evidence will show that.

22         What the defense -- I don't want to -- I don't

23  want to predict what they're going to be talking about but I

24  believe they may talk about this as being technical or

25  trying to minimize what was done.

1    This was a statutory violation.  This isn't a real

2  problem, this is just a statutory violation.  So that

3  nothing that really caused a real problem, minimizing any

4  effect.

5    And I -- I believe that you will see in the

6  evidence that's not the case, that there's laws that are set

7  up for how disputes supposed to be handled.

8    And when you look at the evidence, you'll evaluate

9  whether or not Portfolio Recovery Associates violated those

10 laws.

11    They're going to try to tell you that it was a

12 mistake.  That's one of the things they're going to talk

13 about, their procedures, their procedures which allowed them

14 to say, No, we always make disputes when they are supposed

15 to and, whoops, this one time it happened, this little

16 minuscule thing happened but we're going to go forward and

17 they're going to try to show it was an error, a bona fide

18 error.

19    If they're able to show that, you know, that's

20 good for them, but I don't believe they will.  I believe as

21 you listen to the evidence presented, you're going to find

22 out that it wasn't error to turn away this dispute letter.

23 It was their policy.  Their policy was, as much as possible,

24 to lose letters because when they mark it as disputed,

25 there's probably less incentive for people to pay.

1        So if following your own policy can't be an error,

2   you're going to have to decide that.  But you're going to

3   have to look and see the evidence and see, is this an error

4   or is this their policy.

5        And even if it is an error, do they actually have

6   a system in place to prevent this from happening or is this

7   just something that happens regularly?

8        I believe the evidence will show, if you look,

9   that Portfolio Recovery Associates did purposefully go after

10  the dispute letter.

11       However, your job right now is just to listen to

12  the evidence and determine -- I'm sorry -- what -- what is

13  the likely scenario for those things.  My voice is -- I'm

14  losing my voice.  I apologize for that.  I hope you can hear

15  me here at the end.

16       The -- I'm sorry.  I'm just going to pass you to

17  the next.  What we're going to hear next, we are going to

18  hear from Ms. Jones, and I think that that's going to be

19  where you're really able to tell what happened in this

20  story.

21       Ms. Jones is going to provide evidence.  I'm just

22  here to kind of give you a framework.  And so I'm going to

23  let you go on to the next set of the trial now and thank you

24  all for being here.

25            THE COURT:  Ms. Malone.

1    MS. MALONE:  Your Honor, I'd like to reserve mine

2  until the start of defense case if that's all right.

3    THE COURT:  Okay.  Thank you.

4    Your first witness.

5    MS. CLARK:  The first witness, yes, Ms. Jones.

6    Your Honor, can I approach?

7    THE COURT:  Sure.

8                   ===================
                    BENCH CONFERENCE
9                   ===================

10    (The following proceedings occurred at

11        the bench, outside the presence of the

12        jury, with only counsel present.)

13    MS. CLARK:  Yes.  Do we know -- are we having a

14  set time for lunch?  I didn't want to get the jury thinking

15  about it.  That's all.

16    THE COURT:  Yeah.  How long do you think this

17  testimony will take?  Do you have any idea?

18    MS. CLARK:  I would say maybe over an hour, an

19  hour and a half.  I'm not positive.

20    THE COURT:  I'd like to at least get started.  So

21  let's go at least until noon and then we can -- I'll look

22  for a place for us to break.

23    MS. CLARK:  Okay.  All right.  Thank you.

24

25

1                        ===========
                         OPEN COURT
2                        ===========

3              (The following proceedings occurred in

4              open court, in the presence of the jury,

5              with all parties present.)

6              MS. CLARK:  Okay.  So Ms. Jones.

7              THE COURT:  Before you are seated, if you can

8    raise your right hand to be sworn, please.

9                        **JEAN JONES,**

10   was called as a witness and, having been first duly sworn,

11   testified as follows:

12             THE COURT:  Please be seated.

13                    ===================
                      DIRECT EXAMINATION
14                    ===================

15   BY MS. CLARK:

16     **Q.**   All right.  Good morning, Ms. Jones.

17             THE COURT:  Good morning.

18             MS. CLARK:  Excuse me, Your Honor.  Just for

19   clarification, I should have asked earlier.  Are we

20   questioning from the podium?

21             THE COURT:  From the podium.  Thank you.

22             MS. CLARK:  Sure.

23     Q    (By Ms. Clark)  All right.  So, Ms. Jones, as you

24   heard in opening, I'm going to ask you some questions

25   regarding what happened.  Can you tell us how it was that

1  you first realized there were some problems on your credit

2  report?

3      A.   Yes.  I went to -- after my husband passed away, I

4  went to open up a checking account at Amplified Credit Union

5  and I didn't know that I had any problems.  So I ended up

6  with them.  They denied me opening up a bank account, a

7  checking account.  And I was kind of shocked and

8  embarrassed, actually.

9          So I went home and tried to pull up a credit

10 report, and I went to Credit Karma and saw that my -- I had

11 lots of -- my credit score was like down to the 400s or

12 something.  It was really bad.

13     Q.   Okay.  And when you -- were you able on the Credit

14 Karma site, you said, to see what the accounts were that

15 were on the report or was it just a score?

16     A.   It was a score that I looked at first.

17     Q.   Okay.

18     A.   Later on I did check the accounts but it was a

19 score first.

20     Q.   Okay.  And did you check the accounts that same

21 day?

22     A.   Not the same day.

23     Q.   Okay.  Do you remember if you checked those

24 accounts on Credit Karma or a different way?

25     A.   Well, I -- I contacted Experian.  I called them

1  and said, You know, I don't know what all these are.  And

2  they said they would send me a report.

3       MS. MALONE:  Your Honor, I'm going to object to

4  hearsay as to what Experian would have said to her.

5       MS. CLARK:  I will rephrase the question.

6       THE COURT:  Okay.  Thank you.

7  Q    (By Ms. Clark) From your discussion with -- did

8  your discussion with Experian lead you to take any more

9  actions directly with Experian?

10  A    Well, basically they said they would file a

11  report.

12       MS. MALONE:  Objection, Your Honor.  Hearsay.

13       MS. CLARK:  Okay.  I'll ask the question just a

14  little differently again.

15  Q    (By Ms. Clark) Ms. Jones, after your conversation

16  with Experian, what did you do?

17  A    I decided I would try to find some help.

18  Q.   Okay.  Why?

19  A    Well, because I didn't really know how to proceed

20  and I was pretty distraught at that time.  It was not a good

21  time in my life, and I really didn't know what to do.

22  Q.   Okay.  And how did you go about finding help?

23  A    I went on, well, Credit Karma and they offered

24  some credit counseling and things like that.  And I didn't

25  feel like I needed any credit counseling, and I needed

1    somebody to help me pull my score up.  I mean, that was my

2    main goal was to get my score back.  I never had bad

3    problems with my credit.

4         I had just refinanced my house about a year

5    earlier, and I had no problems whatsoever.  So I was pretty

6    shocked whenever I found out there was judgments against me

7    or whatever.

8    Q.   Okay.  And when you looked at -- when you talked

9    to Experian at -- let me start that question over.  After

10   your conversation with Experian, were there any results?

11   Did anything get better on the report?

12   A.   No.

13   Q.   Okay.  And so going back to looking for help,

14   after you rejected the idea of credit counseling, what did

15   you go to next?

16   A.   That's when I found the nonprofit attorneys

17   community law.  And I gave them a call and they came out and

18   met with me, and we went over the credit report at that

19   time.

20   Q.   Okay.  And when you say "they," was it -- who was

21   it that met with you?

22   A.   It was Jesse Ackles (phonetic).

23   Q.   Okay.  And was he an attorney or an assistant; do

24   you know?

25   A.   I'm not really sure.  I know he was good, nice.

1    **Q.**   Okay.  And did he help you pull up a copy of your
2    credit report or did you have one?

3        A.   I had one.

4        **Q.**   Okay.  And what -- when you say go over the
5    report, what did y'all do?

6        A.   Well, he was asking me, you know, Is this
7    something that --

8            MS. MALONE:  Your Honor, I'm going to object as
9    hearsay.  What Jesse asked her and those kinds of questions
10   is clearly hearsay.

11           MS. CLARK:  I can rephrase the question.

12           MS. MALONE:  And, Your Honor, is she intending to
13   attorney/client privilege at any point in this or is she
14   waiving it?

15           THE COURT:  I don't know what she's doing.

16           MS. CLARK:  Is that an objection?

17           THE COURT:  Yeah.  That's --

18           MS. MALONE:  That's fine.  I guess I'm just
19   pointing out the obvious in my opinion, but I am objecting
20   to the hearsay statement, Your Honor.

21           THE COURT:  Okay.

22           I'm not sure this is hearsay.  If you want to
23   think about responding to those objections.

24           MS. CLARK:  I understand.  It just seems easier.
25   I mean, I think that we can get the same information.

1              THE COURT:  Okay.

2              MS. CLARK:  But, yes, I agree that that's not

3    their -- I'm sorry.

4              MS. MALONE:  Your Honor, I'm sorry, but --

5              MS. CLARK:  Is there some sort of objection?

6              MS. MALONE:  No, it's not.  There's some sort of

7    reverb on the mic.  I'm having trouble hearing her.  I don't

8    know if anyone else is having problems besides me but

9    there's some sort of echo.

10             THE COURT:  Okay.  We can -- sometimes it's if you

11   speak into one.  If you can try to get between them, that

12   will prevent it.

13             MS. CLARK:  Get between them?

14             THE COURT:  Yeah.  Sometimes that's what --

15             MS. CLARK:  Okay.  Sorry about that.  Oh, I can

16   hear this does sound better.  Hopefully it will help

17   everyone.

18        Q    (By Ms. Clark) All right.  So, Ms. Jones, when you

19   were going over the credit report, what type of things were

20   you looking for on the credit report?

21        A    I was looking to see if there was anything that I

22   was familiar with that maybe I had overlooked at some point.

23        Q.   Okay.

24        A    And I didn't see anything.  I mean, I had some

25   really good credit otherwise.  But my house payment had been

1   made on a regular basis, et cetera.  So I -- I don't -- I

2   just didn't know what was going on.

3       Q.   Okay.  And so at that time did you also -- you

4   said that you were looking for things that you were familiar

5   with.  Are you saying that you saw things that you were not

6   familiar with?

7       A.   Yes.

8       Q.   Okay.  And was this before or after you had

9   decided to hire the community legal group?

10      A.   It was before, yeah.

11      Q.   Okay.  And then when did you decide to hire them?

12  Was it that day or later?

13      A.   No.  It was later because I was getting some

14  harassing phone calls.

15      Q.   Okay.  When -- as you know, one of the issues in

16  this lawsuit is the letter -- or letters, dispute letters.

17  When did you first learn about the dispute letter process?

18      A.   When I met with -- when I talked to the attorney.

19      Q.   Okay.  And was that when -- was that before or

20  after you met with Jesse at your house?

21      A.   It was after.

22      Q.   Okay.  Now, when did you see copies of -- did you

23  understand what the dispute letters would -- how do I want

24  to say this?  What information would be on the dispute

25  letters before they were sent out?

1      A.   No.

2      Q.   Okay.  Did you know which of the accounts were

3  going to be disputed?

4      A.   No.

5      Q.   Had you told the -- either -- anyone that was

6  going to be working on the letters which accounts were

7  inaccurate?

8           MS. MALONE:  Your Honor, that's hearsay.  What she

9  said out-of-court statement is hearsay.  Objection.

10          MS. CLARK:  It is not hearsay because we're not

11  using it for truth of the matter asserted.  We're just

12  asking what she told, not whether or not those things were

13  accurate.

14          THE COURT:  Overruled.

15          MS. CLARK:  So, Ms. Jones, did you communicate in

16  any way to the people who created the letters which accounts

17  you believed were not accurate?

18     A.   Yes, I did.

19     Q.   Okay.  And to your knowledge the Portfolio

20  Recovery -- or, actually, I'll back up.  Do you remember a

21  Portfolio Recovery Associates account being on your credit

22  report?

23     A.   I'm not sure if they were.  I mean, I can't

24  remember whether they were or not.  I know there were

25  several on there that I had no clue about.

111

1    **Q.**   Okay.  And since that time or -- the -- have

2    you -- let's look at the -- I'd like you to look at Exhibit

3    A just to refresh your recollection.

4    **A.**   In here?

5    **Q.**   Yes.  And there's one called Plaintiff's Exhibit

6    book list.

7    **A.**   That's me?

8    **Q.**   Yes.  If it says plaintiffs on it, yeah, that

9    looks like ours.

10   **A.**   Okay.

11   **Q.**   Let's look at Exhibit A.  I believe they're in

12   little folders.  You can pull it out or read it through

13   there.

14   **A.**   Okay.

15   **Q.**   And I'm not saying to read it out loud.  Just look

16   at it to sort of refresh your memory.

17   **A.**   I've got to put my glasses on.

18   **Q.**   Okay.

19   **A.**   I choked myself.  Okay.

20   **Q.**   Okay.  Now, looking at this letter, do you

21   recognize this as one of the letters of the type which you

22   have learned were sent out on your behalf?

23   **A.**   I learned that it was sent out, yes.

24   **Q.**   Okay.  And looking at this letter, does it refresh

25   your memory that Portfolio Recovery Associates was one of

112

1   the companies that it was sent to?

2       A.   Yes.

3       Q.   Now, prior to -- have you ever -- do you recall

4   ever having any kind of debt with a company named Portfolio

5   Recovery Associates?

6       A.   No.

7       Q.   Do you recall ever doing any kind of business with

8   a company called Portfolio Recovery Associates?

9       A.   No.

10      Q.   They're just someone that you learned was

11  reporting after you got help?

12      A.   Yes.

13      Q.   Okay.  Now, Ms. Jones -- I'm sorry.  I'll get back

14  to my spot.  Ms. Jones, have you ever had any business?

15      A.   No.

16      Q.   Have you ever had a job where you sometimes bought

17  things for the business and then were paid back?

18      A.   No.

19      Q.   Have you ever paid like traffic tickets or fines

20  with a credit card?

21      A.   No.

22      Q.   Have you ever paid taxes with a credit card?

23      A.   No.

24      Q.   At the time of this account being noticed was

25  2015; is that correct?

1      A.    Uh-huh.

2      Q.    Prior to 2015, say, for the last ten years, had

3   you ever made any charges on any card which were related --

4   which were not related to your own person or your own

5   household?

6      A.    No.

7      Q.    Ms. Jones, do you remember ever having an

8   account -- a card with QVC?

9      A.    Yes.

10     Q.    And on that account what kind of things -- do you

11  remember any specific purchases you may have made on a QVC

12  account?

13     A.    Yeah.  I think I bought -- I bought a few things

14  from them, and had them delivered 'cause I was working at

15  that time.

16     Q.    Okay.

17     A.    Uh-huh.

18     Q.    Do you remember what they would have been at all,

19  from your memory?

20     A.    I think there were some clothes and, let's see.  I

21  think I bought a -- my last -- my computer a few years ago

22  with them.

23     Q.    Okay.  And then you use that computer for work or

24  business?

25     A.    No.

114

1  Q.   Okay.  Do you recall ever having an account with

2  Home Shopping Network?

3  A.   Yes.

4  Q.   And did you ever buy -- what kind of things did

5  you buy on that, if you recall?

6  A.   Pretty much the same thing there.

7  Q.   So would you have bought clothes there?

8  A.   Yes.

9  Q.   Any other household items that you can remember?

10  A.   Not that I can recall, no.

11  Q.   Okay.  And now did you ever give permission for

12  anyone else to use your QVC card for business?

13  A.   No.

14  Q.   Did you ever give permission for anyone else to

15  use your card -- your HSN card for business --

16  A.   No.

17  Q.   -- purchases?  Ms. Jones, after -- when did you

18  first learn that there was a problem with Portfolio Recovery

19  Associates?

20  A.   Well, when they kept harassing me and calling me

21  and sending me letters even after the attorney -- after the

22  attorney group had contacted them and they weren't -- I

23  don't think they were supposed to contact me anymore after

24  that.

25  Q.   Okay.  And did you -- after -- did you at that

1   time -- or, actually, I will just ask this.  What did you do

2   about that?

3        A.   I called the attorney and I asked -- you know, I

4   said, You know, what do you want me to do with this letter

5   that I just received?  And he just said to send it to him.

6        Q.   Okay.  And do you know what was done -- what was

7   done on your behalf after that?

8        A.   Well, I know that they -- I think they were trying

9   to resolve it and let them know that it was not my debt.

10        Q.   Okay.  And was the -- were you involved in making

11   those phone calls to Portfolio Recovery Associates?

12        A.   When I --

13        Q.   Did you make phone calls to Portfolio Recovery

14   Associates?

15        A.   No.

16        Q.   And was that because you had hired someone else to

17   help you with this issue?

18        A.   Yes.

19        Q.   Were there other debts on the -- that you found

20   out that you were alleged owing that the community legal

21   group did help you with as well?

22        A.   Yes.

23        Q.   And did -- can you explain how those ones were

24   resolved?

25        A.   Yes.  They were -- they were resolved as far as

116

1   they were taken off my credit, and that was my main goal was

2   to have my credit built back up.

3        Q.   Okay.  And so would it be correct to say some of

4   the debts were -- or some of the alleged debts were resolved

5   by Community Legal Services and then Portfolio Recovery

6   Associates acted differently?

7        A.   Yes.

8        Q.   Okay.  And how did that affect you?

9        A.   Well, here I am today.  I'm really nervous and

10  I -- I don't understand what the -- why they're coming

11  against me.  I mean, honestly, I have always paid my debts.

12            When my husband passed away, I paid off all my

13  credit cards.  I put them away.  I didn't want to close them

14  because I did not want to hinder my credit.

15       Q.   Just to clarify.  So you're saying you paid off

16  the QVC card?

17       A.   Yes.

18       Q.   To your knowledge it was completely paid off?

19       A.   Right.

20       Q.   And you had been using it for consumer purposes or

21  for your own personal purposes?

22       A.   Correct.  Uh-huh.

23       Q.   And so do you know -- when is the -- did you get a

24  copy of your credit report or review your credit report

25  after the dispute letter had been sent on your behalf in

1  January 2015?

2       A.   I think I did later.  I don't remember exactly.

3       Q.   Exactly when?

4       A.   Yeah.

5       Q.   When you say later, do you have any idea, was it

6  like one month, two months later, six months later?  Okay.

7  That would be the future, but can you narrow it down?

8       A.   I would say probably a few months later because I

9  was wanting to check what my score was because they were

10 disputing some of these other creditors that I had no idea

11 were after me basically.

12      Q.   Okay.  And when you checked that a couple -- a few

13 months later, did you see -- what did you see on your credit

14 report for Portfolio Recovery Associates?

15      A.   It was still there.

16      Q.   It was still there?  And was it marked as

17 disputed?

18      A.   No.

19      Q.   And could you tell from that how many times

20 Portfolio Recovery Associates had -- actually, let me change

21 that question.

22           Was the reporting still for that account done on a

23 monthly basis on the credit report that you looked at?

24 Could you see months or just a general one?

25      A.   I don't really remember on that one.

1      **Q.**   Okay.  And that was -- that would have been in

2    2015, right, maybe in the spring?

3      **A.**   Probably, yeah.

4      **Q.**   Okay.

5           MS. CLARK:  Your Honor, I have nothing at this

6    time for this witness.  We reserve for rebuttal.

7           THE COURT:  Okay.  Thank you very much.

8           Ladies and gentlemen of the jury, the timing is

9    pretty good for us to take our lunch break now.  You've been

10   hard at it this morning and so we're going to give you your

11   first break for lunch.

12          You can talk with the courtroom security officer

13   about places that are within a reasonable radius of the

14   courthouse.  I'm going to give you just over an hour so that

15   we can be back here and ready to resume at one o'clock.

16          Let me give you instructions that I have already

17   given you and I will give you probably a time or two in the

18   future.

19          And those are to remind you that you're not to

20   talk to anyone about this case, including each other, until

21   all of the evidence is in and you're in your jury room

22   deliberating.

23          Don't talk to each other about this case or any

24   issue or party involved in the case.  Don't engage in any

25   independent investigation by any means of any issue or party

 1  involved in this case.  Talk about the weather.  Talk about

 2  sports.  Talk about anything else other than this case while

 3  you're out on your break.  Don't allow anyone to talk to you

 4  about it and if anyone tries to, please let me know.

 5          Otherwise go and enjoy your lunch and we will be

 6  back here and ready to go at one o'clock.

 7          (Whereupon, the jury exited the

 8          courtroom.)

 9          THE COURT:  Please be seated.

10          I've been asked to remind you if you could submit

11  your electronic exhibits to Ms. Golden during lunch.  If you

12  do have those, she needs to put those in proper form.

13          MS. CLARK:  I'm sorry.  To whom?

14          THE COURT:  To Ms. Golden.

15          MS. CLARK:  I'll give it to you now.

16          THE COURT:  That will be great.

17          Anything else before we break for lunch?

18          All right.  We're in recess then.

19          (Whereupon, a recess was then taken at

20          11:58 a.m., and the trial resumed at the

21          hour of 1:08 p.m.)

22          THE COURT:  There you are.

23          MR. ZIMMER:  I'm sorry, Your Honor.  I was on a

24  restroom break.

25          THE COURT:  I really don't like to keep the jury

 1  waiting.

 2          MS. CLARK:  I apologize.

 3          THE COURT:  Okay.

 4          Bring the jury in.

 5          (Whereupon, the jury entered the

 6          courtroom.)

 7          THE COURT:  Do we have your client?

 8          MS. CLARK:  Yeah.  She was in the restroom.  I

 9  think she should be right out.  I -- I could go check on her

10  again.

11          THE COURT:  Please do.

12          MS. CLARK:  Yes.

13          THE COURT:  Okay.  Thank you.

14          (The plaintiff, Ms. Jones, is present.)

15          THE COURT:  All right.  Ms. Malone, your witness.

16          MS. MALONE:  Your Honor, at this time I would like

17  to read my admissions into the record for Ms. Jones.

18          THE COURT:  Okay.  Thank you.

19          MS. MALONE:  Do you want to do any preliminary

20  instruction, Your Honor?

21          THE COURT:  Do you have anything prepared for me?

22          MS. MALONE:  No, sir, I did not.  I apologize.

23          THE COURT:  That's okay.

24          MS. MALONE:  Admission -- Request for Admission

25  No. 1.  These are admissions that Ms. Jones has admitted to.

1    Admit that you are not the author of the letter
2    attached as Exhibit A to your complaint.

3    Request for Admission No. 2, admit that you did
4    not personally cause the letter attached as Exhibit A to
5    your complaint to be delivered to PRA.

6    Request for Admission No. 3, admit that you are
7    not the owner of fax number (312) 476-1362.

8    Admission No. 4, admit that you have suffered no
9    actual damage as a result of any act or omission committed
10   by PRA.

11   Request for Admission No. 5, admit that you have
12   not suffered any substantial loss due to the alleged actions
13   of PRA.

14   Request for Admission No. 6, admit that you have
15   no evidence that you have suffered a loss of credit due to
16   the alleged actions of PRA.

17   Request for Admission No. 7, admit that you have
18   no documented evidence that you suffered a loss of credit
19   due to the alleged actions of PRA.

20   Request for Admission No. 8, admit that you have
21   no evidence that you have lost the ability to purchase and
22   benefit from credit due to the alleged actions of PRA.

23   Request for Admission No. 9, admit that you have
24   no documented evidence that you have lost the ability to
25   purchase and benefit from credit due to the alleged actions

1  of PRA and those are all deemed admitted by the Court.

2         THE COURT:  Ladies and gentlemen of the jury, you

3  are to -- for the purposes of this trial, you are to assume

4  as true and admitted all of the items that have been read

5  into the record by Ms. Malone.

6         MS. MALONE:  Thank you, Your Honor.

7                  ==================
                   CROSS-EXAMINATION
8                  ==================

9  BY MS. MALONE:

10     Q.   Ms. Jones, do you live on Camelback Street in Lago

11  Vista, Texas?

12     A.   Yes, I do.

13     Q.   You do?  What address?

14     A.   20707.

15     Q.   I'm sorry.  I didn't hear you, ma'am.

16     A.   20707.

17     Q.   You testified earlier that there were a number of

18  judgments that you found on your credit report.  Do you

19  recall that?

20     A.   Yes.

21     Q.   And to be clear, none of those judgments were

22  judgments from my client, PRA, correct?

23     A.   Yes, they were.

24     Q.   You say they were judgments from my client, PRA?

25     A.   I'm sorry.  Say that again?

123

1      **Q.**   You testified that there were judgments that you

2    saw on your credit report.

3      **A.**   Uh-huh.

4      **Q.**   And to be clear, the judgments, not a bad credit

5    line, the judgments were not from my client, PRA; isn't that

6    fair?

7      **A.**   I'm not sure about that.

8      **Q.**   Okay.  Do you recall, Ms. Jones, having your

9    deposition taken last year in October?

10      **A.**   Yes, I do.

11      **Q.**   By a young man from my office?

12      **A.**   Yes.

13      **Q.**   And do you recall being asked if you knew what

14    account was being referenced in the letter that was sent to

15    PRA?

16      **A.**   The account was through recovery.

17      **Q.**   My question was simply, do you recall being asked

18    about it?

19      **A.**   Yes, I've been asked.

20      **Q.**   And at that time you told him that you did not

21    know what the specific account was; is that correct?

22      **A.**   Correct.

23      **Q.**   And he asked you where the account number came

24    from and you told him you did not know, correct?

25      **A.**   Correct.  Uh-huh.

124

1    **Q.**   Is that correct?

2    **A.**   That's right.

3    **Q.**   And also he asked you if you did anything to

4    determine specifically what the account was and you said all

5    you knew was that it was PRA, correct?

6    **A.**   Correct.

7    **Q.**   You said you didn't do anything to look into what

8    specific account it may have been, correct?

9    **A.**   Correct.

10   **Q.**   You also told him that you did not do anything to

11   determine the specific debt that was being reported by PRA;

12   isn't that correct?

13   **A.**   That's correct, except that I did call PRA

14   whenever they called me, I should say, and I asked them

15   specifically what -- who they were representing and I was

16   not told.

17          MS. MALONE:   I'm going to object to everything

18   after that's being correct as nonresponsive.  Ask the Court

19   to strike.

20          MS. CLARK:   No objection.

21          THE COURT:   All right.  Sustained.  So after what?

22   **Q.**   After -- yes, Your Honor.

23          THE COURT:   Then you are to take the answer as yes

24   but disregard the remainder of that answer.

25      Q    (By Ms. Malone) And when you testified earlier,

1    you indicated that the problems that you saw in your account

2    were related to a QVC account; is that correct?

3        A.   Yes.

4        Q.   Isn't it true, ma'am, that you did not receive any

5    specific telephones [sic] or communications from PRA after

6    the December 1st letter was sent?

7        A.   I did.  Yes, I did.

8        Q.   In your deposition in October of 2006, you were

9    asked:  So as you sit here today, you are unsure whether or

10   not Portfolio Recovery Associates attempted to collect a

11   debt after this letter was sent?  Your answer at that time

12   was, I don't know.  I really don't.  Is that correct?

13       A.   Probably.

14       Q.   You also were asked:  Do you recall receiving any

15   specific letter or telephone call after December 1st of

16   2015?  And your answer at that time was no.  Is that

17   correct?

18       A.   I guess so.  I don't know.

19       Q.   Okay.  And you have not been out-of-pocket as a

20   result of anything to do with this complaint with PRA or

21   this lawsuit; isn't that correct?

22       A.   I'm not sure what you mean by out-of-pocket.

23       Q.   Well, in your deposition you were asked if you

24   were out-of-pocket and you said you were out-of-pocket --

25   no.  Are you out-of-pocket any money due to what PRA did?

1    And your answer was no.  Isn't that what you told us at that

2    time?

3         A.    That's right.

4         Q.    You also said that you were not seeking any type

5    of damages; isn't that true?

6         A.    Because I want my credit restored.

7         Q.    And it's true as you sit here today you've not

8    paid any funds to your attorneys; isn't that correct?

9         A.    Correct.

10        Q.    Okay.  Are you the same Jean Jones who owns a

11   business called Carol's Kingdom of Gift LLC located at 20707

12   Camelback Street in Lago Vista, Texas?

13        A.    That was my friend, Carol.

14        Q.    And it was operating out of your business -- out

15   of your home?

16        A.    No.

17        Q.    It was not?

18        A.    No.

19        Q.    So it was this same address but not your house?

20        A.    It was not -- it was not operated at all.

21             MS. MALONE:  I have no further questions, Your

22   Honor.

23             THE COURT:  Any other questions?

24             MS. CLARK:  Yes, Your Honor.

25

1                    =====================
                     REDIRECT EXAMINATION
2                    =====================

3   BY MS. CLARK:

4       Q.   Good afternoon, Ms. Jones.

5       A.   Hi.

6       Q.   Have -- did you and a friend consider opening a
7   business at one point?

8       A.   We did think about it, yes.

9       Q.   And what was the name of that business, if you
10  recall?

11      A.   It was Carol's Kingdom Gifts.

12      Q.   And did that -- did you register the name Carol's
13  Kingdom Gifts with the county?

14      A.   Yes.

15      Q.   Was that like a dba, the Carol Kingdom Gifts?

16      A.   I think it was an LLC or something.

17      Q.   Okay.  Did you ever -- did Carol's Kingdom Gifts
18  ever get off the ground as a business?

19      A.   No.

20      Q.   Were gifts purchased to be sold at Carol's Kingdom
21  Gifts?

22      A.   No.

23      Q.   What kind of business was it supposed to be?

24      A.   It was a Christian business where she made stuff
25  that was about Jesus and wanted to have them sold at

1   Christian bookstores but she made them herself and, you

2   know, she wanted me to set up something for her and that's

3   what I did.

4       Q.   Okay.  And then did Carol ever end up selling any

5   of these items she made through the store?

6       A.   No.

7       Q.   Did the store ever purchase any advertising?

8       A.   No.

9       Q.   Did the store have really any assets, any

10  belongings at all?

11      A.   No.

12      Q.   Did you ever get a line of credit or, up to and

13  including a credit card, to use it for business that's for

14  that store?

15      A.   No.

16      Q.   Did you ever use any other card that you already

17  had to purchase things for the business?

18      A.   No.

19      Q.   And that's because the business never really

20  existed other than on paper?

21      A.   She got sick and it never got -- never went

22  anywhere.

23      Q.   Okay.  Ms.-- an issue I wanted to ask you about.

24  You stated that you called Portfolio Recovery Associates?

25      A.   I believe they called me.

129

1      **Q.**   Okay.  And did you ever speak with them when they

2   called?

3      A.   I did, and -- yes, I did.

4      **Q.**   And what -- what was your goal in speaking to

5   them?

6      A.   I was trying to explain to them that that was not

7   my debt and I didn't even know who they were representing.

8      **Q.**   Okay.  And were you able to find out who they were

9   representing in that call?

10      A.   Not until actually yesterday.

11      **Q.**   Okay.  And what did you determine yesterday who

12   they were representing?

13      A.   When I met with you and you showed me some of the

14   bills or something, so that's how I knew.

15      **Q.**   And you did recognize that you had had and HS --

16   I'm sorry -- not HSBC -- Home Shopping Network card?

17      A.   Correct.

18      **Q.**   And you also had a QVC card?

19      A.   Yes.

20      **Q.**   Okay.  And on both of those you purchased items

21   solely for your personal use?

22      A.   Correct.

23      **Q.**   Okay.

24          MS. CLARK:  I have nothing further.

25          THE COURT:  Thank you.

1        Any followup?

2            MS. MALONE:  No, Your Honor.  I do have a motion

3   for the Court, though.

4            THE COURT:  Okay.

5            You may step down.

6            THE WITNESS:  Okay.  Thank you.

7            THE COURT:  Do you have a motion?

8            MS. MALONE:  I thought she was finished.

9            THE COURT:  Oh, I see.  Okay.

10           Do you have any other witnesses or evidence you'd

11  like to present?

12           MS. CLARK:  No, Your Honor.

13           THE COURT:  Okay.  Would you like to approach the

14  bench?

15           MS. MALONE:  It may be a little more complicated

16  than that, Your Honor, but I'm happy to do that if you want

17  to do it that way.

18           THE COURT:  All right.

19           Ladies and gentlemen, we're going to take a little

20  break now.  As I said before, sometimes we have to take

21  things up outside of your presence.  And rather than whisper

22  and make you sit there trying to listen to us, even though I

23  know you wouldn't do that, we're going to let you go back to

24  the jury room so that you can take a break and we'll get

25  back to you as soon as we can.

1            (Whereupon, the jury exited the

2       courtroom.)

3            THE COURT:  All right.

4            MS. MALONE:  Thank you, Your Honor.

5            At this time on behalf of the defendant we move

6   for a directed verdict for specific reasons.  In the

7   court -- as the Court knows, in your order on the summary

8   motion judgment, you said a specific issue that had to be

9   determined by the Court -- or jury trial would be whether or

10  not the plaintiff was a consumer under the definition of

11  both the Texas Finance Code and the Texas -- the Federal

12  Debt Collection Practices Act.

13           Sorry, Judge.  I'm having after-lunch tongueitis

14  [sic].

15           THE COURT:  No problem.

16           MS. MALONE:  Okay.  The evidence that's been

17  presented to the Court is that the witness -- the plaintiff

18  testified about credit card charges she made to a QVC

19  account and an HSN account.

20           If the Court looks at the first page of

21  plaintiff's original complaint, the debt that they allege

22  that PRA failed to properly report is not either a QVC

23  account or an HSN account.  It is in fact a Synchrony debt

24  bank card which is not either HSN or QVC.

25           And since it is incumbent upon the plaintiff to

1   prove what they pled in their pleading is the alleged

2   consumer account that was at issue in this case and their

3   testimony failed to do that, we ask the Court to grant

4   directed verdict at this time because if they don't meet the

5   threshold issue of it being a consumer, then there is no

6   lawsuit left.

7             THE COURT:  Okay.  Thank you.

8             Would you like to respond to that?

9             MS. CLARK:  Thank you, Your Honor.

10            Starting with the issue of the complaint, the

11  issue of the complaint was primarily the account being

12  reported by Portfolio Recovery Associates.  There was a

13  sentence where it mentions Century Bank.  Century Bank, I

14  believe, was one of the -- they licensed their name to HSBC

15  or QVC.  I don't know which -- at this moment which one it

16  was.

17            So not only is Century Bank not inaccurate, it's

18  not important because the entire complaint discusses

19  Portfolio Recovery Associates' dispute, marking disputed or

20  undisputed of their account.

21            On that portion of the credit report it doesn't

22  say who it came from.  It says Portfolio Recovery

23  Associates, and that's what the entire lawsuit is about, not

24  which bank on which account Portfolio Recovery Associates

25  purchased.

1        Secondly, the only thing the consumer -- well, the

2   consumer has to prove that this is a consumer debt.  She has

3   to prove it's more likely than not and that it was primarily

4   used for consumer debt.

5        There's been zero evidence put forth that this was

6   anything but consumer debt, and I believe definitely a

7   reasonable finder of fact can find in this case that this

8   was related to PRA and that it was more likely than not

9   consumer debt, that it was for personal, family or household

10  use as the primary use of the credit line.

11        THE COURT:  Okay.  Thank you very much.

12        Any response to that.

13        MS. MALONE:  Your Honor, I believe that we put it

14  in our original MSJ and I'm happy to get a cite for the

15  Court out of it, and I apologize 'cause I should have

16  brought it forward.

17        But there's a case out of the Northern District of

18  Texas which is *Latrice Campbell v. CMI* where the Court

19  specifically dealt with this issue where the consumer did

20  not know where the debt came from.

21        So according to the testimony we heard from

22  Ms. Jean Jones, she either didn't know where the debt came

23  from or she believed it was an QVC or an HSN account.

24        It's their obligation to show it's the same

25  account they pled in their petition and the same one that

1   was being collected by my client.  Neither of those accounts

2   was the one that was involved and they have a duty to do

3   that.

4            In the *Campbell* case the Court granted summary

5   judgment on behalf of my client, CMI, specifically because

6   they were calling the wrong consumer on the debit and that

7   consumer was not able to establish what the original account

8   was being used for.

9            And in this case the only testimony we have from

10  [sic] the Court is the QVC account and the HSN account, both

11  of which are required for the plaintiff to have linked to

12  what they pled and what they've alleged against my client.

13           Her allegation that Synchrony Bank -- not Century,

14  but Synchrony Bank -- is somehow licensing one of these

15  would be evidence that they would have to put on to get

16  there.

17           She's rested, Judge.  She could have called

18  someone to prove up that fact, and it is an obligation she

19  has failed to meet at this time.

20           Directed verdict is appropriate, Judge.  They set

21  the rules about what they were going to try in this case and

22  they have an obligation to meet those burdens.

23           And it is a preliminary issue that if they don't

24  get proven up in court, it's just like in a criminal case.

25  If you can't prove it's in the county, Judge, my old

1   prosecutor days, you don't get to go to the next issue of

2   the crime.  It is a threshold issue.  If they don't prove

3   it's a consumer account on the account that they're alleging

4   my client committed a wrong on, then they don't get to go

5   the rest of the way to a verdict with the jury.

6           THE COURT:  Okay.  I am going to take a look at

7   the complaint and make a decision about the merits of your

8   motion.  But at this point I'll -- I'm just going to take it

9   under advisement.  We don't have much more to go, anyway.

10          So for now I'll deny your motion without prejudice

11  to your reurging it after I have an opportunity to look at

12  the pleadings in the case.

13          Anything else?

14          MS. MALONE:  No, Your Honor.  I just need to make

15  sure our witness is here.  We told her 1:30, so we're a

16  little shy.

17          THE COURT:  Okay.  If you could go check.

18          MS. MALONE:  Okay.  Yeah.  We'll go check.

19          THE COURT:  Okay.  Thank you.

20          Is your witness here?

21          MS. MALONE:  Yes, Your Honor.  We do.  She's here.

22          THE COURT:  Okay.  Great.

23          Bring in the jury, please.

24          MS. MALONE:  Oh, Your Honor, I forgot.  I did

25  reserve my opening so I have a short opening before.

1          THE COURT:  Okay.

2          MS. MALONE:  Do you want me to have my witness

3    step out during the opening or is it okay for her to stay?

4          THE COURT:  Do you have any objection to the

5    witness staying during --

6          MS. CLARK:  For the opening?  Let's have her step

7    out.

8          THE COURT:  Yeah.  That's fine.

9          Ma'am, if you can step out and we'll let you know

10   when we're ready for you.

11         THE WITNESS:  Thank you, Your Honor.

12         MS. CLARK:  Thank you.

13         (Whereupon, the jury entered the courtroom.)

14         THE COURT:  Thank you.  Please be seated.

15         Thank you for your patience, ladies and gentlemen.

16   We're now going to proceed with the defendant's case.

17         If you recall, the defense attorney asked if she

18   could delay the making of her opening statement until she

19   presented her case.  So now we're going to start with giving

20   her the opportunity to make her opening statement and then

21   put on whatever evidence she'd like to put on.

22         Ms. Malone?

23         MS. MALONE:  Thank you, Your Honor.

24

25

1

==================
OPENING STATEMENT
==================

2

3  BY MS. MALONE:  I think the evidence that you're going to

4  hear now is going to be the rest of story they used to say

5  in the old Paul Harvey days and some of you folk may recall

6  him.  But I want you to listen to what the testimony will

7  be.

8         You heard Ms. Jones testify in great lengths about

9  a QVC and HSN account.  You're now going to hear from a

10 Portfolio Recovery Associates representative, and I believe

11 the evidence will be they weren't collecting on either of

12 those accounts and the question that the plaintiffs are

13 asking you to make a decision on.

14        The QVC account and the HSN account that they were

15 collecting on arrived in their office three weeks after the

16 letter they're complaining about.  So that's not the problem

17 the plaintiff has told you about.

18        You're also going to hear about what procedures

19 and policies that PRA had in place in order to catch

20 disputes.

21        You're going to hear from Ms. Dreano exactly what

22 kind of training they go through, that they have a robust

23 system that these folks spend three weeks reading letters

24 and making sure they mark them.

25        You're going to hear that the person who actually

1  looked at the letter did in fact mark it as a cease and

2  desist but did not mark it as dispute.  So they got part of

3  the marking right but not the other part.

4       You've heard testimony that this did not cause

5  harm from request for admissions from Ms. Jones.  So you're

6  going to be told that the person who read the letter got it

7  almost all right.  They have a robust policy and procedure

8  in place, and you're going to see exactly how the mistake

9  was made.  It was an honest mistake.

10       The law does not require to you to be perfect.  It

11  requires you to have reasonable procedures in order to do

12  things that you should do.

13       You will hear they have a quality control program

14  that they check to make sure people are actually doing their

15  jobs correctly and that they do this on a regular basis with

16  every employee because people make mistakes.  And that's all

17  this was.

18       But what you're going to hear, most importantly,

19  is that after they marked this account as a cease and

20  desist, nobody called Ms. Jones.  Nobody sent letters to

21  Ms. Jones.  The only thing that wasn't was that it was not

22  marked as dispute.

23       You will hear that it was the correct designation

24  when it was sent over initially to the credit report

25  companies in the beginning.

1    So I want you to pay attention to what Ms. Dreano

2  says because you're going to find out that this is not a

3  small fly-by-night company that doesn't pay attention to

4  what they do.  In fact, they take great pride and care in

5  trying to do the right thing.

6    And in this case because they got a letter from a

7  law firm, that was written by a law firm, it slipped through

8  the cracks.  And that is what bona fide error is designed to

9  prevent from happening.  Thank you.

10    THE COURT:  First witness.

11    MS. MALONE:  Your Honor, at this time the

12  defendant would call Meryl Dreano.

13    THE COURT:  If you'd come forward, ma'am.  If

14  you'll walk over there to the court security officer, he'll

15  direct you around to the witness box here.

16    THE WITNESS:  Thank you, sir.  Thank you so much.

17    THE COURT:  And before you're seated, if you could

18  please raise your right hand to be sworn.

19                        **MERYL DREANO,**

20  was called as a witness and, having been first duly sworn,

21  testified as follows:

22    THE WITNESS:  I do.

23    THE COURT:  Please be seated.

24    THE WITNESS:  Thank you, Your Honor.

25

1    ==================
     DIRECT EXAMINATION
2    ==================

3    BY MS. MALONE:

4        Q.   Ms. Dreano, can you -- it always sounds like I'm

5    say "mystery" when I say your name.  Could you please spell

6    your name for the court reporter, please.

7        A.   Yes.  M-E-R-Y-L, D-R-E-A-N-O.

8        Q.   And it's Dreano?

9        A.   Dreano.

10       Q.   Okay.  It's good if your lawyer can pronounce your

11   name.  It's just a small rule there.

12            All right.  Can you tell the jury where you're

13   from.

14       A.   From Virginia Beach, Virginia.

15       Q.   Okay.  And how are you employed, ma'am?

16       A.   By Portfolio Recovery Associates LLC.

17       Q.   Okay.  And how long have you been employed by

18   them?

19       A.   Since November of 2008.

20       Q.   Okay.  Can you give us an idea how big of a

21   company Portfolio Recovery Associates is?  Do you know how

22   many locations they have?

23       A.   Our home office is in Norfolk, Virginia.  I

24   believe we have seven call centers throughout the country.

25   We have a legal office in San Diego, California.  We are

1  actually global.  We have various subsidiaries throughout

2  the world.

3      **Q.**   Do you have any Texas connections?

4      **A.**   We sure do.  We have an office -- or a call center

5  in Dallas, Texas.

6      **Q.**   And how many folks do you have over there?

7      **A.**   About 400.

8      **Q.**   Okay.  Tell us a little bit about your educational

9  background.  How far did you go in school?

10      **A.**   I have a high school diploma.

11      **Q.**   Okay.  How long have you been in the field of

12  collections?

13      **A.**   Since 1983.

14      **Q.**   How did you get started in collections?

15      **A.**   I worked for a Sears Home Improvement contractor

16  in Philadelphia, took a call from the comptroller of the

17  company, and he had a little attitude with me and I kind of

18  had a little attitude back and ended up being hired by him

19  the next day doing collections.

20      **Q.**   And when did you join PRA?  I think you may have

21  told me.  I apologize.

22      **A.**   I began in November of 2008.

23      **Q.**   What positions have you held at PRA?

24      **A.**   I started out as a temporary in the legal

25  department as a legal assistant, became permanent a few

1    months later.  Then in June of 2009, I transfer to our

2    strategy department and I stayed there through July of 2010,

3    and then -- I'm sorry -- August of 2010.  And, actually,

4    today's my anniversary of being a records custodian and I've

5    held this title since August of 2010.

6        Q.   Well, happy anniversary.

7        A.   Thank you.

8        Q.   I'll be sure to tell your boss over here.

9             All right.  So tell us what a custodian of records

10   does?

11       A.   I review and monitor accounts that are involved in

12   the litigation process.  It can be anywhere in the process

13   from pre-litigation to post-judgment.  I maintain the books

14   and records for all of those accounts and any other accounts

15   as needed, even if they're not in the litigation process.  I

16   testify in trials, depositions, hearings, mediations and

17   arbitrations, and I review any other documents that my boss

18   asks me to look at.

19       Q.   In this case have you taken an opportunity to take

20   a look at the policies and procedures for PRA that would

21   cover the time frame of the letter December of 2015?

22       A.   Yes, I have.

23       Q.   Would you please look at -- in that black notebook

24   there.  It's under tab b.  Can you tell me what this is?

25       A.   Yes.  This is our Customer Dispute Procedures

1    Manual that was published in August of 2013.

2         Q.   And would this be how your customer dispute

3    representatives are trained to handle accounts?

4         A.   Yes.

5              MS. MALONE:   Your Honor, at this time I would

6    offer Defendant's Exhibit D2 into evidence.

7              (Whereupon, Defendant's Exhibit No D2

8              was offered.)

9              THE COURT:   Any objection?

10             MS. CLARK:   No objection.

11             THE COURT:   Without objection, so admitted.

12             (Whereupon, Defendant's Exhibit No. D2

13             was received in evidence.)

14        Q.   (By Ms. Malone)   If you will please turn to tab C

15   and can you tell me what is under D3?

16        A.   This is the Disputes Department Supplemental

17   Training Manual which was published in December of 2013.

18        Q.   Would this have been in place in December of 2015?

19        A.   Yes, it would have.

20        Q.   And, again, is this something that would be used

21   to train dispute representatives in handling accounts at

22   PRA?

23        A.   It would be used, yes, in training of the disputes

24   department representatives and also for the ongoing

25   employees for them to refer to for anything that they

1  needed.

2         MS. MALONE:  At this time I would offer

3  Defendant's Exhibit No. 3 into evidence, Your Honor.

4         (Whereupon, Defendant's Exhibit No. D3

5         was offered.)

6         MS. CLARK:  No objection.

7         THE COURT:  Without objection, so admitted.

8         (Whereupon, Defendant's Exhibit No. D3

9         was received in evidence.)

10    Q    (By Ms. Malone) Let's talk a minute -- before we

11  get into the pages of manual, let's talk about the various

12  departments that might exist at PRA.  In this case there was

13  a dispute.  Is there a dispute department at PRA?

14    A.   Yes, there is.

15    Q.   In 2015, can you tell me roughly how large that

16  department would have been?

17    A.   Approximately 60 employees.

18    Q.   And today?

19    A.   It's about 250 employees, including the management

20  team.

21    Q.   In looking at 2015, how many managers would have

22  been assigned over that department?

23    A.   I believe at that time there were three managers.

24    Q.   Okay.  Let me ask you.  When someone is hired at

25  PRA, do they have to go through specific training?

1       A.   They have to go through very specific training and

2   very thorough training in order to become a permanent hire

3   at PRA.

4       Q.   Okay.  Can you walk us through what a -- walk the

5   jury through what a new hire would do in terms of training

6   if they were going to become a dispute representative at

7   PRA.

8       A.   Sure can.  For anyone to be hired at PRA, you have

9   to go through initial core training which involves learning

10  how to navigate our host system or proprietary software

11  program.  You have to be fully versed in the FDCPA and any

12  other federal laws as required.

13       The training is ongoing.  It starts out as a

14  two-week training but you receive training constantly.

15  We're being updated on any -- on all types of procedures.

16  So we're being trained as long as we're employees.

17       After you go through the two-week training, which

18  is very, very thorough and it's instructor-led and it's also

19  a computer-based training.

20       Once you pass all of the separate modules or

21  training modules and you have completed that part of the

22  training, then the disputes representatives will have a

23  third week of training.

24       And back in 2015 it was with an operations

25  manager.  They were actually driving through the system in

1 order to learn how to be able to manage the dispute accounts

2 that they had received.

3         They also had -- they would review different

4 examples of dispute letters, different accounts that were

5 disputed, the process to determine how to accurately mark

6 the disputes, how to properly process them.

7         They had side-by-side training with a team -- a

8 peer lead -- excuse me -- who would make sure that -- who

9 would -- I'm so sorry.  The representative would first

10 shadow the team peer, and then they would be shadowed as

11 they would navigate through the process.

12         And then, finally, they would do live training

13 where they would actually work a dispute.  And before they

14 could enter the dispute, it would have to be approved by the

15 team peer or the team lead.

16    **Q.**   Okay.  Let me back you up a little bit.  How many

17 different ways can a dispute come in on an account?

18    **A.**   There are several ways.  We can receive a written

19 letter in the mail.  We can receive a written letter via

20 fax, via email, a verbal dispute and an electronic dispute

21 which would come in through the automated consumer dispute

22 verification process.

23    **Q.**   And the automated consumer dispute verification

24 process, is that with the credit bureaus?

25    **A.**   Yes.

1    **Q.**   How does that work?

2    **A.**   It's called an ACDV and you actually would file a

3    complaint or a dispute with one of the three major credit

4    bureau reporting agencies.

5    **Q.**   Let me stop you there, Ms. Dreano.  When you say

6    you, you mean the person disputing the debt would file a

7    complaint with the bureau?

8    **A.**   Yes.  I'm sorry about that.

9    **Q.**   That's fine.

10   **A.**   The customer would file a complaint with one of

11   the bureaus.  And that information gets electronically

12   transferred to PRA's dispute department through a program

13   called e-OSCAR.  And then we -- the disputes representatives

14   actually open up a file.  They look at the ACDV.  They

15   determine what the dispute is and they process it.

16   **Q.**   So if it comes through this ACDV, through the

17   e-OSCAR as a dispute, what happens to the account?

18   **A.**   Well, immediately, it gets reviewed and placed in

19   a dispute status.  It's ought -- that information will

20   automatically be transferred back electronically to the

21   three major credit bureaus.

22          And then dependent upon what the dispute is, in

23   some cases it can be resolved very quickly by completing the

24   form and sending back documentation.

25          If we have to order additional documents, it could

148

1    take a few days to a few weeks longer.  But either way it's

2    going to get processed within 48 hours and then completed

3    hopefully shortly after that.

4        Q.   And will it be marked dispute while that process

5    is going on?

6        A.   Absolutely.

7        Q.   Okay.  When an account is given to -- in writing,

8    when that letter comes into writing, how is that handled?

9    I'm sorry.  I said that horrible question.  Let me rephrase

10   it.  When a dispute comes in writing, how is that handled?

11       A.   It depends on who receives the dispute.  And if

12   it's directed directly to the disputes department, it's

13   going to be handled immediately.

14            A manager will assign the dispute to one of the

15   representatives who will read the letter, determine what

16   exactly the dispute is, mark the account accordingly, open

17   it up -- like open up a case on our host system and process

18   that dispute.

19            Some may require a response, a written response,

20   with documents attached.  If it's something that really

21   isn't a dispute, like a cease and desist, there won't be a

22   response.  The system would just mark it as a cease and

23   desist.

24       Q.   And when an account is marked as a cease and

25   desist, are any other calls or letters directed to that

1   account?

2       A.   No.

3       **Q.**   So would anyone call someone marked as a cease and

4   desist account?

5       A.   Excuse me?

6       **Q.**   Would anyone at PRA call a customer who has a

7   cease and desist marked on their account?

8       A.   No.

9       **Q.**   How many -- just to give us an idea, how many

10  dispute letters or ACDVs are received on a given day at PRA?

11      A.   Currently or --

12      **Q.**   Well, in 2015, if you can tell me, or currently if

13  you can tell me?

14          MS. CLARK:   Objection as to relevance.

15          MS. MALONE:   Your Honor, it goes to show what our

16  policies and procedures are and how an honest mistake could

17  happen.

18          THE COURT:   I'll allow it.

19          THE WITNESS:   If memory serves me correctly, back

20  in 2015, I believe we received about 200 letters a day

21  written disputes.  Now it's more towards 500.

22      Q    (By Ms. Malone) Okay.  And ACDVs?

23      A.   Back in 2015 it was close to 2,000 a day.  Now

24  it's over 3,000 a day.

25      **Q.**   Okay.  Let me ask you a moment, if you would, to

1   take a look at Exhibit No. A which is marked as D1.  Can you

2   tell me what those documents are?

3       A.   These are screen shots from our host system, PRA

4   Net of the two accounts that we purchased that were opened

5   by Jean Jones.

6            MS. MALONE:  Your Honor, at this time I would

7   offer defendant's D1 into evidence.

8            (Whereupon, Defendant's Exhibit No. D1

9            was offered.)

10           THE COURT:  Any objection?

11           MS. CLARK:  No, Your Honor.

12           THE COURT:  Without objection, so admitted.

13           (Whereupon, Defendant's Exhibit No. D1

14           was received in evidence.)

15      Q.   (By Ms. Malone)  Ms. Dreano, when you look at this

16  account, can you tell me what the specific accounts were

17  that were being collected?  Can you tell me the name of the

18  entity that was being collected?

19      A.   For the first account?

20      Q.   Yes.

21      A.   It was a Synchrony Bank account.  And the second

22  account was opened with Comenity Bank -- I'm sorry --

23  Comenity Capital Bank.

24      Q.   Can you tell me if either of those accounts -- can

25  you tell me if the Synchrony -- that's a hard word for me to

151

1   say for some reason -- Synchrony Bank account would be

2   related to a QVC account?

3       A.   No, ma'am.  It would not.

4       Q.   Okay.  And on this account can you tell me what

5   date this account was purchased?  It -- let me make sure we

6   look at -- the first page on P1, the highlight appears to be

7   on the bottom part.  Would that be the account notes for the

8   Synchrony account?

9       A.   For the Synchrony account, yes.

10      Q.   Okay.  And can you tell me when you look on the

11  second page of that account note, what date that was first

12  received at PRA?  Would that be the purchase date?

13      A.   The purchase date was November 19, 2014.

14      Q.   Okay.  And the Synchrony account was not a QVC

15  account, correct?

16      A.   That is correct.

17      Q.   Is this the account that the dispute letter was

18  received on?

19      A.   Yes, it was.

20      Q.   Okay.  We're going to come back to that.  I just

21  want to do one more thing real quick.  If you look on Page 5

22  of those account notes, we see the other account, the

23  Comenity Capital Bank account, correct?

24      A.   That is correct.

25      Q.   All right.  On the next page, again, we'll see the

1    date that -- is that one an HSN account, by chance?

2        A.   Yes, it is.

3        Q.   Okay.  On the second one we see -- I highlighted

4    it here just for ease.  Do you see the date that it was

5    received by PRA?

6        A.   It was purchased on December 4th -- I'm sorry --

7    December 24th of 2015.

8        Q.   Do you recall from your review of the notes what

9    date the letter was dated that put the original account into

10   dispute?

11       A.   I believe it was dated December 1st of 2015.

12       Q.   So it would have been three weeks before roughly

13   before the HSN account was received by PRA?

14       A.   That is correct.

15       Q.   Okay.  If you would look with me on Page 3 of the

16   account notes.  And I, just for ease, highlighted the top

17   part.  Do you see a note on December 2, 2015?

18       A.   Yes.

19       Q.   Can you tell us what that means?  Could you

20   explain what the abbreviations on that line mean,

21   Ms. Dreano?

22       A.   Okay.  So we have several lines.  If we go to the

23   bottom one, that was actually the first note that would have

24   been on the account that day.  And it was entered by our

25   disputes department and it says CND requested by N1, which

1    means a cease and desist was requested by the primary

2    borrower or debtor or customer.

3        **Q.**    That would be Jean Jones?

4        **A.**    Yes.

5        **Q.**    And what does the next line say for December 2nd?

6        **A.**    Received internal email scanned to account.  N1

7    states refuses to pay debt and no further contact.

8    Processed via collect info.

9        **Q.**    When you look at the additional notes that go

10   after that, were there any indication that there were

11   telephone communications with Ms. Jones following this

12   account entry?

13       **A.**    There were no further communications with

14   Ms. Jones following this entry.

15       **Q.**    Either letter or verbal?

16       **A.**    Nothing.

17       **Q.**    Okay.  All right.  I want you to look with me,

18   please, in Exhibit No. C [sic], I'm going to look at Page 27

19   which is titled Written Disputes.

20                THE COURT:  Do you mean Exhibit 3?

21                MS. MALONE:  Did I say C, Your Honor?

22                THE COURT:  Yes.

23                MS. MALONE:  D3.

24                THE COURT:  Okay.  All right.

25                MS. MALONE:  I apologize.

154

1    Q    (By Ms. Malone) Okay.  Ms. Dreano, can you tell us

2    basically what we're looking at in the PRA Policies &

3    Procedures?

4    A.    This is an exert from our Disputes Department

5    Supplemental Training Manual that was authored in December

6    of 2013.  And this is the process that we would go through

7    or the disputes representative would go through in order to

8    update an account with a written dispute.

9    Q.    Okay.  And so the first one says, Select collect

10   info link, correct?

11   A.    Correct.

12   Q.    Would that be on the account notes?  Would that

13   be -- that link, would it be contained within the account

14   notes?

15   A.    It would be contained on our host system.

16   Q.    Okay.

17   A.    On the account notes screen?

18   Q.    Would that be on Page 2 of Exhibit D1?

19   A.    I'm sorry.  Did you say B1?

20   Q.    D1, page PRA2.

21   A.    I'm sorry.

22   Q.    I'm sorry.

23   A.    No.  That's me.  I'm sorry.

24   Q.    Okay.  Are you a little nervous?

25   A.    I am very nervous.  I'm sorry.

1      **Q.**   It's your anniversary.  You can't be nervous on

2    your anniversary.

3      **A.**   I'm sorry.  Okay.  So on D1 if you look at

4    PRA0002, so that's the second page.  Oh, yours looks

5    different from mine.  I'm sorry.  Where you have highlighted

6    the yellow tab or the yellow highlight where it says Collect

7    info, that's the portal in our host system that you would

8    click on in order to open up the collect information screen.

9      **Q.**   Okay.  And in this case could you see from your

10   review of the notes if the dispute representative in fact

11   clicked that link when they received the letter on

12   December 2nd?

13     **A.**   Yes.  I verified that it was not only clicked but

14   that the information was entered.

15     **Q.**   And would the information then that would be

16   entered, would that be the material that we saw on PRA3

17   where it was marked as a cease and desist?

18     **A.**   Yes.

19     **Q.**   That would be the same person to do both jobs?

20     **A.**   Yes.

21     **Q.**   Okay.  All right.  Let's go back to the dispute

22   manual.  And after they click the collect information,

23   what's the next step that would occur?

24     **A.**   The disputes representative would be instructed to

25   please select which debtor is communicating.  And you can

1  see -- you can see where Debtor 1 has a little dot there.

2  That's where it was selected in that particular part of the

3  form.  And then the representative would check all that

4  applied to this particular dispute.

5      **Q.**   Okay.  And this is a sample so it has a circle

6  around the first one.  Would that be what they would do,

7  mark a specific one?

8      A.   Yes.  That would be if they selected the customer

9  disputes account.

10     **Q.**   Okay.  And in this -- this account, I see below it

11 says, Check all values that apply?

12     A.   That is correct.

13     **Q.**   So would they check more than one if it was

14 applicable?

15     A.   Yes.

16     **Q.**   In this particular case which one did the

17 representative select?

18     A.   The bottom one, customer requests cease and desist

19 on accounts.

20     **Q.**   And should -- was that a mistake?

21     A.   Yes.

22     **Q.**   They should have -- should they have selected more

23 than one category?

24     A.   Yes.

25     **Q.**   And what other categories should they have

1    selected?

2        A.   The first one, customer disputes account, and then

3    of course the last one.

4        Q.   Now, Ms. Dreano, does PRA operate a quality

5    control program?

6        A.   Yes, we do.

7        Q.   And in that quality control program, how often are

8    dispute representatives reviewed?

9        A.   They're reviewed many times a month.  They -- it

10   depends upon who is actually reviewing.  It could almost

11   literally be several times a week.  They have managers that

12   review them.  They have operations managers that review

13   them.  They have an internal quality team that does QC

14   reviews and our regular quality control team that does

15   reviews.

16       Q.   And is each specific dispute representative

17   required to be reviewed multiple times per month?

18       A.   Absolutely.

19       Q.   Is anybody given a pass on that?

20       A.   No.

21       Q.   Okay.  You talked earlier about the training

22   program that they would go through and get experience on.

23   Are they tested about their knowledge within that program?

24       A.   Yes, they are.  They actually have to somewhat

25   graduate the program in order to become a representative.

1   There are testing modules throughout the initial two-week

2   training and then during their third week of training.

3       **Q.**   And what is the level that they have to pass the

4   testing at?

5       A.   Minimum of 80 percent.

6       **Q.**   Have you been tested?

7       A.   I've been tested too many times.

8       **Q.**   Okay.  Are you tested on an annual basis after you

9   complete the training?

10      A.   Yes.

11      **Q.**   And is that true of every employee at PRA?

12      A.   Every employee.

13      **Q.**   And if an employee fails to pass the test, what

14  happens?

15      A.   You have to retake the test until you do pass it.

16  If you are having trouble with a specific module or portion

17  of the training, then you're going to be given some private

18  coaching in order to be able to pass the module.

19      **Q.**   If an employee makes a mistake and it's caught

20  either through quality control or caught at the time by a

21  manager, what can happen to that employee?

22      A.   They could receive some additional coaching and

23  counseling.  They could go through retraining or they could

24  be put on notice.  If it's a really big, bad mistake,

25  they'll be terminated.

1    **Q.**   Is there -- if it's a mistake where it's a mistake

2   like we're talking about, where they clicked one of boxes

3   but not the other one, are they allowed to make that mistake

4   more than once?

5    **A.**   They shouldn't be.  I mean, if you keep making the

6   same mistakes, you're going to have to be retrained.  And if

7   it's a very serious mistake, you're not going to get a

8   second chance.

9    **Q.**   Okay.

10    **A.**   You make that mistake a second time and you will

11   be terminated.

12    **Q.**   All right.  Continuing in the training manual.  On

13   the next page of -- I think we're still on D3.  I'm looking

14   at Page 28.  After -- I need to figure out how to operate

15   the -- after the little box on the collect info comes and

16   they check their box, what's the next thing that happens?

17    **A.**   I should have brought my reading glasses.  So

18   sorry.

19    **Q.**   That's okay.

20    **A.**   So we're at the very top?

21    **Q.**   Uh-huh.  Yes.

22    **A.**   I can't --

23    **Q.**   Can you see it?  I really want to go to the

24   paragraph below that.  Do you see where I highlighted just

25   to make it simpler?  Do you see it says --

160

1    A.    Yeah.

2    Q.    What does it mean where it says, If you can

3  decision the dispute?

4    A.    If you can make a determination about the dispute?

5  Is it a dispute?  Is it a cease and desist?  Is it a refusal

6  to pay?

7    Q.    Well, it seems like the word "dispute" would be

8  pretty simple to understand.  Why is there a process where

9  you have to make a decision?

10   A.    Many people don't actually say, I am disputing

11 this account.  They may say other things.  We have so many

12 words in the English language and so many different ways to

13 describe or attempt to describe what it is we're trying to

14 communicate.

15         They may say, I can't pay the account.  I'm having

16 a hardship, and I don't think that balance is correct, but I

17 want to enter into some type of payment arrangement.  So you

18 have to figure out exactly what their needs are or what

19 they're attempting to communicate to us.

20         Some people may just say, I don't agree with the

21 balance.  That could be a dispute if it doesn't go further

22 than that.  Others may just say, I don't want you to call me

23 anymore, and that's a cease and desist.

24   Q.    Okay.  After the dispute is decisioned, does the

25 account become updated or is there a change to reflect the

1    status of the dispute?

2        A.    Yes.

3        Q.    And is that the error that was made in this case?

4        A.    Yes.

5        Q.    And, Ms. Dreano, did you go back and look at the

6    underlying notes of the call-out to verify with your own two

7    eyes where the error was made?

8        A.    I'm sorry.  Did I look through?

9        Q.    Did you go look at the actual call-out on that

10   collect info sheet to determine where the exact error was

11   made?

12       A.    Yes, I did.

13       Q.    And are you certain that it was marked as cease

14   and desist only but not a dispute?

15       A.    That's correct.

16       Q.    Why are the policies and procedures written the

17   way that they are?  Why so much time to go in through the

18   training through the call-outs?

19       A.    Because if we make a mistake, it could have a

20   detrimental effect.  If we mark an account as a dispute and

21   it's not a dispute, it could affect your credit.

22             If we don't properly mark a cease and desist,

23   that's really going to have problems because we're going to

24   continue to call you.  And once you ask us not to call you,

25   we cannot contact you again by phone.  We could send you a

1    letter but we can't call you.

2          If we mark an account as a dispute and it's

3    something that is unresolved and you attempt to get a loan

4    at a later date, like a car loan or refinance your home or

5    buy a home, it could have a detrimental effect on your being

6    approved for that loan until that dispute is removed.

7    **Q.**   Are the policies and procedure at PRA designed to

8    prevent those kinds of errors from occurring?

9    A.   Yes, they are.

10   **Q.**   And in this -- in this particular case did the

11   error occur despite the fact that the policies and

12   procedures were in place in 2013 and were being used?

13   A.   Unfortunately that's what happened.

14   **Q.**   And did you verify that the person that made the

15   error did go through all the training that is required at

16   PRA?

17   A.   Yes.

18   **Q.**   And the annual testing and annual training?

19   A.   Yes.

20   **Q.**   And I forgot to ask you about that.  You said you

21   were tested annually.  Is there any sort of refresher course

22   that occurs on an annual basis?

23   A.   The annual testing or refresher course is for many

24   different policies and procedures at PRA.

25   **Q.**   Okay.  And you said that there was ongoing

1  training at PRA all of the time.  Are there weekly meetings

2  for the teams, the various teams?

3      A.   It depends on the team and what department you're

4  working in.  For example, my department may only have two or

5  three weekly meetings a month.  The disputes team has a

6  weekly meeting every Monday.

7           Every specific team in the disputes department

8  will have the same type of weekly meeting.  They have the

9  same agenda.  They go over the same things.  They go over

10  the same updates or any changes that are necessary.

11      Q.   Would those changes include any upgrades to your

12  computer system so they would learn if there was a

13  difference in how the windows appear on something like the

14  collect info screen you looked at?

15      A.   Yes.

16      Q.   Is this something that is done for the dispute

17  resolution -- I know you said it's at PRA but I just want to

18  make sure that it specifically occurs also in the dispute

19  team as well.

20      A.   Yes, it does.  They have the weekly meeting and

21  then if anything else is required, they will get more

22  training.

23      Q.   Okay.  Prior to the letter -- according to the

24  account notes, prior to the letter that was received in

25  December of 2015, since the original account was opened in

1  2014, was there any communication from Ms. Jones indicating

2  she disputed the debt?

3      A.   None whatsoever.

4      Q.   Was there any indication in any of the telephone

5  calls that she made a verbal dispute of the debt?

6      A.   No.

7      Q.   If a verbal dispute is received at PRA, how is

8  that handled?

9      A.   We will mark the account as disputed and then

10  respond to whatever the dispute is.

11     Q.   So if it's in writing or verbal, PRA treats it as

12  a dispute?

13     A.   That's correct.

14          MS. MALONE:  Pass the witness, Your Honor.

15          THE COURT:  Mr. Zimmer?

16                  ==================
                    CROSS-EXAMINATION
17                  ==================

18  BY MR. ZIMMER:

19     Q.   Thank you for schlepping all the way out to do

20  this, Dreano.  I appreciate it.

21     A.   You're welcome, sir.

22     Q.   Can you tell me, do you travel a lot for your job?

23     A.   Maybe three or four times a year.

24     Q.   Okay.  So how many days a month would you say

25  you're in the office versus traveling?

1      A.    Almost every day, Monday through Friday.

2      **Q.**    Okay.  All right.  Thanks.

3            So how many trials and depositions would you say

4      you have given testimony for in the last two years?

5      A.    I have probably testified in I'm going to say

6      maybe five or six trials in the last few years, and that

7      might actually be pushing it.  I don't know if it's been

8      that many.  And I think I've had at least five or six

9      depositions in the last two years.

10     **Q.**    So could you tell us out of all those cases, were

11     there any that involved a dispute letter from a consumer

12     that slipped through the cracks as allegedly has happened

13     here?

14     A.    I can't give you a hypothetical on that.  I can't

15     recall every single case that I have testified on.

16     **Q.**    Okay.

17           MR. ZIMMER:  I would like to offer into evidence

18     Plaintiff's Exhibit A, the dispute letter.

19           (Whereupon, Plaintiff's Exhibit No. A

20           was offered.)

21           MS. MALONE:  Your Honor, I don't know what the

22     predicate is for that.

23           THE COURT:  Is that not agreed?

24           MS. MALONE:  No, sir.

25           THE COURT:  Okay.

1          MR. ZIMMER:  Well, I believe Ms. Jones has

2    identified this letter already as the dispute letter sent on

3    her behalf during her earlier testimony.

4          MS. MALONE:  Your Honor, they didn't lay the

5    predicate and they didn't offer the evidence.  The testimony

6    was she did not author that letter, and the testimony was

7    she did not cause that letter to be sent by her request for

8    admissions, Judge.

9          THE COURT:  I'll sustain the objection.

10    Q.    (By Mr. Zimmer)  Okay.  So here is my question for

11    you:  Knowing what you know about the way disputes are

12    processed, given all the policies and procedures we've just

13    talked about, what would happen if a dispute letter came

14    through and it contained a phrase something like, The amount

15    you are reporting is not accurate?  How would that dispute

16    letter be handled?

17    A.    It would be dependent upon the entirety of the

18    letter.

19    Q.    Uh-huh.

20    A.    If the letter only said, You're not reporting an

21    accurate amount, it would be marked as a dispute.  But most

22    letters contain a little bit more information than that.

23    Q.    So if it was a letter from a consumer that

24    happened to say, I can't pay the debt and the amount you're

25    reporting is not accurate, how would that letter be handled?

1        A.    Would there be anything else after?

2        Q.    Just if it literally just said those two

3    sentences, how would that letter be handled?

4        A.    Then we would mark it as a dispute.

5        Q.    Okay.  So in this situation why was the

6    plaintiff's dispute letter not coded as a dispute?  Why did

7    it slip through the cracks?

8        A.    It was a mistake made by the disputes

9    representative.

10       Q.    Okay.  So of all the procedures and policies that

11   we've heard about and that you've described, can you

12   identify which particular procedure or which particular

13   policy that PRA has in place that's designed to prevent this

14   specific kind of error?  In other words, it appears that the

15   mistake was that PRA did not think that the letter was a

16   dispute because it contained other information besides a

17   dispute of the debt.

18           So I guess my question is, what about your

19   policies and procedures is designed to handle a letter where

20   more than one topic is raised by a consumer?

21           In the hypothetical I gave you to the consumer

22   says, I don't think the amount you're reporting is accurate

23   and I can't pay the debt.

24           So what about the procedures and policies is

25   designed to handle a letter that's basically asking PRA to

1    walk and chew gum at the same time?

2         A.   Okay.  I do apologize, sir.  You've just run a

3    whole lot by me.  Can you just break that down into what

4    exactly it is you're asking?

5         Q.   Okay.  So all -- I apologize if I wasn't clear.

6    So of all the policies and procedures that you have

7    described, what policies and procedures specifically are

8    designed to handle a letter like this where the consumer is

9    asking PRA for two things or where the consumer is saying

10   more than one thing to PRA in that dispute letter?

11        A.   Well, when we receive a multiple request, it can

12   be exactly as I just explained to Ms. Malone where we would

13   open up the disputes module and we would enter more than

14   one -- more than one item under that -- under that -- I'm

15   sorry -- under that module.  If you can give me a moment, I

16   can go through and point it out to you.

17        Q.   Sure.  Take your time.

18        A.   On Exhibit D3 in the Supplemental Disputes

19   Department Training Manual, Page 27, which was pulled up on

20   the screen before, under the information collection system

21   two items could be selected there, two or more.  Any values

22   that would actually apply is how it should have been entered

23   and that's how I explained it when Ms. Malone asked.

24             MS. CLARK:  Objection.  Move to strike as

25   nonresponsive.

1        THE COURT:  It's not your witness.

2        MR. ZIMMER:  Objection.  Move to strike as

3   nonresponsive.

4        THE COURT:  Overruled.

5    Q.   (By Mr. Zimmer)  Okay.  So this particular

6   situation where the consumer is asking for two things in the

7   dispute letter, so you say normally that what would have

8   happened is that your dispute person would have coded it

9   with two codes: cease and desist and dispute?

10   A.   That is correct.

11   Q.   Okay.  So we've heard what happened characterized

12   as the dispute letter from Ms. Jones' law firm slipped

13   through the cracks.  Is there something particular about

14   dispute letters that are sent on a consumer's behalf by a

15   law firm that would cause the letter to be ignored or the

16   dispute portion of the letter to be ignored simply because

17   it's from a law firm?

18        MS. MALONE:  I'm going to object, Your Honor.

19   There's no indication that this letter was on its face from

20   a law firm.  There's testimony that she didn't author the

21   letter but it did not come with the letter of law firm or

22   the law firm's letterhead on top of it which is what his

23   question implies.  So it assumes facts not in evidence, Your

24   Honor.

25        THE COURT:  I'll allow the question.

1    Q.    (By Mr. Zimmer)   So to rephrase, specifically what
2  is it about a letter, a dispute letter, sent by a law firm
3  on behalf of a consumer that would cause the dispute portion
4  of that letter to be ignored or slipped through the cracks
5  as appears to have happened here?

6    A.    Well, if this letter had letterhead from a law
7  firm or indicated that the customer was being represented by
8  an attorney, we would have first marked the account as being
9  represented by an attorney.  Then we would have taken the
10 next steps.

11         If we saw that it said the account was -- is in
12 dispute or the balance is being disputed, we would have
13 marked it as a dispute.

14         Typically what we find are that when we receive
15 something from an attorney, they're going to be very clear
16 in what they ask us for or what they convey to us in that
17 piece of correspondence.

18         When we receive a letter that could be a little
19 bit more vague, sometimes we'll have to try to determine
20 what the actual dispute is.

21    Q.    So do you think the phrase, The amount you're
22 reporting is not accurate, do you think that's a dispute?

23    A.    It's calling the amount into question.

24    Q.    Is that a dispute?

25    A.    It can be considered a dispute, yes.

1  **Q.**   Okay.  So why wasn't it considered a dispute in

2  this circumstance?

3  **A.**   I do not know why it was not marked as a dispute.

4  It was an error made by that particular representative.

5  **Q.**   Do you know how many months after the dispute

6  letter was received, for how many months -- let me rephrase.

7  How often does PRA report information to the

8  credit bureaus?  Is it once a month generally?

9  **A.**   Yes.

10  **Q.**   Okay.  So how many months went by before PRA

11  marked Ms. Jones' account disputed on her Experian report?

12  **A.**   I believe it would have been reported one more

13  time after we received her initial letter.

14  **Q.**   Okay.  So was it ever reported to Experian as

15  disputed to the best of your knowledge?

16  **A.**   I don't know.

17  **Q.**   Is it possible that PRA never bothered to code it

18  as disputed, never sent that information to Experian?

19  **A.**   I believe we coded it as a cease and desist, not a

20  dispute.  And then when we received correspondence from your

21  law firm, we stopped reporting.

22  **Q.**   Okay.  So after receiving the dis-- well, let me

23  phrase it this way:  So after PRA was sued by my client,

24  would that not have been a hint maybe that the debt was

25  disputed?

1    A.   We did receive a complaint but rather than -- but

2  we actually just stopped any reporting rather than changing

3  our reporting.

4    Q.   So after you -- after PRA was sued, you still did

5  not report the debt as disputed to Experian even though the

6  complaint specifically complained about that failure?

7    A.   I don't know that we ever reported it as disputed.

8    Q.   Okay.

9         MR. ZIMMER:  No further questions.

10        THE COURT:  Any followup?

11        MS. MALONE:  Just a moment, Your Honor.

12        No further questions, Your Honor.

13        THE COURT:  All right.

14        Thank you, ma'am.  You may step down.

15        THE WITNESS:  Thank you.

16        THE COURT:  Do you have any other witnesses or

17 evidence?

18        MS. MALONE:  No, sir, but could we ask that

19 Ms. Dreano be excused?

20        THE COURT:  Yes.

21        Is she free to go?

22        MS. CLARK:  Yes.

23        THE COURT:  Okay.  All right.  Do you have any

24 rebuttal evidence?  I'm sorry.  Do you rest, I should have

25 asked?

1      MS. MALONE:  Yes, Your Honor, I do rest.  Thank

2   you.

3           MS. CLARK:  Can we approach, Your Honor.

4           THE COURT:  Yes.

5                   ===================
                    BENCH CONFERENCE
6                   ===================

7           (The following proceedings occurred at

8            the bench, outside the presence of the

9            jury, with only counsel present.)

10          MS. CLARK:  Your Honor, can deposition testimony

11  be used as rebuttal evidence?  We talked about not bringing

12  it in but it has been put on the disclosures and it was used

13  in the motion for summary judgment.

14          THE COURT:  No.  I disallowed that for all

15  purposes.

16          MS. CLARK:  Okay.  Thank you.

17                   ===========
                    OPEN COURT
18                   ===========

19          (The following proceedings occurred in

20           open court, in the presence of the jury,

21           with all parties present.)

22          THE COURT:  All right.  Do you have any additional

23  or rebuttal evidence?

24          MS. CLARK:  No, Your Honor.

25          THE COURT:  Okay.  Thank you.

1          So, ladies and gentlemen of the jury, it is just a

2     little after 2:15 and we are done with the evidence in this

3     case.

4          As a consequence, we're going to need a few

5     minutes to get the jury instructions in order before the

6     closing arguments are made in the case.

7          And so we're going to take about a 30-minute

8     break.  So if you could retire to the jury room and be

9     available in about a half an hour, we'll do our best to be

10    ready then with the jury instructions.

11         Then you will hear the final arguments from

12    counsel and I believe it looks like that this case will be

13    submitted to the jury this afternoon.

14         So with that, I'll ask you to retire for a half

15    hour recess.

16              (Whereupon, the jury exited the

17              courtroom.)

18         THE COURT:  Thank you.  Please be seated.

19         All right.  Just a couple of matters I wanted to

20    raise with you.  First with regard to the Rule 50 motion

21    that was raised earlier.

22         One of the difficulties I have there is referring

23    to your motion for summary judgment.  If you refer to

24    section 2, paragraph 2, under the title of Undisputed Facts

25    it does refer to that Synchrony bank account, and it appears

1    to concede that that is the account that's in play in this

2    case.  Do you see where I am?  Are you following me?

3            MS. MALONE:  I'm looking for my summary motion,

4    Judge.  I apologize.

5            THE COURT:  Okay.  It's just --

6            MS. MALONE:  But, Judge, I'm listening to your

7    statement and maybe I'm unclear.  We agreed that it was the

8    Synchrony account that was involved.  The problem is that

9    they didn't put on evidence that that account was a consumer

10   account, that it was used primarily for household or

11   personal goods.

12           And the testimony that they had was that there was

13   a QVC and an HSN account that were for personal items.

14   Ms. Dreano gave -- well, I was going to reurge my motion --

15           THE COURT:  Right.

16           MS. MALONE:  -- gave the other testimony that

17   neither one of those are the Synchrony account that's in

18   question.

19           THE COURT:  And that's where I was headed with

20   this is that I want to make sure that I'm understanding what

21   your suggestion is, that it's not so much that the evidence

22   isn't tracking the complaint.  It's that whatever account

23   we're talking about, that if we are talking about the

24   Synchrony bank account, then they haven't sustained their

25   burden of demonstrating that's a consumer account.  Is that

1   your position?

2              MS. MALONE:  Yes, Your Honor.  That's exactly

3   correct.

4              THE COURT:  What's your response to that, because

5   that seems to be a legitimate argument.

6              MS. CLARK:  Your Honor, I think that --

7              THE COURT:  If you could stand, please.

8              MS. CLARK:  I think a reasonable finder of fact

9   could find that we have sustained the burden that any --

10  there never was any business debt.  Any of the accounts

11  alleged to be from the Portfolio Recovery Associates has

12  regarding Ms. Jones.  Any of the ones they produced in

13  discovery, any that they haven't produced in discovery, I'm

14  completely confused about which account they now are saying

15  because it doesn't seem to match those produced in discovery

16  by their office.

17             However, any account that Ms. Jones has always a

18  consumer debt, any debt that she's taken out, and there's

19  been zero controverting evidence to that fact.

20             She's testified endlessly there was a shadow of a

21  business that never took off.  All it was was incorporation,

22  and there really -- I don't believe that -- I believe that

23  it would be entirely possible for a finder of fact to find

24  more likely than not that this was primarily consumer debt.

25             THE COURT:  So then to make sure I'm

1   understanding, is it -- is the basis of your claim the

2   Synchrony account?

3           MS. CLARK:  At this point I don't know because I

4   wouldn't know.  We produced Synchrony documents.  I'm sorry,

5   Your Honor, I was responding to a motion and that was unsure

6   of me.  The documents were produced.

7           Originally this was written about Portfolio

8   Recovery Associates and it's often, with the debt-buyer

9   being assigned, it is somewhat of a guess as to what account

10  is being claimed.

11          The issue at issue was the -- whatever was

12  reported on the credit report, it's not reported with any

13  bank labeling.  It just says PRA and so that's what the

14  complaint was written about.

15          The documents produced in discovery were for

16  Synchrony Bank.  This was the supplement.  It wasn't the

17  original but in their supplement they produced.

18          And then in their second supplement they produced

19  different ones which were for I believe the Comenity Bank,

20  all of those banks are related to --

21          THE COURT:  Well, rather than talking about --

22  hold on.

23          MS. CLARK:  I'm sorry.

24          THE COURT:  I'm not so interested about what the

25  discovery was.  I'm interested now that the evidence is

178

1   closed about what the evidence was.

2           And the evidence is that the accounts that were of

3   concern or that were the subject to the letter or the

4   alleged impermissible contacts were the Synchrony account,

5   right?  That's the only evidence; is that right?

6           MS. CLARK:  No.

7           THE COURT:  Okay.

8           MS. CLARK:  The evidence is that any account she

9   had was consumer debt.

10          THE COURT:  No, no.  I'm saying based on the

11  documents that are now into evidence, Defendant's 1 and -- I

12  guess Defendant's 1.

13          MS. CLARK:  I'm sorry, because we didn't bring the

14  statements into evidence.

15          MS. MALONE:  It's Defendant's 1, Your Honor is the

16  account notes.

17          THE COURT:  Yes, Defendant's 1.  So the account

18  notes establish that it's the Synchrony bank account that

19  was -- that drove the activity that's complained of in this

20  lawsuit; is that right?

21          MS. CLARK:  Let me check.

22          MS. MALONE:  Yes, Your Honor.

23          MS. CLARK:  I'm sorry.  I'm still being asked the

24  question, right?

25          THE COURT:  Sure.

1          MS. CLARK:  Just because I'm seeing which one

2     is -- it's by date.  Isn't that the issue?  The purchase

3     date of 11/29 does appear to be for Synchrony Bank one which

4     is the home design account.  So let me just check to see

5     what the other one is just to make sure.

6          Yes, Your Honor.  It is the Synchrony.  Looking at

7     the dates and the times, this also kind of explains where

8     the phone calls were coming from, I think.  But the

9     Synchrony Bank was the account that was disputed --

10          THE COURT:  Okay.

11          MS. CLARK:  -- as I mentioned.  So, yeah, then,

12     again, the evidence is there's no evidence controverting her

13     testimony that she's never had a business, all she's ever

14     had has been as a consumer.

15          THE COURT:  And, Ms. Malone, what is your response

16     to the fact that with the blanket evidence that she never

17     had anything other than consumer debt and that a reasonable

18     jury could find that that includes this Synchrony account?

19          MS. MALONE:  Well, Your Honor, I would again

20     suggest the Court read the *Campbell* case because it was the

21     obligation of the plaintiff to establish, regardless of

22     their own actions, that the specific debt being called on

23     was in fact a consumer debt.

24          If the Court just looks at the definition under

25     1692A from the FDCPA, it is very specific that it says, An

180

1  obligation or alleged obligation of a consumer to pay

2  arising out of a transaction in which the money, property

3  insurance, et cetera, would be for household services.

4          There is no case law that says just a generic, I

5  only do personal stuff, is sufficient.  There is case law

6  saying it is the onus of the plaintiff in fact to show that

7  the debt in controversy was a consumer debt.

8          THE COURT:  Do you have a citation for that case,

9  the case that you referred to a minute ago?

10         MS. MALONE:  I can get it for you, Judge.  I keep

11 getting sidetracked from pulling it but I will get it for

12 you.

13         THE COURT:  Sure.

14         MS. CLARK:  Your Honor, may I?

15         THE COURT:  I'm going to go ahead and continue

16 this.  We're going to go ahead and let this go to the jury

17 but I want to continue to look at this question in case we

18 need to revisit it.

19         MS. CLARK:  Okay.

20         THE COURT:  That's okay.  If you can just work on

21 that while we are on our break.

22         MS. MALONE:  I'm sorry, Judge.

23         THE COURT:  That's okay.  We're going to get you a

24 copy of the proposed instructions.  One question I have

25 before we finalize our draft, though, is I was wondering

1   whether the defense is objecting to the strict liability

2   instruction that the plaintiffs have offered?

3           MS. MALONE:  Judge, could you tell me which number

4   it is to get me there faster?

5           THE COURT:  What number is that?

6           MR. ZIMMER:  It's number nine.

7           THE COURT:  Number nine.

8           MS. MALONE:  Thank you.

9           We did have an objection to number nine in the way

10  that it is worded, Your Honor, because the way that the

11  question they suggest sort of implies that they don't have

12  to do the finding of the consumer status and the words that

13  they have are not -- that I -- sort of imply that they don't

14  have to prove the initial consumer status.

15          And I don't know if the Court wants to put some

16  clarifying language that if you find that it's a consumer,

17  then strict liability would apply.

18          But the way I read this, it struck me as

19  eliminating that issue.  And I don't -- and also suggesting

20  that the bona fide error wouldn't apply on both ends of it,

21  and that the way it's read, it doesn't seem to give you the

22  opportunity for a bona fide error defense which I think we

23  are absolutely entitled to.

24          THE COURT:  I think that was a concern, and so it

25  might be that we might need to -- perhaps there's some

1  version of this that we could include the concept that it's

2  a strict liability offense with the caveat that she's

3  suggesting with regard to still having to show the consumer

4  debt and the availability of the bona fide defense.

5         MS. CLARK:  I understand -- as far as the bona

6  fide error, I think -- I think it's clear but, of course, I

7  do this all the time.  So I understand -- yeah, to make it

8  sure that the jury understands once they've decided, yes,

9  there is a violation, then you look at bona fide error.

10        There might be some way to, you know, if she has

11 some suggested language for that, keeping the strict

12 liability but making it clear to the jury, first this, now

13 this.  Consider this.  That makes sense.

14        As far as the consumer debt, I don't understand

15 how that's an issue because where is -- it kind of the order

16 of things because of course they have to prove the consumer

17 debt.  I'm looking for -- I mean, they have to prove

18 everything.  It's just that it's strict liability.

19        Are we looking at number nine?  Okay.  It's just

20 talking about what we need in ten.  The plaintiff needs to

21 show -- oh, could we just change the first sentence of

22 paragraph two.  Plaintiff need only show that defendant's

23 collection of a consumer debt was wrongful and resulted in

24 what the law does not permit instead of conduct.

25        THE COURT:  I think that probably --

183

1          MS. MALONE:  But, Your Honor, what if we said,

2     Plaintiff needs to show that plaintiff meets the definition

3     of consumer and defendant's conduct was wrongful?  And then

4     at the end of that you would have to put in a reference to

5     the bona fide error of that sentence.

6          MS. CLARK:  That sentence going on, I don't know.

7     I think my way says the same thing.  It was just shorter.

8     These already are kind of long.

9          THE COURT:  We'll take a look at it and we'll give

10     it a shot and then you'll have an opportunity to give us

11     your views on what we come up with.  But those are things I

12     wanted to ask before we put something together.

13          So we will get something to you just as soon as we

14     can for your review and then we'll give you an opportunity

15     to review it and make objections to it.

16          Then I would anticipate we'll go straight into

17     making our closing arguments.  I'll give you -- I don't

18     think you're going to need much time but I'll give you 15

19     minutes a side.  If you split it, the first person has to

20     take up at least half the time.

21          MS. CLARK:  Oh, I thought you meant between us.

22     I'm sorry.

23          THE COURT:  Yeah.  And then -- okay.  So we'll

24     take a brief recess.  Yes.

25          MS. MALONE:  Judge, I realize that I misspoke when

184

1    I was naming that case.  It's *Coleman*, not *Campbell*.  But I

2    will get the Court an actual cite.  It's *Coleman v. CMI*,

3    which is a CMI group and it was out of -- okay.  You did

4    have it?

5              MS. CLARK:  I have the cite.

6              MS. MALONE:  All right.  I apologize.  I was

7    saying the wrong word and I just now realized it.

8              THE COURT:  Not a problem.

9              MS. CLARK:  Your Honor --

10             THE COURT:  Yes.

11             MS. CLARK:  -- on that question with the different

12   cases coming in about the consumer debt, if it's something

13   that's still being considered, are we allowed to brief it?

14   Would you allow for briefing time on that?

15             THE COURT:  Sure.  If we get to that point.  All

16   right.  Thank you very much.

17             (Whereupon, a recess was then taken at

18             3:35 p.m. and the trial resumed at the

19             hour of 3:41 p.m.)

20             THE COURT:  All right.  I will be glad to

21   entertain objection to the proposed jury charge at this

22   time?  Any objection from the plaintiff?

23             MS. CLARK:  No, Your Honor.

24             THE COURT:  Okay.  Thank you.

25             Anything from the defendant?

1    MS. MALONE:  Your Honor, I have a couple -- do you

2  want all of my objections, my ones for the record about the

3  sufficiency of the evidence too while I'm doing it all at

4  one time?  I know you're not going to rule on it but...

5    THE COURT:  Sure.  No.  You can go ahead and do it

6  at the same time.

7    MS. MALONE:  On Page 7 in the charge itself under

8  the FDCPA damage provision, there's a section here that

9  describes any actual damages sustained by a person.  And I

10  think that would be particularly confusing because there's

11  no actual damages -- there are no actual damages being

12  sought by the plaintiff in this case, Your Honor.

13    They are not sought in the petition.  They have

14  not provided any evidence to that.  I don't think that they

15  are -- I think her testimony was she wasn't seeking any sort

16  of damages as well.

17    So I think that we should remove that reference

18  there.  And if you want to just take off the number two and

19  just say additional -- or damages as you may allow but not

20  exceeding 1,000 or if you want to put the word "statutory"

21  there.  But I'm afraid if you leave it as actual damages,

22  that would be confusing to the jury.

23    THE COURT:  What's your response to that?

24    MS. CLARK:  The way it's written, it's explaining

25  what's technically allowed.  And there was quite a lot of

1   testimony regarding -- I mean, that you read into evidence,

2   all of that was talking about actual damages.

3            So to me it makes sense to leave it.  I don't

4   think it's confusing at all because it might be -- I

5   honestly think it might be more confusing to leave it off

6   because then the jury's going to say, Well, why -- is the

7   jury going to wonder why were they talking about actual

8   damage so much if we don't have it, however, it's not --

9            MS. MALONE:  Judge --

10           MS. CLARK:  -- it seems important.  I don't --

11           MS. MALONE:  Judge, I think for one thing when you

12  look at the interrogatory question, it specifically says

13  statutory damages.

14           And so if you go back and look at the way it's

15  defined in there, there's nothing to tell them what

16  statutory damages are.  There's actual damages and

17  additional damages.

18           I think that if the point of the charge is to

19  assist the jury in understanding how to answer the

20  interrogatories, that gives them no guidance.  And it would

21  be confusing.

22           MS. CLARK:  The next sentence is all about

23  statutory damages if you turn the page.

24           MS. MALONE:  Well, then, Judge, why don't we just

25  remove that entire paragraph and just have it say, It's not

1  defeated by bona fide error defense.  Remove that paragraph

2  and just say, In determining an amount of statutory damages

3  to be awarded.

4         LAW CLERK:  So, I'm sorry, are you saying remove

5  the paragraph beginning the "FDCPA provides" and leave the

6  paragraph "In determining an amount"?

7         MS. MALONE:  Yes.

8         THE COURT:  Yeah.  I think that makes sense,

9  actually.

10        MS. MALONE:  Okay.

11        THE COURT:  Okay.  I'll grant that.

12        MS. MALONE:  Okay.  And that's one I think we can

13  fix and the other one are my official objections to

14  submission of the issues, Your Honor.  I would specifically

15  object to the submission of the Special Interrogatory No. 1

16  and No. 4 which have to do with consumer status of the

17  plaintiff in addition to the *Coleman* case which I was

18  improperly calling to the Court earlier.  I provided the

19  Court with two additional cites.  I don't believe there's

20  been any evidence provided by the plaintiff as to the

21  specific nature of the debt in the -- in the -- involving

22  Synchrony Bank that was presented in this particular case.

23        I also think -- so I think it's improper to submit

24  Questions No. 1 and No. 4.  I also, Judge, to be honest with

25  you, I think it's improper to submit Questions No. 2 and 5,

1   because under 2 and 5 the only evidence that's been

2   presented to the Court are about the policies and procedures

3   and the reasonableness of those policies and procedures.

4   There has been no question brought into evidence that it was

5   either an intentional act or that those policies and

6   procedures were not reasonably designed to avoid the error

7   that occurred.

8          And while it is our defense that we -- it is our

9   burden to bring that evidence on, they submitted no contrary

10  evidence to it.  And so I don't know what you're asking the

11  jury to determine when the only question that they were

12  asked was really to reiterate that it was an error that was

13  made, and that was the only question -- line of questions

14  that were presented to our witness.

15         There's nothing that's been submitted that would

16  indicate that those policies and procedures were not

17  reasonably designed to avoid the error.

18         So with regards to Question 2 and 4 [sic], I think

19  there's insufficient -- 2 and 5, I think there's

20  insufficient evidence to submit those.  And if the Court

21  were to rule in my favor on the first two, then obviously

22  there's no questions to submit to the jury at this time.

23         THE COURT:  Okay.  I'll overrule those objections

24  and we'll submit this to the jury.

25         All right.  With that, then we'll bring the jury

1   in.  I will read the charge and at the appropriate time of

2   the charge I will -- oh, that's right.  We have a change to

3   make.  I'm sorry.  She's going to make those changes now and

4   print those out.

5             MS. MALONE:  And, Judge, I'm sorry.  I know you've

6   told us but how long do we have for closing?

7             THE COURT:  Fifteen minutes.

8             MS. MALONE:  And will you give us a five-minute

9   warning?

10            THE COURT:  Whatever warning you want.

11            And would you like a warning as well?  You'll get

12  five minutes.

13            MR. ZIMMER:  Yes, please.  Thank you, Your Honor.

14            THE COURT:  You bet.

15            Mr. Zimmer, are you going to be splitting the

16  final arguments?

17            MS. CLARK:  No.  It will be Mr. Pitman [sic] here.

18            MR. ZIMMER:  Yes, Mr. Pitman will do the final,

19  actually.

20            THE COURT:  Exactly.

21            Is everything okay?

22            MS. CLARK:  Okay.

23            THE COURT:  Does everything look okay?

24            MS. MALONE:  Oh, I'm sorry, Judge.  I apologize.

25  Yes.

1        THE COURT:  Okay.  Thank you.

2        I think we're going to have a short delay.  One of

3  the jurors is having to feed the meter.

4            (Whereupon, the jury entered the

5            courtroom.)

6        THE COURT:  Members of the jury, you've now heard

7  the evidence in this case.  I'll now instruct on the law

8  that you must apply.

9            (Whereupon, the jury instructions were

10            read by the judge in open court.)

11        THE COURT:  Having instructed you now on the law

12  that applies in this case, you will now hear from the

13  attorneys as they make their closing arguments.

14        Since the plaintiff has the burden of proof in

15  this case, they will begin and, I believe, Mr. Zimmer, are

16  you going to be presenting your closing?

17        MR. ZIMMER:  (Nods.)

18        All right.

19            ===================
             CLOSING STATEMENT
20            ===================

21  BY MR. ZIMMER:  Thank you all for your stamina.  I'm sure

22  we've tested it quite a bit by this point in time.  So I'll

23  try to make this brief.

24        The first thing I want to do before I get into the

25  nitty-gritty specifics is just kind of back out and think

1  about this from a bigger picture standpoint.  I think, and I

2  hope you'll all agree with me, that this is kind of a

3  classic David and Goliath situation.  You have a very, very

4  powerful, giant corporation and then you have a very nice

5  lady, a single consumer.

6          They have thousands of employees.  They have all

7  their resources.  All she had was her grief.  This poor

8  person lost her husband and then several family members and

9  then she had the audacity in the midst of her grief to ask

10 for some help to try to deal with her shattered credit

11 rating.

12          So she disputed the debt with PRA.  PRA ignored

13 the debt and then continued to not report it to Experian

14 properly.  They are required by law to report a disputed

15 debit to Experian or any credit reporting agency as

16 disputed.

17          As you heard PRA's employee testify, each after

18 they got sued, they kept reporting the debt as non-disputed.

19 The lawsuit itself says, Hey, the plaintiff, Ms. Jones,

20 disputed the debt.  They should have known if for no other

21 reason than when they got sued, that she disputed the debit.

22          Let's assume for the sake of the argument that the

23 first time around when they got the dispute letter, it

24 slipped through the cracks because it was from a law firm.

25 That doesn't explain why they didn't report the debt

1    properly as disputed when Ms. Jones filed the lawsuit.

2           My point is that they had known for a long time,

3    PRA had, that this debt was disputed and they didn't care.

4    They just kept reporting it incorrectly.

5           That's not fair.  It's not fair to somebody like

6    her who had all these tragic things happen to her.  So I

7    want you all to, if you can, consider this from a bigger

8    picture perspective and more of a moral perspective.

9           You've heard a lot of like technical legal mumbo

10   jumbo.  Of course that stuff is important but also remember

11   like the human stake and the human costs that are at play

12   here.  So that's the general part.

13          So to get into specifics, so one of things that we

14   have to prove, our side, we have to prove that Ms. Jones

15   incurred the debt.  It was a consumer debt.  In other words,

16   it was used primarily for personal, household or family

17   purposes.

18          She testified at great length that all she ever

19   used the accounts for were for personal, household and

20   family purposes.  There were no business purposes.

21          PRA has offered zero evidence that the accounts

22   were not used for personal purposes.  They offered no

23   evidence the accounts were used for business purposes.  So I

24   believe the evidence shows clearly that this was a consumer

25   debt.

193

1        So the other part that has to be proven by a

2   preponderance of the evidence is the bona fide error defense

3   that you've heard a little bit about.

4        So the bona fide error defense basically says

5   this, is that the violation of the law in this case, failing

6   to report the disputed debt properly, the violation of law

7   has to be unintentional, in other words they didn't do it on

8   purpose, and also the violation happened despite them having

9   procedures and policies in place that were designed to

10  prevent the particular type of error or the violation that

11  occurred.  So that's an important point.

12       It's not enough just to have a ton of policies and

13  procedures.  There is no doubt that these folks have a ton

14  of policies and procedures.  You saw the PowerPoint.  It's

15  very sophisticated.

16       What you didn't see was any proof whatsoever that

17  any of those policies and procedures were designed to catch

18  this specific type of error.  The error in question which is

19  failure to report the debt as disputed didn't happen because

20  of a mistake, because it fell through the cracks from the

21  law firm.  Their procedures and policies were not designed

22  to catch this sort of error at all.

23       When there is a dispute letter received, the

24  dispute letter says two things.  First, I dispute the debt

25  but maybe the dispute letter also says, I can't afford to

1   pay it, or, I can't pay it now but maybe I'd like to pay
2   later.

3        They have no procedures or policies in place to
4   handle a disputed letter that ask two things.  And it's
5   amazing to me, given all of these amazing policies and
6   procedures that they have, it never occurred to them to
7   anticipate the possibility that an incoming letter might
8   dispute the debt and also ask for something else.

9        And so what I'm saying in closing, then, is that
10  this was an intentional violation.  They knew the debt was
11  disputed.  They knew the debt was disputed at the minimum
12  after they were sued.

13       I believe they knew the debit was disputed when
14  they received the dispute letter.  Hopefully you agree.  But
15  at minimum they knew the debt was disputed after they had
16  been ensued.  They didn't do anything about it.

17       And, again, this is a giant corporation and this
18  poor lady is just trying to get some justice and she can get
19  nothing from these folks.

20       I think, and I hope you'll agree, that the
21  violation was intentional.  And I also believe that none of
22  the evidence that you heard shows that their policies and
23  procedures were designed to catch this particular type of
24  error.

25       And so unless they have policies and procedures

1    that can catch this specific kind of error, they are not
2    going to qualify for that bona fide error defense.  Add to
3    the fact that I believe this was an intentional violation
4    because they knew darn well this thing had been disputed and
5    they just didn't care.
6         So the last thing I want to leave you with is at
7    the end of the day a lot of times this is about money.  And
8    it's not about money for our side, believe it or not,
9    because all Ms. Jones is wanting is a couple of thousand
10   dollars for her troubles which I think are significant.  She
11   want to get her credit cleaned up.
12        This -- you know, this company, I don't know what
13   they're worth.  But, you know, with all their thousands of
14   employees, I have a feeling they can afford a couple of
15   grand to make things right.
16        So I ask you to consider the moral and human
17   dimension of this, not just the technical stuff and the
18   legalese and I hope you will rule in our favor.
19        I really thank everybody for schlepping out here,
20   paying attention all day along, and I thank you for your
21   service very much.
22                    ===================
                      CLOSING STATEMENT
23                    ===================
24   BY MS. MALONE:  Okay, ladies and gentlemen.  I'm going to
25   talk to you a little about the form that the Judge is going

1    to give to you and then I'll ask you to answer some very

2    specific questions.  And you guys have hung in with me on

3    some technical stuff today but we're going to keep going a

4    little bit.

5          The first question the Court is going to ask you

6    as the jury to find is, do you find that the debt the

7    defendant sought to collect from plaintiff was an obligation

8    to pay money arising out of a transaction in which the

9    money, property, insurance or services were incurred

10   primarily for personal, family or household purposes?

11         That's just not a legal mumbo jumbo question.

12   That's what the law says.  They have to show that these were

13   consumer debts for the debt that PRA was attempting to

14   collect.

15         And why does that matter?  That matters because

16   what Ms. Jones told you was that she had a debt from QVC and

17   a debt from HSN.

18         And what we heard from the PRA representative was

19   that there was no debt from QVC that PRA was ever

20   collecting.  So that wasn't a debt they were trying to

21   collect involving household goods or that she bought some

22   clothes or whatever she said.  Does it matter?  Maybe she

23   did have consumer debt with QVC but that's not the debt in

24   question.

25         We also know that it's not the HSN debt.  You guys

1  are going to have these exhibits to go back with you and I

2  just want to show you a couple of things on them again.

3          If you look at PRA Exhibit No. 5 [sic]-- it's

4  Exhibit No. 1 but Page 5, you will see that this is the debt

5  that involves Comenity Bank.  And you guys remember on

6  Comenity Bank, that's what Ms. Dreano told you was the HSN

7  debit, okay?

8          On the very next page of that exhibit you will see

9  that that debt was received -- was purchased by PRA on

10 December 24, 2015, which means this debt came in three weeks

11 after the letter that they are claiming at PRA failed to

12 take appropriate care.  But PRA did miss the letter.  Let's

13 just say that.

14         So what I'm telling you is the only testimony you

15 heard from Ms. Jones was about QVC, which is not a debt PRA

16 is collecting, and about HSN, which was not the debt in

17 controversy because it came in three weeks after the fact.

18         So what does that mean?  You have no evidence

19 whatsoever as to the debt that PRA actually was collecting,

20 which is the Synchrony debt.

21         And if you look on D1, Exhibit No. 1, you're going

22 to see that that's the document.  When you look a little

23 further, on Page 3, at the very top of that, you'll see the

24 December 2, 2015, date showing they received the letter.  So

25 this is the debt that was being collected.  What evidence

1 │ did you hear about Synchrony?  Nothing.  Not one word,

2 │ twirps, silence.  And that is a standard that they must

3 │ reach.

4 │         We do know that Ms. Jones was confused about her

5 │ credit history because she said in response to my questions

6 │ and admitted that in her deposition when we asked her, Do

7 │ you know what debit was being collected by PRA?  No.  I

8 │ didn't know.

9 │         When I asked her what she said in her deposition,

10 │ she admitted she told them she did nothing to determine what

11 │ the debt was.

12 │         She testified on the stand that she had judgments

13 │ from something else.  She didn't know what those were.  We

14 │ know that she said that she never had a business but, lo and

15 │ behold, she did have a business, Carol's Kingdom Gifts.  She

16 │ now tells you, Oh, but that wasn't really a business.  Well,

17 │ which is it?  Did you never have a business or did you have

18 │ a business and you didn't use any of these credit cards?

19 │ There's a problem with credibility on that issue.  I think

20 │ Ms. Jones may be confused about a lot of stuff.

21 │         But what we do know is that there was no testimony

22 │ about Synchrony on that stand, and we know the people who

23 │ are driving this boat are her attorneys, not Ms. Jones.

24 │         So think about what she's being coached to say.

25 │ She comes to trial months after her testimony in a

1   deposition and says, Oh, yeah.  I know which account it was,

2   when she didn't know when she was being deposed in October

3   of 2015 -- or 2016, rather, about the account.

4           Her attorneys are driving this boat, folks.  And

5   don't forget.  Whenever we talked about the request for

6   admissions, the Judge told you that the statements that

7   attorneys make are just argument.

8           One exception.  Remember the Judge told you that

9   when I read the request for admissions into evidence, those

10  are things that Ms. Jones has admitted, that those are

11  statements you should consider as facts without me having to

12  put on any evidence.

13          That is important because, if you recall,

14  Ms. Jones said -- Ms. Jones admitted she has suffered no

15  actual damages as a result of the act or omission committed

16  by PRA.

17          She admits that she suffered no substantial loss

18  due to any action by PRA.  She admits that she has no

19  evidence of any loss of credit due to the alleged actions of

20  PRA.

21          She admits that she had no evidence that she

22  suffered any loss of credit or that she had been -- she had

23  lost the ability to purchase or benefit from any credit due

24  to the alleged acts of PRA.

25          So keep that in mind, folks.  Ms. Jones is

1   probably a very nice lady but she's not telling the whole

2   story about her credit report.  I think she doesn't know

3   what her credit report was about.  I think she didn't know

4   what the accounts were.  Her attorneys have couched her to

5   come in and now say something different.

6            THE COURT:  Counsel, approach the bench.

7                    ===================
                     BENCH CONFERENCE
8                    ===================

9            (The following proceedings occurred at

10               the bench, outside the presence of the

11               jury, with only counsel present.)

12           THE COURT:  I don't know where you are used to

13   practicing but to suggest twice that this witness was

14   coached by her lawyers, that's highly, highly irregular and

15   inappropriate.  Okay.

16                    ===========
                     OPEN COURT
17                    ===========

18           (The following proceedings occurred in

19               open court, in the presence of the jury,

20               with all parties present.)

21           MS. MALONE:  Okay.  So when you are answering

22   Question No. 1, the question is, Do you find that the debt

23   was covered by consumer?  Again, the answer to that question

24   should be no.

25           I'm going to tell you guys a cheat section here,

1  that questions to No. 1, 2 and 3 have to do with the FDCPA.

2  The exact same questions under the Texas statute are 4, 5

3  and 6.  So if I tell you the answer to Question No. 1 is no,

4  I'm going to suggest to you that the answer to Question No.

5  4 is no as well, because it's the same argument.  Rather

6  than me having to repeat myself, I'm going to tell you that

7  that's the same evidence.

8           And I will also tell you that if you answer

9  Question No. 1, then you don't answer the subsequent

10  question, that you're stopped from answering that.

11           Same thing on Question No. 4.  If you answer the

12  first one no, then you don't go any further.

13           The next question we have to talk about has to do

14  with the issue related to the bona fide error defense.  The

15  Judge gave a really great section in his book -- in his

16  little charge is what it's actually called, and on Page 7 it

17  has a great description of bona fide error.  I'm going to

18  invite you to read that because it's going to help you in

19  understanding what we are do.

20           And it says that in order for the defendant to

21  prevail, if you find that this is a consumer debt, the next

22  question is, Did the defendant make a mistake that was

23  subject to the bona fide error?

24           The first one is that PRA did not intend to

25  violate the act.  The second one -- a second element is that

1    the violation resulted from a genuine error and that they

2    maintained procedures reasonably adapted to avoid the

3    violation that had occurred.

4           Mr. Zimmer suggested during his argument that the

5    procedures that PRA had in place were not designed to

6    correct this mistake.  I beg to differ with Mr. Zimmer.  I'm

7    sure he may have not understood this.

8           But let's look at this exhibit.  This is from

9    Defendant's Exhibit No. 3, and I will tell you folks, you

10   get both procedure manuals, both D2 and D3.  A lot of it's

11   repetitious.  We just pulled out a couple of pages.  But

12   you'll see the same sort of call-out in more than one spot.

13          But this is the one that we looked at with the

14   witness.  And you remember what she said is that there was

15   this little window that would pop up and it gave multiple

16   options for them when they receive a dispute letter.

17          One of the options was the first one which is

18   consumer dispute debt, and that was the one that was not

19   selected.  It should have been but it was not selected.

20          The bottom one, however, was consumer requests

21   cease and desist on accounts.  Sorry.  That's a little small

22   for my eyes today for some reason.

23          Okay.  So his argument was that PRA's policies did

24   not allow for them to have the error or did not allow for

25   them to fully mark an account if there was more than one

1  complaint about the account.

2          Remember, he said if it had multiple things, there

3  should be a way to do it and that's at least what I recall

4  him saying.  And if you look at this, right below it, it

5  says you can select more than one box at a time.

6          And what Ms. Dreano testified to was that the

7  error that was made, that they didn't select two boxes, that

8  that was available to them and they only selected the one,

9  which is the cease and desist.

10          If you guys remember what we were told by the

11  account specialist, and Ms. Jones testified that she didn't

12  recall specifically in her deposition whether there had been

13  any contact.

14          But after the letter was received -- you have the

15  account notes and you can look and see -- there was no

16  further contact with Ms. Jones.

17          So after this letter was received, a cease and

18  desist did occur.  And so the mistake that was made was a

19  mistake.  The collector -- the dispute representative -- I

20  want to call them their right name -- the dispute

21  representative did not mark the first one which is that

22  there was a dispute of the debt.

23          So there was actually two options available to

24  them and they only chose one.  If you look in the accounts

25  notes, I mean, the note right below, it says you can only

1    check one box at a time.

2         So the argument that they didn't address the

3    bona fide error was in fact -- the argument that they made

4    regarding bona fide error was that the policies and

5    procedures did not address this special situation is simply

6    not the case, folks.

7         If you look at the actual policies and procedures,

8    then you can see that in fact the error was one that should

9    not have occurred had the disputed resolution person

10   actually looked at the box because they could select both

11   options, and they only selected the one and stopped calling

12   her.

13        And the other thing that you have to remember is

14   that these policies and procedures have to be reasonable.

15   They don't have to be perfect.  Remember the testimony about

16   how many times they went through the training, all the

17   testing that was done.

18        The whole point of policies and procedures in the

19   Judge's definition is that they have to be reasonably

20   adapted.

21        THE COURT:  Five-minute warning.

22        MS. MALONE:  That does not mean foolproof.  So

23   what I'm going to suggest to you is that if you have a

24   policy and procedure that has this much put work into it,

25   that's reasonably adapted to prevent the error but it

1   occurred in this case anyway, and for that we're sorry.

2           Now, the suggestion that the record after the

3   lawsuit was filed, that this was not marked as disputed,

4   remember what Ms. Dreano said.  She said they stopped

5   reporting it, period.  It was no longer reported.

6           So the fact that it wasn't reported as disputed,

7   is not it.  It was no longer being reported at all once the

8   lawsuit was filed.  It have removed from her credit at that

9   point.

10          So the last thing I want to tell you is that the

11  answers to that question for both No. 2 and also No. 5

12  should be, yes, there was a bona fide error if you find that

13  it was a consumer debt.

14          Now, let's talk about the last thing, the damages.

15  Remember, ladies and gentlemen, that Ms. Jones testified she

16  wasn't really looking for damages.  The issue here that you

17  can decide is whether or not there was any harm.

18          I go back to the request for admissions.  She

19  suffered no harm, no credit loss, no error.  You are allowed

20  to decide what that statutory damage would be.

21          I know that Mr. Zimmer said that my client is a

22  big company but the whole point of statutory damages is the

23  maximum is $1,000.  The minimum is $1.  So if the $1,000 is

24  for the worst behavior that someone could do, that a debt

25  collector is threatening to harm somebody, where does this

1   mistake land, one that caused no harm to the plaintiff, that

2   was an honest mistake.

3          And the Court also in its instructions told you to

4   consider in damages other relevant facts such as the

5   frequency and persistence of noncompliance of the act, the

6   nature of the act and the extent to which it was

7   intentional.

8          Did you hear any evidence about this ever

9   happening anywhere else or that this was a routine mistake

10  that was happening all the time?  No.  What you saw in fact

11  was nothing other than the procedures and what Ms. Dreano

12  testified to as this shouldn't have happened.  It should not

13  have happened.  It was a mistake.

14          I would submit to you that with regard to that

15  answer, you should put $1 because she doesn't want the

16  damages and this was an honest mistake and it caused her no

17  harm.  So if you get there, you can put $1 and that is

18  absolutely an appropriate response.

19          I would say the same thing as to the Texas act

20  except the Texas act says you have to put a minimum of $100.

21  So on that statute, which is the Answer No. 6, that's $100.

22          Guys, I am sorry if sometimes lawyers get really

23  technical, and I apologize if we make objections and maybe

24  we fuss at each other a little too much.  That is not my

25  intention.  These guys are fine lawyers.  I don't mean that.

1           But I do think that you have to consider the

2    evidence that happened in this case.  And when you listen to

3    the evidence, what you will hear -- and Ms. Jones was very

4    confused about what occurred.  She did not talk about the

5    Synchrony debt, and that is the very first question that you

6    have to decide.

7           So to the extent that anything that I as a lawyer

8    may have done that offended you, I apologize and ask you to

9    hold that against me and not my client because that's what

10   lawyers are supposed to do is take the heat if they make a

11   mistake and not their client.  So to the extent that I've

12   done that, I will ask that you do that.

13          But I will ask you again to listen to what the

14   Judge told you.  These are not mumbo jumbo things that

15   you're supposed to decide.  The Court charge usually tells

16   you, do not let sympathy play a factor.  You are supposed to

17   follow the law.  And in following the law, I think you will

18   see there's no evidence that this was a consumer debt.  And

19   if there was, it was an honest mistake.  My client should

20   not be punished for it.  Just because they're a big

21   corporation does not mean they should be held responsible

22   for what is an honest mistake when they've taken all kinds

23   of effort or procedures in order to prevent this kind of

24   mistake and to do the right thing.

25          Thank you, Your Honor.

1          THE COURT:  Mr. Zimmer, do you have anything

2   further?  All right.

3          Ladies and gentlemen of the jury, now having heard

4   the closing arguments in this case, it's time for you to

5   deliberate.

6          When you retire to the jury room to deliberate,

7   you may take with you the charge, the verdict form and the

8   exhibits that the Court has admitted into evidence.

9          First select your presiding juror and then conduct

10   your deliberations.

11          We are getting close to the end of the day but

12   this has been a brief trial with fairly straightforward

13   issues, so I'm going to leave it to you whether or not

14   you're going to continue to deliberate and reach a verdict

15   today.  I would at least ask you to begin deliberation.

16          If at some point you decide that you want to break

17   for the day and come back and resume your deliberations

18   tomorrow, I will leave that to you.  If you decide you want

19   to stay, we'll stay as long as you want to if you see a way

20   to avoid coming back tomorrow.

21          But let the first -- your first priority being

22   having enough time to review the instructions and the

23   evidence in this case to reach a verdict.

24          If you do decide to recess for the evening, if you

25   could just tell the courtroom security officer so that we

1  know so that we won't be sitting up here and not know that

2  you've been gone for two hours having a beer somewhere and

3  we're still waiting on you.

4         If you do recess, though, I will ask you,

5  especially now, to observe the instructions I've given you

6  and that is, don't discuss this case with anyone.  Don't

7  engage in any independent investigation regarding any party

8  or issue in this case.

9         After you've reached your unanimous verdict, your

10  presiding juror must fill in your answers to the written

11  questions and sign and date the verdict form.

12         Unless I direct you otherwise, do not reveal your

13  answers until such time as you are discharged.  And you must

14  never disclose to anyone, not even to me, your numerical

15  division on any question.

16         Again, if you want to communicate with me at any

17  time, give a written message to the courtroom security

18  officer who will bring it to me and I will respond as

19  promptly as possible, either in writing or in person, after

20  I consult with the lawyers.

21         And so at this point I will ask you to retire to

22  the jury room to deliberate on your verdict.

23         But before that, Mr. Zambrano, if you could raise

24  your right hand, please.

25              (The courtroom security officer was

210

1          sworn by the Court.)

2          SECURITY OFFICER:  I will, Your Honor.

3          THE COURT:  All right.

4          All rise for the jury.

5          (Whereupon, the jury exited the

6          courtroom.)

7          THE COURT:  All right.  I would ask that if you

8   could just remain until we figure whether or not they're

9   going to stay.  At some point it's our custom to allow you

10  to leave as long as we have contact information and you're

11  within a ten-minute radius so that if we get a question, we

12  can kind of deal with that.  But I think since we're so

13  close, let's at least wait to see whether or not they're

14  going to deliberate and then we'll kind of take it from

15  there.

16          MS. CLARK:  Okay.  Thank you, Your Honor.

17          THE COURT:  All right.  We'll be in recess.  Thank

18  you.

19          (Whereupon, a recess was then taken at

20          4:48 p.m. and the trial resumed at the

21          hour of 5:22 p.m.)

22          THE COURT:  So we've had two jury notes, the first

23  being Jury Note No. 1, identifies someone with not very good

24  handwriting as the foreperson.

25          MR. ZIMMER:  Probably the doctor.

1    THE COURT:  XXXXXXX XXXXXX.  Probably the doctor,

2  yeah.

3    MS. MALONE:  That's the student, Judge.

4    THE COURT:  You see there.

5    MR. ZIMMER:  Oh, is that the student?

6    THE COURT:  Because she doesn't have her computer.

7  That's what it is.  They don't write anymore.

8    Jury Note No. 2, "We have a question:  Under TCDA

9  can you please clarify the total number of alleged

10  violations?"

11    My proposed response will be something on the

12  order of:  You must rely on your recollection of the

13  evidence and the arguments of counsel in responding to the

14  questions on the verdict form.

15    That's about all you can do in these situations.

16  Do you have any better suggestion?

17    MR. ZIMMER:  Fine.

18    THE COURT:  Yeah.

19    MS. CLARK:  I think that that sounds fair.

20    THE COURT:  That's about all we can do.

21    MS. MALONE:  Just to rely on their recollections,

22  Your Honor?  Is that what you said?

23    THE COURT:  Yes.  To rely on your recollection and

24  arguments of counsel in responding to the questions on the

25  verdict form.  Does that sound right?

1          MS. MALONE:  Uh-huh.

2          THE COURT:  Okay.  Then I will give them that

3    response and we'll --

4          MS. MALONE:  Your Honor --

5          MR. ZIMMER:  I need to feed my meter but the

6    marshals said I wouldn't be allowed back in the building

7    after 5 p.m.  So do we need both of us here?

8          THE COURT:  No, but we can figure out --

9          Julie, there's somebody still downstairs, isn't

10   there?

11         THE CLERK:  I would think there was.

12         THE COURT:  Could you ask Ernie if you can have

13   whoever is at the door let Mr. Zimmer back in.

14         Unless you're just wanting to leave.

15         MR. ZIMMER:  Well, no.  I don't want to get a

16   ticket.

17         THE COURT:  You're welcome to leave but we're

18   going to see if there is somebody to let you back in.  I'll

19   do my best to get you back in here.

20         MR. ZIMMER:  Okay.  Great.  Thank you, Your Honor.

21         (Whereupon, a recess was then taken at

22         5:24 p.m. and the trial resumed at the

23         hour of 5:41 p.m.)

24         (Whereupon, the jury entered the

25         courtroom.)

1        THE COURT:  Thank you.  Please be seated.

2        Madam Foreperson, have you reached a verdict?

3        JUROR:  Yes, sir.

4        THE COURT:  Okay.  If you could hand it to the

5  courtroom security officer.  Thank you.

6        I'll ask the clerk to read it into the record.

7        THE CLERK:  In the case of A:16-CV-572, Jean Jones

8  versus Portfolio Recovery Associates and others, Question

9  No. 1, Special Interrogatory 1:  Do you find that the debt

10  defendant sought to collect from plaintiff was an obligation

11  to pay money arising out of a transaction in which the

12  money, property, insurance or services were incurred

13  primarily for personal, family or household purposes and is

14  thus a consumer debt:  Answer:  Yes.

15        Special Interrogatory No. 2:  Do you find from a

16  preponderance of the evidence that the defendant, 1, did not

17  act intentionally when it committed the statutory violation

18  and, 2, the violation resulted from a genuine error and,

19  3:00, the error was made despite the maintenance procedures

20  reasonably adopted to avoid the error.  You may only answer

21  yes if all three elements are met.  Answer:  No.

22        Special Interrogatory No. 3:  What sum of money do

23  you believe plaintiff should be awarded for statutory

24  damages?  You may award up to $1,000.  Amount of statutory

25  damages, $1,000.

1    Special Interrogatory No. 4:  Do you find that the

2    debt defendant sought to collect from plaintiff was an

3    obligation or alleged obligation primarily for personal,

4    family or household purposes and arising from a transaction

5    or alleged transaction and is thus a consumer debt?  Answer:

6    Yes.

7    Special Interrogatory No. 5:  Do you find from a

8    preponderance of the evidence that the defendant, 1, did not

9    act intentionally when it committed the statutory violation,

10   and, 2, the violation resulted from a genuine error and, 3,

11   the error was made despite the maintenance procedures

12   reasonably adopted to avoid the error?  You may answer yes

13   if all three elements are met.  The answer:  No.

14   Special Interrogatory No. 6:  What sum of money do

15   you believe plaintiff should be awarded for statutory

16   damages?  You may award no less than $100 per violation.

17   Amount of statutory damages, 60,000 total, signed by the

18   foreperson this 8th day of -- actually, it's backwards --

19   the 29th day of August 2017.

20        THE COURT:  All right.  Does anyone like to have

21   the jury polled?

22        MS. MALONE:  Yes, Your Honor.

23        THE COURT:  Okay.  Poll the jury, please.

24        Ladies and gentlemen of the jury, she's just going

25   to ask whether this is your true and correct verdict as to

215

1  each of you.

2          THE CLERK:  Juror No. 1, is this your true and

3  correct verdict?

4          JUROR:  Yes.

5          THE CLERK:  Juror No. 2, is this your true and

6  correct verdict?

7          JUROR:  Yes.

8          THE CLERK:  Juror No. 3, is this your true and

9  correct verdict?

10          JUROR:  Yes.

11          THE CLERK:  Juror No. 4, is this your true and

12  correct verdict?

13          JUROR:  Yes.

14          THE CLERK:  Juror No. 5, is this your true and

15  correct verdict?

16          JUROR:  Yes.

17          THE CLERK:  And Juror No. 6, is this your true and

18  correct verdict?

19          JUROR:  Yes.

20          THE CLERK:  And Juror No. 7, is this your true and

21  correct verdict?

22          JUROR:  Yes.

23          THE COURT:  Okay.

24          Ladies and gentlemen of the jury, thank you so

25  much for your service today.  We have now with your verdict

1   concluded this trial.  We were able to get in and out and

2   get this done in a day and that's because of your

3   determination to get this done, to work hard, and I

4   appreciate so much the part you've played today.

5           On behalf of both of the parties I want to express

6   our appreciation for your willingness to show up here today,

7   to take seriously your obligation and I know they appreciate

8   the seriousness with which you took your responsibilities

9   and I personally want to express my appreciation for that.

10          I'm now going to release you from all the

11  instructions I've given you repeated during the day and that

12  is that you may now speak with anyone about this case but

13  you don't have to.

14          If anyone approaches you and tries to talk to you

15  about the case and you don't want to, you don't have to.

16  And if they persist, you can let me know and I'll take care

17  of that.

18          But you can now investigate anything you want to.

19  You can get online and look up anything that has occurred to

20  you today that you wanted to know a little bit more about.

21  And, again, I just want to thank you for your service.

22          I'm now going to release you.  I would ask,

23  though, when you get back to the jury room, if you would

24  just wait for about 30 seconds so that I can come and join

25  you there and express my appreciation in person and have

1  just a moment with you back there.

2          Again, I appreciate you and all you've done today.

3  And most people -- you know, jury service for some people,

4  you know, it's weeks and months and so you get to check this

5  box and you did it all in a day.  So thank you very much for

6  your service.  And with that I'll dismiss you.

7          (Whereupon, the jury exited the

8          courtroom.)

9          THE COURT:  Please be seated.

10         All right.  I will entertain post-trial briefing.

11  And we don't have a particular schedule for that.  But if

12  you intend on filing post-trial briefs, if you could just

13  let me know a suggested schedule and we'll work on that.

14         MS. MALONE:  Okay, Your Honor.  We will be filing

15  obviously a JNOV under the circumstances and also a

16  challenge to the evidence.

17         THE COURT:  Sure.

18         MS. MALONE:  I have a vacation starting at the end

19  of September, so I would like to do it by the middle of

20  September if that's all right with the Court so I can get it

21  done before I leave.

22         THE COURT:  Yeah, as long as --

23         MS. CLARK:  I have trial on September 11th.

24         MS. MALONE:  Yes, with me.

25         MS. CLARK:  Well, I don't have a partner like you.

1   I was some kind of surprised.  But yeah, actually, that is

2   relatively awkward to have to do it in the middle of

3   September when we have trial next week again.

4             MS. MALONE:  I guess I'm going to be filing the

5   motion.  Your response would be later.

6             MS. CLARK:  That's true.  I can respond at the end

7   if we set it that way.  As long as we set it with enough

8   time.

9             MS. MALONE:  Judge, I'll double-check but I would

10  like to suggest that maybe we do it no later than September

11  24th.

12            THE COURT:  That's fine.

13            MS. MALONE:  And then if she wants two weeks after

14  that or three weeks then.  And I guess we would have to find

15  out from the court reporter how long we need.

16            THE COURT:  And you can talk to her after this for

17  a transcript.

18            MS. MALONE:  And if that changes it, then I will

19  let you know.  Otherwise we'll do it by then.

20            THE COURT:  Okay.  Sounds great.

21            MS. MALONE:  And do you want any verbal motions?

22            THE COURT:  No, not necessary.

23            MS. MALONE:  Thank, Your Honor.

24            MS. CLARK:  Oh, no.  I'm only out one week so that

25  should work.

219

1          THE COURT:  Okay.  Well, thank you all very much.

2          MS. MALONE:  The only other thing, Judge, I think

3  I have to have a formal ruling on our motion for directed

4  verdict because I thought you took it under advisement.

5          THE COURT:  Very well said.  I denied it but I

6  will certainly reexamine those issues in your post-trial

7  briefing.

8          MS. MALONE:  Okay.  Thank you, Your Honor.

9          MS. CLARK:  Thank you, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          (Whereupon, the trial then stood in

12          adjournment at the hour of 5:55 p.m.)

13                  *     *     *     *     *

14

15

16

17

18

19

20

21

22

23

24

25

1                      **C E R T I F I C A T E**

2

3          I, Pamela J. Andasola, Certified Shorthand

4    Reporter, Registered Merit Reporter, Federal Certified

5    Realtime Reporter, in my capacity as Official Reporter do

6    hereby certify that I was present and recorded the above

7    proceedings in stenotype and reduced the same to typewritten

8    form, that the foregoing 219 pages constitute a true and

9    complete record of the proceedings, to the best of my

10   ability, had and done on August 29, 2017, before the

11   Honorable ROBERT PITMAN, Courtroom 4 of the United States

12   District Court, Western District of Texas, Austin Division.

13

14

15                       Dated this 1ST day of September, 2017.

16

17

18                       s/Pamela J. Andasola
                         PAMELA J. ANDASOLA, CSR/RMR/FCRR
19

20

21

22

23

24

25

ALL: [1] 85/12
BY MR. ZIMMER: [2] 164/16 190/19
BY MS. CLARK: [4] 54/16 93/20 103/13
127/1
BY MS. MALONE: [5] 65/11 122/7
137/1 140/1 195/22
JUROR: [64] 32/15 32/17 32/23 36/2
36/6 36/9 36/12 36/16 36/22 36/24 37/2
37/5 37/8 37/12 37/24 38/3 38/5 38/12
38/18 39/3 39/15 40/3 40/7 40/20 40/22
41/1 41/8 41/25 43/8 43/23 44/2 44/5
44/13 44/17 44/19 45/5 45/14 45/23
47/9 47/13 47/20 47/23 48/3 48/14
48/17 48/21 49/6 49/11 49/15 49/21
49/24 50/14 50/18 50/22 51/9 56/14
213/2 215/3 215/6 215/9 215/12 215/15
215/18 215/21
JURY COMMISSIONER: [5] 45/19
46/22 46/25 49/1 83/15
LAW CLERK: [1] 187/3
MR. ZIMMER: [20] 3/12 20/13 26/9
30/1 98/10 119/22 165/16 165/25 169/1
172/8 181/5 189/12 189/17 190/16
210/24 211/4 211/16 212/4 212/14
212/19
MS. CLARK: [116] 3/11 8/5 9/15 9/20
10/3 10/16 11/6 11/12 11/24 14/1 22/9
22/11 22/15 22/19 23/6 23/23 24/7
24/15 25/2 25/12 25/15 25/18 26/8
29/24 30/2 30/8 54/13 56/12 64/11
64/14 64/17 64/23 65/4 80/25 81/8
81/13 81/25 93/18 98/5 98/8 98/11
98/19 98/25 102/4 102/12 102/17
102/22 103/5 103/17 103/21 105/4
105/12 107/10 107/15 107/23 108/1
108/4 108/12 108/14 110/9 110/14
118/4 119/12 119/14 120/1 120/7
120/11 124/19 126/23 129/23 130/11
132/8 136/5 136/11 143/9 144/5 149/13
150/10 168/23 172/21 173/2 173/9
173/15 173/23 176/5 176/7 177/2
177/22 178/5 178/7 178/12 178/20
178/22 178/25 179/10 180/13 180/18
182/4 183/5 183/20 184/4 184/8 184/10
184/22 185/23 186/9 186/21 189/16
189/21 210/15 211/18 217/22 217/24
218/5 218/23 219/8
MS. MALONE: [124] 3/14 4/10 4/13
5/25 6/11 7/12 11/25 12/2 14/15 14/20
15/14 16/12 17/4 22/18 22/23 22/25
23/2 23/10 23/19 23/22 24/1 25/9 26/11
30/22 31/3 63/22 64/5 64/13 64/16 65/3
80/24 81/3 81/12 97/20 98/2 98/6 98/18
101/25 105/2 105/11 107/7 107/11
107/17 108/3 108/5 110/7 120/15
120/18 120/21 120/23 122/5 124/16
126/20 130/1 130/7 130/14 131/3
131/15 133/12 135/13 135/17 135/20
135/23 136/1 136/22 139/10 143/4
144/1 149/14 150/5 153/20 153/22
153/24 164/13 165/20 165/23 166/3
169/17 172/10 172/17 172/25 175/2
175/5 175/15 176/1 178/14 178/21
179/18 180/9 180/21 181/2 181/7
182/25 183/24 184/5 184/25 185/6
186/8 186/10 186/23 187/6 187/9
187/11 189/4 189/7 189/23 200/20
204/21 211/2 211/20 211/25 212/3
214/21 217/13 217/17 217/23 218/3

218/8 218/12 218/17 218/20 218/22
219/10
SECURITY OFFICER: [1] 210/1
THE CLERK: [13] 3/5 26/2 42/23 85/5
212/10 213/6 215/1 215/4 215/7 215/10
215/13 215/16 215/19
THE COURT: [279]
THE WITNESS: [8] 46/7 130/5 136/10
139/15 139/21 139/23 149/18 172/14

$
$1 [3] 205/23 206/15 206/17
$1,000 [4] 205/23 205/23 213/24 213/25
$100 [3] 206/20 206/21 214/16
$4500 [1] 41/16

'
'80s [2] 77/15 77/16
'cause [2] 113/14 133/15

.
..........131 [1] 2/21

1
1,000 [1] 185/20
10 [1] 18/11
101X [1] 73/18
103.5 [1] 75/7
10:48 [1] 83/4
11 [3] 36/25 50/23 59/16
11/29 [1] 179/3
11:07 [1] 83/5
11:58 [1] 119/20
11th [1] 217/23
12 [2] 55/11 55/14
13 [3] 42/25 43/2 55/2
1362 [1] 121/7
14 [3] 42/25 43/1 43/9
15 [3] 45/21 46/7 183/18
16 [2] 46/24 47/10
16-CV-572-RP [1] 1/6
1692A [1] 179/25
17 [2] 49/3 59/19
17th [1] 20/1
19 [1] 151/13
1983 [1] 141/13
1984 [1] 50/24
1:08 [1] 119/21
1:30 [1] 135/15
1st [2] 152/11 220/15

2
2,000 [1] 149/23
200 [1] 149/20
2006 [1] 125/8
2008 [2] 140/19 141/22
2009 [1] 142/1
2010 [3] 142/2 142/3 142/5
2013 [5] 7/6 143/1 143/17 154/6 162/12
2014 [2] 151/13 164/1
2015 [23] 13/15 13/19 14/23 112/25
113/2 117/1 118/2 125/16 142/21
143/18 144/15 144/21 145/24 149/12
149/20 149/23 152/11 152/17
163/25 197/10 197/24 199/3
2016 [3] 4/16 7/9 199/3
2017 [5] 1/12 3/1 214/19 220/10 220/15
20707 [3] 122/14 122/16 126/11
21 [1] 7/6
219 [1] 220/8

24 [2] 13/15 197/10
24th [1] 220/3
250 [1] 144/19
27 [2] 153/18 168/19
28 [1] 159/14
29 [4] 1/12 3/1 179/3 220/10
29th day [1] 214/19
2:15 [1] 174/2
2nd [2] 153/5 155/12

3
3,000 [1] 149/24
30 [2] 20/6 216/24
30-minute [1] 174/7
312 [1] 121/7
34 [2] 12/11 12/12
355 [1] 1/24
392.301 [1] 18/19
3:00 [1] 213/19
3:35 [1] 184/18
3:41 [1] 184/19

4
400 [1] 141/7
400s [1] 104/11
401Ks [2] 57/14 58/15
476-1362 [1] 121/7
48 [1] 148/2
4:48 [1] 210/20
4th [1] 152/6

5
5 p.m [1] 212/7
50 [2] 12/13 174/20
500 [1] 149/21
572 [3] 3/7 26/3 213/7
5:22 [1] 210/21
5:24 [1] 212/22
5:41 [1] 212/23
5:55 [1] 219/12

6
60 [1] 144/17
60,000 [1] 214/17

7
71 [1] 12/12
78210 [1] 1/24

8
80 percent [1] 158/5
8:37 [2] 1/12 3/5
8th day [1] 214/18

9
90 [1] 17/12

A
a.m [5] 1/12 3/5 83/4 83/5 119/20
A:16 [3] 3/7 26/3 213/7
A:16-CV-572 [3] 3/7 26/3 213/7
abbreviations [1] 152/20
ability [9] 36/15 37/11 47/20 51/8 63/10
121/21 121/24 199/23 220/10
able [27] 10/11 29/12 41/23 43/17 43/23
43/24 44/11 47/22 48/13 48/21 50/9
50/16 51/7 51/10 52/17 58/24 62/13
70/5 79/21 100/19 101/19 104/13 129/8
134/7 146/1 158/18 216/1
about [192] 4/4 4/8 7/23 7/25 10/20

A

about... [187]  10/25 12/4 12/8 12/8 13/5
13/6 13/13 15/6 15/12 15/16 17/2 17/16
19/13 19/19 23/17 24/18 25/4 27/14
28/24 29/6 35/3 35/7 35/9 35/21 36/14
37/10 38/10 38/25 40/5 41/10 41/16
41/22 44/15 45/5 47/19 49/18 49/23
51/6 51/19 52/20 53/1 54/20 55/17 56/7
57/10 60/1 60/13 63/1 63/4 63/15 64/16
65/14 65/21 65/24 65/25 66/4 67/2
67/14 67/22 68/3 72/20 73/1 73/13
73/15 73/25 75/14 77/7 78/1 79/11
79/21 81/3 81/8 81/11 81/17 82/10
84/12 88/15 88/18 89/14 89/22 90/11
90/16 90/20 91/17 94/7 96/10 97/18
99/16 99/20 99/23 99/24 100/13 102/15
105/22 106/4 107/23 108/15 109/17
110/25 115/2 118/13 118/20 118/23
119/1 119/11 119/2 119/4 123/7 123/18
127/8 127/25 128/23 131/18 132/23
134/21 135/7 137/8 137/16 137/17
137/18 141/7 141/8 144/11 144/19
147/8 149/20 157/21 157/23 159/2
160/4 162/20 166/11 166/13 167/11
167/18 167/24 169/13 170/2 172/6
173/11 174/7 174/9 175/23 175/23
176/14 177/7 177/14 177/21 177/24
178/1 182/20 184/12 185/2 186/2 186/7
186/22 188/2 191/1 193/3 194/16 195/7
195/8 195/25 197/15 197/16 198/1
198/4 198/20 198/22 198/24 199/3
199/5 200/2 200/3 201/13 203/1 204/15
205/14 206/8 207/4 207/4 211/15
211/20 216/12 216/15 216/20 216/24
above [1]  220/6
absolutely [5]  44/14 148/6 157/18
181/23 206/18
abuse [1]  67/15
ACC [1]  71/5
accept [3]  50/13 87/14 89/22
accident [2]  38/21 38/22
according [3]  85/9 133/21 163/23
accordingly [1]  148/16
account [126]  12/17 12/17 12/20 15/22
16/4 17/16 55/5 90/15 94/15 94/17
104/4 104/6 104/7 110/21 112/24 113/8
113/10 113/12 114/1 117/22 123/14
123/16 123/21 123/23 124/4 124/8
125/1 125/2 131/19 131/19 131/23
131/23 132/2 132/11 132/20 132/24
133/23 133/25 134/7 134/10 134/10
135/3 135/3 137/9 137/14 137/14
138/19 146/17 147/17 148/7 148/16
148/24 149/1 149/4 149/7 150/16
150/19 150/21 150/22 151/1 151/2
151/4 151/5 151/7 151/8 151/9 151/11
151/14 151/15 151/17 151/22 151/22
151/23 152/1 152/9 152/13 152/16
152/24 153/6 153/12 154/8 154/12
154/13 154/17 156/9 156/10 157/2
160/11 160/15 160/25 161/20 162/2
163/24 163/25 164/9 170/8 170/11
171/11 174/25 175/1 175/8 175/9
175/10 175/13 175/17 175/22 175/24
175/25 176/14 176/17 177/2 177/9
178/4 178/8 178/16 178/17 178/18
179/4 179/9 179/18 199/1 199/3 202/25
203/1 203/11 203/15
accounts [31]  12/17 13/7 95/1 104/14
104/18 104/20 104/24 110/2 110/6

110/16 134/1 137/12 142/11 142/14
142/20 146/1 148/14 148/16 149/16
150/16 150/24 156/19 176/10 178/2
192/19 192/21 192/23 200/4 202/21
203/24
accurate [10]  97/1 97/20 98/12 110/13
117/17 166/15 166/21 166/25 167/22
170/22
accurately [2]  34/13 146/5
accuse [1]  96/13
accused [1]  96/4
ACDV [3]  147/2 147/14 147/16
ACDVs [2]  149/10 149/22
Ackles [1]  106/22
acquainted [2]  30/14 31/9
act [18]  5/6 18/10 18/17 18/19 21/4
33/21 54/4 121/9 131/12 188/5 199/15
201/25 206/5 206/6 206/19 206/20
213/17 214/9
acted [2]  31/17 116/6
action [3]  65/21 65/24 199/18
actions [8]  105/9 121/12 121/16 121/19
121/22 121/25 179/22 199/19
activity [1]  178/19
acts [1]  199/24
actual [14]  17/23 121/9 161/9 170/20
184/2 185/9 185/11 185/11 185/21
186/2 186/7 186/16 199/15 204/7
actually [43]  7/15 12/4 20/17 24/16
46/12 47/14 48/9 59/20 61/6 63/20 68/7
72/24 94/17 95/12 101/5 104/8 110/20
115/1 117/20 129/10 137/25 138/14
141/1 142/3 145/25 146/13 147/2
147/14 152/23 157/10 157/24 160/10
165/7 168/22 172/2 187/9 189/19
197/19 201/16 203/23 204/10 214/18
218/1
adapted [3]  202/2 204/20 204/25
Add [1]  195/2
addition [7]  17/20 29/15 187/17
additional [8]  17/8 147/25 153/9 158/22
173/22 185/19 186/17 187/19
address [5]  32/5 13/4 17/4 93/5 122/13
126/19 204/2 204/5
adjournment [1]  219/12
adjudicated [1]  46/10
admissible [1]  23/17
admissible [1]  12/24
admission [14]  5/2 7/4 8/8 9/24 120/24
120/24 121/3 121/6 121/8 121/11
121/14 121/17 121/20 121/23
admissions [13]  4/3 4/18 4/20 6/13
10/15 10/19 120/17 120/25 138/5 166/8
199/6 199/9 205/18
admit [12]  16/11 61/22 88/22 121/1
121/3 121/6 121/8 121/11 121/14
121/17 121/20 121/23
admits [3]  199/17 199/18 199/21
admitted [20]  4/22 9/9 10/3 11/5 13/9
16/21 23/13 23/21 24/9 120/25 122/1
122/4 143/11 144/7 150/12 198/6
198/10 199/10 199/14 208/8
admitting [1]  9/23 42/5
adopted [2]  213/20 214/12
Adults [2]  70/14 70/15
advance [1]  33/1
advantage [2]  58/12 60/4
advertising [1]  128/7
advisement [2]  135/9 219/4
advocate [1]  90/1

affect [8]  4/1 36/15 37/11 42/6 47/19
57/1 59/4 72/3 98/7
affected [1]  94/1
afford [2]  193/25 195/14
afraid [1]  185/21
after [65]  5/22 8/22 12/21 26/1 38/20
52/9 90/22 93/3 101/9 104/3 105/15
106/9 106/14 109/8 109/20 109/21
112/11 114/17 114/21 114/21 114/23
114/25 115/7 116/25 117/11 124/18
124/21 124/22 125/5 125/11 125/15
131/13 135/11 137/15 138/19 145/17
148/3 153/10 155/22 158/8 159/14
159/15 160/24 167/1 171/5 171/13
171/22 171/23 172/4 172/4 174/2
191/7 194/12 194/15 197/11 197/17
198/25 203/14 203/17 205/2 209/9
209/19 212/7 218/13 218/16
after-lunch [1]  131/13
afternoon [2]  127/4 174/13
AG [1]  71/10
again [32]  9/5 25/6 27/12 39/16 40/6
40/12 42/3 43/6 43/16 45/10 57/25
59/12 70/1 75/18 92/17 95/14 105/14
120/10 122/25 143/20 151/25 161/25
179/12 179/19 194/17 197/2 200/23
207/13 209/16 216/21 217/2 218/3
against [18]  34/23 43/19 48/19 57/19
57/21 79/25 80/1 81/16 96/1 96/6 106/6
116/11 134/12 207/9
age [1]  78/15
agencies [7]  43/11 43/14 44/24 45/7
46/9 50/21 147/4
agency [11]  33/17 33/24 41/19 46/14
49/14 51/15 51/16 97/12 97/13 99/6
191/15
agenda [1]  163/9
ago [9]  36/5 38/21 41/10 49/9 55/18
60/10 60/11 113/21 180/9
agree [6]  65/2 85/24 86/6 99/18 108/2
160/20 191/2 194/14 194/20
agreeable [1]  60/24
agreed [2]  165/23 175/7
ahead [8]  4/4 15/1 24/9 42/16 45/18
180/15 180/16 185/5
aided [1]  1/21
aids [1]  91/10
airplanes [3]  69/9 69/9 69/12
Akerly [1]  30/25
Alcon [3]  71/17 71/17 71/18
Alice [1]  76/18
all [203]  3/4 4/4 7/15 7/20 9/12 9/13
10/19 18/15 18/16 18/18 18/20 21/14
25/5 28/6 28/12 28/14 30/11 32/9 33/14
35/11 35/23 37/18 39/14 40/15 40/20
40/22 43/25 44/21 45/1 45/3 46/22 47/4
47/6 48/16 48/16 49/4 50/8 50/17 50/25
51/1 51/3 51/13 51/17 51/25 52/9 52/25
53/11 54/13 54/15 54/22 56/9 56/22
57/10 57/23 60/1 61/9 61/9 63/3 63/15
63/19 64/9 65/10 65/20 65/21 69/24
70/4 70/17 71/6 71/12 71/21 74/4 76/12
76/21 76/21 77/20 77/25 79/9 79/10
79/18 80/4 80/16 82/6 82/7 82/10 83/8
83/11 83/25 84/1 84/5 84/7 84/9 84/20
84/21 85/18 88/19 89/3 90/1 92/10 93/3
93/17 93/18 95/10 96/13 98/25 99/18
101/24 102/2 102/15 102/23 103/5
103/16 103/23 105/1 108/18 113/18
116/12 118/21 119/18 120/15 122/1

**A**

all... [83]  122/4 124/4 124/21 126/20
128/10 130/18 131/3 138/7 138/16
140/12 142/9 142/14 145/15 145/20
151/25 153/17 153/24 155/21 156/3
156/11 159/12 162/15 163/1 164/19
165/2 165/10 166/12 167/10 168/5
168/6 172/13 172/23 173/14 173/21
173/22 174/19 176/21 177/20 179/13
182/7 184/6 184/15 184/20 185/2 185/3
186/2 186/4 186/22 188/25 190/18
190/21 191/2 191/6 191/7 192/6 192/7
192/18 193/22 194/5 195/9 195/13
195/20 200/20 204/16 205/7 206/10
207/22 208/2 210/3 210/4 210/7 210/17
211/15 211/20 213/21 214/13 214/20
216/10 217/2 217/5 217/10 217/20
219/1
allegation [2]  18/12 134/13
allege [1]  131/21
alleged [20]  4/7 34/4 34/4 115/20 116/4
121/12 121/16 121/19 121/22 121/25
132/1 134/12 176/11 178/4 180/1
199/19 199/24 211/9 214/3 214/5
allegedly [2]  65/22 165/12
alleges [1]  33/20
alleging [1]  135/3
allow [11]  19/20 21/11 21/21 119/3
149/18 169/25 184/14 185/19 202/24
202/24 210/9
allowed [10]  6/5 8/21 25/13 90/4 100/13
159/3 184/13 185/25 205/19 212/6
almost [5]  41/12 43/12 138/7 157/10
165/1
alone [2]  85/21 92/5
along [6]  4/25 7/15 7/20 28/1 51/6
195/20
already [22]  6/11 9/2 9/6 11/15 17/2
24/20 25/5 26/5 25/8 25/14 43/2 46/25
47/4 51/21 54/20 58/16 64/15 77/9
118/16 128/16 166/2 183/8
already-decided-upon [1]  24/20
also [49]  3/16 3/19 5/11 9/22 19/7 19/18
20/7 20/21 22/18 24/9 27/9 39/19 44/7
49/10 49/13 58/16 58/23 59/1 68/9
73/10 81/4 95/9 96/19 96/19 109/3
124/3 124/10 125/14 126/4 129/18
137/18 143/24 145/18 146/3 163/18
179/7 181/19 187/23 187/24 192/10
193/8 193/25 194/8 194/21 196/25
201/8 205/11 206/3 217/15
Alternative [1]  73/20
Although [1]  88/22
always [7]  77/12 78/20 78/20 100/14
116/11 140/4 176/17
am [18]  12/5 14/25 21/16 23/15 24/3
38/1 50/1 68/19 75/11 75/14 77/25
107/19 116/9 135/6 154/25 160/10
175/2 206/22
amazing [2]  194/5 194/5
America [2]  59/23 59/24
among [4]  4/22 53/14 53/18 82/25 84/5
amount [12]  17/17 97/19 166/14 166/21
166/24 167/22 170/21 170/23 187/2
187/6 213/24 214/17
Amplified [1]  104/4
AMY [4]  1/15 3/12 26/9 29/21
and/or [1]  31/12
Andasola [4]  1/23 220/3 220/18 220/18
anniversary [4]  142/4 142/6 155/1 155/2

announcements [2]  3/10 26/6
announcing [2]  3/16 49/23
162/23
annually [1]  162/21
another [13]  9/3 19/6 37/21 42/11 56/22
60/17 76/14 80/5 82/20 91/22 93/4 97/9
99/15
answer [32]  5/20 29/12 29/15 48/7 54/11
54/11 76/7 79/14 86/17 88/6 91/25
124/23 124/24 125/11 125/16 126/1
186/19 196/1 200/23 201/3 201/4 201/8
201/9 201/11 206/15 206/21 213/14
213/20 213/21 214/5 214/12 214/13
answered [4]  8/16 28/7 28/14 49/6
answering [2]  200/21 201/10
answers [5]  28/12 47/8 205/11 209/10
209/13
anticipate [2]  183/16 194/7
ANTONIO [2]  1/24 67/16
any [254]
anybody [10]  36/1 65/15 66/1 67/21 72/8
78/16 78/18 78/21 93/15 157/19
anymore [3]  114/23 160/23 211/7
anyone [57]  18/3 29/24 30/22 33/3
36/19 36/20 37/15 37/21 38/15 38/16
39/6 39/11 40/9 40/17 40/19 41/7 44/1
44/25 45/2 50/18 51/6 51/13 51/17
53/14 53/18 56/18 57/15 61/2 62/21
63/9 63/14 64/8 64/13 65/19 83/6 89/9
89/9 89/21 90/5 96/13 97/10 99/12
100/8 110/5 114/12 114/14 118/20
119/3 119/4 145/8 149/3 149/6 209/6
209/14 214/20 216/12 216/14
anything [60]  7/21 9/18 10/9 11/12 13/6
15/10 25/18 32/12 33/3 35/3 36/14
37/10 38/10 38/25 40/5 43/6 44/15
47/19 49/5 49/18 51/6 55/5 55/7 63/19
64/10 72/8 74/2 75/6 79/12 81/8 83/6
86/25 90/11 96/2 96/5 99/13 99/13
99/13 106/11 108/21 108/24 119/2
119/17 120/21 124/3 124/7 124/10
125/20 133/6 135/13 143/25 163/21
167/1 179/17 184/25 194/16 207/7
208/1 216/18 216/19
anyway [5]  20/20 74/24 77/19 135/9
205/1
anywhere [4]  19/24 128/22 142/12 206/9
apologize [14]  7/19 101/14 120/2 120/22
133/15 141/21 153/25 168/2 168/5
175/4 184/6 189/24 206/23 207/8
appear [2]  163/13 179/3
appears [4]  151/6 167/14 170/5 174/25
Apple [6]  58/6 58/7 58/9 68/20 74/20
74/21
apples [2]  17/18 17/18
applicable [2]  52/14 156/14
applied [1]  156/4
applies [4]  52/8 53/2 88/13 190/12
apply [7]  85/22 88/10 156/11 168/22
181/17 181/20 190/8
appreciate [10]  26/25 27/2 42/15 46/16
82/22 84/16 164/20 216/4 216/7 217/2
appreciation [2]  216/6 216/9 216/25
approach [8]  16/1 45/24 63/23 97/21
102/6 130/13 173/3 200/6
approaches [1]  216/14
appropriate [8]  8/19 18/22 28/18 134/20
189/1 197/12 206/18
approved [2]  146/14 162/6
Approximately [1]  144/17

apps [1]  78/5
April [1]  7/6
arbitrations [1]  142/17
are [217]  4/20 4/21 5/2 5/17 6/10 7/5
7/10 8/12 8/22 11/6 12/18 12/20 12/23
23/3 23/21 23/22 24/3 24/4 24/5 24/9
24/22 24/25 25/6 25/7 25/7 25/13 27/3
28/4 28/4 28/10 28/11 30/13 31/8 32/1
32/9 34/21 35/15 35/17 35/23 35/25
38/3 41/24 45/11 48/20 50/10 50/14
51/21 52/3 52/13 52/16 53/5 54/3 54/6
55/1 55/11 57/12 57/25 58/16
59/6 59/9 59/15 61/11 61/15 62/6 63/4
63/5 64/7 64/9 64/19 64/22 65/22 66/15
68/9 68/16 68/18 69/12 69/24 70/1 70/4
70/17 71/4 73/2 75/23 76/13 79/24 82/8
82/9 83/12 84/21 85/21 85/21 86/8
86/10 86/11 86/19 87/4 90/4 91/9 91/14
92/10 92/10 93/8 93/12 93/18 93/24
100/6 100/14 101/17 102/13 103/7
103/19 105/1 109/5 118/13 118/19
119/22 120/25 121/1 121/6 122/1 122/3
122/3 124/23 125/9 125/25 126/10
134/11 137/12 138/14 140/15 140/25
142/11 143/3 146/18 148/25 149/10
149/16 150/2 150/3 154/24 157/7
157/23 157/24 158/1 158/8 158/16
159/3 160/18 161/13 161/16 161/17
162/7 162/9 163/1 163/10 166/11
166/15 168/7 169/14 170/14 174/2
174/6 175/2 175/17 175/23 176/14
177/20 178/11 180/21 181/13 181/23
182/19 183/8 183/11 184/13 185/11
185/13 185/15 186/16 187/4 187/13
188/2 189/15 190/15 191/14 192/11
195/1 195/10 197/1 197/11 198/23
198/23 199/4 199/7 199/10 199/10
200/12 200/21 201/2 201/19 205/19
206/25 207/10 207/14 207/16 208/11
209/13 213/21 214/13
area [1]  31/22
Aren't [1]  74/21
argue [1]  61/4
argued [1]  9/2
arguing [1]  10/20
argument [11]  8/9 14/3 17/1 176/5
191/22 199/7 201/5 202/4 202/23 204/2
204/3
arguments [15]  2/23 52/11 86/9 88/20
93/5 93/8 93/12 174/6 174/11 183/17
189/16 190/13 208/4 211/13 211/24
arises [1]  82/17
arising [4]  180/2 196/8 213/11 214/4
around [11]  26/23 29/11 46/1 50/24
67/13 75/20 82/20 90/6 139/15 156/6
191/23
arranged [1]  27/16
arrangement [1]  160/17
arrangements [1]  62/18
arrive [1]  36/11
arrived [1]  137/15
as [226]
asbestos [2]  47/12 47/15
aside [8]  41/23 43/18 45/11 48/13 50/10
96/7 96/20 96/21
ask [70]  9/14 10/22 15/16 15/25 16/2
24/18 27/18 27/21 27/24 27/25 28/23
29/7 29/10 29/16 32/6 34/24 35/11

**A**

ask... [53]  37/19 39/7 39/25 40/17 40/15
41/4 41/20 42/22 43/5 47/7 49/5 51/14
53/23 54/11 54/19 61/10 61/20 64/8
72/22 78/20 79/19 82/15 103/24 105/13
115/1 124/18 128/23 132/3 144/24
149/25 161/24 162/20 170/16 172/18
174/14 183/12 191/9 194/4 194/8
195/16 196/1 196/5 207/8 207/12
207/13 208/15 209/4 209/21 210/7
212/12 213/6 214/25 216/22
asked [36]  5/4 7/9 18/12 18/5 18/7 18/9
18/11 18/14 28/6 28/10 43/7 47/8 49/6
61/1 79/20 88/5 103/19 107/9 115/3
119/10 123/13 123/17 123/19 123/23
124/3 124/14 125/9 125/14 125/23
136/17 168/23 172/25 178/23 188/12
198/6 198/9
asking [15]  10/11 17/19 25/4 62/25 63/1
63/21 80/5 107/6 110/12 137/13 167/25
168/4 168/9 169/6 188/10
asks [1]  142/18
asserted [1]  110/11
asserts [1]  34/17
assets [2]  57/13 128/9
assign [1]  148/14
assigned [2]  144/22 177/9
assist [1]  186/19
assistance [5]  5/22 58/18 58/23 62/15
62/16
assistant [2]  106/23 141/25
Associate's [1]  32/3
associated [1]  90/4
ASSOCIATES [35]  1/7 3/8 9/4 26/4
27/15 31/11 33/16 85/8 97/16 99/3 99/5
99/17 100/9 101/9 110/21 111/25 112/5
112/8 114/19 115/11 115/14 116/6
117/14 117/20 125/10 128/24 132/12
132/23 132/24 137/10 140/16 140/21
176/11 177/8 213/8
Associates' [1]  132/19
Association [1]  68/8
assume [2]  122/3 191/22
assumes [1]  169/23
assurance [7]  68/16 68/20 68/23 69/4
69/7 69/10 69/17
assure [3]  27/4 27/4 54/1
Atkins [1]  61/15
attached [5]  17/23 19/2 121/2 121/4
148/20
attempt [4]  5/3 16/10 160/13 162/3
attempted [1]  125/10
attempting [4]  24/25 41/16 160/19
196/13
attend [1]  3/24
attended [1]  39/7
attention [8]  32/13 33/4 80/12 88/16
89/7 139/1 139/3 195/20
attentive [2]  28/10 33/7
attitude [2]  141/17 141/18
attorney [21]  16/18 22/18 22/21 31/17
31/17 53/22 64/7 66/11 92/20 95/16
97/5 106/23 107/13 109/18 114/21
114/22 115/3 136/17 170/8 170/9
170/15
attorney's [4]  14/25 15/5 64/16 67/8
attorney/client [1]  107/13
attorneys [19]  27/25 28/23 29/13 31/16
32/5 54/1 54/6 64/9 65/21 80/17 90/3
92/18 106/16 126/8 190/13 198/23

199/4 199/7 200/4
attorneys' [1]  88
audacity [1]  191/9
AUGUST [7]  1/12 3/1 142/3 142/5 143/1
214/19 220/10
AUSTIN [10]  1/2 26/17 26/21 37/1 38/24
59/22 73/18 73/19 84/5 220/12
author [4]  4/22 121/1 166/6 169/20
authored [6]  6/14 34/14 154/5
authorize [1]  4/23
authorized [1]  11/19
auto [1]  75/5
automated [6]  146/21 146/23
automatically [2]  72/18 147/20
availability [1]  182/4
available [7]  20/5 88/23 89/1 95/15
174/9 203/8 203/23
avoid [6]  188/6 188/17 202/2 208/20
213/20 214/12
award [2]  213/24 214/16
awarded [3]  187/3 213/23 214/15
aware [4]  17/7 42/13 51/21 59/6
away [7]  55/13 72/1 95/7 100/22 104/3
116/12 116/13
awkward [2]  79/6 218/2

**B**

B1 [1]  154/19
back [64]  4/16 19/2 22/6 25/23 27/17
27/20 28/4 36/7 38/9 40/9 42/17 42/22
44/22 45/2 45/23 47/7 50/18 51/18 60/2
63/2 76/1 76/19 76/23 77/4 78/18 78/21
82/12 84/22 93/23 94/13 96/24 99/2
106/2 106/13 110/20 112/13 112/17
116/2 118/15 119/6 130/23 130/25
141/18 145/24 146/16 147/20 147/24
149/19 149/23 151/20 155/21 161/5
186/14 190/25 197/1 205/18 208/17
208/20 212/6 212/13 212/18 212/19
216/23 217/1
background [9]  28/24 37/16 44/8 44/10
54/3 81/1 81/2 81/7 141/9
backwards [1]  214/18
bad [6]  68/2 76/9 104/12 106/2 123/4
158/24
balance [3]  160/16 160/21 170/12
bank [30]  56/23 56/25 57/2 58/4 94/14
94/15 104/6 131/24 132/13 132/13
132/17 132/24 134/13 134/14 150/21
150/22 150/23 151/1 151/23 174/25
175/24 177/13 177/16 177/19 178/18
179/3 179/9 187/22 197/5 197/6
banking [1]  57/11
banks [2]  59/1 177/20
base [1]  54/8
based [10]  7/21 12/8 12/15 13/5 34/22
52/17 52/22 95/16 145/19 178/10
basically [7]  41/13 54/19 105/10 117/11
154/2 167/25 193/4
basis [12]  13/8 15/18 18/7 18/10 18/22
91/1 109/1 117/23 138/15 158/8 162/22
177/1
Bates [1]  12/11
be [279]
Beach [1]  140/14
bear [1]  53/7
bearing [1]  80/12
became [1]  141/25
because [97]  3/21 4/4 5/4 5/21 6/4 6/15
6/22 6/22 6/23 7/1 7/2 8/14 10/8 12/16

15/19 17/7 23/11 27/10 27/20 28/11
37/25 42/14 50/24 50/25 57/9 57/10 57/16
61/6 63/12 63/13 63/20 64/21 67/24
69/12 70/4 73/5 73/10 77/8 77/11 80/1
82/16 84/1 84/8 90/1 94/21 97/8 100/24
105/19 109/13 110/10 115/16 116/14
117/8 117/9 126/6 128/19 132/4 132/18
134/5 138/16 139/2 139/6 161/19
161/23 167/16 169/16 176/4 176/15
177/3 178/13 179/1 179/20 181/10
182/15 182/16 185/10 186/4 186/6
188/1 191/24 193/19 193/20 195/4
195/9 196/15 197/17 198/5 199/13
201/5 201/18 204/10 206/15 207/9
207/20 211/6 216/2 219/4
become [6]  51/21 90/1 145/2 145/6
157/25 160/25
been [95]  5/10 7/15 7/20 8/8 9/2 9/8 9/9
9/10 11/5 11/20 13/9 24/24 25/1 25/5
25/6 25/8 25/14 27/15 30/15 30/18
31/10 31/12 35/1 35/13 40/16 40/18
41/5 41/7 42/21 43/8 43/20 43/22 45/12
46/25 48/5 48/6 48/10 48/18 49/25
57/16 57/17 60/16 60/19 62/3 62/8
79/21 84/6 85/15 90/23 91/4 91/25 93/3
95/6 103/10 108/25 113/18 116/20
116/25 118/1 118/9 119/10 122/4
123/19 124/8 125/19 131/16 133/5
139/20 140/17 141/11 143/18 144/16
144/22 152/12 152/24 158/6 158/7
165/7 168/22 171/12 171/24 173/12
176/19 179/14 187/20 188/1 188/4
188/15 194/16 195/4 199/22 202/19
203/12 208/12 209/2
beer [1]  209/2
before [41]  1/11 3/24 10/7 10/9 14/18
16/2 22/16 24/18 29/15 35/7 45/5 51/21
61/2 79/15 83/7 85/8 89/25 93/15 95/8
103/7 109/8 109/10 109/19 109/25
119/17 130/20 135/25 139/17 144/10
146/13 152/12 152/13 168/20 171/10
174/5 180/25 183/12 190/24 209/23
217/21 220/10
beg [1]  202/6
began [1]  141/22
begin [4]  92/12 93/15 190/15 208/15
beginning [3]  77/2 138/25 187/5
behalf [15]  3/15 26/12 26/18 27/12
47/15 97/5 111/22 115/7 116/25 131/5
134/5 166/3 169/14 170/3 216/5
behavior [1]  205/24
behind [1]  68/23
behold [1]  198/15
being [56]  3/22 26/20 27/13 27/22 28/10
38/12 39/2 40/6 42/7 42/12 44/16 48/9
48/9 49/20 57/22 71/1 71/2 86/13 97/7
99/24 101/24 110/21 112/24 123/13
123/14 123/17 124/11 124/18 132/5
132/11 134/1 134/8 141/18 142/4
145/15 145/16 150/17 150/18 162/5
162/12 170/7 170/8 170/12 177/9
177/10 178/23 179/22 184/13 185/11
197/25 198/7 198/24 199/2 205/7
208/21 210/23
beliefs [1]  52/20
believe [58]  4/21 5/19 8/25 9/7 12/24
20/16 21/23 31/21 35/1 48/15 48/17
50/15 51/25 53/12 56/2 59/15 61/10
73/5 86/13 87/13 87/13 94/9 94/11
97/19 98/3 99/18 99/18 99/24 100/5

believe... [29] 100/20 100/20 101/8
111/11 128/25 132/14 133/6 133/13
137/10 140/24 144/23 149/20 152/11
166/1 171/11 174/19 174/12 176/22
176/22 177/19 187/19 190/15 192/24
194/13 194/21 195/3 195/8 213/23
214/15
believed [3] 18/21 110/17 133/23
bell [1] 35/4
belongings [1] 128/10
below [4] 156/10 159/24 203/4 203/25
bench [21] 16/2 29/11 45/24 46/2 46/5
54/12 64/1 64/4 80/17 80/19 80/22
97/23 98/1 102/8 102/11 130/14 173/5
173/8 200/6 200/7 200/10
benefit [5] 11/3 88/20 121/22 121/25
199/23
besides [4] 17/9 78/22 108/8 167/16
best [7] 31/15 70/5 95/5 171/15 174/9
212/19 220/9
bet [2] 70/17 189/14
better [5] 60/19 62/1 106/11 108/16
211/16
between [4] 7/6 108/11 108/13 183/21
beyond [3] 53/6 53/8 88/9
bias [8] 29/6 42/11 54/4 63/10 63/16
95/24 96/1 96/6
biased [7] 50/2 57/9 57/10 57/16 57/19
57/21 81/21
biases [4] 28/24 48/19 48/20 57/8
bible [2] 73/10 78/6
big [6] 81/15 97/18 140/20 158/24
205/22 207/20
bigger [2] 191/1 192/7
bill [2] 79/1 79/2
bills [1] 129/14
biographies [1] 75/16
bit [17] 12/5 19/7 22/12 44/8 63/15
67/22 72/14 79/17 79/11 141/8 146/16
166/22 170/19 190/22 193/3 196/4
216/20
biting [1] 57/25
black [1] 142/23
Blackberry [1] 89/18
blanket [1] 179/16
blog [1] 89/19
BLVD [1] 1/24
board [1] 22/16
boat [2] 198/23 199/4
bona [25] 8/20 8/21 11/18 21/6 21/10
25/11 34/17 100/17 139/8 181/20
181/22 182/4 182/5 182/9 183/5 187/1
193/2 193/4 195/2 201/14 201/17
201/23 204/3 204/4 205/12
bona fide [9] 183/5 193/2 193/4 195/2
201/14 201/17 201/23 204/3 204/4
bona-fide [7] 8/20 8/21 11/18 21/6 21/10
25/11 34/17
bond [1] 33/18
book [11] 73/1 73/8 73/17 74/19 75/3
75/25 76/18 81/10 81/12 111/6 201/15
books [6] 74/4 74/14 75/15 75/23 76/10
142/13
bookstores [1] 128/1
borrower [1] 153/2
boss [2] 142/8 142/17
both [23] 5/6 11/17 23/12 23/17 49/25
50/4 50/5 50/16 52/10 62/6 87/11 93/14
129/20 131/11 134/10 155/19 181/20

202/10 202/10 204/10 205/11 212/7
216/20
bother [1] 67/11
bothered [1] 171/17
bottom [4] 151/7 152/23 156/18 202/20
bought [6] 112/16 113/13 113/13 113/21
114/7 196/21
box [9] 27/16 83/15 139/15 159/15
159/16 203/5 204/1 204/10 217/5
boxes [2] 159/2 203/7
Brackenridge [1] 41/11
break [19] 11/23 25/22 77/4 82/8 82/17
82/23 95/20 102/22 118/9 118/11 119/3
119/17 119/24 130/20 130/24 168/3
174/8 180/21 208/16
breaking [2] 23/8 24/1
brief [5] 33/15 183/24 184/13 190/2
208/12
briefing [3] 184/14 217/10 219/7
briefs [1] 217/12
bring [17] 6/4 8/8 8/19 9/11 9/11 27/10
32/13 33/3 40/14 83/7 83/8 120/4
135/23 178/13 188/9 188/25 209/18
bringing [2] 24/23 25/6 173/11
brother [2] 43/10 43/20
brought [13] 5/23 6/3 6/20 9/25 24/21
27/6 41/13 59/14 59/16 81/5 133/16
159/17 188/4
Brown [1] 47/11
building [1] 212/6
built [1] 116/2
bumper [5] 73/3 73/11 73/23 73/24
74/1 74/11 74/14 74/24 75/10 75/21
76/12 77/10 77/23 78/7 78/12
burden [9] 53/1 53/3 53/6 87/18 88/7
175/25 176/9 188/9 190/14
burdens [1] 134/22
bureau [7] 34/13 72/1 72/4 72/15 99/21
147/4 147/7
bureaus [4] 146/24 147/11 147/21 171/8
business [37] 29/3 30/15 31/10 38/24
39/8 39/16 67/4 67/8 67/25 68/17 84/12
112/7 112/14 112/17 113/24 114/12
114/15 126/11 126/14 127/7 127/9
127/18 127/23 127/24 128/13 128/17
128/19 176/10 176/21 179/13 192/20
192/23 198/14 198/15 198/16 198/17
198/18
business-law [1] 39/8
busy [2] 32/11 70/18
buy [3] 114/4 114/5 162/5
buyer [2] 97/11 177/8
buyers [1] 94/21

C

California [1] 140/25
call [32] 28/3 30/8 31/3 31/4 33/17 42/20
45/18 58/18 61/2 72/22 80/11 83/12
84/19 106/17 124/13 125/15 129/9
139/12 140/24 141/4 141/16 149/3
149/6 160/22 161/6 161/9 161/18
161/24 161/24 162/1 202/12 203/20
call-out [3] 161/6 161/9 202/12
call-outs [1] 161/18
called [26] 5/8 30/25 41/16 52/15 53/4
62/4 83/14 84/6 91/18 103/10 104/25
111/5 112/8 115/3 124/14 126/11
128/24 128/25 129/2 134/17 138/20
139/20 147/2 147/13 179/22 201/16
calling [8] 62/17 71/18 82/18 114/20

134/6 170/23 187/18 204/11
camera [3] 225/9 218/52
222/6 09/14 115/11
115/13 148/25 164/5 179/8
came [9] 22/16 106/17 123/23 132/22
133/20 133/22 166/13 197/10 197/17
Camelback [2] 122/10 126/12
camera [1] 89/17
Campbell [4] 133/18 134/4 179/20 184/1
can [136] 6/9 7/13 11/11 16/5 16/6
16/11 20/5 21/22 23/9 23/13 25/21 26/6
31/13 32/23 42/17 45/11 45/18 46/10
46/14 47/3 48/25 54/4 54/7 55/17 56/9
56/11 58/18 60/1 63/20 66/2 68/15 70/5
73/16 74/22 76/21 78/2 78/3 79/7 80/10
82/25 83/1 89/3 95/23 96/4 96/19 96/20
98/17 101/14 102/6 102/21 103/7
103/25 107/11 107/25 108/10 108/1
108/15 111/12 114/9 114/10 115/23
117/7 118/12 118/15 130/24 130/25
133/7 136/9 140/4 140/10 140/12
140/20 142/12 142/24 143/15 144/15
145/4 145/8 146/17 146/18 146/19
147/23 149/12 149/13 150/1 150/16
150/17 150/24 150/24 151/4 151/10
152/19 154/1 155/25 156/1 158/21
159/23 160/2 160/4 164/22 167/11
168/3 168/11 168/15 168/16 170/25
173/3 173/10 180/10 180/20 183/14
185/5 187/12 192/7 194/18 195/1
195/14 203/5 203/15 203/25 204/8
205/17 206/17 210/12 211/9 211/15
211/20 212/8 212/12 216/16 216/18
216/19 216/24 217/20 218/6 218/16
can't [20] 11/3 16/7 19/19 64/21 79/14
84/21 89/21 101/1 110/23 134/25 155/1
159/22 160/15 162/1 165/14 165/14
166/24 167/23 193/25 194/1
candor [2] 42/15 46/16
cannot [2] 5/20 161/25
capacity [3] 37/21 37/23 220/5
Capital [3] 81/19 150/23 151/23
captain [1] 74/3
capture [1] 79/23
car [8] 40/24 45/8 73/3 73/12 77/1 77/12
77/23 162/4
card [17] 4/15 13/17 62/18 112/20
112/22 113/3 113/8 114/12 114/15
114/15 116/16 128/13 128/16 129/16
129/18 131/18 131/24
cards [6] 50/25 60/24 62/11 72/10
116/13 198/18
care [13] 60/19 61/21 62/23 70/17 72/1
72/12 72/15 76/6 139/4 192/3 195/5
197/12 216/16
careful [1] 88/16
carefully [1] 42/21
caregiver [2] 70/12 70/13
Carol [3] 126/13 127/15 128/4
Carol's [6] 126/11 127/11 127/12 127/17
127/20 198/15
case [165] 1/6 5/9 5/13 5/20 6/3 9/5
9/19 11/11 13/24 17/9 17/14 17/14 18/3
19/6 20/9 27/14 27/23 28/18 28/21 29/4
29/5 29/7 29/20 29/22 30/8 30/16 31/16
31/24 32/5 33/8 33/16 34/22 34/25 35/2
35/3 36/16 36/25 37/12 38/12 39/3 40/2
40/7 40/12 41/22 41/25 42/14 42/15
43/18 43/19 44/17 45/14 46/11 46/15
47/20 48/14 49/21 50/7 50/11 51/22
52/8 52/11 52/16 53/2 53/2 53/3 53/9

Case 1:16-cv-00572-RP Document 89-5 Filed 09/23/17 Page 226 of 252

case... [99]  53/15 54/5 65/20 65/23
79/22 80/6 80/7 80/14 84/12 85/7 87/2
87/16 87/17 87/18 88/4 88/5 88/10
88/12 88/18 88/21 89/8 89/9 89/10
89/14 89/22 89/23 89/24 89/25 90/4
90/9 90/11 90/14 90/17 90/19 90/21
90/25 91/11 91/22 92/14 92/24 93/6
93/9 96/7 97/11 97/15 100/6 102/2
118/20 118/23 118/24 119/1 119/2
132/2 133/7 133/17 134/4 134/9 134/21
134/24 135/12 136/16 136/19 139/6
142/19 144/12 148/17 155/9 156/16
161/3 162/10 165/15 174/3 174/6
174/12 175/2 179/20 180/4 180/5 180/8
180/9 180/17 184/1 185/12 187/17
187/22 190/7 190/12 190/15 193/5
204/6 205/1 207/2 208/4 208/23 209/6
209/8 213/12 216/12 216/15
cases [13]  5/16 5/19 6/22 18/20 19/13
27/6 35/16 35/18 53/7 88/8 147/23
165/10 184/12
catch [5]  137/19 193/17 193/22 194/23
195/1
categories [1]  156/25
categorizing [1]  47/14
category [1]  156/23
caught [2]  158/19 158/20
cause [10]  66/25 79/12 80/24 81/23
81/25 121/4 138/4 166/7 169/15 170/3
caused [5]  18/20 43/11 100/3 206/1
206/16
causes [1]  67/7
cautions [1]  90/24
cautious [1]  62/6
caveat [1]  182/2
CDs [1]  77/12
cease [20]  34/3 138/1 138/19 148/21
148/22 148/24 149/3 149/7 153/1
155/17 156/18 160/5 160/23 161/13
161/22 169/9 171/19 202/21 203/9
203/17
center [1]  141/4
centers [1]  140/24
Century [4]  132/13 132/13 132/17
134/13
certain [8]  6/7 21/19 54/7 60/22 60/24
79/21 86/8 161/13
certainly [4]  16/7 29/2 50/8 219/6
certification [1]  76/11
certified [3]  67/24 220/3 220/4
certify [1]  220/6
CESAR [1]  1/24
cetera [2]  109/1 180/3
CFPB [1]  19/10
challenge [1]  217/16
challengeable [1]  81/23
challenged [1]  98/4
challenges [1]  80/24
challenging [1]  48/7
chance [2]  152/1 159/8
change [5]  67/22 117/20 160/25 182/21
189/2
changed [2]  10/23 76/20
changes [4]  163/10 163/11 189/3 218/18
changing [1]  172/2
channel [1]  76/14
character [5]  16/15 19/19 19/21 22/17
22/20
characterized [1]  169/11

charge [11]  36/4 52/15 62/1 184/21
185/7 186/13 187/20 188/2 206/5
207/15 208/7
charged [1]  85/10
charges [2]  113/3 131/18
charging [1]  60/14
CHAVEZ [1]  1/24
cheat [1]  200/25
check [18]  54/22 55/8 104/18 104/20
117/9 120/9 135/17 135/18 138/14
156/3 156/11 156/13 159/16 178/21
179/4 204/1 217/4 218/9
checked [9]  41/14 41/14 54/22 54/24
55/3 55/4 94/25 104/23 117/12
checking [2]  104/4 104/7
chew [1]  168/1
Chicago [1]  95/16
children [3]  70/13 74/2 89/11
choked [1]  111/19
choose [1]  91/5 91/9
chose [1]  203/24
chosen [2]  28/11 83/25
Christian [3]  78/4 127/24 128/1
circle [1]  156/5
circumstance [1]  171/2
circumstances [4]  70/6 88/25 89/3
217/15
circumstantial [2]  87/5 87/6
citation [1]  180/8
cite [4]  7/22 133/14 184/2 184/5
cites [1]  187/19
citizens [1]  84/14
civil [8]  10/1 36/25 53/2 53/7 61/18 68/9
69/13 87/17
claim [5]  21/5 21/9 88/2 88/3 177/1
claimed [1]  177/10
claiming [2]  46/12 197/11
claims [4]  16/18 18/22 33/15 53/12
clarification [1]  103/19
clarify [2]  116/15 211/9
clarifying [1]  181/16
CLARK [14]  1/15 3/12 8/5 22/11 23/6
26/8 26/9 29/20 29/21 29/23 30/6 30/16
54/13 65/15
class [2]  65/21 65/24
class-action [2]  65/21 65/24
classes [2]  58/14 58/16
classic [1]  191/3
cleaned [1]  195/11
clear [8]  4/8 10/16 122/21 123/4 168/5
170/15 182/6 182/12
clearly [2]  107/10 192/24
clerk [4]  28/3 42/20 84/19 213/6
click [2]  155/8 155/22
clicked [3]  155/11 155/13 159/2
client [31]  3/16 4/24 5/5 7/17 12/21 13/4
19/22 29/24 30/5 31/1 63/12 64/8 66/20
66/24 86/12 94/6 94/13 107/13 120/7
122/22 122/24 123/5 134/1 134/5
134/12 135/4 171/23 205/21 207/9
207/11 207/19
close [5]  31/18 116/13 149/23 208/11
210/13
closed [2]  72/11 178/1
closely [1]  62/5
Closer [1]  73/10
closing [13]  2/23 3/20 52/11 88/20 174/6
183/17 189/6 190/13 190/16 190/19
194/9 195/22 208/4
clothes [1]  113/20 114/7 196/22

clue [1]  110/25
CM flags [2]  184/2 184/3
CND [1]  152/25
CNN [1]  77/24
co [3]  29/23 30/1 30/3
co-counsel [3]  29/23 30/1 30/3
coached [2]  198/24 200/14
coaching [2]  158/18 158/22
Coben [1]  73/9
code [3]  33/22 131/11 171/17
coded [3]  167/6 169/8 171/19
codes [1]  169/9
Coleman [3]  184/1 184/2 187/17
colleague [1]  42/4
collect [14]  125/10 153/8 154/9 155/6
155/8 155/22 159/15 161/10 163/14
196/7 196/14 196/21 213/10 214/2
collected [5]  134/1 150/17 150/18
197/25 198/7
collecting [6]  34/4 137/11 137/15 196/20
197/16 197/19
collection [24]  5/6 18/10 18/17 18/19
21/4 33/17 33/21 34/3 41/19 43/11
43/14 44/24 45/7 46/9 48/3 48/5 48/10
49/9 50/20 51/15 51/16 131/12 168/20
182/23
collections [4]  49/10 141/12 141/14
141/19
collector [6]  41/5 41/7 41/11 41/15
203/19 205/25
collectors [5]  41/21 48/6 48/19 57/9
57/17
college [3]  39/17 40/24 50/24
come [26]  6/9 9/5 25/12 28/11 42/22
43/4 45/22 62/22 63/11 82/19 83/14
84/1 84/3 93/11 98/15 98/18 99/17
139/13 146/17 146/21 151/20 169/21
183/11 200/5 208/17 216/24
Comenity [6]  150/22 150/23 151/23
177/19 197/5 197/6
comes [9]  49/5 62/7 93/10 93/14 147/16
148/8 148/10 159/15 198/25
coming [5]  40/23 116/10 179/8 184/12
208/20
commence [1]  89/4
comment [1]  17/16
comments [1]  81/2
commercial [2]  76/14 77/3
commercials [1]  77/11
committed [5]  121/9 135/4 199/15
213/17 214/9
communicate [11]  33/23 34/9 46/13
89/13 89/16 89/21 90/5 110/15 160/14
160/19 209/16
communicated [1]  34/12
communicating [1]  155/25
communication [2]  97/9 146/1
communications [4]  5/14 125/5 153/11
153/13
community [7]  27/5 27/10 27/11 106/17
109/9 115/20 116/5
commute [1]  89/12
companies [3]  62/18 112/1 138/25
company [15]  1/7 26/5 31/11 33/18
33/18 69/8 69/16 72/18 112/4 112/8
139/3 140/21 141/17 195/12 205/22
complained [2]  172/6 178/19
complaining [1]  137/16
complaint [16]  121/2 121/5 125/20
131/21 132/10 132/11 132/18 135/7

C

complaint... [8] 147/3 147/7 147/10
172/1 172/6 175/22 177/14 203/1
complete [2] 158/9 220/9
completed [2] 145/21 148/2
completely [4] 42/14 52/3 116/18 176/14
completing [1] 147/23
complicated [2] 74/17 130/15
comprised [1] 26/22
comptroller [1] 141/16
computer [7] 1/21 90/13 113/21 113/23
145/19 163/12 211/6
computer-based [1] 145/19
computers [1] 69/13
concede [1] 175/1
concept [1] 182/1
concern [4] 33/6 66/25 178/3 181/24
concerned [1] 63/9
concerning [3] 34/24 88/13 92/4
concerns [1] 4/3
conclude [2] 87/8 91/21
concluded [1] 216/1
conclusion [1] 52/9
conclusions [1] 92/1
conduct [4] 88/15 182/24 183/3 208/9
confer [1] 92/3
CONFERENCE [7] 46/2 64/1 80/19
97/23 102/8 173/5 200/7
confess [1] 42/9
confidence [1] 95/23
confident [5] 27/20 42/1 45/11 50/1
96/19
conflict [1] 49/7
confused [4] 176/14 198/4 198/20 207/4
confusing [5] 185/10 185/22 186/4 186/5
186/21
confusion [2] 48/6 48/10
connections [1] 141/3
consent [1] 14/23
consequence [1] 174/4
consequences [1] 99/11
conservative [1] 62/7
consider [11] 17/19 20/19 32/21 87/11
127/6 182/13 192/7 195/16 199/11
206/4 207/1
considerably [1] 66/2
consideration [3] 88/17 91/2 92/5
considered [9] 20/18 21/12 53/11 86/9
86/24 93/9 170/25 171/1 184/13
considering [1] 68/25
consist [1] 86/4
consolidated [2] 19/13 51/3
consolidation [1] 51/3
constantly [1] 145/14
constitute [1] 220/8
consult [1] 209/20
consultant [1] 47/14
consulting [2] 47/16 61/16
consumer [77] 6/16 7/3 8/19 8/20 11/17
12/11 12/16 13/5 13/21 15/9 15/14
33/24 34/8 51/2 59/21 64/10 66/3 66/10
67/9 72/4 116/20 131/10 132/2 132/5
133/1 133/2 133/2 133/4 133/6 133/9
133/19 134/6 134/7 135/3 146/21
146/23 165/11 166/23 167/20 167/21
168/8 168/9 169/6 170/3 175/9 175/25
176/18 176/24 178/9 179/14 179/17
179/23 180/1 180/7 181/12 181/14
181/16 182/3 182/14 182/16 182/23
183/3 184/12 187/16 191/5 192/15

192/24 196/13 196/23 200/23 201/21
202/3 202/20 203/3 210/13 214/3
214/5
consumer's [1] 169/14
contact [7] 71/19 114/23 153/7 161/25
203/13 203/16 210/10
contacted [5] 41/5 41/7 41/10 104/25
114/22
contacting [1] 51/2
contacts [1] 178/4
contain [1] 166/22
contained [4] 154/13 154/15 166/14
167/16
contains [1] 20/25
content [1] 80/7
contents [1] 92/1
context [3] 25/11 35/5 45/4
continue [5] 79/15 161/24 180/15 180/17
208/14
continued [2] 34/4 191/13
continuing [2] 76/11 159/12
contract [2] 38/6 39/18
contracts [1] 39/23
contrary [2] 10/14 188/9
control [6] 88/14 138/13 157/5 157/7
157/14 158/20
controlling [1] 52/12
controversy [2] 180/7 197/17
controverting [2] 176/19 179/12
convenience [1] 92/7
conversation [3] 89/15 105/15 106/10
conversations [1] 89/16
convey [1] 170/16
Cool [2] 59/5 71/6
copies [2] 4/14 109/22
copy [5] 17/23 18/21 107/1 116/24
180/24
core [1] 145/9
corporation [3] 191/4 194/17 207/21
correct [57] 15/22 23/14 23/15 23/21
24/3 24/6 68/10 68/11 78/21 94/12
112/25 116/3 116/22 122/22 123/21
123/22 123/24 123/25 124/1 124/5
124/6 124/8 124/9 124/12 124/13
124/18 125/2 125/12 125/17 125/21
126/8 126/9 129/17 129/22 138/23
151/15 151/16 151/23 151/24 152/14
154/10 154/11 156/12 160/16 161/15
164/13 169/10 176/3 202/6 214/25
215/3 215/6 215/9 215/12 215/15
215/18 215/21
corrected [1] 71/25
correctly [5] 6/18 20/17 69/19 138/15
149/19
corrects [1] 72/19
correspondence [2] 170/17 171/20
cost [1] 66/11
costs [2] 14/25 192/11
couched [1] 200/4
could [58] 4/8 7/14 9/8 11/16 16/1 19/10
21/5 29/16 29/23 31/2 42/1 45/15 50/2
80/17 84/13 95/17 117/19 117/24
119/10 120/9 134/17 135/17 136/18
139/17 140/5 146/14 147/25 149/16
152/19 155/9 157/10 158/22 158/23
158/23 160/21 161/19 161/21 161/25
162/5 165/10 168/21 170/18 172/18
174/8 176/7 176/9 179/18 181/3 182/1
182/21 204/10 205/24 208/25 209/23

210/8 212/12 213/4 217/12
counsel [22] 1/20
counsel [20] 5/13 7/16 7/16 8/17 29/19
29/23 30/1 30/3 46/6 64/5 80/23 92/23
98/2 102/12 173/9 174/12 200/6 200/11
211/13 211/24
counsel's [1] 3/17
counseling [5] 59/21 105/24 105/25
106/14 158/23
counties [1] 26/23
country [4] 76/20 76/21 77/14 140/24
county [3] 26/23 127/13 134/25
couple [10] 49/8 67/23 72/10 117/12
174/19 185/1 195/9 195/14 197/2
202/11
course [10] 8/17 85/25 88/23 90/24
157/3 162/21 162/23 182/6 182/16
192/10
courses [1] 39/8
court [93] 1/1 1/23 3/4 3/7 4/18 5/17
5/22 6/17 7/17 7/22 12/4 12/23 12/25
13/7 13/8 13/20 15/17 15/25 16/3 16/6
17/7 17/19 19/4 19/16 19/18 20/1 20/18
26/3 26/19 28/22 29/16 36/5 37/2 37/17
39/10 46/18 46/21 52/7 52/11 56/11
65/6 65/9 82/2 82/5 85/8 85/10 85/11
86/6 86/22 89/12 90/7 98/21 98/24
103/1 103/4 110/9 112/1 124/18 130/3
131/7 131/7 131/9 131/17 131/20 132/3
133/15 133/18 134/4 134/10 134/24
139/14 140/6 173/17 173/20 179/20
179/24 181/15 184/2 187/18 187/19
188/2 188/20 190/10 196/5 200/16
200/19 206/3 207/15 208/8 210/1
217/20 218/15 220/12
Court's [8] 6/15 15/21 21/20 29/2 40/1
52/13 52/15 86/16
Court..135 [1] 2/21
courthouse [3] 3/21 90/6 118/14
courtroom [26] 26/2 82/24 83/3 83/10
83/14 85/3 87/1 87/3 90/10 92/7 94/5
118/12 119/8 120/6 131/2 136/13
174/17 190/5 208/25 209/17 209/25
210/6 212/25 213/5 217/8 220/11
courts [1] 44/11
cover [6] 21/22 21/23 66/10 67/8 84/23
142/21
coverage [3] 32/20 32/25 35/1
covered [2] 80/3 200/23
covers [1] 20/23
coworkers [1] 31/25 89/11
cracks [7] 139/8 165/12 167/7 169/13
170/4 191/24 193/20
create [1] 66/2
created [1] 110/16
creates [1] 67/6
creating [2] 66/23 67/3
credibility [4] 51/23 52/4 87/15 198/19
credit [93] 13/16 34/13 50/25 51/2 54/22
55/15 56/23 56/24 57/3 57/13 59/21
60/24 61/2 62/11 62/17 63/7 71/23 72/1
72/4 72/10 72/15 81/3 81/18 94/17
94/24 95/11 95/18 97/12 97/13 99/6
99/11 99/14 99/20 104/1 104/4 104/9
104/10 104/11 104/13 104/24 105/23
105/24 105/25 106/3 106/14 106/18
107/2 108/19 108/20 108/25 110/21
112/20 112/22 116/1 116/2 116/13
116/14 116/24 116/24 117/13 117/23
121/15 121/18 121/22 121/25 122/18

**C**

credit... [27]  123/2 123/4 126/6 128/12
128/13 131/18 132/21 133/10 138/24
146/24 147/3 147/21 161/21 171/8
177/12 191/10 191/15 195/11 198/5
198/18 199/19 199/22 199/23 200/2
200/3 205/8 205/19
creditor [1]  97/11
creditors [4]  57/22 60/22 62/4 117/10
crime [1]  135/2
criminal [6]  35/16 44/7 44/8 53/5 88/8
134/24
cross [5]  27/5 92/23 93/1 122/7 164/16
CROSS-EXAMINATION [2]  122/7
164/16
cross-examine [2]  92/23 93/1
cross-section [1]  27/5
CSR [2]  1/23 220/18
CSR/RMR/FCRR [2]  1/23 220/18
curious [1]  68/3
current [3]  58/5 73/1 76/18
currently [7]  38/2 41/18 73/8 74/19
75/14 149/11 149/12
currents [1]  76/10
custodian [2]  142/4 142/9
custom [1]  210/9
customer [10]  2/16 142/25 143/2 147/10
149/6 153/2 156/8 156/18 157/2 170/7
CV [4]  1/6 3/7 26/3 213/7

**D**

D-R-E-A-N-O [1]  140/7
D1 [8]  150/1 150/7 150/8 150/13 154/18
154/20 155/3 197/21
D2 [4]  143/6 143/7 143/12 202/10
D3 [7]  143/15 144/4 144/8 153/23
159/13 168/18 202/10
dad [2]  95/25 96/4
Dallas [2]  73/12 141/5
damage [4]  121/9 185/8 186/8 205/20
damages [25]  14/25 126/5 185/9 185/11
185/11 185/16 185/19 185/21 186/2
186/13 186/16 186/16 186/17 186/23
187/2 199/15 205/14 205/16 205/22
206/4 206/16 213/24 213/25 214/16
214/17
darn [1]  195/4
date [14]  13/15 68/2 151/5 151/11
151/12 151/13 152/1 152/4 152/9 162/4
179/2 179/9 197/24 209/11
dated [4]  13/19 152/9 152/11 220/15
dates [1]  179/7
daughter [3]  62/9 62/14 62/17
Dave [6]  74/1 81/5 81/9 81/9 81/14
81/16
David [1]  191/3
day [32]  6/9 28/19 32/19 36/25 42/18
75/21 84/3 84/18 84/23 87/10 89/12
94/14 104/21 104/22 109/12 141/19
149/10 149/20 149/23 149/24 152/24
165/1 195/7 195/20 208/11 208/17
214/18 214/19 216/2 216/11 217/5
220/15
days [8]  32/6 32/22 33/8 49/8 135/1
137/5 148/1 164/24
dba [1]  127/15
deadline [1]  9/22
deal [8]  10/20 12/16 38/8 45/8 68/25
97/18 191/10 210/12
dealing [2]  47/12 94/4

dealings [2]  30/15 31/10
deals [2]  4/25 35/19
debit [7]  94/21 134/6 191/15 191/21
194/13 197/7 198/7
debt [141]  5/6 7/7 7/8 7/23 7/25 8/20
11/17 15/7 15/9 15/14 15/18 16/8 18/10
18/16 21/4 33/17 33/21 33/23 33/25
34/4 34/5 34/8 34/15 40/16 40/18 41/5
41/6 41/7 41/10 41/15 41/19 41/21
44/23 46/13 48/3 48/4 48/5 48/19 50/20
51/15 51/16 57/17 57/21 59/15 59/18
59/18 60/7 62/22 63/7 66/15 81/17
81/17 97/11 97/20 99/7 112/4 115/9
124/11 125/11 125/19 131/12 131/21
131/23 133/2 133/4 133/6 133/9 133/20
133/22 147/6 153/7 164/2 164/5 166/24
167/17 167/23 171/24 172/5 176/10
176/18 176/18 176/24 177/8 178/9
179/17 179/22 179/23 180/7 180/7
182/4 182/14 182/17 182/23 184/12
187/21 191/12 191/13 191/18 191/20
191/25 192/3 192/15 192/15 192/25
193/6 193/19 193/24 194/8 194/10
194/11 194/15 196/6 196/13 196/16
196/17 196/19 196/20 196/23 196/23
196/25 197/4 197/9 197/10 197/15
197/16 197/19 197/20 197/25 198/11
200/22 201/21 202/18 203/22 205/13
205/24 207/5 207/18 213/9 213/14
214/2 214/5
debt-buyer [1]  177/8
debt-collection [3]  33/17 51/15 51/16
debtor [3]  153/2 155/25 156/1
debts [8]  40/24 94/16 95/18 115/19
116/4 116/4 116/11 196/13
December [17]  13/15 13/19 125/6
125/15 142/21 143/17 143/18 152/6
152/7 152/11 152/17 153/5 154/5
155/12 163/25 197/10 197/24
December 1st letter [1]  125/6
December 1st of [1]  125/15
December 1st, 2015 [1]  13/19
December 2 [1]  197/24
December 2, 2015 [1]  152/17
December 24 [2]  13/15 197/10
December 2nd [2]  153/5 155/12
December 4th [1]  152/6
decide [14]  85/18 87/2 87/12 90/25 93/2
101/2 109/11 205/17 205/20 207/6
207/15 208/16 208/18 208/24
decided [9]  9/6 24/20 25/5 25/6 25/8
25/14 105/17 109/9 182/8
decision [5]  23/17 135/7 137/13 160/3
160/9
decisioned [1]  160/24
decisions [1]  88/14
Declare [1]  77/22
deem [1]  10/3
deemed [5]  4/21 9/9 10/14 11/5 122/1
default [4]  40/16 40/18
defaulted [1]  40/23
defeated [1]  187/1
defendant [21]  2/11 3/16 7/7 8/25 8/25
21/15 22/21 26/12 33/16 33/17 80/1
131/5 139/12 184/25 196/7 201/20
201/22 213/10 213/16 214/2 214/8
defendant's [24]  11/9 12/15 13/10 14/9
23/21 34/11 87/23 136/16 143/6 143/7
143/12 144/3 144/4 144/8 150/7 150/8
150/13 178/11 178/12 178/15 178/17

182/22 183/3 202/9
fragments [2]  117/17 11/20 16/21
33/20 47/15 92/23 92/24 96/10 97/18
defending [1]  66/15
defense [16]  8/21 21/6 21/10 92/20
99/22 102/2 136/17 181/1 181/22 182/4
187/1 188/8 193/2 193/4 195/2 201/14
defined [1]  186/15
definitely [6]  57/13 59/10 59/10 63/3
95/24 133/6
definition [5]  11/19 131/10 179/24 183/2
204/19
definitions [1]  13/21
degree [1]  44/7
delay [2]  136/18 190/2
deliberate [8]  36/11 37/7 89/25 208/5
208/6 208/14 209/22 210/14
deliberating [2]  91/11 118/22
deliberation [2]  208/15
deliberations [7]  88/14 88/24 89/2 89/5
91/16 208/10 208/17
delivered [2]  113/14 121/5
Demings [1]  26/21
demonstrate [1]  15/14
demonstrating [1]  175/25
denied [5]  7/25 34/14 99/5 104/6 219/5
deny [5]  11/4 14/12 14/15 15/8 135/10
department [20]  2/17 51/1 51/4 69/23
71/9 141/25 142/2 143/16 143/24
144/13 144/16 144/22 147/12 148/12
152/25 154/4 163/3 163/4 163/7 168/19
departments [1]  144/12
dependent [2]  147/22 166/17
depending [2]  75/20 77/24
depends [3]  148/11 157/10 163/3
depose [2]  18/1 18/1
deposed [2]  39/20 199/2
deposition [26]  5/3 5/8 9/3 17/3 17/9
17/12 18/3 18/21 19/4 19/5 19/12 19/14
20/18 20/19 20/22 21/2 21/3 21/17
123/9 125/8 125/23 173/10 198/6 198/9
199/1 203/12
depositions [3]  142/16 165/3 165/9
Des [1]  36/7
describe [4]  17/13 18/11 160/13 160/13
described [3]  53/20 167/11 168/7
describes [1]  185/9
description [2]  35/3 201/17
deserve [1]  50/9
design [1]  179/4
designation [2]  20/2 138/23
designed [13]  139/8 162/7 167/13
167/19 167/25 168/8 188/6 188/17
193/9 193/17 193/21 194/23 202/5
desist [19]  138/2 138/20 148/21 148/23
148/25 149/4 149/7 153/1 155/17
156/18 160/5 160/23 161/14 161/22
169/9 171/19 202/21 203/9 203/18
despite [5]  12/7 162/11 193/8 213/19
214/11
detailed [2]  34/21 88/12
determination [2]  160/4 216/3
determine [11]  101/12 124/4 124/11
129/11 146/5 147/15 148/15 161/10
170/19 188/11 198/10
determined [1]  131/9
determining [4]  87/15 88/6 187/2 187/6
detrimental [1]  161/20 162/5
developed [1]  81/22
developer [1]  38/7

D

device [4]  71/18 89/17 89/18 90/13
device/media [1]  90/13
devices [1]  90/18
did [149]  4/22 4/23 5/15 6/17 6/22 6/23
7/7 7/16 7/20 7/22 14/18 17/20 17/21
17/24 20/10 21/11 21/23 36/11 37/7
37/9 37/17 55/8 55/23 60/5 60/17 62/13
62/13 62/14 63/5 63/13 67/17 67/19
72/10 76/23 95/3 96/21 96/22 97/2 99/6
101/9 104/18 104/20 105/7 105/16
105/22 106/11 106/14 107/1 107/2
107/5 109/3 109/11 109/17 109/22
109/22 110/2 110/15 110/18 114/4
114/4 114/11 114/14 114/17 114/25
114/25 115/1 115/13 115/21 115/23
116/8 116/14 116/23 117/2 117/13
117/13 120/22 121/3 123/20 123/24
124/3 124/10 124/13 125/4 125/7 125/7
125/25 127/6 127/8 127/12 127/12
127/17 127/17 128/3 128/4 128/7 128/9
128/12 128/16 129/1 129/3 129/3
129/11 129/15 133/19 135/24 138/1
138/2 138/4 141/9 141/14 141/20
153/21 154/19 156/16 161/5 161/8
161/9 161/12 162/10 162/14 162/15
166/6 166/7 167/6 167/15 169/21 172/1
172/4 181/9 184/3 196/23 197/12 198/1
198/10 198/15 198/17 198/17 201/22
201/24 202/23 202/24 203/18 203/21
204/5 206/8 207/4 213/16 214/8 217/5
didn't [61]  4/24 5/21 6/4 7/3 7/15 7/23
7/24 8/7 10/7 15/25 62/16 62/23 66/15
81/7 94/18 94/19 94/20 95/1 95/1 95/2
97/3 97/4 98/9 98/9 98/11 99/8 99/9
99/10 99/14 102/14 104/5 105/19
105/21 105/24 108/24 109/2 116/13
122/15 124/7 129/7 133/22 166/4 166/5
169/20 175/9 178/13 191/25 192/3
193/7 193/16 193/19 194/16 195/5
198/8 198/13 198/18 199/2 200/3 203/7
203/11 204/2
Diego [1]  140/25
differ [1]  202/6
difference [2]  66/20 163/13
different [21]  11/1 11/2 19/14 20/23
20/23 59/15 61/9 62/2 63/9 68/25 75/15
104/24 146/3 146/4 146/17 155/5
160/12 162/24 177/19 184/11 200/5
differently [3]  87/22 105/14 116/6
difficult [2]  33/7 61/1
difficulties [3]  60/22 82/21 174/22
digest [1]  11/24
dimension [1]  195/17
diploma [1]  141/10
dire [8]  2/2 21/18 21/19 21/20 21/22
28/22 54/16 65/11
direct [7]  87/4 87/5 87/5 103/13 139/15
140/1 209/12
directed [7]  2/21 131/6 132/4 134/20
148/12 148/25 219/3
directly [4]  6/13 15/13 105/9 148/12
director [1]  68/6
dis [1]  171/22
disability [2]  33/11 71/10
disadvantage [1]  28/5
disagreed [3]  40/2 44/12 47/23
disallow [1]  21/17
disallowed [1]  173/14
disappointment [1]  82/13

disbelieve [1]  52/2
disconnected [1]  90/3
disclose [1]  209/14
disclosure [1]  19/2
disclosures [3]  17/21 17/23 173/12
discovery [17]  4/16 5/15 5/21 9/15 9/21
10/13 17/20 17/25 18/4 19/1 19/24 21/7
176/13 176/13 176/15 177/15 177/25
discuss [7]  19/10 89/9 89/10 89/23
89/25 92/7 209/6
discussed [2]  21/1 90/17
discusses [1]  132/18
discussion [2]  105/7 105/8
dismiss [1]  217/6
dismissed [1]  22/5
dispute [133]  2/16 2/16 7/21 7/24 9/15
9/16 17/17 20/23 20/24 20/25 21/1
25/16 27/9 34/2 34/6 34/9 34/16 35/5
38/6 41/18 72/4 72/8 72/18 96/2 99/19
99/20 100/22 101/10 109/16 109/17
109/23 109/24 116/25 132/19 138/2
138/22 142/25 143/2 143/21 144/13
144/13 145/6 146/1 146/4 146/13
146/14 146/17 146/20 146/20 146/21
146/23 147/3 147/12 147/15 147/17
147/19 147/22 148/4 148/10 148/11
148/14 148/16 148/18 148/21 149/10
151/17 152/10 154/8 155/10 155/21
156/4 157/8 157/16 160/3 160/4 160/5
160/7 160/21 160/24 161/1 161/14
161/20 161/21 162/2 162/6 163/16
163/18 164/5 164/7 164/10 164/12
165/11 165/18 166/2 166/13 166/15
166/21 167/4 167/6 167/6 167/16
167/17 168/10 169/7 169/8 169/9
169/12 169/14 169/16 170/2 170/3
170/12 170/13 170/20 170/22 170/24
170/25 171/1 171/3 171/5 171/20
191/23 193/23 193/24 193/24 193/25
194/8 194/14 202/16 202/18 203/19
203/20 203/22
disputed [45]  7/8 33/23 33/25 55/21 61/1
97/8 97/14 99/7 99/9 99/9 99/10 100/24
110/3 117/17 132/19 146/5 164/2 164/9
170/12 171/11 171/15 171/18 171/25
172/5 172/7 179/9 191/12 191/14
191/16 191/18 191/20 191/21 192/1
192/3 193/6 193/19 194/4 194/11
194/11 194/13 194/15 195/4 204/9
205/3 205/6
disputes [26]  2/17 27/11 95/18 100/7
100/14 137/20 143/16 143/23 145/22
146/6 147/13 148/12 149/21 152/25
153/19 154/4 154/7 155/24 156/9 157/2
163/5 163/7 166/11 167/8 168/13
168/18
disputing [4]  34/15 117/10 147/6 160/10
disregard [2]  86/23 124/24
disregarded [1]  87/2
disregarding [1]  52/19
distances [1]  26/24
distraught [1]  155/20
DISTRICT [9]  1/1 1/1 26/17 26/18 26/22
36/5 133/17 220/12 220/12
division [7]  1/2 26/17 26/22 71/19 84/5
209/15 220/12
do [260]
doctor [3]  76/1 210/25 211/1
doctors [1]  71/18
document [1]  197/22

documentary [1]  75/16
documentation [2]  147/24 147/24
documentation [1]  147/24
documented [2]  121/18 121/24
documents [18]  4/15 12/18 12/20 13/6
18/12 18/15 18/16 18/18 21/8 86/4
142/17 147/25 148/20 150/2 177/4
177/6 177/15 178/11
does [41]  10/18 35/2 61/22 63/14 65/15
65/19 66/5 66/20 68/1 68/6 72/25 78/21
81/16 83/6 88/10 97/19 108/16 111/24
138/10 142/10 147/1 153/5 157/4
157/13 157/14 160/2 160/24 163/20
171/7 174/25 179/3 182/24 189/23
196/15 196/22 197/18 204/22 205/25
207/21 211/25 214/20
doesn't [20]  13/6 13/24 13/25 14/13
25/11 64/12 64/18 97/4 97/19 98/15
98/18 132/21 139/3 160/21 176/15
181/21 191/25 200/2 206/15 211/6
doing [7]  4/1 14/5 28/25 47/13 47/16
50/13 54/3 63/16 64/9 64/2 62/2 65/16
96/16 107/15 112/7 138/14 141/19
185/3
dollars [1]  195/10
don't [134]  6/13 6/14 6/18 6/23 6/25 9/7
9/14 9/16 10/4 10/6 10/9 10/21 10/22
11/13 13/3 19/23 24/7 27/20 35/1 36/17
39/4 40/8 45/15 46/10 46/14 49/22 50/6
54/10 55/9 56/2 59/25 61/13 63/9 63/18
64/12 64/13 64/24 65/16 67/5 72/24
73/11 74/8 74/15 76/1 76/9 76/20 76/25
77/10 77/11 77/23 79/3 79/4 80/25
81/17 81/22 81/23 82/20 90/15 90/16
90/17 90/18 96/12 97/1 98/3 98/12 99/5
99/17 99/22 99/22 100/20 105/1 107/15
108/7 109/1 114/23 116/10 117/2
117/25 118/23 118/24 119/3 119/25
125/12 125/12 125/18 132/4 132/15
134/23 135/1 135/2 135/4 135/9 160/10
160/16 160/20 160/22 161/22 165/7
165/21 167/22 171/16 172/7 176/22
177/3 181/11 181/13 181/15 181/19
182/14 183/6 183/17 185/14 186/3
186/8 186/10 186/24 187/19 188/10
195/12 199/5 200/12 201/9 201/12
204/15 206/25 209/6 209/6 211/7
212/15 216/13 216/15 216/15 217/11
217/25
done [15]  77/9 99/25 115/6 115/7
117/22 163/16 174/2 204/17 207/8
207/12 216/2 216/3 217/2 217/21
220/10
door [6]  64/11 64/20 65/2 212/13
dot [1]  156/1
double [1]  218/9
double-check [1]  218/9
doubt [1]  53/6 53/8 88/9 193/13
down [10]  12/12 13/14 43/3 81/19 95/12
104/11 117/7 130/5 168/3 172/14
downstairs [2]  42/4 212/9
downtown [1]  37/1
draft [1]  180/25
dragon [2]  76/19 76/23
draw [1]  91/25
Dreano [22]  20/9 31/5 132/17 139/1
139/12 139/19 140/4 140/8 140/8 147/5
150/15 152/21 154/1 157/4 161/5
164/20 172/19 175/14 197/6 203/6
205/4 206/11

**D**

driveway [1]  45/9
driving [3]  145/25 198/23 199/4
drove [1]  178/19
drug [1]  36/4
due [9]  121/12 121/15 121/19 121/22
121/25 125/25 199/18 199/19 199/23
duly [2]  103/10 139/20
during [23]  20/20 22/5 60/21 82/8 82/17
85/25 88/17 88/23 88/24 89/2 89/7
89/13 91/1 91/5 91/18 92/2 119/11
136/3 136/5 158/2 166/3 202/4 216/11
duty [4]  85/20 90/25 97/11 134/2

**E**

e-OSCAR [2]  147/13 147/17
each [16]  21/21 22/8 28/23 53/22 53/24
54/4 85/6 89/7 89/12 92/12 118/20
118/23 157/16 191/17 206/24 215/1
earlier [12]  53/25 57/18 61/1 88/10
103/19 106/5 122/17 124/25 157/21
166/3 174/21 187/18
early [3]  3/22 27/1 40/24
ease [2]  152/4 152/16
easier [1]  107/24
EAST [1]  1/24
easy [2]  72/18 78/20
echo [1]  108/9
edges [1]  96/11
education [1]  39/9
educational [1]  141/8
effect [3]  100/4 161/20 162/5
effective [1]  95/4
effort [2]  84/15 207/23
efforts [1]  34/3
either [21]  7/16 19/5 30/15 31/10 33/12
35/5 39/1 43/19 49/19 93/9 110/5
131/22 131/24 133/22 137/11 148/1
150/24 153/15 158/20 188/5 209/19
elect [2]  92/20 92/24
elected [1]  20/19
electronic [4]  89/16 90/12 119/11 146/20
electronically [2]  147/11 147/20
element [2]  88/2 201/25
elements [3]  25/5 213/21 214/13
eleven [1]  84/20
eligible [1]  21/10
eliminating [1]  181/19
else [31]  11/23 15/10 24/13 25/18 29/24
33/3 36/19 37/15 38/15 39/6 40/9 42/19
50/18 51/13 62/21 67/21 72/8 73/7 90/5
108/8 114/12 114/14 115/16 119/2
119/17 135/13 163/21 167/1 194/8
198/13 206/9
email [3]  5/11 146/20 153/6
embarrassed [1]  104/8
emergency [1]  49/12
employed [5]  30/15 31/10 71/9 140/15
140/17
employee [7]  138/16 158/11 158/12
158/13 158/19 158/21 191/17
employees [6]  143/25 144/17 144/19
145/16 191/6 195/14
employer [2]  39/18 84/19
employment [1]  49/19
encountered [1]  52/21
encouragement [1]  50/5
end [20]  22/6 28/13 28/19 28/19 79/23
87/10 87/16 88/4 88/5 88/12 88/21
89/24 93/8 101/15 128/4 183/4 195/7

208/11 217/18 218/6
endeavors [1]  56/10
endlessly [1]  176/20
ends [1]  181/20
enforcement [1]  44/10
engage [3]  21/21 118/24 209/7
engineer [2]  68/9 68/12
engineering [4]  61/15 61/17 61/18 71/8
English [1]  160/12
enjoy [1]  119/5
enough [3]  193/12 208/22 218/7
ensued [1]  194/16
ensure [2]  29/4 54/3
enter [3]  146/14 160/17 168/13
entered [10]  26/1 83/9 120/5 136/13
152/24 155/14 155/16 168/22 190/4
212/24
entertain [2]  184/21 217/10
entire [3]  132/18 132/23 186/25
entirely [2]  91/8 176/23
entirety [1]  166/17
entitled [1]  181/23
entity [2]  39/13 150/18
entry [3]  13/11 153/12 153/14
Ernie [1]  212/12
error [58]  8/21 8/21 11/18 21/6 21/10
25/11 34/17 34/18 100/17 100/18
100/22 101/1 101/3 101/5 139/8 161/3
161/7 161/10 162/11 162/15 167/14
171/4 181/20 181/22 182/6 182/9 183/5
187/1 188/6 188/12 188/17 193/2 193/4
193/10 193/18 193/18 193/22 194/24
195/1 195/2 201/14 201/17 201/23
202/1 202/24 203/7 204/3 204/4 204/8
204/25 205/12 205/19 213/18 213/19
213/20 214/10 214/11 214/12
errors [1]  162/8
especially [4]  11/18 35/15 96/2 209/5
ESQ [3]  1/15 1/15 1/17
essentially [1]  47/16
establish [4]  87/20 134/7 178/18 179/21
estate [1]  38/2
estimated [1]  32/5
et [2]  109/1 180/3
evaluate [2]  99/12 100/8
even [23]  7/25 8/16 17/10 17/17 17/18
19/15 35/19 40/2 44/12 47/23 48/11
63/3 64/24 64/25 89/23 94/21 101/5
114/21 129/7 130/22 142/15 172/5
209/14
evening [1]  208/24
event [3]  16/10 28/9 82/21
ever [44]  19/1 20/3 30/15 31/10 35/24
37/20 41/5 42/8 55/4 56/3 56/7
56/23 58/4 59/3 62/14 67/19 78/16
112/3 112/4 112/7 112/14 112/16
112/19 112/22 113/3 113/7 114/1 114/4
114/11 114/14 127/17 127/18 128/4
128/7 128/12 128/16 129/1 171/14
172/7 179/13 192/18 196/19 206/8
every [10]  51/1 75/24 99/8 138/16
158/11 158/12 163/6 163/7 165/1
165/15
everybody [3]  73/4 78/17 195/19
everyone [1]  108/17
everything [10]  9/8 11/22 51/3 65/25
77/14 95/11 124/17 182/18 189/21
189/23
evidence [154]  8/11 9/12 9/23 10/14

10/21 13/18 14/22 14/24 15/4 15/6
15/7 15/16 15/25 16/13 16/21 16/24
20/15 20/20 21/11 24/23 25/1 25/6
25/11 33/8 33/13 43/18 45/13 47/15
48/14 51/11 52/18 52/23 53/4 53/9
53/11 53/16 85/10 85/20 86/3 86/8
86/10 86/11 86/13 86/14 86/19 86/23
87/1 87/3 87/4 87/5 87/7 87/11 87/19
87/20 87/23 88/2 88/17 88/19 88/22
90/1 91/1 91/12 91/15 92/15 92/18 93/3
93/9 93/13 94/10 94/12 95/22 97/15
98/4 99/4 99/16 99/21 100/6 100/8
100/21 101/3 101/8 101/12 101/21
118/21 121/15 121/18 121/21 121/24
130/10 131/16 133/5 134/15 136/21
137/3 137/11 143/6 143/13 144/3 144/9
150/7 150/14 165/17 166/5 169/23
172/17 172/24 173/11 173/23 174/2
175/9 175/21 176/19 177/25 178/1
178/2 178/5 178/8 178/11 178/14
179/12 179/12 179/16 185/3 185/14
186/1 187/20 188/1 188/4 188/9 188/10
188/20 190/7 192/21 192/23 192/24
193/2 194/22 197/18 197/25 199/9
199/12 199/19 199/21 201/7 206/8
207/2 207/3 207/18 208/8 208/23
211/13 213/16 214/8 217/16
exact [2]  161/10 201/2
exactly [11]  15/24 117/2 117/3 137/21
138/8 148/16 160/18 168/4 168/12
176/2 189/20
EXAMINATION [8]  2/2 54/16 65/11
103/13 122/7 127/1 140/1 164/16
examine [2]  92/23 93/1
example [5]  42/7 65/20 69/8 95/25 163/4
examples [1]  146/4
exceeding [1]  185/20
Excellent [3]  56/17 56/21 57/5
except [2]  124/13 206/20
exception [1]  199/8
excitement [1]  84/2
exclude [6]  8/11 9/12 16/15 16/17 16/20
16/23
excluded [1]  86/22
excluding [2]  9/23 10/21
exclusion [1]  15/4
exclusive [2]  52/3 52/6
excuse [13]  15/8 22/7 34/11 42/16 45/17
84/10 84/17 84/24 88/4 89/22 103/18
146/8 149/5
excused [7]  27/22 28/2 28/5 48/25 90/23
92/6 172/19
executive [1]  68/6
exercise [5]  22/8 22/9 28/16 54/7 82/10
exercised [1]  83/12
exert [1]  154/4
exhibit [31]  13/10 13/19 14/18 15/15
15/23 111/2 111/5 111/11 121/2 121/4
143/6 143/7 143/12 144/3 144/4 144/8
150/1 150/8 150/13 153/18 153/20
154/18 165/18 165/19 168/18 197/3
197/4 197/8 197/21 202/8 202/9
Exhibit 3 [1]  153/20
Exhibit A [1]  111/11
Exhibit D1 [1]  154/18
Exhibit No. 1 [1]  197/21
Exhibit No. 5 [1]  197/3
Exhibit No. A [1]  150/1
Exhibit Number 1 [1]  13/19
exhibits [17]  2/14 12/6 12/6 12/15 12/22

**E**

exhibits... [12]  13/3 13/9 23/3 23/12 24/4
  24/5 86/5 88/22 93/10 119/11 197/1
  208/8
exist [2]  87/8 144/12
existed [1]  128/20
existence [1]  15/6
exists [1]  58/21
exited [7]  83/2 85/2 119/7 131/1 174/16
  210/5 217/7
expect [8]  30/7 31/3 31/20 31/22 50/9
  72/19 92/15 92/18
expecting [1]  55/7
Experian [20]  14/14 14/16 33/24 34/2
  34/6 34/10 97/13 104/25 105/4 105/8
  105/9 105/16 106/9 106/10 171/11
  171/14 171/18 172/5 191/13 191/15
experience [10]  35/12 38/10 38/25 39/12
  42/2 47/19 48/8 48/18 60/1 157/22
experienced [3]  46/13 62/19 63/8
experiences [20]  39/25 40/6 41/21 41/23
  42/6 42/12 43/20 43/22 44/16 44/23
  45/11 45/12 46/9 48/2 48/4 48/11 48/13
  49/19 50/10 50/12
expertise [1]  66/13
explain [6]  52/12 92/14 115/23 129/6
  152/20 191/25
explained [6]  26/21 53/16 168/12 168/23
explaining [2]  25/7 185/24
explains [1]  179/7
explanation [3]  5/4 19/23 52/13
exposures [1]  19/17
express [4]  88/18 216/5 216/9 216/25
extension [1]  5/22
extent [4]  13/1 206/6 207/7 207/11
eye [1]  71/18
eyes [2]  161/7 202/22
eyesight [1]  33/11
eyewitness [1]  87/6

**F**

face [6]  32/11 55/1 57/24 89/16 89/16
  169/19
face-to-face [1]  89/16
Facebook [1]  89/19
fact [28]  10/18 11/16 17/9 20/25 33/23
  34/9 42/18 87/5 90/25 131/23 133/7
  134/18 138/1 139/4 155/10 162/11
  176/8 176/19 176/23 179/16 179/23
  180/6 195/3 197/17 204/3 204/8 205/6
  206/10
factor [2]  96/7 207/16
facts [23]  4/21 5/9 9/25 14/12 29/5
  34/22 51/22 52/4 52/7 53/11 85/19
  85/21 85/21 85/22 86/3 86/6 87/7 87/8
  92/15 169/23 174/24 199/11 206/4
factual [3]  18/7 18/9 18/22
faded [1]  76/19
failed [11]  33/22 34/1 34/3 34/9 34/16
  39/19 88/1 131/22 132/3 134/19 197/11
failing [1]  193/5
fails [1]  158/13
failure [7]  4/2 4/8 4/9 5/24 15/1 172/6
  193/19
fair [21]  22/4 33/21 36/15 37/11 38/12
  39/2 40/6 41/24 42/14 44/16 45/12
  47/20 48/13 49/20 51/8 51/10 80/13
  123/6 192/5 192/5 211/19
fairly [2]  55/21 208/12
Faithful [1]  76/18

familiar [7]  30/13 31/8 53/5 58/21 108/22
  109/20
familiarity [3]  30/19 31/13 44/11
family [27]  30/13 31/8 31/18 33/6 37/20
  37/22 38/17 51/15 56/8 56/15 57/12
  57/19 61/21 62/2 62/21 62/23 63/4 76/6
  78/16 94/1 133/9 191/8 192/16 192/20
  196/10 213/13 214/4
far [10]  10/18 24/17 69/6 75/18 80/3
  82/19 115/25 141/9 182/5 182/14
faster [1]  181/4
favor [4]  19/9 19/16 188/21 195/18
favoring [1]  91/22
favorite [8]  40/21 72/23 73/9
fax [4]  4/24 97/4 121/7 146/20
FCRR [2]  1/23 220/18
FDCPA [10]  5/6 18/7 18/15 21/4 21/8
  145/11 179/25 185/8 187/5 201/1
fear [4]  57/10 95/21 96/18 99/15
federal [5]  1/23 15/19 131/11 145/12
  220/4
feed [2]  190/3 212/5
feel [13]  24/25 29/1 57/6 57/7 57/9
  57/18 57/20 60/3 63/14 79/13 79/14
  79/14 105/25
feeling [4]  57/16 79/21 96/7 195/14
feelings [3]  43/18 60/13 96/21
feels [1]  57/15
fees [10]  14/25 15/5 59/2 60/4 64/7
  64/16 64/19 65/16 65/17 67/8
fell [1]  193/20
fellow [3]  32/3 89/23 90/6
felony [1]  36/4
felt [1]  57/8
few [20]  23/8 25/20 28/8 34/24 40/11
  68/4 70/16 84/5 88/15 94/16 95/7
  113/13 113/21 117/8 117/12 141/25
  148/1 148/1 165/6 174/4
fiction [2]  75/23 75/24
fide [25]  8/20 8/21 11/18 21/6 21/10
  25/11 34/17 100/17 139/8 181/20
  181/22 182/4 182/6 182/9 183/5 187/1
  193/2 193/4 195/2 201/14 201/17
  201/23 204/3 204/4 205/12
field [1]  141/11
fifteen [10]  24/12 49/9 53/24 60/11 82/8
  82/16 82/20 82/23 83/1 189/7
Fifteen-ish-plus [1]  60/11
fifteen-minute [4]  24/12 82/8 82/16
  82/23
fighting [1]  8/3
figure [6]  94/23 95/19 159/14 160/18
  210/8 212/8
file [6]  33/19 105/10 147/2 147/6 147/10
  147/14
filed [7]  8/24 9/10 14/17 22/16 192/1
  205/3 205/8
filing [3]  217/12 217/14 218/4
fill [2]  22/6 209/10
final [7]  3/9 7/1 83/13 93/5 174/11
  189/16 189/18
finalize [1]  180/25
finally [6]  16/20 16/23 34/16 80/10 91/14
  146/12
finance [4]  33/22 57/20 81/20 131/11
finances [2]  61/21 63/1
financial [7]  56/23 58/9 58/15 58/17 62/7
  62/22 81/12
financial-planning [1]  81/12
financing [2]  58/24 81/6 81/15

find [25]  63/11 85/20 86/3 86/7 88/1
  89/6 91/3 123/7 133/7 139/2
  170/14 176/9 176/23 179/18 181/16
  196/6 196/6 200/22 201/21 205/12
  213/9 213/15 214/1 214/7 218/14
finder [3]  133/7 176/8 176/23
finding [2]  105/22 181/12
findings [3]  6/5 6/10 7/10
fine [7]  40/13 107/18 136/8 147/9
  206/25 211/17 218/12
fines [1]  112/19
finish [1]  99/14
finished [1]  130/8
Fire [1]  73/17
firm [31]  9/17 30/24 39/20 47/11 61/16
  63/5 63/6 63/13 63/16 64/7 64/18 65/19
  66/5 66/11 66/16 66/18 66/22 67/3 67/6
  139/7 139/7 169/12 169/15 169/17
  169/20 169/21 170/2 170/7 171/21
  191/24 193/21
firm's [2]  17/14 169/22
firms [3]  30/17 31/16 66/1
first [62]  7/6 9/14 12/17 14/10 19/25
  20/3 27/18 29/19 29/20 33/22 34/24
  35/6 35/11 35/23 40/15 43/5 58/15
  59/24 86/9 91/7 92/16 93/24 96/24
  102/4 102/5 103/10 104/1 104/16
  104/19 109/17 114/18 118/11 131/20
  139/10 139/20 146/9 150/19 151/6
  151/11 152/23 154/9 156/6 157/2 170/8
  174/20 182/12 182/21 183/19 188/21
  190/24 191/23 193/24 196/5 201/12
  201/24 202/17 203/21 207/5 208/9
  208/21 208/21 210/22
first-time [1]  58/15
five [9]  18/16 39/17 59/13 75/14 165/6
  165/8 189/8 189/12 204/21
five-minute [2]  189/8 204/21
fix [1]  187/13
flexibility [1]  3/19
flip [3]  57/16 75/20 76/14
fly [2]  69/10 139/3
fly-by-night [1]  139/3
focus [1]  22/4
focused [1]  81/20
folders [1]  111/12
folk [1]  137/5
folks [26]  5/17 22/4 22/6 27/10 28/2
  28/20 30/19 31/24 31/25 39/1 41/24
  42/21 43/7 50/9 67/13 70/16 74/10
  81/25 137/23 141/6 193/13 194/19
  199/4 199/25 202/9 204/6
follow [8]  44/12 47/22 54/19 67/5 67/9
  85/23 86/20 207/17
follow-up [1]  54/19
following [24]  3/3 40/1 41/20 46/4 46/20
  64/3 65/8 80/21 82/4 91/7 92/23 97/25
  98/23 101/1 102/10 103/3 153/11
  153/14 173/7 173/19 175/2 200/9
  200/18 207/17
follows [2]  103/11 139/21
followup [2]  130/1 172/10
foolproof [1]  204/22
foregoing [1]  220/8
foreperson [5]  36/8 37/4 210/24 213/2
  214/18
forget [1]  199/5
forgot [3]  75/9 135/24 162/20
form [10]  88/18 119/12 147/24 156/3
  195/25 208/7 209/11 211/14 211/25

**F**

form... [1] 220/8
formal [1] 219/3
former [1] 35/20
forms [1] 68/5
forth [2] 11/20 133/5
fortunate [1] 62/8
forward [6] 43/4 45/22 83/14 100/16
 133/16 139/13
found [14] 6/6 6/7 6/9 6/11 6/17 7/1 7/17
 55/4 72/6 95/15 106/6 106/16 115/19
 122/18
foundation [2] 14/13 15/17
four [2] 22/14 164/23
fourth [2] 34/7 86/25
frame [1] 80/8 142/21
framework [1] 101/22
frankly [3] 11/15 21/14 82/19
free [3] 64/23 84/12 172/21
freely [1] 82/25
frequency [1] 206/5
Friday [1] 165/1
friend [3] 56/16 126/13 127/6
friendly [1] 81/5
friends [3] 31/18 51/15 89/11
front [8] 36/1 36/19 37/24 38/15 39/11
 40/17 44/25 45/9
Frost [2] 57/1 57/2
full [1] 61/5
fully [5] 17/7 50/1 67/5 145/11 202/25
funds [1] 126/8
further [13] 54/6 87/9 126/21 129/24
 153/7 153/13 160/21 172/9 172/12
 197/23 201/12 203/16 208/2
fuss [1] 206/24
future [3] 84/4 117/7 118/18

**G**

gallery [2] 27/17 28/4
game [2] 22/24 74/19
gather [1] 83/1
gave [7] 19/1 106/17 167/21 175/14
 175/16 201/15 202/15
gears [1] 67/22
general [5] 3/17 37/17 51/19 117/24
 192/12
generally [3] 41/22 70/11 171/8
generic [1] 180/4
gentlemen [17] 26/15 79/18 82/7 83/11
 83/24 85/4 93/23 118/8 122/2 130/19
 136/15 174/1 195/24 205/15 208/3
 214/24 215/24
genuine [3] 202/1 213/18 214/10
George [1] 73/17
get [90] 13/24 26/25 27/20 38/8
 40/21 41/16 42/20 43/3 50/2 55/25
 56/19 60/5 60/8 60/8 60/17 61/6 62/14
 62/16 64/8 64/10 64/12 65/16 65/17
 65/21 65/22 66/2 66/3 66/11 66/12 67/9
 74/9 83/6 89/20 95/8 95/23 96/15 96/19
 96/20 102/14 102/20 106/2 106/11
 107/25 108/11 108/13 112/13 116/23
 127/18 128/12 130/24 133/14 134/15
 134/24 135/1 135/4 141/14 144/11
 148/2 157/22 159/7 162/3 163/21 174/5
 180/10 180/11 180/23 181/4 183/13
 184/2 184/15 189/11 190/24 192/13
 194/18 194/18 195/11 202/10 206/17
 206/22 210/11 212/15 212/19 216/1
 216/2 216/3 216/19 216/23 217/4

217/20
gets [4] 17/5 68/1 147/1 147/8
getting [17] 51/2 56/19 62/12 64/9 65/20
 65/25 66/7 78/18 78/23 79/4 81/25
 95/10 96/24 99/2 109/13 180/11 208/11
giant [2] 191/4 194/17
Gift [1] 126/11
gifts [7] 127/11 127/13 127/15 127/17
 127/20 127/21 198/15
girl [1] 8/6
give [46] 4/19 11/23 16/3 16/3 17/25
 24/12 25/20 29/8 29/12 33/15 34/20
 52/19 52/23 54/8 59/1 76/1 84/23 85/15
 85/23 87/9 87/14 88/12 88/16 94/8
 101/22 114/11 114/14 118/10 118/14
 118/16 118/17 119/15 140/20 149/9
 165/14 168/15 181/21 183/9 183/10
 183/14 183/17 183/18 189/8 196/1
 209/17 212/2
given [29] 5/10 11/10 15/1 19/6 28/16
 35/4 41/21 43/16 44/10 48/11 51/24
 52/5 54/6 85/9 89/7 91/15 91/25 92/13
 93/4 118/17 148/7 149/10 157/19
 158/17 165/4 166/12 194/5 209/5
 216/11
gives [3] 42/7 50/4 186/20
giving [2] 28/8 136/19
glad [2] 23/18 184/20
glasses [2] 111/17 159/17
glitch [1] 18/23
global [1] 141/1
go [80] 4/4 6/13 6/13 10/18 11/19 11/22
 12/10 14/8 14/10 15/1 16/2 21/8 22/1
 23/9 24/14 28/1 42/16 42/19 44/22
 45/16 45/18 47/7 51/18 58/24 60/8
 61/10 69/10 71/12 84/12 84/13 85/1
 90/15 100/16 101/9 101/23 102/21
 105/22 106/15 117/9 115/9 119/6 120/9
 130/23 135/1 135/4 135/9 135/17
 135/18 137/22 141/9 144/25 145/1
 145/9 145/17 152/22 153/9 154/6 154/7
 155/21 157/22 158/23 159/23 160/21
 161/5 161/9 161/17 162/15 163/9 163/9
 168/16 172/21 180/15 180/16 180/16
 183/16 185/5 186/14 197/1 201/12
 205/18
goal [3] 106/2 116/1 129/4
God [3] 85/12
goes [7] 32/19 32/24 69/7 72/4 76/14
 91/24 149/15
going [169] 4/1 4/5 10/12 13/24 14/12
 14/15 14/23 15/1 15/5 15/7 15/8 15/11
 15/12 16/16 16/18 21/9 21/16 22/1 22/1
 23/12 23/15 24/12 31/4 42/16 42/20
 42/22 43/3 43/5 47/5 49/1 51/18 54/19
 56/16 61/9 61/20 62/10 63/10 63/21
 65/2 66/19 70/2 70/16 70/17 70/18 71/4
 72/22 72/23 72/25 73/5 75/17 75/21
 79/19 82/8 82/9 82/15 83/12 84/10
 84/22 93/25 94/4 94/9 94/10 94/19
 94/23 94/24 95/19 96/10 96/13 97/3
 97/10 97/13 97/15 98/6 99/4 99/16
 99/23 100/11 100/12 100/16 100/17
 100/21 101/2 101/2 101/16 101/17
 101/17 101/18 101/21 101/22 103/24
 105/3 106/13 107/8 108/19 109/2 110/3
 110/6 118/10 118/14 124/17 130/19
 130/23 134/21 135/6 135/8 136/16
 136/19 137/3 137/4 137/9 137/18
 137/21 137/25 138/6 138/8 138/18

139/2 145/6 148/2 148/5 148/13 151/20
 151/24 152/7 154/25 157/7 161/23
 161/23 165/5 169/18 170/15 174/4
 174/7 175/14 180/15 180/16 180/23
 183/6 183/18 185/4 186/6 186/7 189/3
 189/15 190/2 190/16 195/2 195/24
 195/25 196/3 196/6 196/3 196/5 197/1 197/21
 200/25 201/4 201/6 201/17 201/18
 204/23 208/13 208/14 210/9 210/14
 212/18 214/24 216/10 216/22 218/4
Golden [2] 119/11 119/14
Goliath [1] 191/3
gone [4] 59/17 67/24 84/1 209/2
good [31] 14/2 24/11 26/15 27/11 39/24
 42/2 47/18 49/4 59/9 61/14 71/20 73/21
 74/9 76/1 76/8 76/9 76/16 78/11 78/15
 84/14 95/23 100/20 103/16 103/17
 105/20 106/25 108/25 118/9 127/4
 140/10 210/23
goodness [1] 96/1
goods [2] 175/11 196/21
Google [1] 90/17
got [22] 46/12 60/6 60/7 60/18 62/10
 67/25 73/11 75/16 81/24 94/15 99/1
 99/5 111/17 112/11 128/21 128/21
 138/2 138/6 139/6 191/18 191/21
 191/23
governed [2] 52/13
Governor [1] 67/14
grad [1] 42/7
graduate [1] 157/25
graduated [1] 50/24
grand [7] 35/10 35/12 35/13 35/14 35/19
 35/20 195/15
grant [14] 10/12 11/8 14/23 15/2 15/5
 15/7 15/11 16/16 16/18 16/22 16/25
 21/16 132/3 187/11
granted [5] 11/16 19/8 19/9 19/16 134/4
great [18] 23/9 32/4 41/3 44/19 51/5
 71/20 77/16 78/9 93/17 119/16 135/22
 137/8 139/4 192/18 201/15 201/17
 212/20 218/20
greater [1] 53/19
green [1] 4/15
grief [2] 191/7 191/9
gritty [1] 190/25
ground [2] 21/22 127/18
group [16] 5/17 8/15 27/18 27/19 28/1
 28/10 28/14 28/15 35/14 44/22 61/19
 95/16 109/9 114/22 115/21 184/3
guess [16] 8/14 9/24 10/22 11/13 25/8
 60/14 62/19 63/20 66/16 107/18 125/18
 167/18 177/9 178/12 218/4 218/14
guessing [2] 68/13 69/24
guidance [2] 87/15 186/20
guide [1] 85/16
gum [1] 168/1
guys [10] 68/20 68/20 69/24 196/2
 196/25 197/5 200/25 203/10 206/22
 206/25

**H**

had [131] 3/3 5/22 6/6 7/24 8/15 10/8
 11/2 11/2 18/23 20/8 21/7 23/11 24/18
 26/25 30/14 34/18 35/10 35/11 35/22
 38/6 38/7 38/23 40/18 40/24 40/24 41/2
 41/6 43/7 43/8 43/10 44/12 44/23 45/8
 47/8 48/2 48/4 48/8 48/13 49/6 51/1
 51/14 55/14 56/3 56/7 56/8 56/18 57/8
 57/9 60/8 60/18 61/1 61/2 61/4 61/5

H

had... [77] 62/8 62/9 62/11 62/21 67/14
69/16 72/10 79/10 79/20 94/13 94/16
94/20 95/2 95/7 95/9 95/12 97/6 104/5
104/10 106/2 106/4 106/5 107/3 108/22
108/24 108/25 109/8 110/5 110/25
112/14 112/16 113/2 113/14 114/22
115/16 116/20 116/25 117/10 117/20
128/17 129/15 129/15 129/18 131/8
137/19 141/17 141/18 146/2 146/3
146/7 165/8 170/6 175/12 178/9 179/13
179/14 179/17 191/7 191/9 192/2 192/3
192/6 194/15 195/4 196/16 198/12
198/14 199/21 199/22 199/22 202/3
202/5 203/2 203/12 204/9 210/22
220/10

hadn't [1] 6/6

half [4] 102/19 174/9 174/14 183/20

halfway [1] 13/13

hand [9] 13/12 13/13 30/18 52/24 85/5
103/8 139/18 209/24 213/4

handle [6] 6/17 143/3 167/19 167/25
168/8 194/4

handled [9] 18/24 100/7 148/8 148/10
148/13 164/8 166/16 166/25 167/3

handling [1] 143/21

hands [2] 53/17 53/21

handwriting [1] 210/24

Hannan [1] 78/11

happen [7] 10/7 28/19 149/17 158/21
166/13 192/6 193/19

happened [21] 5/18 10/8 41/13 43/21
82/16 94/9 95/21 100/15 100/16 101/19
103/25 162/13 165/12 166/24 169/8
169/11 170/5 193/8 206/12 206/13
207/2

happening [5] 95/6 101/6 139/9 206/9
206/10

happens [4] 101/7 147/17 158/14
159/16

happy [7] 4/19 12/14 13/8 17/1 130/16
133/14 142/6

harassed [3] 48/5 57/17 57/22

harassing [2] 109/14 114/20

hard [5] 57/11 57/14 118/10 150/25
216/3

hardship [3] 32/7 32/12 160/16

hardware [1] 69/1

Harlan [1] 73/9

harm [6] 138/5 205/17 205/19 205/25
206/1 206/17

Harvey [1] 137/5

has [63] 5/20 6/16 7/15 7/20 8/4 9/12
10/21 29/5 35/1 38/23 48/18 49/13 53/3
53/10 56/18 59/14 59/16 62/21 64/8
68/1 73/5 78/16 82/16 86/22 87/18 88/1
93/3 94/5 97/11 97/17 99/11 120/25
133/2 133/2 134/19 137/17 149/6 156/1
156/5 163/5 165/12 166/1 167/13
173/12 176/11 176/17 179/14 182/10
183/19 188/4 190/14 192/21 193/1
193/7 199/10 199/14 199/18 201/13
201/17 204/24 208/8 208/12 216/19

hasn't [1] 98/5

have [449]

haven't [9] 7/1 17/2 48/4 62/3 63/8 67/20
80/3 175/24 176/13

having [28] 6/8 9/25 14/11 42/11 42/12
49/25 50/4 102/13 103/10 108/7 108/8
112/4 113/7 114/1 123/8 131/13 139/20

158/16 160/15 182/3 190/3 190/11
193/20 197/18 198/5 208/9 209/4 220/17

he [23] 30/4 30/5 42/7 42/7 42/8 43/10
57/3 57/5 67/24 67/25 81/10 95/9 96/5
106/23 106/25 107/1 107/6 115/5
123/23 124/3 141/17 202/7 203/2

he'll [1] 139/14

he's [3] 8/16 57/3 81/18

head [2] 63/10 63/15

headed [1] 175/19

hear [32] 17/1 23/18 28/20 43/18 50/10
50/16 56/9 73/16 78/2 78/3 79/10 90/9
91/17 96/14 101/14 101/17 101/18
108/16 122/15 137/4 137/9 137/18
137/21 137/25 138/13 138/18 138/23
174/11 190/12 198/1 206/8 207/3

heard [26] 35/4 35/7 46/11 56/2 56/7
65/21 65/24 82/13 86/25 88/9 88/19
94/21 103/24 133/1 137/8 138/4
167/11 169/11 190/6 191/17 192/9
193/3 194/22 196/18 197/15 208/3

hearing [10] 3/20 3/22 27/5 27/22 28/18
33/11 33/13 35/6 92/4 108/7

hearings [1] 142/16

hearsay [13] 12/8 13/2 14/3 15/20 105/4
105/12 107/9 107/10 107/20 107/22
110/8 110/9 110/10

heat [1] 200/8

held [3] 141/23 142/5 207/21

help [28] 28/8 56/19 57/21 62/14 62/15
62/21 63/1 63/13 81/11 85/11 92/17
93/13 95/18 96/1 96/2 96/17 96/23
105/17 105/22 106/1 106/13 107/1
108/16 112/11 115/17 115/21 191/10
201/18

helped [1] 60/2

helpful [1] 72/6

helping [3] 58/25 60/14 60/16

her [89] 6/16 7/16 7/16 7/21 12/8 13/5
17/22 17/25 18/1 18/2 18/2 18/3 18/4
20/4 20/5 30/16 33/23 33/25 38/24 53/3
53/9 61/25 62/11 81/7 81/15 81/25
87/18 87/24 88/2 92/22 94/14 94/16
95/6 95/9 95/10 95/11 95/18 96/13
96/23 96/23 97/5 98/3 105/4 107/9
108/7 120/9 128/2 134/13 135/15 136/3
136/6 136/18 136/19 136/20 136/20
166/3 166/3 166/7 171/11 171/13
179/12 185/15 191/7 191/8 191/9
191/10 192/6 192/6 195/10 195/11
198/4 198/6 198/6 198/9 198/9 198/23
198/25 199/4 200/2 200/3 200/4 200/4
200/14 203/12 204/12 205/8 206/16
211/6 218/16

here [63] 3/22 10/8 12/14 17/18 19/21
20/10 20/24 20/25 22/2 26/17 26/20
26/24 27/1 27/6 27/13 29/11 32/10
32/11 38/24 40/14 43/2 43/21 57/1 66/1
73/4 78/16 82/22 84/15 87/3 90/9 93/25
94/1 94/4 95/16 96/13 101/15 101/22
101/24 111/4 116/9 118/15 119/6 125/9
126/7 135/15 135/20 135/21 139/15
142/8 152/4 165/13 166/10 170/5 185/8
189/17 192/12 195/19 200/25 205/16
209/1 212/7 212/19 216/6

hereby [1] 220/6

herself [2] 95/13 128/1

hesitant [1] 63/4

Hey [1] 191/19

Hi [2] 65/14 127/5

Hickle [2] 5/12 8/15

higher [4] 5/18 18/20 205/8 208/21

higher [1] 66/11

highlight [2] 151/6 155/6

highlighted [4] 152/3 152/16 155/5
159/24

highly [2] 200/14 200/14

him [8] 42/10 115/5 123/20 123/24
124/10 137/6 141/18 203/4

hinder [1] 116/14

hint [1] 171/24

hire [7] 63/13 66/10 96/22 109/9 109/11
145/2 145/5

hired [8] 63/6 64/25 95/17 97/5 115/16
141/18 144/24 145/8

hiring [6] 56/19 63/4 63/5 63/16 96/1
96/2

his [10] 20/17 42/7 43/12 67/24 67/25
169/22 201/15 201/15 202/4 202/23

history [2] 43/14 198/5

Hoffman [1] 76/18

hold [5] 43/19 53/18 55/13 177/22 207/9

holds [1] 29/6

home [16] 13/16 41/15 70/21 94/2 94/23
104/9 114/2 126/15 129/16 140/23
141/15 162/4 162/5 179/4

homeowners [1] 58/15

honest [8] 10/17 138/9 149/16 187/24
206/2 206/16 207/19 207/22

honestly [4] 7/14 96/4 116/11 186/5

honey [1] 68/14

honey-do [1] 68/14

Honor [118] 4/11 4/14 5/11 6/1 6/12
7/13 8/2 8/7 12/1 12/14 13/11 13/18
14/16 15/15 15/23 16/13 17/5 17/11
18/5 19/2 19/9 20/14 21/11 22/10 22/24
23/1 23/21 24/3 24/16 25/10 26/13
29/25 30/23 31/4 38/20 39/4 45/15
45/24 46/8 54/14 63/23 93/19 97/21
102/1 102/6 103/18 105/3 105/12 107/8
107/12 107/20 108/4 110/8 118/5
119/23 120/16 120/20 122/6 124/22
126/22 126/24 130/2 130/12 130/16
131/4 132/9 133/13 135/14 135/21
135/24 136/11 136/23 139/11 139/24
143/5 144/3 149/15 150/6 150/11
153/21 164/14 165/21 166/4 169/18
169/24 172/11 172/12 173/1 173/3
173/10 173/24 176/2 176/6 177/5
178/15 178/22 179/6 179/19 180/14
181/10 183/1 184/9 184/23 185/1
185/12 187/14 189/13 207/25 210/2
210/16 211/22 212/4 212/20 214/22
217/14 218/23 219/8 219/9

HONORABLE [2] 1/11 220/11

hope [7] 70/4 95/22 96/6 101/14 191/2
194/20 195/18

hopefully [3] 108/16 148/3 194/14

hopes [1] 43/3

horrible [1] 148/9

hospital [2] 41/11 41/14

host [6] 2/19 145/10 148/17 150/3
154/15 155/7

hour [13] 3/5 32/25 83/5 102/18 102/19
118/14 119/21 174/9 174/15 184/19
210/21 212/23 219/12

hours [2] 148/2 209/2

house [4] 106/4 108/25 109/20 126/19

household [11] 113/5 114/9 133/9
175/10 180/3 192/16 192/19 196/10

## H

household... [3]  196/21 213/13 214/4
how [74]  7/18 10/18 11/17 13/9 24/18
24/21 49/25 54/21 60/10 66/4 67/2
67/13 68/1 73/15 73/25 77/7 78/1 78/13
87/13 94/24 99/11 100/7 102/16 103/25
105/19 105/22 109/23 115/23 116/8
117/19 129/14 138/8 140/15 140/17
140/20 140/21 141/6 141/9 141/11
141/14 143/2 144/15 144/21 145/10
146/1 146/5 146/6 146/16 147/1 148/8
148/10 149/9 149/9 149/16 157/7
159/14 163/13 164/7 164/24 165/3
166/15 166/25 167/3 168/22 168/23
171/5 171/6 171/7 171/10 182/15
186/19 189/6 204/16 218/15
however [6]  29/4 86/8 101/11 176/17
186/8 202/20
HS [1]  129/15
HSBC [1]  129/16 132/14
HSN [15]  114/15 131/19 131/23 131/24
133/23 134/10 137/9 137/14 152/1
152/13 175/13 196/17 196/25 197/6
197/16
huge [2]  13/2 94/4
huh [10]  58/8 76/24 113/1 113/17
116/22 123/3 123/25 159/21 166/19
212/1
hum [2]  63/14 66/8
human [4]  70/4 192/11 192/11 195/16
hundred [1]  15/24
hung [1]  196/2
hurricane [1]  93/25
hurt [1]  63/10
husband [6]  68/12 81/7 95/7 104/3
116/12 191/8
husband's [1]  57/1
hypothetical [2]  165/14 167/21

## I

I'd [5]  95/20 102/1 102/20 111/2 194/1
I'll [45]  4/5 4/6 11/22 14/5 15/1 16/22
23/18 28/8 42/18 43/6 45/17 48/17
56/13 62/25 81/25 84/17 84/24 87/9
95/3 95/5 99/15 102/21 105/13 110/20
112/13 119/15 135/8 135/10 142/8
149/18 166/9 169/25 174/14 183/17
183/18 187/11 188/23 190/7 190/22
196/1 212/18 213/6 216/16 217/6 218/9
I'm [170]  4/19 6/7 6/8 7/19 10/12 11/18
12/14 13/8 14/12 14/15 14/23 15/5 15/7
15/8 15/11 15/12 16/16 16/18 22/19
23/12 24/8 24/12 25/3 25/4 26/16 30/24
32/18 41/18 42/1 42/16 42/20 42/25
43/5 49/12 51/18 54/19 55/25 58/20
59/12 61/9 61/18 61/20 62/25 63/2 63/9
64/25 65/2 67/23 68/12 70/12 70/22
71/9 72/22 72/23 72/25 73/5 73/8 73/19
74/2 74/2 74/7 74/19 74/22 75/17 77/8
77/11 78/11 79/18 82/15 84/3 84/10
96/18 96/19 98/6 98/9 101/12 101/13
101/16 101/16 101/21 102/12 102/19
103/24 105/3 106/25 107/8 107/18
107/22 108/3 108/4 108/7 110/23
111/15 112/13 116/9 118/14 119/13
119/23 122/15 122/25 123/7 124/17
125/22 129/16 130/16 131/13 133/14
135/8 140/4 142/3 146/9 147/8 148/9
150/22 152/6 153/18 154/19 154/21
154/22 154/23 154/25 155/3 155/5

159/13 160/15 161/8 165/5 168/14
169/10 172/14 172/17 173/4 174/20
175/20 176/13 176/25 177/4 177/23
177/24 177/25 178/10 178/13 178/23
178/23 179/1 180/15 180/22 182/17
183/22 185/3 185/21 187/4 189/3 189/5
189/24 190/21 194/9 195/24 197/14
200/25 201/4 201/6 201/17 202/6
204/23 208/13 216/10 216/22 218/4
218/24
I've [21]  6/10 34/23 35/3 45/7 46/12 48/5
58/20 59/3 61/2 61/4 65/24 75/16
111/17 119/10 123/19 142/4 158/7
169/15 207/11 209/5 216/11
Ice [1]  73/17
idea [8]  7/23 68/23 102/17 106/14 117/5
117/10 140/20 149/9
ideas [1]  52/20
identical [1]  21/1
identification [1]  12/6
identified [6]  12/7 12/9 12/10 19/25 20/7
166/2
identifies [1]  210/23
identify [6]  5/9 17/21 17/22 17/24 28/17
167/12
identity [2]  55/18 55/19
ignore [1]  86/17
ignored [5]  46/14 169/15 169/16 170/4
191/12
Illinois [1]  19/14
illness [1]  33/6
immediate [4]  31/18 37/20 37/22 38/17
immediately [2]  147/18 148/13
impartial [15]  36/16 37/11 38/12 39/3
40/7 41/24 42/14 44/17 45/13 46/10
47/20 48/14 49/20 51/9 80/14
impermissible [1]  178/4
implications [1]  96/15
implies [2]  169/23 181/11
imply [1]  181/13
important [11]  3/23 5/2 89/6 92/10 94/5
97/9 132/18 186/10 192/10 193/11
199/13
importantly [1]  138/18
impression [2]  64/22 91/16
improper [2]  187/23 187/25
improperly [2]  86/13 187/18
Improvement [1]  141/15
impugn [1]  19/21
inaccurate [4]  7/8 7/25 110/7 132/17
inadmissible [1]  21/15
inappropriate [1]  200/15
incentive [1]  100/25
include [2]  163/11 182/1
included [1]  17/15
includes [2]  89/10 179/18
including [5]  4/22 90/21 118/20 128/13
144/19
income [1]  66/12
incoming [1]  194/7
inconsistent [5]  6/15 6/18 6/25 7/10
19/18
incorporate [1]  21/20
incorporation [1]  176/21
incorrect [1]  96/16
incorrectly [1]  192/4
incumbent [1]  131/25
incurred [3]  192/15 196/9 213/12
independent [4]  90/8 91/12 118/25
209/7

independently [1]  54/4
Indecorum [1]  191/17
indicated [3]  20/3 125/1 170/7
indicating [2]  86/2 164/1
indication [2]  20/10 153/10 164/4 169/19
indictment [1]  35/16
individual [1]  5/25
inevitable [1]  92/11
infer [2]  87/7 91/20
inferences [1]  92/1
influenced [2]  86/15 91/13
info [6]  153/8 154/10 155/7 159/15
161/10 163/14
inform [1]  4/5
information [25]  13/17 34/5 34/12 47/16
54/8 82/9 89/14 89/21 90/20 97/6 99/20
107/25 109/24 147/11 147/19 155/8
155/14 155/15 155/22 166/22 167/16
168/20 171/7 171/18 210/10
informed [1]  23/17
initial [5]  22/3 145/9 158/1 171/13
181/14
initially [1]  138/24
inquire [1]  35/9
insofar [1]  15/8
inspection [1]  88/24
instead [4]  8/10 8/14 94/4 182/24
institution [1]  56/23
instruct [2]  86/7 190/7
instructed [5]  86/19 155/24 190/11
instruction [4]  86/21 93/10 120/20 181/2
instructions [23]  40/1 40/2 44/12 44/13
47/23 52/15 52/19 52/24 85/16 87/9
88/13 88/14 88/21 91/7 118/16 174/5
174/10 180/24 190/9 206/3 208/22
209/5 216/11
instructor [1]  145/18
instructor-led [1]  145/18
insufficient [2]  188/19 188/20
insurance [3]  180/3 196/9 213/12
intend [2]  201/24 217/12
intended [4]  5/8 20/4 86/1 93/13
intending [1]  107/12
intention [2]  54/2 206/25
intentional [5]  188/5 194/10 194/21
195/3 206/7
intentionally [2]  213/17 214/9
intentions [1]  29/3
interaction [2]  50/20 51/6
interested [2]  177/24 177/25
interests [1]  75/21
interfere [1]  50/12
interim [1]  25/22
internal [2]  153/6 157/13
internally [1]  69/3
internet [4]  47/16 89/18 89/18 90/18
90/20
interrogatories [5]  4/17 5/1 5/7 20/9
186/20
interrogatory [9]  18/6 186/12 187/15
213/9 213/15 213/22 214/1 214/7
214/14
interrupted [1]  99/1
interruptions [1]  92/9
intoxication [1]  41/12
introduce [5]  24/25 29/19 29/23 30/21
92/19
introducing [1]  10/14
intrude [1]  29/3
intrusive [1]  29/1 54/1

# I

investigate [2]  90/18 216/18
investigation [3]  90/8 118/25 209/7
invite [1]  201/18
invoke [1]  93/15
involved [15]  17/9 17/13 34/22 38/1 39/1
52/12 66/23 90/21 115/10 118/24 119/1
134/2 142/11 165/11 175/8
involves [3]  73/6 145/9 197/5
involving [3]  5/16 187/21 196/21
Iowa [4]  36/7 36/7 68/8 68/8
iPhone [1]  89/17
iPod [1]  89/17
irregular [1]  200/14
is [463]
ish [1]  60/11
isn't [13]  21/3 100/1 123/5 124/12 125/4
125/21 126/1 126/5 126/8 148/21
175/22 179/2 212/9
issue [34]  4/2 12/10 13/5 15/9 18/2
20/24 20/25 25/16 44/22 79/22 90/14
90/19 115/17 118/24 118/25 128/23
131/8 132/2 132/5 132/10 132/11
133/19 134/23 135/1 135/2 177/11
177/11 179/2 181/19 182/15 198/19
201/14 205/16 209/8
issued [1]  11/3
issues [17]  3/21 10/20 19/20 24/20 25/4
29/6 49/9 52/12 62/7 62/8 62/22 92/14
93/13 109/15 187/14 208/13 219/6
it [484]
it's [137]  5/19 6/25 8/14 8/20 9/16 9/21
9/22 9/25 10/2 10/7 10/24 13/12 14/4
14/19 15/19 16/8 17/10 17/10 17/18
19/7 19/12 19/15 22/24 25/14 29/2 29/4
29/7 31/21 32/10 32/16 38/6 38/11 48/6
48/10 49/7 51/25 52/2 58/15 58/21
64/18 74/17 75/12 76/20 78/20 78/20
81/7 81/11 81/14 82/18 84/6 86/17
94/11 96/8 96/8 97/9 98/3 108/6 108/10
126/7 132/17 133/3 133/24 133/24
134/24 134/25 135/3 140/8 140/10
140/11 142/24 144/19 145/18 145/18
147/2 147/19 148/1 148/12 148/12
148/20 149/21 149/24 155/1 158/19
158/24 159/1 159/1 159/7 161/21 162/2
163/17 164/11 165/7 169/1 169/17
170/23 175/5 175/21 175/22 177/8
177/12 178/15 178/18 179/2 181/6
182/18 182/19 184/1 184/2 184/12
185/24 185/24 186/4 186/8 186/14
186/25 187/23 187/25 192/5 193/12
193/14 194/4 195/8 196/25 197/3 201/5
201/16 201/18 202/10 208/4 210/9
214/18 217/4
IT-related [1]  47/17
item [2]  86/19 168/14
items [6]  114/9 122/4 128/5 129/20
168/21 175/13
its [3]  88/6 169/19 206/3
itself [3]  92/1 185/7 191/19

# J

Jackson [8]  5/10 17/8 17/12 17/21 19/5
19/25 20/7 20/11
Jackson's [4]  5/3 17/24 19/3 19/12
January [1]  117/1
January 2015 [1]  117/1
JEAN [20]  1/4 3/7 3/12 3/13 7/15 7/20
26/3 26/9 26/10 29/22 30/5 30/9 33/20
94/1 201/19 216/1 216/1 216/9 233/17
213/7
Jersey [1]  44/6
Jesse [3]  106/22 107/9 109/20
Jesus [2]  78/7 127/25
JNOV [1]  217/15
job [9]  49/10 59/8 69/19 71/11 78/22
94/11 101/11 112/16 164/22
jobs [3]  71/8 138/15 155/19
Joe [1]  74/7
Joel [1]  77/22
join [2]  141/20 216/24
JONES [76]  1/4 3/7 3/12 3/14 7/15 7/20
26/3 26/9 26/11 27/15 29/22 30/5 30/9
30/16 33/20 66/19 66/24 85/7 87/17
94/13 94/22 95/14 96/12 99/13 101/18
101/21 102/5 103/6 103/9 103/16
103/23 105/15 108/18 110/15 112/13
112/14 113/7 114/17 120/14 120/17
120/25 122/10 123/8 126/10 127/4
133/22 137/8 138/5 138/20 138/21
150/5 153/3 153/11 153/14 164/1 166/1
176/12 176/17 191/19 192/1 192/14
195/9 196/16 197/15 198/4 198/20
198/23 199/10 199/14 199/14 199/25
203/11 203/16 205/15 207/3 213/7
Jones' [4]  19/19 95/6 169/12 171/11
judge [50]  5/17 5/20 6/3 6/18 6/21 6/25
7/14 7/18 13/3 16/8 23/11 26/17 30/1
30/4 52/6 52/7 63/11 64/11 64/14 79/15
81/4 85/18 90/22 98/19 131/13 134/17
134/20 134/25 166/8 175/4 175/6
180/10 180/22 181/3 183/25 186/9
186/11 186/24 187/24 189/5 189/24
190/10 195/25 199/6 199/8 201/15
207/14 211/3 218/9 219/2
Judge's [1]  204/19
judges [7]  26/18 51/22 51/22 51/23 52/4
85/19 85/21
judgment [23]  5/23 6/20 7/22 8/1 8/7
8/23 9/1 9/6 9/10 10/23 13/22 16/24
20/16 20/20 21/12 23/16 27/11 50/16
131/8 134/5 142/13 173/13 174/23
judgments [9]  106/6 122/18 122/21
122/22 122/24 123/1 123/4 123/5
198/12
Julie [1]  212/9
July [1]  142/2
jumbo [3]  192/10 196/11 207/14
jumped [1]  24/9
June [1]  142/1
juries [10]  35/10 35/10 35/13 35/17
35/19 35/22 35/22 35/24 51/20 53/5
jurisdiction [1]  35/15
juror [59]  29/17 32/15 36/2 36/3 36/16
36/25 37/12 38/19 40/7 41/9 41/24
42/24 42/25 43/9 45/6 45/19 45/20
45/21 46/6 46/23 46/24 47/10 49/2
49/20 51/9 52/3 54/5 55/2 55/11 55/14
56/1 56/1 56/3 58/1 58/3 59/14 59/16
59/19 61/10 61/13 80/13 83/16 83/18
83/19 83/20 83/21 83/22 83/23 89/23
91/7 208/9 209/10 215/2 215/5 215/8
215/11 215/14 215/17 215/20
jurors [16]  21/24 22/7 22/8 27/20 28/17
28/21 28/23 35/14 51/21 51/25 52/16
88/15 89/24 90/6 90/23 190/3
jurors' [1]  91/13
jury [135]  3/9 3/24 11/6 11/12 22/9
24/14 24/15 24/21 25/7 25/7 25/8 25/13
25/14 25/17 26/19 27/3 27/14
27/16 28/13 28/20 29/4 30/12 31/3 31/7
32/8 32/14 35/12 35/14 35/14 35/20
36/1 36/4 36/9 36/11 36/15 36/19 36/21
37/5 37/7 42/8 42/9 42/17 46/6 46/21
48/21 49/3 52/6 55/11 64/5 64/8 64/22
65/9 80/23 82/5 82/8 83/2 83/7 83/8
83/9 83/13 83/15 84/1 84/3 84/19 84/21
85/2 85/4 85/19 89/13 93/23 98/2 98/16
98/24 102/12 102/14 103/4 118/8
118/21 119/7 119/25 120/4 120/5 122/2
130/24 131/1 131/9 135/5 135/23
136/13 140/12 145/5 173/9 173/20
174/1 174/5 174/8 174/10 174/13
174/16 179/18 180/16 182/8 182/12
184/21 185/22 186/7 186/19 188/11
188/22 188/24 188/25 190/4 190/6
190/9 196/6 200/11 200/19 208/3 208/6
209/22 210/4 210/5 210/22 210/23
211/8 212/24 214/21 214/23 214/24
215/24 216/23 217/3 217/7
jury's [1]  186/6
just [137]  3/24 4/4 5/25 6/21 8/19 9/25
14/10 19/8 19/16 23/24 24/21 28/9
31/12 32/18 32/21 34/23 35/3 40/13
42/11 43/11 43/21 48/10 55/13 57/25
61/25 63/2 64/6 64/17 64/20 65/15 68/2
69/13 72/10 72/12 72/14 72/25 75/5
75/25 76/10 76/11 76/13 76/25 77/14
77/22 81/7 82/13 94/8 95/7 95/8 95/13
95/21 96/8 100/2 101/7 101/11 101/16
101/21 103/18 104/15 105/13 106/4
107/18 107/24 109/2 110/11 111/3
111/15 112/10 115/1 115/5 115/5
116/15 117/24 118/14 134/24 135/8
135/14 140/11 148/22 149/9 151/20
152/4 152/16 159/24 160/20 160/22
163/17 166/12 167/2 167/2 168/2 168/3
168/12 172/2 172/11 174/1 174/19
175/5 177/13 179/1 179/4 179/5 179/24
180/4 180/20 182/18 182/19 182/21
183/7 183/13 184/7 185/18 185/19
186/24 186/25 187/2 190/25 192/4
193/12 194/18 195/5 195/17 196/11
197/2 197/13 199/7 202/11 207/20
208/25 210/8 211/21 212/14 214/24
216/21 216/24 217/1 217/12
justice [2]  44/7 194/18
justing [1]  69/13

# K

Karma [4]  104/10 104/14 104/24 105/23
KBTT [1]  78/12
keep [9]  57/11 63/20 81/25 91/6 119/25
159/5 180/10 196/3 199/25
keeping [1]  81/3 81/15 182/11
keeps [1]  57/5
Keith [2]  3/17 30/25
kept [3]  114/20 191/18 192/4
kick [1]  95/11
kids [2]  45/8 94/2
kind [38]  4/8 31/20 35/2 43/13 60/8
61/17 67/23 70/10 73/19 74/17 75/20
76/5 77/13 79/7 79/23 84/6 95/20 96/21
101/22 104/7 112/4 112/7 113/10 114/4
127/23 137/22 141/17 167/14 179/7
182/15 183/8 190/25 191/2 195/1
207/23 210/12 210/14 218/1
kinds [9]  45/9 69/24 77/25 87/4 87/11

**K**

kinds... [4]  95/15 107/9 162/8 207/22
Kingdom [7]  126/11 127/11 127/13
127/15 127/17 127/20 198/15
knew [9]  33/24 123/13 124/5 129/14
194/10 194/11 194/13 194/15 195/4
know [134]  3/23 6/23 7/24 9/18 10/4
10/9 10/21 11/4 13/6 13/9 15/12 17/7
20/18 22/12 24/7 25/22 26/24 31/23
35/13 40/14 44/2 45/2 45/5 46/10 47/2
47/5 48/25 50/8 54/21 58/21 58/21
59/25 63/3 63/11 63/18 65/15 66/16
69/9 69/23 70/1 72/19 74/22 76/16
76/20 79/24 80/6 80/15 84/4 84/6 84/20
94/18 94/19 95/2 95/24 96/12 96/21
97/1 100/19 102/13 104/5 105/1 105/1
105/19 105/21 106/24 106/25 107/6
107/15 108/8 109/2 109/15 110/2
110/24 115/3 115/4 115/6 115/8 115/9
116/23 119/4 123/21 123/24 125/12
125/18 128/2 129/7 130/23 132/15
133/20 133/22 136/9 140/21 163/17
165/7 165/21 166/11 171/3 171/5
171/16 172/7 177/3 177/14 181/15
182/10 183/6 185/4 188/10 189/5
195/12 195/12 195/13 196/25 198/4
198/7 198/8 198/13 198/14 198/21
198/22 199/1 199/2 200/2 200/3 200/12
205/21 209/1 209/1 216/7 216/16
216/20 217/3 217/4 217/13 218/19
knowing [6]  7/25 41/22 42/13 44/1 48/1
166/11
knowledge [13]  5/5 8/17 9/17 20/8 28/24
29/5 31/15 34/24 69/7 110/19 116/18
157/23 171/15
known [6]  8/16 33/25 191/20 192/2
knows [3]  20/1 72/19 131/7
KUT [1]  74/11

**L**

labeling [1]  177/13
lack [1]  49/13
ladies [18]  26/15 77/3 79/18 82/7 83/11
83/24 85/4 93/23 118/8 122/2 130/19
136/15 174/1 195/24 205/15 208/3
214/24 215/24
lady [4]  96/12 191/5 194/18 200/1
Lago [2]  122/10 126/12
laid [1]  98/5
land [3]  38/9 68/8 206/1
language [4]  21/1 160/12 181/16 182/11
large [1]  144/15
largely [1]  8/24
larger [1]  44/22
last [15]  6/2 13/4 39/17 43/9 73/22 113/2
113/21 123/9 157/3 165/4 165/6 165/9
195/6 205/10 205/14
lasted [1]  36/25
late [5]  10/3 20/2 61/3 61/4 94/16
later [18]  28/11 34/20 41/16 98/16
104/18 109/12 109/13 117/2 117/5
117/6 117/6 117/8 117/13 142/1 162/4
194/2 218/5 218/10
Latrice [1]  133/18
law [67]  9/19 10/9 17/14 30/17 30/24
39/7 39/8 39/8 39/9 39/17 44/10 44/11
47/11 52/8 52/12 52/14 52/18 52/20
52/23 63/5 63/6 63/13 63/16 64/6 64/18
65/19 66/1 66/16 66/18 66/22 67/3 67/6
85/9 85/18 85/22 85/23 88/13 90/21

91/19 92/4 93/11 106/17 138/10 139/7
139/7 142/6 144/11 145/17 155/21
169/21 169/22 170/2 170/6 171/21
180/4 180/5 182/24 190/7 190/11
191/14 191/24 193/5 193/6 193/21
196/12 207/17 207/17
laws [3]  100/6 100/10 145/12
lawsuit [27]  16/9 37/20 37/23 38/1 38/3
38/5 38/11 38/20 38/23 39/20 39/21
52/13 66/23 67/3 67/6 67/7 67/14 80/2
109/16 125/21 132/6 132/23 178/20
191/19 192/1 205/3 205/8
lawsuits [4]  19/10 19/21 39/2 66/2
lawyer [9]  39/22 58/19 63/4 96/3 96/5
96/22 96/25 140/10 207/7
lawyers [28]  25/11 26/18 34/20 54/2
65/15 65/17 65/25 72/19 82/9 83/11
86/6 86/10 86/11 88/20 90/22 91/20
92/3 92/8 92/12 93/4 93/7 96/6 96/22
200/14 206/22 206/25 207/10 209/20
lay [3]  14/13 15/17 166/4
lead [5]  5/13 39/22 105/8 146/8 146/15
leads [1]  53/12
learn [6]  90/11 97/10 109/17 114/18
146/1 163/12
learned [3]  111/22 111/23 112/10
learning [1]  145/9
least [9]  50/5 84/22 102/20 102/21 165/8
183/20 203/3 208/15 210/13
leave [13]  14/12 14/15 185/21 186/3
186/5 187/5 195/6 208/13 208/18
210/10 212/14 212/17 217/21
leaves [1]  64/22
leaving [1]  82/24
led [2]  7/10 145/18
left [6]  13/12 13/13 13/21 28/14 51/1
132/6
left-hand [1]  13/12 13/13
legal [14]  39/9 39/11 39/12 39/22 44/2
95/16 109/9 115/20 116/5 140/25
141/24 141/25 192/9 196/11
legal-related [1]  39/12
legalese [1]  195/18
legitimate [1]  176/5
lender [1]  99/12
lending [2]  81/1 81/2
length [2]  32/8 192/18
lengths [1]  137/8
lens [1]  11/2
lenses [1]  71/19
lent [1]  78/16
less [2]  100/25 214/16
lesser [1]  53/19
let [52]  9/14 15/12 15/12 23/7 25/22
29/19 32/6 35/11 37/19 39/7 39/25
40/11 40/13 40/15 41/4 41/20 44/21
47/6 49/4 51/14 55/25 59/11 61/25 65/3
80/14 84/20 101/23 106/9 115/9 117/20
118/16 119/4 130/23 136/9 144/24
146/16 147/5 148/9 149/25 151/5 171/6
171/22 178/21 179/4 180/16 207/16
208/21 212/13 212/18 216/16 217/13
218/19
let's [24]  3/24 4/4 11/22 14/8 14/10
14/10 24/13 25/21 55/2 67/22 78/4
102/21 111/2 111/11 113/20 136/6
144/10 144/11 155/21 191/22 197/12
202/8 205/14 210/13
lets [1]  79/15
letter [116]  2/16 4/23 4/23 6/14 6/17

7/17 11/19 12/7 12/8 12/18 12/22 13/8
13/10 13/11 13/12 16/20 17/10 17/13
17/14 17/17 18/24 19/14 19/15 20/23
20/24 20/25 21/1 34/14 79/6 97/2 97/3
97/4 97/16 98/8 98/10 98/11 99/2 99/5
99/19 100/22 101/10 109/16 109/17
111/20 111/24 115/4 116/25 121/1
121/4 123/14 125/6 125/11 125/15
137/16 138/1 138/6 139/6 142/21
146/19 146/19 148/8 148/15 151/17
152/9 153/15 155/11 162/1 163/23
166/6 166/7 166/13 166/16 166/18
166/20 166/23 166/25 167/3 167/6
167/15 167/19 167/25 168/8 168/10
169/7 169/12 169/15 169/16 169/19
169/21 169/21 170/2 170/2 170/4 170/6
170/18 171/6 171/13 178/3 191/23
193/23 193/24 193/25 194/4 194/7
194/14 197/11 197/12 197/24 202/16
203/14 203/17
letterhead [3]  17/15 169/22 170/6
letters [19]  97/6 97/7 100/24 109/16
109/16 109/23 109/25 110/6 110/16
111/21 114/21 137/23 138/20 146/4
148/25 149/10 149/20 166/22 169/14
level [1]  158/3
liability [7]  6/13 7/1 181/1 181/17 182/2
182/12 182/18
liberal [1]  81/24
licensed [1]  132/14
licensing [1]  134/14
lie [1]  90/24
life [6]  40/25 43/12 78/8 81/15 95/6
105/21
light [3]  5/3 53/11 77/15
like [97]  4/11 4/19 9/2 12/3 14/4 17/2
17/4 20/15 20/25 21/10 22/13 22/22
23/5 25/5 27/10 29/8 29/14 32/12 33/3
35/13 35/23 35/24 40/12 48/15 48/16
50/1 50/15 54/21 56/8 57/15 59/2 60/12
60/17 63/5 63/14 67/7 67/11 69/8 69/9
69/13 69/13 72/8 72/22 75/5 75/6 77/11
77/13 79/13 79/14 81/16 81/19 81/19
84/6 84/14 86/18 93/15 94/5 94/22
95/20 96/18 102/1 102/20 104/11
105/24 105/25 111/2 111/9 112/19
117/6 119/25 120/16 127/15 130/11
130/13 132/8 134/24 136/21 140/4
148/17 148/21 159/2 160/7 162/4
163/13 165/17 166/14 168/8 174/12
189/11 192/5 192/9 192/11 194/1
214/20 217/19 217/25 218/10
likely [6]  53/13 87/21 101/13 133/3
133/8 176/24
limine [18]  5/12 8/10 8/12 8/24 9/22
10/12 11/9 14/5 14/8 14/17 15/3 16/1
16/3 19/8 19/9 19/16 22/13 64/16
limined [2]  24/24 25/1
limit [3]  24/22 45/13 92/8
limited [4]  8/13 11/19 53/23 86/20
line [15]  4/25 13/14 57/5 57/11 58/18
62/3 79/8 81/3 81/19 123/5 128/12
133/10 152/20 153/5 188/13
lines [1]  152/22
link [3]  154/10 154/13 155/11
linked [1]  134/11
lip [1]  57/25
list [4]  23/10 31/2 68/14 111/6
listed [2]  68/5 71/13

**L**

listen [28]  48/14 51/10 73/2 73/4 73/6
73/12 74/1 74/10 74/11 74/15 74/15
74/20 74/21 74/22 75/7 75/18 75/19
77/11 77/24 78/4 78/12 90/16 100/21
101/11 130/22 137/6 207/2 207/13
listened [2]  81/4 81/13
listening [4]  42/21 77/12 95/22 175/6
listens [1]  81/14
literally [2]  157/11 167/2
literature [1]  76/10
litigation [5]  47/12 47/15 142/12 142/13
142/15
little [46]  12/5 19/7 27/1 43/13 44/8 50/5
55/13 55/17 57/18 57/21 57/24 60/3
60/4 60/25 63/14 63/15 67/22 72/12
79/11 79/11 95/20 100/15 105/14
111/12 130/15 130/19 135/16 141/8
141/17 141/18 146/16 154/24 156/1
159/15 166/22 170/18 174/2 193/3
195/25 196/4 197/22 201/16 202/15
202/21 206/24 216/20
live [4]  96/8 97/9 122/10 146/12
LLC [7]  1/7 3/8 26/4 85/8 126/11 127/16
140/16
lo [1]  198/14
loan [3]  162/3 162/4 162/6
loans [1]  40/23 41/6 58/25 59/4
local [2]  74/24 95/16
located [1]  126/11
locations [1]  140/22
long [17]  23/8 23/25 56/11 60/10 68/13
102/16 140/17 141/11 145/16 183/8
189/6 192/2 208/19 210/10 217/22
218/7 218/15
longer [3]  148/1 205/5 205/7
look [59]  6/8 10/4 11/14 11/17 13/10
23/7 23/25 32/20 32/24 41/17 43/21
57/13 57/24 59/11 67/7 96/20 100/8
101/3 101/8 102/21 111/2 111/2 111/11
111/15 124/7 135/6 135/11 142/18
142/20 142/23 147/14 150/1 150/15
151/6 151/10 151/21 152/15 153/9
153/17 153/18 155/3 161/5 161/8 161/9
180/17 182/9 183/9 186/12 186/14
189/23 197/3 197/21 197/22 202/8
203/4 203/15 203/24 204/7 216/19
looked [11]  11/15 57/7 94/23 96/25
104/16 106/8 117/23 138/1 163/14
202/13 204/10
looking [22]  12/5 45/10 48/8 48/12 48/23
60/2 95/14 99/12 106/13 108/20 108/21
109/4 111/20 111/24 144/21 154/2
159/13 175/3 179/6 182/17 182/19
205/16
looks [6]  19/4 111/9 131/20 155/4
174/12 179/24
lose [1]  100/24
losing [1]  101/14
loss [7]  121/12 121/15 121/18 199/17
199/19 199/22 205/19
lost [4]  121/21 121/24 191/8 199/23
lot [19]  39/21 43/10 43/11 58/14 59/15
67/15 69/7 69/9 75/19 94/3 96/6 97/17
164/22 168/3 185/25 192/9 195/7
198/20 202/10
lots [1]  104/11
lottery [2]  84/7 84/8
loud [2]  56/13 111/15
love [3]  77/15 77/25 81/9

luck [1]  84/7
lucking [1]  83/16
lucky [2]  45/19 84/5
lunch [7]  102/14 118/9 118/11 119/5
119/11 119/17 131/13

**M**

M-E-R-Y-L [1]  140/7
ma'am [9]  49/4 50/22 122/15 125/4
136/9 139/13 140/15 151/3 172/14
machine [1]  97/5
Madam [1]  213/2
made [31]  17/2 17/16 24/4 24/5 33/1
83/13 89/1 91/20 99/8 109/1 113/3
113/11 127/24 128/1 128/5 131/18
138/9 161/3 161/7 161/11 162/14 164/5
167/8 171/4 174/6 188/13 203/7 203/18
204/3 213/19 214/11
magazines [3]  75/4 75/5 75/5
mail [2]  97/4 146/19
main [2]  106/2 116/1
maintain [1]  142/13
maintained [1]  202/2
maintenance [2]  213/19 214/11
major [2]  147/3 147/21
majority [1]  10/19
make [71]  4/6 6/5 6/10 7/10 11/22 16/11
17/2 20/5 23/13 23/16 25/1 27/1 29/11
33/7 34/1 40/12 42/17 45/18 50/16 62/3
66/20 67/7 69/10 69/14 69/17 70/2 76/9
86/12 87/24 90/8 91/19 91/21 92/13
92/16 92/20 93/5 93/7 95/3 97/18
100/14 115/13 130/22 135/7 135/14
136/20 137/13 138/14 138/16 146/8
151/5 159/3 159/10 159/25 160/4 160/9
161/19 163/18 175/20 176/25 179/5
182/7 183/15 189/3 189/3 190/13
190/23 195/15 199/7 201/22 206/23
207/10
makes [6]  6/8 57/7 158/19 182/13 186/3
187/8
making [10]  24/15 55/1 57/24 73/13
115/10 136/18 137/24 159/5 182/12
183/17
MALONE [18]  1/17 3/15 4/7 17/4 20/22
24/17 26/12 30/21 30/24 30/25 63/21
101/25 120/15 122/5 136/22 168/12
168/23 179/15
man [3]  55/20 61/7 123/11
manage [2]  32/23 146/1
management [2]  49/13 144/19
manager [5]  71/7 71/9 145/25 148/14
158/21
managers [4]  144/21 144/23 157/11
157/12
manner [2]  18/24 33/12
manual [9]  2/17 2/18 143/1 143/17
144/11 154/5 155/22 159/12 168/19
manuals [1]  202/10
many [27]  4/5 9/1 24/20 54/21 62/25
67/13 94/22 117/19 140/22 141/6
144/21 146/16 149/9 149/9 157/9 158/7
160/10 160/11 160/12 162/23 164/24
165/3 165/8 171/5 171/6 171/10 204/16
March [1]  7/6
March 2013 [1]  7/6
mark [15]  100/24 137/24 138/1 138/2
146/5 148/16 148/22 156/7 161/20
161/22 162/2 164/9 167/4 202/25
203/22

marked [16]  117/16 138/19 138/22
138/24 139/8 139/9 149/7 150/1 155/17
161/13 166/21 170/8 170/13 171/3
171/11 205/3
marking [2]  132/19 138/3
marshals [1]  212/6
martial [1]  37/17
Martin [2]  30/25 73/18
match [1]  176/15
matchmaker [2]  67/25 68/2
material [1]  155/16
matter [9]  69/16 69/19 72/25 80/11 94/5
94/5 110/11 196/15 196/22
matters [10]  3/23 9/13 10/3 16/21 87/10
91/2 92/8 92/10 174/19 196/15
maximum [1]  205/23
may [70]  5/10 9/1 12/1 19/6 27/21 29/1
31/3 35/10 35/13 35/22 42/6 42/13
42/14 45/24 52/2 52/20 54/1 54/11
61/25 63/23 64/10 66/2 79/25 80/12
80/13 85/9 86/7 86/25 87/7 87/11 88/3
90/1 90/5 90/20 91/5 91/18 92/2 92/6
92/14 92/20 92/23 92/24 93/1 97/18
97/21 99/24 113/11 124/8 130/5 130/15
137/5 141/20 148/19 160/11 160/15
160/20 160/22 163/4 172/14 180/14
185/19 198/20 202/7 207/8 208/7
213/20 213/24 214/12 214/16 216/12
maybe [21]  13/23 13/23 24/2 57/19
57/25 60/3 60/4 65/24 94/3 102/18
108/22 118/2 164/23 165/6 171/24
175/7 193/25 194/1 196/22 206/23
218/10
McCarroll [1]  47/11
McGurkin [2]  3/17 31/1
me [144]  3/16 4/4 4/6 4/8 4/12 6/5 6/6
6/8 6/10 9/14 10/2 10/11 15/8 15/12
22/7 25/22 25/22 29/12 29/19 30/25
32/6 34/11 35/11 37/19 39/7 39/25
40/11 40/14 40/15 41/4 41/14 41/14
41/15 41/16 41/17 44/21 47/7 49/5 50/4
50/12 50/14 51/14 52/7 55/25 56/9
58/25 59/11 60/2 63/3 67/10 67/12
72/25 73/1 73/16 77/17 78/2 78/3 79/7
80/14 88/4 92/2 92/5 93/11 101/15
103/18 104/6 105/2 106/1 106/6 106/9
106/18 107/6 108/8 111/7 114/20
114/20 114/21 114/23 115/4 116/11
117/11 117/20 118/16 119/4 120/21
124/14 128/2 128/25 129/13 136/2
141/17 141/21 142/18 142/24 143/15
144/15 144/24 146/8 146/16 147/5
148/9 149/5 149/12 149/13 149/19
149/25 150/2 150/16 150/17 150/24
150/25 150/25 151/4 151/5 151/10
152/15 153/17 154/23 160/22 164/22
168/3 168/15 171/6 171/22 175/2 177/6
178/21 179/4 181/3 181/4 181/18 186/3
191/2 194/5 196/2 199/11 201/6 207/9
209/14 209/16 209/18 216/16 217/13
217/24
mean [29]  6/19 11/16 13/23 24/22 60/2
60/6 64/12 64/19 72/24 89/21 98/10
106/1 107/25 108/24 110/23 116/11
125/22 147/6 152/20 153/20 159/5
160/2 182/17 186/1 197/18 203/25
204/22 206/25 207/21
means [8]  53/10 60/20 87/21 89/14
118/25 152/19 153/1 197/10
meant [1]  183/21

# M

mechanical [2] 1/21 68/12
media [4] 35/2 89/17 90/13 90/16
mediations [1] 142/16
medical [4] 60/18 71/18 76/10 76/11
medical-device [1] 71/18
medicine [5] 76/5 76/6 76/8 76/9 76/9
meet [6] 13/21 35/17 95/17 132/4
134/19 134/22
meeting [4] 23/25 163/6 163/8 163/20
meetings [2] 163/1 163/5
meets [1] 183/2
member [7] 30/13 31/8 37/19 37/22
38/16 56/8 62/21
members [15] 30/7 30/12 31/7 31/16
31/23 32/3 35/20 51/20 56/15 57/19
62/23 78/17 94/1 190/6 191/8
memory [6] 20/16 91/10 111/16 111/25
113/19 149/19
mention [2] 39/19 84/19
mentioned [2] 71/22 179/11
mentions [1] 132/13
Merit [1] 220/4
merits [3] 21/4 91/22 135/7
Meryl [4] 20/9 31/5 139/12 139/19
message [2] 28/9 209/17
messaging [1] 89/19
met [9] 88/6 96/25 106/18 106/21
109/18 109/20 129/13 213/21 214/13
meter [2] 190/3 212/5
meticulous [1] 68/15
mic [1] 108/7
middle [2] 217/19 218/2
midst [1] 191/9
might [27] 10/8 12/4 34/25 42/9 43/12
43/20 57/9 57/10 57/18 57/20 66/3
67/11 79/19 82/17 82/19 91/25 96/14
97/1 98/13 144/12 165/7 181/25 181/25
182/10 186/4 186/5 194/7
mike [1] 56/1
military [1] 37/16
mind [12] 49/5 53/7 61/13 80/8 82/21
82/24 87/11 88/11 91/6 93/24 94/2
199/25
minds [1] 63/3
mine [2] 102/1 155/5
minimize [1] 99/25
minimizing [1] 100/3
minimum [5] 158/5 194/11 194/15
205/23 206/20
minor [1] 58/16
minuscule [1] 100/16
minute [14] 24/1 24/12 25/21 41/17 43/6
82/8 82/16 82/23 144/10 174/7 180/9
189/8 204/21 210/11
minutes [11] 21/21 23/8 25/20 25/23
53/24 82/20 83/1 174/5 183/19 189/7
189/12
mishandled [1] 7/18
miss [2] 66/4 197/12
Miss XXXXX [1] 66/4
missed [1] 6/23
misspoke [1] 183/25
mistake [30] 34/18 100/12 138/8 138/9
149/16 156/20 158/19 158/24 159/1
159/1 159/3 159/7 159/10 161/19 167/8
167/15 193/20 201/22 202/6 203/18
203/19 206/1 206/2 206/9 206/13
206/16 207/11 207/19 207/22 207/24
mistakes [4] 69/14 70/2 138/16 159/6

module [4] 158/16 158/18 168/13
169/3
modules [1] 145/20 145/21 158/1
Moines [1] 36/7
moment [6] 71/22 132/15 149/25 168/15
172/11 217/1
Monday [2] 163/6 165/1
monetary [1] 62/5
money [28] 46/12 64/10 65/20 65/22
66/2 66/3 66/6 66/19 66/24 67/4 67/8
78/16 78/18 78/21 78/23 79/4 79/5 95/2
125/25 180/2 195/7 195/8 196/8 196/9
213/11 213/12 213/22 214/14
monitor [1] 142/11
month [9] 99/8 99/9 99/10 117/6 157/9
157/17 163/5 164/24 171/8
monthly [1] 117/23
months [13] 33/1 95/8 117/6 117/6
117/8 117/13 117/24 142/1 171/5 171/6
171/10 198/25 217/4
mood [1] 77/25
moral [2] 192/8 195/16
more [46] 27/22 28/2 32/6 32/19 32/24
34/21 40/11 48/17 49/23 51/18 53/12
60/23 60/25 66/3 66/6 67/9 87/21 91/15
95/11 95/12 105/8 130/15 133/3 133/8
135/9 149/21 151/21 156/13 156/22
159/4 163/21 166/22 167/20 168/10
168/13 168/14 168/21 170/19 171/2
176/24 186/5 192/8 202/12 202/25
203/5 216/20
morning [13] 3/1 4/2 15/23 26/15 26/20
27/1 31/25 49/4 61/14 94/8 103/16
103/17 118/10
most [9] 60/17 61/24 69/18 70/5 74/11
93/25 138/18 166/21 217/3
mostly [4] 75/23 75/24 77/24 78/4
motion [39] 2/21 8/7 8/23 8/24 9/1 9/6
9/8 9/9 9/10 9/11 9/21 10/12 10/22 11/9
13/22 14/5 14/17 17/7 19/3 19/8 19/9
19/16 20/17 20/19 21/16 64/15 130/2
130/7 131/8 135/8 135/10 173/13
174/20 174/23 175/3 175/14 177/5
218/5 219/3
motions [11] 2/20 5/12 5/23 8/10 8/12
9/22 14/8 15/3 22/13 91/19 218/21
motives [6] 16/16 16/18 22/18 22/18
22/20 22/21
move [3] 131/5 168/24 169/2
movie [1] 77/8
Moving [1] 15/3
Mr [2] 61/10 189/17
Mr. [25] 5/12 8/15 20/13 30/17 30/25
65/17 67/2 67/23 68/5 69/21 72/9 72/24
74/6 75/2 75/11 164/15 189/15 189/18
190/15 202/4 202/6 205/21 208/1
209/23 212/13
Mr. Hickle [2] 5/12 8/15
Mr. Keith [1] 30/25
Mr. Pitman [1] 189/18
Mr. XXXXX [8] 65/17 67/2 68/5 69/21
72/9 74/6 75/2 75/11
Mr. XXXXXXX [1] 72/24
Mr. XXXXXXXX [1] 67/23
Mr. Zambrano [1] 209/23
Mr. Zimmer [10] 20/13 30/17 164/15
189/15 190/15 202/4 202/6 205/21
208/1 212/13
Ms [16] 22/11 63/21 73/25 76/17 105/15
119/11 119/14 120/14 128/23 137/21

171/11 176/12 176/17 195/9 199/25
217/8
Ms. [113] 4/7 5/10 8/5 17/4 19/5 19/19
19/25 20/7 20/11 20/22 23/6 24/17 26/8
26/21 29/20 29/23 30/6 30/16 30/16
30/21 36/24 54/13 65/15 65/20 66/19
66/24 67/17 67/19 68/19 70/10 70/19
71/7 71/11 71/13 71/21 74/13 74/16
77/7 77/21 78/1 78/10 78/19 78/19
78/22 78/24 87/17 94/22 95/6 95/14
96/12 99/13 101/18 101/21 101/25
102/5 103/6 103/16 103/23 108/18
110/15 112/13 112/14 113/7 114/17
120/15 120/17 120/25 122/5 122/10
123/8 127/4 133/22 136/22 137/8 138/5
138/20 138/21 139/1 140/4 147/5
150/15 152/21 153/11 153/14 154/1
157/4 161/5 164/1 166/1 168/12 168/23
169/12 172/19 175/14 179/15 191/19
192/1 192/14 196/16 197/6 197/15
198/4 198/20 198/23 199/10 199/14
199/14 203/6 203/11 203/16 205/4
205/15 206/11
Ms. Clark [9] 8/5 23/6 26/8 29/20 29/23
30/6 30/16 54/13 65/15
Ms. Demings [1] 26/21
Ms. Dreano [14] 139/1 140/4 147/5
150/15 152/21 154/1 157/4 161/5
172/19 175/14 197/6 203/6 205/4
206/11
Ms. Jackson [5] 5/10 19/5 19/25 20/7
20/11
Ms. Jean [1] 133/22
Ms. Jones [47] 30/16 66/19 66/24 87/17
94/22 95/14 96/12 99/13 101/18 101/21
102/5 103/6 103/16 103/23 108/18
110/15 112/13 112/14 113/7 114/17
120/17 120/25 122/10 123/8 127/4
137/8 138/5 138/20 138/21 153/11
153/14 164/1 166/1 191/19 192/1
192/14 196/16 197/15 198/4 198/20
198/23 199/10 199/14 199/14 203/11
203/16 205/15
Ms. Jones' [3] 19/19 95/6 169/12
Ms. Malone [12] 4/7 17/4 20/22 24/17
26/21 67/17 67/19 125/15 122/5 136/22
168/12 168/23 179/15
Ms. XXXX [2] 71/21 78/1
Ms. XXXXX [10] 36/24 65/20 67/17 71/7
71/13 77/21 78/10 78/19 78/22 78/24
Ms. XXXXXX [7] 67/19 70/10 70/19
71/11 74/13 77/7 78/19
Ms. XXXXXXXX [2] 68/19 74/16
MSJ [1] 133/14
much [48] 3/18 20/12 21/13 26/14 26/20
27/2 32/4 33/4 33/14 36/18 37/14 38/14
39/5 41/3 42/23 45/17 46/17 48/24
51/12 51/13 51/17 63/22 76/15 80/16
82/22 84/16 84/24 87/13 92/9 95/2
100/23 114/6 118/7 133/11 135/9
139/16 161/17 175/21 183/18 184/16
186/8 195/21 204/24 206/24 215/25
216/4 217/5 219/1
multiple [6] 45/7 97/17 157/17 168/11
202/15 203/2
mumbo [3] 192/9 196/11 207/14
murder [1] 96/4
music [9] 73/19 74/20 74/21 75/19 76/12
76/13 77/13 77/19 77/25
must [5] 53/9 85/23 86/8 86/20 86/23

**M**

must... [9]  87/1 88/6 89/13 90/9 190/8
198/2 209/10 209/13 211/12
my [143]  4/24 5/5 6/21 7/17 9/16 9/17
11/3 12/21 14/2 14/3 19/21 23/13 23/16
25/9 26/16 30/1 30/3 30/24 31/1 32/13
32/18 32/20 33/3 38/23 39/17 40/25
41/15 42/4 43/10 44/12 45/8 47/22
49/10 52/19 52/24 55/18 55/22 55/24
57/1 58/24 61/2 61/22 62/6 62/9 63/4
63/12 64/8 66/19 66/24 68/12 69/6
72/22 73/9 73/10 73/12 75/21 76/19
77/1 77/12 77/23 78/6 78/12 78/12 79/8
80/11 84/13 88/21 94/2 94/6 94/13
95/25 95/25 96/4 101/13 101/14 104/3
104/10 104/11 105/21 106/1 106/1
106/2 106/3 106/4 107/19 108/25
111/17 112/14 113/21 113/21 115/9
116/1 116/1 116/2 116/11 116/12
116/12 116/14 117/9 120/17 122/22
122/24 123/5 123/11 123/17 126/6
126/13 129/7 134/1 134/5 134/12
134/25 135/4 135/25 136/2 142/4
142/17 159/17 163/4 166/10 167/18
171/23 175/3 175/14 183/7 185/2 185/2
187/13 188/21 192/2 198/5 202/22
205/21 206/24 207/9 207/19 211/11
212/5 212/19 216/9 216/25 220/5 220/9
myself [7]  60/5 60/7 60/17 60/18 62/6
111/19 201/6
mysteries [1]  75/15
mystery [1]  140/5

**N**

N1 [2]  152/25 153/6
name [20]  17/24 26/16 28/3 29/17 30/24
32/15 36/2 36/22 48/6 73/10 83/13
89/19 127/9 127/12 132/14 140/5 140/6
140/11 150/17 203/20
named [4]  17/24 30/18 31/12 112/4
names [1]  94/20
naming [1]  184/1
narrow [1]  117/7
narrowed [1]  12/12
narrowly [1]  7/19
nature [7]  32/18 38/5 42/12 53/25 80/2
187/21 206/6
navigate [2]  145/10 146/11
necessary [4]  29/7 92/2 163/10 218/22
necessitate [1]  82/18
need [25]  11/10 11/13 11/21 23/16
25/22 48/17 69/3 69/4 69/5 70/16 71/11
79/15 81/18 84/12 135/14 159/14 174/4
180/18 181/25 182/20 182/22 183/18
212/5 212/7 218/15
needed [4]  105/25 105/25 142/15 144/1
needs [6]  57/21 71/11 119/12 160/18
182/20 183/2
negative [2]  48/18 60/13
negotiator [2]  39/18 39/22
neighbors [2]  31/25 32/3
neither [2]  134/15 177/17
nervous [4]  116/9 154/24 154/25 155/1
Nesbo [1]  74/7
Net [1]  150/4
Network [3]  13/16 114/2 129/16
never [56]  5/14 17/24 18/2 18/4 18/24
20/4 20/7 58/4 58/20 61/2 94/21 98/17
106/2 128/19 128/21 128/21 171/17
171/18 176/10 176/21 179/13 179/16

194/6 198/14 198/17 209/14
Nevonicussmt [1] 8/12
new [4]  8/6 44/6 59/8 145/5
news [2]  75/19 75/19
newspaper [2]  35/2 90/15
next [30]  14/14 14/22 14/24 15/6 16/14
33/5 45/18 47/2 47/5 49/1 92/20 99/9
99/10 101/17 101/17 101/23 106/15
135/1 141/19 151/25 153/5 155/23
159/13 159/16 170/10 186/22 197/8
201/13 201/21 218/3
nice [4]  96/12 106/25 191/4 200/1
night [1]  139/3
nine [5]  44/4 181/6 181/7 181/9 182/19
nitty [1]  190/25
nitty-gritty [1]  190/25
no [216]  1/6 7/6 10/17 12/13 13/3 19/4
23/4 24/3 24/5 24/10 24/24 25/3 25/15
25/17 25/19 29/5 29/6 31/19 32/6 33/9
35/8 36/10 36/17 37/6 37/13 38/13 39/4
40/4 40/8 42/25 44/18 45/15 46/7 47/21
51/10 52/25 53/17 53/21 54/2 55/6
56/21 62/16 64/19 67/18 73/24 74/1
74/3 74/11 74/14 75/3 75/10 75/21
76/10 76/12 78/23 80/4 80/9 88/25 98/9
99/18 99/19 99/20 100/14 106/5 106/12
108/6 109/13 110/1 110/4 110/25 112/6
112/9 112/15 112/18 112/21 112/23
113/6 113/25 114/10 114/13 114/16
115/15 117/10 117/18 120/22 120/25
121/3 121/6 121/8 121/8 121/11 121/15
121/18 121/21 121/24 124/20 125/16
125/25 126/1 126/16 126/18 126/21
127/19 127/22 128/6 128/8 128/11
128/15 128/18 130/2 130/12 131/15
132/5 135/14 143/7 143/10 143/12
144/4 144/6 144/8 149/2 149/8 150/8
150/11 150/13 151/3 153/7 153/13
153/18 154/23 157/20 164/6 165/19
165/24 169/19 172/9 172/12 172/18
173/14 173/24 178/6 178/10 178/10
179/12 180/4 184/23 185/5 185/11
185/11 186/20 187/15 187/16 187/24
187/24 188/4 188/9 188/22 189/17
191/20 192/20 192/22 193/13 194/3
196/19 197/4 197/18 198/7 198/21
199/14 199/17 199/18 199/21 200/22
200/24 201/3 201/3 201/4 201/5 201/9
201/11 201/12 203/15 205/5 205/7
205/11 205/11 205/19 205/19 205/19
206/1 206/10 206/16 207/18 210/23
211/8 212/8 212/15 213/9 213/15
213/21 213/22 214/1 214/7 214/13
214/14 214/16 215/2 215/5 215/8
215/11 215/14 215/17 215/20 218/10
218/22 218/24
No. [13]  46/24 121/14 121/17 121/20
121/23 144/3 150/1 187/25 197/3
197/21 201/1 202/9 206/21
No. 1 [1]  201/1
No. 16 [1]  46/24
No. 2 [1]  187/25
No. 3 [2]  144/3 202/9
No. 6 [2]  121/14 206/21
No. 7 [1]  121/17
No. 8 [1]  121/20
No. 9 [1]  121/23
nobody [2]  138/20 138/20
Nods [1]  190/17
non [1]  191/18

non-disputed [1]  191/18
non-government [1]  8/3
nondisputed [1]  34/8
none [4]  57/23 122/21 164/3 194/21
nonfiction [1]  75/25
nonprofit [10]  63/13 64/6 64/12 64/18
64/21 66/9 66/14 66/16 68/7 106/16
nonresponsive [3]  124/18 168/25 169/3
noon [1]  102/21
Norfolk [1]  140/23
normal [2]  88/25 89/2
normally [2]  75/4 169/7
Northern [1]  133/17
not [320]
note [6]  151/11 152/17 152/23 203/25
210/23 211/8
notebook [1]  142/23
notebooks [1]  91/4
notes [24]  91/5 91/6 91/7 91/9 91/9
91/10 91/13 91/14 151/7 151/22 152/8
152/16 153/9 154/12 154/14 154/17
155/10 161/6 163/24 178/16 178/18
203/15 203/25 210/22
nothing [17]  12/15 42/5 44/18 65/23
75/6 85/25 96/16 100/3 118/5 129/24
153/16 186/15 188/15 194/19 198/1
198/10 206/11
notice [2]  18/1 158/24
noticed [1]  112/24
notify [1]  7/7
notions [1]  52/20
November [3]  140/19 141/22 151/13
November 19 [1]  151/13
now [82]  6/7 6/9 10/25 11/1 11/4 11/6
17/1 30/21 31/20 35/9 35/12 35/21 36/8
38/2 39/7 47/2 51/14 51/18 53/1 59/8
74/7 75/3 75/17 75/24 76/25 79/11
79/15 79/19 82/8 82/10 82/12 83/12
84/10 84/13 85/8 85/15 88/15 92/12
93/7 95/20 97/7 99/15 101/11 101/23
109/22 111/20 112/3 112/13 114/11
118/9 119/15 130/20 135/10 136/16
136/19 137/4 137/9 149/21 149/23
157/4 176/14 177/25 178/11 182/12
184/7 189/3 190/6 190/7 190/11 190/12
194/1 198/16 200/5 205/2 205/14 208/3
209/5 215/25 216/10 216/12 216/18
216/22
NPR [1]  73/5
number [60]  3/23 4/3 4/24 13/10 13/19
17/6 18/5 18/6 18/9 18/11 18/14 18/18
29/17 32/15 32/16 36/2 36/3 38/1 38/19
39/23 42/24 42/25 43/2 45/6 45/20
45/21 49/3 55/2 55/11 55/11 55/14 56/2
56/3 58/1 58/3 58/17 59/14 59/16 59/19
61/10 61/13 81/1 83/16 83/18 83/19
83/20 83/21 83/22 83/23 121/7 122/17
123/23 181/3 181/5 181/6 181/7 181/23
182/19 185/18 211/9
Number --um [1]  59/19
Number 12 [1]  55/11
Number 13 [2]  43/2 55/2
Number 3 [1]  38/1
Number 4 [1]  18/14
Number 7 [1]  36/3
Number 8 [1]  32/16
numbers [3]  12/11 55/25 59/11
numerical [1]  209/14
numerous [1]  46/8
nurse [1]  44/14

**N**

Nyetta [7]  5/3 17/8 17/12 17/21 17/24
19/3 19/12

**O**

o'clock [3]  84/20 118/15 119/6
object [5]  105/3 107/8 124/17 169/18
187/15
objecting [3]  23/12 107/19 181/1
objection [32]  12/7 12/13 15/20 16/11
23/6 23/13 24/10 25/2 86/12 86/15
86/16 91/23 105/12 107/16 108/5 110/9
124/20 136/4 143/9 143/10 143/11
144/6 144/7 149/14 150/10 150/12
166/9 168/24 169/2 181/9 184/21
184/22
objections [13]  23/4 23/18 24/4 24/4
24/5 86/11 91/20 107/23 183/15 185/2
187/13 188/23 206/23
obligation [13]  15/13 86/12 133/24
134/18 134/22 179/21 180/1 180/1
196/7 213/10 214/3 214/3 216/7
observe [1]  209/5
obvious [2]  97/8 107/19
obviously [6]  4/21 6/19 11/16 15/10
188/21 217/15
occasionally [1]  77/24
occasions [1]  92/6
occur [3]  155/23 162/11 203/18
occurred [22]  46/4 46/20 64/3 65/8
80/21 82/4 97/25 98/23 102/10 103/3
173/7 173/19 188/7 193/11 194/6 200/9
200/18 202/3 204/9 205/1 207/4 216/19
occurring [1]  162/8
occurs [2]  162/22 163/18
October [3]  123/9 125/8 199/2
off [15]  10/1 51/4 55/22 61/6 65/14
84/18 95/12 116/1 116/12 116/15
116/18 127/18 176/21 185/18 186/5
offended [1]  207/8
offense [1]  182/2
offer [12]  14/18 15/25 58/9 58/12 58/14
58/16 58/23 143/6 144/2 150/7 165/17
166/5
offered [11]  2/15 20/16 86/13 105/23
143/8 144/5 150/9 165/20 181/2 192/21
192/22
offering [1]  13/1
offers [3]  13/20 16/24 16/24
office [9]  3/17 39/9 123/11 137/15
140/23 140/25 141/4 164/25 176/16
office's [1]  6/22
officer [9]  44/3 44/5 83/15 118/12
139/14 208/25 209/18 209/25 213/5
officers [1]  70/1
offices [1]  31/16
official [3]  1/23 187/13 220/5
often [4]  42/4 157/7 171/7 177/8
oh [20]  47/1 55/20 57/2 61/7 61/23 63/5
64/14 95/25 105/15 130/9 135/24 155/4
182/21 183/21 189/2 189/24 198/16
199/1 211/5 218/24
okay [253]
old [4]  77/1 78/13 134/25 137/5
omission [2]  121/9 199/15
once [7]  89/4 145/20 159/4 161/24
171/8 182/8 205/7
one [126]  3/25 5/12 5/19 6/23 10/6 11/2
12/3 14/10 14/14 15/4 19/14 20/24
23/20 24/16 27/22 28/2 35/24 37/24

38/23 38/23 38/23 39/15 42/8 42/11
42/20 43/4 46/25 48/1 53/6 55/15 60/6
61/25 62/1 63/12 64/25 71/7 73/9 77/4
77/8 77/9 80/5 81/19 82/18 84/4 88/19
90/2 91/22 95/11 95/11 97/8 97/18
100/12 100/15 107/2 107/3 108/11
109/15 111/5 111/21 111/25 117/6
117/24 117/25 118/15 119/6 127/7
132/14 132/15 133/25 134/2 134/14
147/3 147/10 148/14 151/21 152/1
152/3 152/23 154/9 156/6 156/7 156/13
156/16 156/18 156/23 157/2 157/3
159/2 159/3 167/20 168/10 168/14
168/14 171/12 174/22 175/17 179/1
179/3 179/5 180/24 185/4 186/11
187/12 187/13 190/2 192/13 198/1
199/8 201/12 201/24 201/25 202/12
202/13 202/17 202/17 202/18 202/20
202/25 203/5 203/8 203/21 203/24
204/1 204/8 204/11 206/1 218/24
ones [6]  22/17 68/25 115/23 176/12
177/19 185/2
ongoing [4]  38/11 143/24 145/13 162/25
online [4]  90/15 94/23 95/14 216/19
only [50]  8/22 12/6 12/10 12/17 13/6
16/1 19/1 21/9 23/11 27/9 29/12 43/10
46/6 49/8 52/1 59/3 64/5 79/20 80/23
82/16 86/20 91/10 93/9 93/11 98/2
102/12 132/17 133/1 134/9 138/21
155/13 161/14 163/4 166/20 173/9
178/5 180/5 182/22 188/1 188/11
188/13 197/14 200/11 203/8 203/24
203/25 204/11 213/20 218/24 219/2
onus [1]  180/6
open [27]  3/4 46/18 46/21 50/15 65/6
65/9 72/11 82/2 82/5 94/15 94/16 94/17
98/21 98/24 103/1 103/4 104/4 147/14
148/16 148/17 155/8 168/13 173/17
173/20 190/10 200/16 200/19
opened [6]  64/11 64/20 65/2 150/4
150/22 163/25
opening [21]  2/5 24/12 24/15 34/20
84/11 92/13 92/16 92/21 93/20 98/15
98/17 103/24 104/6 127/6 135/25
135/25 136/3 136/6 136/18 136/20
137/1
operate [2]  157/4 159/14
operated [1]  126/20
operating [1]  126/14
operations [2]  145/24 157/12
opinion [2]  88/18 107/19
opinions [1]  91/21
opportunity [13]  27/25 28/16 53/23
79/10 92/13 92/25 93/5 135/11 136/20
142/19 181/22 183/10 183/14
opposed [1]  22/21
opposite [6]  6/10 87/23
opposition [1]  9/11
option [1]  60/7
options [5]  58/14 202/16 202/17 203/23
204/11
order [21]  10/25 14/23 60/8 66/10 81/15
95/11 131/7 137/19 138/11 145/2 146/1
147/25 154/7 155/8 157/25 158/18
174/5 182/15 201/20 207/23 211/12
organization [2]  60/14 68/7
original [6]  131/21 133/14 134/7 152/9
163/25 177/17
Originally [1]  177/7

OSCAR [2]  147/13 147/17
Oscar [1]  47/22
other [78]  5/9 5/16 6/22 6/24 14/25 17/9
19/10 19/13 19/17 19/20 19/20 19/20
20/5 24/13 26/18 31/23 33/6 33/11 35/5
35/6 37/23 43/7 43/22 44/1 48/1 52/19
60/9 63/12 77/9 80/2 80/10 86/5 86/18
87/8 87/10 88/19 90/2 90/6 90/12 91/2
91/13 91/17 97/8 114/9 115/19 117/10
118/20 118/23 119/2 126/23 128/16
128/20 130/10 138/3 142/14 142/17
145/12 148/25 151/22 156/25 159/3
160/11 167/14 167/16 172/16 175/16
179/5 179/17 187/13 191/20 192/15
193/1 193/7 204/13 206/4 206/11
206/24 219/2
others [5]  3/8 60/23 95/25 160/22 213/8
otherwise [8]  15/19 25/23 44/16 49/19
108/25 119/5 209/12 218/19
ought [1]  147/19
our [57]  5/12 7/14 7/20 7/22 8/1 12/24
14/17 14/17 15/20 19/3 19/9 19/16 22/2
24/5 27/11 30/5 32/25 38/8 39/20 42/6
42/6 45/18 49/14 57/3 57/13 62/5 62/17
94/12 118/9 133/14 135/15 140/23
142/1 142/25 145/10 148/17 149/15
150/3 152/24 154/4 154/15 155/7
157/14 172/3 174/9 180/21 180/25
183/17 188/8 188/8 188/14 192/14
195/8 195/18 210/9 216/6 219/3
ours [1]  111/9
out [80]  11/11 11/20 20/4 20/15 20/21
24/24 25/1 25/23 32/10 38/8 40/23
41/14 41/14 45/8 45/18 47/4 52/14 60/8
60/20 62/18 69/10 79/6 81/17 84/20
88/11 92/3 94/23 94/25 95/19 97/6
100/22 106/6 106/17 107/19 109/25
110/9 111/12 111/15 111/22 111/23
115/20 119/3 120/9 125/19 125/22
125/24 125/24 125/25 126/14 126/14
129/8 133/15 133/17 136/3 136/7 136/9
139/2 141/24 145/13 159/14 160/18
161/6 161/9 164/19 165/10 168/16
176/18 180/2 184/3 189/4 190/25
195/19 196/8 202/11 202/12 212/8
213/11 216/1 218/15 218/24
out-of-court [1]  110/9
out-of-pocket [5]  125/19 125/22 125/24
125/24 125/25
outline [1]  92/17
outs [1]  161/18
outside [13]  46/5 62/15 62/16 63/12 64/4
71/17 80/22 87/1 98/1 102/11 130/21
173/8 200/10
outstanding [2]  11/23 41/6
over [27]  8/4 11/14 13/11 13/13 19/14
22/2 23/7 23/9 35/18 43/2 89/8 95/7
96/25 102/18 106/9 106/18 107/4
108/19 118/14 138/24 139/14 141/6
142/8 144/22 149/24 163/9 163/9
overcome [1]  48/21
overdrafts [1]  59/2
overlooked [1]  108/22
overly [1]  8/11
overrule [1]  188/23
overruled [3]  86/17 110/14 169/4
oversight [1]  6/21
overview [1]  94/8
owing [1]  115/20
own [13]  19/20 21/21 32/20 55/23 55/24

own... [8]  63/17 91/11 101/1 113/4
 113/4 116/21 161/6 179/22
owner [1]  121/7
owns [1]  126/10

P

p.m [9]  119/21 184/18 184/19 210/20
 210/21 212/7 212/22 212/23 219/12
P1 [1]  151/6
page [24]  2/5 2/8 3/11 13/12 17/12
 131/20 151/6 151/11 151/21 151/25
 152/15 153/18 154/18 154/20 155/4
 159/13 159/14 168/19 185/7 186/23
 197/4 197/8 197/23 201/16
Page 27 [2]  153/18 168/19
Page 28 [1]  159/14
Page 3 [2]  152/15 197/23
Page 5 [4]  13/11 13/12 151/21 197/4
Page 7 [2]  185/7 201/16
Page 90 [1]  17/12
pages [4]  89/20 144/11 202/11 220/8
paid [12]  51/3 61/5 61/5 64/13 112/17
 112/19 112/22 116/11 116/12 116/15
 116/18 126/8
Pamela [4]  1/23 220/3 220/18 220/25
Pandora [4]  74/15 74/20 74/23 77/24
panel [13]  21/22 22/2 22/2 22/3 30/7
 30/12 31/7 31/23 32/1 32/3 35/25 51/20
 83/9
paper [1]  128/20
paragraph [7]  159/24 174/24 182/22
 186/25 187/1 187/5 187/6
parents [1]  41/15
part [19]  4/9 6/22 14/3 27/21 39/20
 49/10 52/1 61/24 81/6 81/15 138/2
 138/3 145/21 151/7 152/17 156/2
 192/12 193/1 216/4
partial [1]  46/15
participate [1]  37/22
participated [1]  37/20
participation [2]  27/8 85/16
particular [20]  7/5 17/13 18/2 27/23
 28/18 65/25 90/12 156/2 156/4 156/16
 162/10 167/12 167/12 169/5 169/13
 171/4 187/22 193/10 194/23 217/11
particularly [4]  5/2 26/25 83/25 185/10
parties [22]  3/4 27/4 27/9 29/5 29/20
 35/5 42/8 43/19 46/22 48/2 49/21 50/9
 65/10 80/6 82/6 90/3 90/21 98/25 103/5
 173/21 200/20 216/5
parties' [1]  29/3
partly [1]  63/1
partner [2]  59/1 217/25
party [11]  28/23 37/20 37/23 38/3 38/20
 39/19 53/22 98/14 118/24 118/25 209/7
pass [11]  56/1 61/10 61/13 101/16
 145/20 157/19 158/3 158/13 158/15
 158/18 164/14
passed [8]  8/17 9/12 95/7 95/9 99/19
 99/20 104/3 116/12
past [14]  9/21 35/20 40/16 40/19 41/6
 50/2 54/23 55/3 59/18 62/9 82/17 95/23
 96/19 96/20
patience [2]  47/6 136/15
patients [1]  32/20
Paul [1]  137/5
pay [19]  34/8 78/21 79/3 79/6 89/6
 100/25 139/1 139/3 153/7 160/6 160/15
 166/24 167/23 180/1 194/1 194/1 194/1

196/8 213/11
paying [1]  187/18
payment [5]  49/13 61/4 62/18 108/25
 160/17
payments [2]  49/14 61/3
PDA [1]  89/18
peer [3]  146/8 146/10 146/15
petit [1]  64/5
pens [1]  91/4
people [29]  5/5 27/11 49/10 57/7 57/17
 62/24 63/3 65/22 69/2 69/13 69/14
 69/18 78/21 78/23 79/3 79/5 84/5 89/11
 90/21 95/25 100/25 110/16 138/14
 138/16 160/10 160/20 198/22 217/3
 217/3
people's [1]  63/2
per [2]  157/17 214/16
percent [2]  15/24 158/5
perceptions [1]  42/6
peremptory [1]  54/7
perfect [2]  138/10 204/15
perhaps [1]  181/25
peril [1]  98/18
period [6]  32/14 33/8 35/18 82/16 82/24
 205/5
permanent [2]  141/25 145/2
permission [2]  114/11 114/14
permit [2]  89/9 182/24
Perry [1]  67/14
persist [1]  216/16
persistence [1]  206/5
person [20]  20/8 20/8 22/9 38/21 48/7
 48/12 66/6 113/4 137/25 138/6 147/6
 155/19 162/14 169/8 183/19 185/9
 191/8 204/9 209/19 216/25
personal [20]  9/16 29/3 33/6 41/23
 45/12 49/18 50/10 50/11 116/21 129/21
 133/9 175/11 175/13 180/5 192/16
 192/19 192/22 196/10 213/13 214/3
personally [7]  7/21 30/14 31/9 58/20
 97/2 121/4 216/9
personnel [1]  90/7
persons [4]  27/3 30/17 31/12 90/4
perspective [3]  43/16 192/8 192/8
pertains [1]  11/17
pertinent [1]  9/2
pet [1]  74/24
petit [3]  35/22 46/6 85/2
petition [2]  133/25 185/13
Philadelphia [1]  141/16
phone [7]  48/7 58/17 109/14 115/11
 115/13 161/25 179/8
phonetic [1]  106/22
phrase [3]  166/14 170/21 171/23
physical [1]  33/11
physician [1]  32/19
picture [2]  191/1 192/8
piece [1]  170/17
PITMAN [6]  1/11 26/16 30/1 189/17
 189/18 220/11
place [13]  11/1 34/19 90/17 101/6
 102/22 137/19 138/8 143/18 162/12
 167/13 193/9 194/3 202/5
placed [1]  147/18
places [2]  32/9 118/13
plaintiff [56]  1/5 1/15 2/8 2/15 3/12 3/13
 7/7 14/13 26/9 26/10 29/21 30/16 33/20
 33/23 33/25 34/7 34/11 34/14 53/3 53/8
 53/10 53/12 53/15 53/19 80/1 87/17
 87/24 88/1 92/16 92/22 92/25 93/1

120/14 131/10 131/17 131/25 134/11
 134/22 181/25 182/7 182/20 182/22
 183/2 183/2 184/22 185/12 187/17
 187/20 190/14 191/19 196/7 206/1
 213/10 213/23 214/2 214/15
plaintiff's [21]  4/2 8/9 8/15 12/5 15/3
 16/14 16/17 16/20 16/23 22/17 22/20
 34/2 34/9 87/22 92/18 92/24 111/5
 131/21 165/18 165/19 167/6
plaintiffs [7]  4/16 12/23 16/16 65/22
 111/8 137/12 181/2
planes [1]  69/10
planning [2]  58/10 81/12
plans [1]  49/13
plate [1]  95/10
play [4]  84/8 175/1 192/11 207/16
played [1]  216/4
playoffs [1]  73/14
pleading [1]  132/1
pleadings [1]  135/12
please [49]  3/11 4/13 26/7 28/9 29/2
 29/20 63/0 30/18 30/21 31/2 45/22
 45/25 52/24 53/7 53/24 54/10 80/14
 80/18 83/1 83/8 83/14 85/5 85/14 91/6
 91/14 92/9 103/8 103/12 119/4 119/9
 120/11 135/23 136/14 139/18 139/23
 140/5 140/6 142/23 143/14 153/18
 155/25 174/18 176/7 189/13 209/24
 211/9 213/1 214/23 217/9
pled [3]  132/1 133/25 134/12
plus [2]  60/11 64/15
pocket [5]  125/19 125/22 125/24 125/24
 125/25
podium [1]  103/20 103/21
point [31]  5/21 10/24 11/1 16/6 17/25
 18/25 20/6 20/15 20/21 22/5 28/7 29/1
 82/19 84/4 107/13 108/22 127/7 135/8
 168/16 177/3 184/15 186/18 190/22
 192/2 193/11 204/18 205/9 205/22
 208/16 209/21 210/9
pointing [1]  107/19
police [4]  44/3 44/5 69/23 70/1
policies [33]  34/18 137/19 142/20
 149/16 154/2 161/16 162/7 162/11
 162/24 166/12 167/10 167/19 167/24
 168/6 168/7 188/2 188/3 188/5 188/16
 193/9 193/12 193/14 193/17 193/21
 194/3 194/5 194/22 194/25 202/23
 204/4 204/7 204/14 204/18
policy [6]  69/17 100/23 100/23 101/1
 101/4 138/7 167/13 204/24
political [1]  75/6
Poll [1]  214/23
polled [1]  214/21
Polomo [1]  5/19
poor [2]  191/7 194/18
pop [1]  202/15
popped [1]  61/3
portal [1]  155/7
PORTFOLIO [37]  1/7 3/8 9/4 26/4 27/15
 31/11 33/16 85/7 97/16 99/3 99/4 99/17
 100/9 101/9 110/19 110/21 111/25
 112/4 112/8 114/18 115/11 115/13
 116/5 117/14 117/20 125/10 128/24
 132/12 132/19 132/22 132/24 137/10
 140/16 140/21 176/11 177/7 213/8
portion [5]  89/3 132/21 158/16 169/16
 170/3
position [5]  7/15 7/20 15/21 34/12 176/1
positions [2]  93/14 141/23

P

positive [2] 60/13 102/19
possession [1] 36/4
possibility [2] 79/23 194/7
possible [7] 43/13 69/18 92/9 100/23
 171/17 176/23 209/19
post [4] 142/13 217/10 217/12 219/6
post-judgment [1] 142/13
post-trial [1] 217/10 217/12 219/6
potential [4] 21/23 27/19 28/23 35/16
powerful [1] 191/4
PowerPoint [1] 193/14
PRA [95] 3/15 6/17 17/15 18/3 18/23
 19/11 26/13 31/1 33/17 33/19 33/22
 34/1 34/3 34/7 34/12 34/14 34/16 34/18
 121/5 121/10 121/13 121/16 121/19
 121/22 122/1 122/22 122/24 123/5
 123/15 124/5 124/11 124/13 125/5
 125/20 125/25 131/22 133/8 137/19
 141/20 141/23 142/20 143/22 144/12
 144/13 144/25 145/3 145/7 145/8 149/6
 149/10 150/3 151/12 152/5 152/13
 154/2 157/4 158/11 162/7 162/16
 162/24 163/1 163/17 164/7 164/11
 167/13 167/15 167/25 168/9 168/10
 171/7 171/10 171/17 171/23 172/4
 177/13 191/12 191/12 192/3 192/21
 196/13 196/18 196/19 197/3 197/9
 197/11 197/12 197/15 197/19 198/7
 199/16 199/18 199/20 199/24 201/24
 202/5
PRA's [3] 147/12 191/17 202/23
PRA0002 [1] 155/4
PRA2 [1] 154/20
PRA3 [1] 155/16
practice [1] 76/5
Practices [2] 33/21 131/12
practicing [1] 200/13
pre [1] 142/13
pre-litigation [1] 142/13
preadmitted [1] 24/7
preadmitting [1] 23/3
preconceived [1] 48/19
preconference [1] 3/9
predicate [4] 23/16 98/5 165/22 166/5
predict [1] 99/23
prefer [1] 24/19
prejudice [1] 135/10
prejudiced [1] 79/25
prejudices [2] 28/25 29/6
prejudicial [1] 8/12
preliminary [4] 47/7 85/16 120/19 134/23
prepared [2] 93/18 120/21
preponderance [9] 53/4 53/9 53/15
 87/18 87/20 88/2 193/2 213/16 214/8
prerogative [1] 51/25
presence [17] 29/13 46/5 46/21 64/4
 65/9 80/22 82/5 89/10 98/1 98/24
 102/11 103/4 130/21 173/8 173/20
 200/10 200/19
present [22] 3/4 46/7 46/22 64/5 65/10
 80/23 82/6 92/22 92/25 93/2 93/8 98/2
 98/25 102/12 103/5 120/14 130/11
 173/9 173/21 200/11 200/20 220/6
presented [16] 33/13 50/11 52/10 52/18
 52/23 87/3 88/17 91/1 93/4 99/3 100/21
 131/17 136/19 187/22 188/2 188/14
presenting [1] 190/16
presiding [2] 208/9 209/10
presumably [1] 20/18

presume [1] 7/2
presumptive [1] 88/9
pretty [14] 62/7 68/15 70/18 76/15 81/24
 94/8 94/14 95/23 96/19 105/20 106/5
 114/6 118/9 160/8
prevail [1] 201/21
prevent [19] 10/13 32/13 33/12 34/19
 38/11 39/2 40/1 40/6 44/16 49/20 80/13
 101/6 108/12 139/9 162/8 167/13
 193/10 204/25 207/23
prevents [2] 9/19 10/10
previous [1] 39/18
pride [1] 139/4
primarily [9] 78/6 132/11 133/3 175/10
 176/24 192/16 196/10 213/13 214/3
primary [2] 133/10 153/1
print [1] 189/4
prior [14] 35/9 35/21 36/1 36/19 36/20
 39/11 40/5 42/6 44/15 44/23 112/3
 113/2 163/23 163/24
priority [1] 208/21
private [3] 29/9 29/14 158/17
privilege [1] 107/13
probably [21] 32/10 48/22 55/3 59/16
 63/20 68/13 93/24 94/1 94/22 96/8 97/4
 100/25 117/8 118/3 118/17 125/13
 165/5 182/25 200/1 210/25 211/1
problem [18] 12/14 13/2 15/22 17/8 32/8
 64/9 65/19 66/1 66/4 71/22 100/2 100/3
 114/18 131/15 137/16 175/8 184/8
 198/19
problems [13] 17/6 33/10 43/10 56/8
 56/18 57/20 104/1 104/5 106/3 106/5
 108/8 125/1 161/23
procedure [8] 10/1 85/19 92/4 138/7
 162/7 167/12 202/10 204/24
procedures [45] 2/17 34/19 69/17 96/22
 100/13 100/13 137/18 138/11 142/20
 142/25 145/15 149/16 154/3 161/16
 162/12 162/24 166/12 167/10 167/19
 167/24 168/6 168/7 188/2 188/3 188/6
 188/16 193/9 193/13 193/14 193/17
 193/21 194/3 194/6 194/23 194/25
 202/2 202/5 204/5 204/7 204/14 204/18
 206/11 207/23 213/19 214/11
proceed [2] 105/19 136/16
proceedings [20] 1/11 1/21 3/3 20/20
 46/4 46/20 64/3 65/8 80/21 82/4 97/25
 98/23 102/10 103/3 173/7 173/19 200/9
 200/18 220/7 220/9
process [31] 8/21 22/5 27/6 27/8 27/21
 28/13 28/22 28/25 39/1 45/17 51/19
 60/21 66/23 79/16 84/2 84/13 96/23
 109/17 142/12 142/12 142/15 146/5
 146/6 146/11 146/22 146/24 147/15
 148/4 148/17 154/6 160/8
processed [3] 148/2 153/8 166/12
produce [3] 5/8 21/7 53/10
produced [10] 1/21 18/4 176/12 176/13
 176/15 177/14 177/6 177/15 177/17
 177/18
producing [2] 12/19 12/20
product [1] 71/20
Production [3] 4/18 5/7 18/14
products [2] 69/4 69/5
profession [1] 58/5
proffered [2] 13/7 13/18
program [12] 68/21 68/24 71/7 81/5
 138/13 145/11 147/12 157/5 157/7
 157/22 157/23 157/25

programs [4] 59/15 68/16 69/3 90/18
 91/16 157/11
prompt [1] 43/6
prompting [1] 49/6
promptly [1] 209/19
prompts [1] 28/8
pronounce [1] 140/10
proof [8] 53/2 53/7 53/19 87/5 87/7 88/9
 190/14 193/16
proper [7] 8/9 9/7 9/9 14/13 17/25 98/3
 119/12
properly [6] 131/22 146/6 161/22 191/14
 192/1 193/6
property [4] 38/7 180/2 196/9 213/12
proposed [4] 17/3 180/24 184/21 211/11
proprietary [1] 145/10
Props [1] 62/22
prosecutor [1] 135/1
prove [19] 6/16 7/2 21/3 21/8 53/9 53/15
 87/21 88/1 132/1 133/2 133/3 134/18
 134/25 135/2 181/14 182/16 182/17
 192/14 192/14
proven [2] 134/24 193/1
provide [6] 5/4 18/7 18/9 18/21 20/10
 101/21
provided [9] 12/23 13/17 19/24 34/23
 91/4 97/6 185/14 187/18 187/20
provider [1] 69/6
provides [1] 187/5
proving [2] 53/3 87/18
provision [2] 18/19 185/8
pry [2] 54/2 72/24
public [1] 41/12
publicly [1] 54/11
published [2] 143/1 143/17
pull [4] 104/9 106/1 107/1 111/12
pulled [3] 38/8 168/19 202/11
pulling [1] 180/11
pulls [1] 57/3
punished [1] 207/20
purchase [9] 13/15 121/21 121/25 128/7
 128/17 151/12 151/13 179/2 199/23
purchased [10] 12/21 13/12 13/14
 127/20 129/20 132/25 150/4 151/5
 152/6 197/9
purchases [2] 113/11 114/17
purpose [3] 21/3 86/20 193/8
purposefully [1] 101/9
purposes [14] 11/5 29/16 116/20 116/21
 122/3 173/15 192/17 192/20 192/20
 192/22 192/23 196/10 213/13 214/4
pushing [1] 165/7
put [32] 5/3 5/12 19/12 25/10 50/10
 67/11 76/23 87/22 87/22 88/11 96/21
 111/17 116/13 119/12 133/5 133/13
 134/15 136/21 136/21 152/9 158/24
 173/12 175/9 181/15 183/4 183/12
 185/20 199/12 204/24 205/15 206/17
 206/20
putting [1] 11/20

Q

QC [1] 157/13
qualifications [1] 80/12
qualified [2] 22/7 22/8
qualify [2] 21/6 195/2
quality [13] 68/16 68/20 68/23 69/4 69/7
 69/9 69/17 138/13 157/4 157/7 157/13
 158/20
quality-assurance [4] 68/16 68/20 68/23

## Q

quality-assurance... [1] 69/4
question [65] 4/25 7/1 16/8 23/1 24/17
25/9 29/13 43/10 43/17 50/19 50/20
54/11 56/22 61/20 67/5 73/22 79/12
86/17 91/23 92/1 93/24 105/5 105/13
106/9 107/11 117/21 123/17 137/12
148/9 166/10 167/18 169/23 169/25
170/23 175/18 178/24 180/17 180/24
181/11 184/11 186/18 188/4 188/11
188/13 188/18 193/18 196/5 196/11
196/24 200/22 200/22 200/23 201/3
201/4 201/9 201/10 201/11 201/13
201/22 205/11 207/5 209/15 210/11
211/8 213/8
questioning [3] 21/23 44/21 103/20
questionnaires [1] 24/22
questions [60] 5/25 15/11 18/4 21/18
21/19 21/25 24/13 27/18 27/21 27/24
27/25 28/6 28/8 28/10 28/12 28/15
28/24 28/25 29/7 29/9 29/15 34/24
40/11 44/1 47/8 48/1 51/19 53/23 54/1
54/8 54/21 63/1 63/21 68/4 72/23 79/19
79/22 79/24 85/18 86/10 86/11 88/5
92/4 103/24 107/9 126/21 126/23 172/9
172/12 187/24 187/25 188/13 188/22
196/2 198/5 201/1 201/2 209/11 211/14
211/24
quick [1] 151/21
quickly [4] 55/22 81/6 94/8 147/23
quite [4] 81/24 94/16 185/25 190/22
quote [3] 98/10 98/11 98/12
QVC [21] 113/8 113/11 114/12 116/16
125/2 129/18 131/18 131/22 131/24
132/15 133/23 134/10 137/9 137/14
151/2 151/14 175/13 196/16 196/19
196/23 197/15

## R

radio [10] 73/2 73/6 73/13 73/18 74/15
74/20 75/18 76/13 77/11 78/4
radius [2] 118/13 210/11
raise [8] 6/22 30/18 31/13 85/5 103/8
139/18 174/20 209/23
raised [3] 95/9 167/20 174/21
raising [2] 52/24 74/2
Ramsey [6] 74/1 81/5 81/9 81/10 81/14
81/16
random [3] 27/3 27/6 28/3
randomized [1] 46/25
Rangers [1] 73/13
ranges [1] 77/14
rather [11] 21/5 32/10 43/22 53/8 63/16
130/21 172/1 172/2 177/21 199/3 201/5
rating [1] 191/11
RDTCA [1] 21/8
re [3] 8/25 18/1 77/8
re-depose [1] 18/1
re-reading [1] 77/8
re-try [1] 8/25
reach [4] 37/8 198/3 208/14 208/23
reached [4] 20/4 38/8 209/9 213/2
reaching [1] 52/21
read [29] 7/14 7/18 30/6 73/10 75/4
75/14 75/15 77/9 78/6 78/6 89/4 90/15
98/6 99/12 111/12 111/15 120/17 122/4
138/6 148/15 179/20 181/18 181/21
186/1 189/1 190/10 199/9 201/18 213/6
reading [15] 7/19 73/2 73/8 74/2 74/7
74/9 74/14 74/19 75/14 77/8 78/11 98/4

98/7 137/23 159/17
readjust [1] 61/6
reads [1] 81/11
ready [5] 25/21 118/15 119/6 136/10
174/10
real [4] 38/2 100/1 100/3 151/21
realistic [1] 50/16
reality [1] 13/3
realize [1] 183/25
realized [2] 104/1 184/7
really [32] 8/12 11/18 58/21 67/23 68/2
79/8 81/20 81/20 100/3 101/19 104/12
105/19 105/21 106/25 108/25 116/9
117/25 119/25 125/12 128/9 128/19
148/20 158/24 159/23 161/23 176/22
188/12 195/19 198/16 201/15 205/16
206/22
Realtime [1] 220/5
reason [7] 62/25 79/25 80/2 80/6 151/1
191/21 202/22
reasonable [10] 53/6 53/8 69/18 88/9
118/13 133/7 138/11 176/8 179/17
204/14
reasonableness [1] 188/3
reasonably [7] 188/6 188/17 202/2
204/19 204/25 213/20 214/12
reasons [4] 21/14 21/16 90/24 131/6
rebuttal [5] 93/2 118/6 172/24 173/11
173/23
recall [22] 14/17 43/7 56/15 60/22 112/3
112/7 114/1 114/5 114/10 122/19 123/8
123/13 123/17 125/14 127/10 136/17
137/5 152/8 165/15 199/13 203/3
203/12
receive [6] 125/4 145/14 146/18 146/19
158/22 168/11 170/14 170/18 172/1
202/16
received [31] 2/15 5/14 39/8 86/5 86/20
97/16 99/19 115/5 143/13 144/9 146/2
149/10 149/20 150/14 151/12 151/18
152/5 152/13 153/6 155/11 163/24
164/7 171/6 171/13 171/20 193/23
194/14 197/9 197/24 203/14 203/17
receives [1] 148/11
receiving [3] 99/5 125/14 171/22
recently [3] 54/24 54/25 58/23
recess [12] 25/25 83/3 119/18 119/19
174/15 183/24 184/17 208/24 209/4
210/17 210/19 212/21
recognize [8] 30/12 31/7 31/25 32/2
94/20 95/1 111/21 129/15
recollection [6] 47/9 91/12 91/16 111/3
211/12 211/23
recollections [1] 211/21
recommend [1] 68/1
record [13] 3/11 26/7 29/18 34/1 81/22
83/7 86/5 120/17 122/5 185/2 205/2
213/6 220/9
recorded [2] 1/21 220/6
recording [1] 89/18
records [3] 142/4 142/9 142/14
recover [2] 88/3 95/13
recovery [39] 1/7 3/8 9/4 26/4 27/15
31/11 33/16 49/17 85/7 97/16 99/3 99/4
99/17 100/9 101/9 110/20 110/21
111/25 112/5 112/8 114/18 115/11
115/16 115/17 117/20 123/16
125/10 128/24 132/12 132/19 132/22
132/24 137/10 140/16 140/21 176/11
177/8 213/8

## REDIRECT [1] 127/1
redirect [2] 127/2 127/4
reexamine [1] 219/6
refer [3] 143/25 174/23 174/25
reference [3] 19/5 183/4 185/17
referenced [1] 123/14
references [1] 16/18
referred [1] 180/9
referring [1] 174/22
refinance [1] 162/4
refinanced [1] 106/4
refinancing [2] 59/3 59/18
reflect [1] 160/25
refresh [3] 111/3 111/16 111/24
refresher [2] 162/21 162/23
refusal [1] 160/5
refused [2] 2/15 94/17
refuses [1] 153/7
refusing [1] 34/8
regard [20] 5/1 10/13 11/9 14/11 14/14
14/22 14/24 15/4 15/6 16/14 16/17
19/17 21/16 44/1 48/1 48/2 57/12
174/20 182/3 206/14
regarding [11] 14/23 15/4 16/15 16/24
22/17 99/17 103/25 176/12 186/1 204/4
209/7
regardless [1] 179/21
regards [2] 5/10 188/18
register [1] 127/12
Registered [1] 220/4
regular [4] 35/17 109/1 138/15 157/14
regularly [1] 101/7
rehash [1] 17/6
reiterate [1] 188/12
reject [1] 87/14
rejected [1] 106/14
relate [1] 34/16
related [22] 3/21 15/13 18/2 19/10 19/20
30/14 31/9 33/5 34/5 39/12 40/11 41/4
41/6 47/17 99/13 113/3 113/4 125/2
133/8 151/2 177/20 201/14
relates [1] 15/9
relative [1] 56/24
relatively [1] 218/2
release [4] 42/18 46/14 216/10 216/22
relevance [1] 149/14
relevancy [1] 15/22
relevant [7] 14/4 14/19 15/10 15/19 16/7
16/8 206/4
relief [3] 9/20 10/10 82/13
relitigate [1] 9/8
rely [6] 27/10 90/9 91/11 211/12 211/21
211/23
remain [3] 28/15 29/14 210/8
remainder [2] 27/17 124/24
remained [1] 8/22
remedy [1] 98/16
remember [28] 28/6 53/24 54/10 55/9
67/15 74/8 76/25 91/14 92/9 104/23
110/20 110/24 113/7 113/11 113/18
114/9 117/2 117/25 192/10 197/5 199/8
202/14 203/2 203/10 204/13 204/15
205/4 205/15
remind [3] 98/16 118/19 119/10
remove [4] 185/17 186/25 187/1 187/4
removed [2] 162/6 205/8
render [3] 52/17 52/22 85/9
rendering [1] 80/13
renditions [1] 34/21
rep [2] 71/13 71/17

**R**

repeat [2] 66/21 201/6
repeated [1] 216/11
repeatedly [1] 48/5
repetitious [1] 202/11
rephrase [5] 105/5 107/11 148/9 170/1 171/6
replace [1] 28/4
replaced [4] 42/25 45/21 46/23 49/3
report [45] 14/14 14/16 54/22 55/15 55/22 56/4 56/8 56/18 57/3 71/23 81/18 99/8 99/11 104/2 104/10 104/15 105/2 105/11 106/11 106/18 107/2 107/5 108/19 108/20 110/22 116/24 116/24 117/14 117/23 122/18 123/2 131/22 132/21 138/24 171/7 171/11 172/5 177/12 191/13 191/14 191/25 193/6 193/19 200/2 200/3
reported [11] 34/12 124/11 132/12 171/12 171/14 172/7 177/12 177/12 205/5 205/6 205/7
reporter [9] 1/23 39/16 56/11 140/6 218/15 220/4 220/4 220/5 220/5
reporting [24] 33/24 34/5 34/14 81/3 94/25 97/12 97/12 97/13 99/6 112/11 117/22 147/4 166/15 166/20 166/25 167/22 170/22 171/21 172/2 172/3 191/15 191/18 192/4 205/5
reports [1] 56/20
repossessed [1] 40/24
representation [2] 17/15 27/5
representative [17] 3/16 31/1 137/10 145/6 146/9 154/7 155/10 155/24 156/3 156/17 157/16 157/25 167/9 171/4 196/18 203/19 203/21
representatives [7] 143/3 143/21 143/24 145/22 147/13 148/15 157/8
represented [4] 34/7 52/7 170/7 170/9
representing [5] 30/5 124/15 129/7 129/9 129/12
represents [1] 29/21
request [22] 4/17 4/18 4/20 6/12 7/3 8/8 18/6 18/14 120/24 121/3 121/6 121/11 121/14 121/17 121/20 121/23 138/5 166/7 168/11 199/5 199/9 205/18
requested [2] 152/25 153/1
requesting [2] 19/3 72/14
requests [7] 4/3 5/1 5/7 7/5 21/8 156/18 202/20
require [4] 53/15 92/5 138/10 148/19
required [9] 15/17 33/19 74/21 134/11 145/12 157/17 162/15 163/21 191/14
requirement [1] 53/6
requires [2] 28/22 138/11
reschedule [1] 32/20
rescheduling [1] 3/20
research [2] 90/13 90/20
reserve [3] 102/1 118/6 135/25
resolution [4] 56/20 57/22 163/17 204/9
resolve [1] 115/9
resolved [6] 55/21 62/12 115/24 115/25 116/4 147/23
resources [1] 191/7
respect [1] 50/8
respond [9] 4/2 5/15 5/24 8/4 15/1 132/8 164/10 209/18 218/6
responded [2] 6/6 9/15 18/25
responding [5] 29/18 107/23 177/5 211/13 211/24
response [21] 14/1 18/4 18/6 21/7 29/9
35/8 43/8 67/18 84/15 133/12 148/19 180/20 188/21 189/1 191/13 196/23 198/5 206/18 211/11 212/3 218/5
responses [6] 8/18 31/19 40/13 52/25 80/4 80/9
responsibilities [1] 216/8
responsibility [1] 78/22
responsible [1] 207/21
rest [67] 59/17 84/22 135/5 137/4 172/24 173/1
rested [1] 134/17
restored [1] 126/6
restroom [2] 119/24 120/8
result [7] 27/22 32/6 34/17 53/3 121/9 125/20 199/15
resulted [5] 18/23 182/23 202/1 213/18 214/10
results [1] 106/10
resume [3] 44/21 118/15 208/17
resumed [5] 83/4 119/20 184/18 210/20 212/22
retake [1] 158/15
retire [5] 89/24 174/8 174/14 208/6 209/21
retrained [1] 159/6
retraining [1] 158/23
reurge [3] 14/12 14/15 175/14
reurging [1] 135/11
reveal [1] 209/12
reverb [1] 108/7
review [16] 4/19 35/15 82/9 88/24 89/2 116/24 142/11 142/17 146/3 152/8 155/10 157/12 157/12 183/14 183/15 208/22
reviewed [4] 147/18 157/8 157/9 157/17
reviewing [1] 157/10
reviews [2] 157/14 157/15
revisit [1] 180/18
rid [1] 61/6
ridiculous [1] 6/8
right [123] 3/25 30/11 33/14 37/18 38/2 39/14 40/20 40/22 42/9 42/13 43/25 44/21 45/1 45/3 47/6 48/16 49/4 50/17 51/13 51/17 52/25 54/13 54/15 55/25 59/5 60/21 62/4 68/14 68/19 69/10 69/14 69/24 70/2 70/3 70/8 70/9 70/21 71/6 71/12 71/14 71/21 71/23 71/24 72/1 72/2 72/16 73/7 74/7 74/22 75/3 75/11 75/17 76/21 76/22 77/20 79/9 79/18 80/4 80/16 82/7 83/8 83/11 85/5 93/17 93/18 101/11 102/2 102/23 103/8 103/16 103/23 108/18 116/19 118/2 119/18 120/9 120/15 124/2 124/21 126/3 130/18 131/3 138/3 138/7 139/5 139/18 140/12 142/9 151/25 153/17 153/24 155/21 159/12 165/2 172/13 172/23 173/22 174/19 175/15 178/5 178/5 178/20 178/24 184/6 184/16 184/20 188/20 189/2 190/18 195/15 203/4 203/20 203/25 207/24 208/2 209/24 210/3 210/7 210/17 211/25 214/20 217/10 217/20
Rights [1] 72/4
ring [1] 35/4
rise [1] 210/4
RMR [1] 1/23 220/18
ROBBIE [4] 1/17 3/15 26/12 30/24
ROBERT [9] 1/11 1/15 3/13 26/10 26/16 30/1 30/3 63/19 220/11
robust [3] 69/17 137/22 138/7
rock [3] 73/20 77/15 77/15
romance [2] 130/24 174/8
room [3] 35/15 130/24 174/8
208/6 209/22 216/23
rough [1] 94/8
roughly [2] 144/15 152/12
routine [1] 206/9
row [15] 36/1 36/19 36/20 37/24 38/15 38/16 39/11 39/15 40/9 40/17 40/19 44/25 45/2 45/23 50/18
RP [1] 1/6
rule [7] 10/2 93/16 140/11 174/20 185/4 188/21 195/18
Rule 50 [1] 174/20
ruled [1] 5/20
rules [7] 9/19 10/1 10/9 12/24 15/19 86/13 134/21
ruling [10] 6/15 10/15 10/23 11/3 11/10 16/6 19/19 86/16 91/21 219/3
rulings [5] 4/5 11/22 85/11 91/19 91/19
Rulint [2] 2/21
run [4] 24/19 82/21 84/14 168/2

**S**

s/Pamela [1] 220/18
said [58] 6/2 6/16 7/2 23/24 28/1 54/6 60/17 64/6 64/21 65/15 66/9 66/14 67/24 67/25 67/25 70/21 72/11 79/12 81/8 81/13 88/10 96/18 104/14 105/1 105/2 105/4 105/10 109/4 110/9 115/4 115/5 124/4 124/7 125/24 126/4 130/20 131/8 148/9 162/20 162/25 163/17 166/20 167/2 170/11 183/1 196/22 198/5 198/9 198/14 199/14 202/14 203/2 205/4 205/4 205/21 211/22 212/6 219/5
sake [1] 191/22
sales [2] 71/13 71/17
same [34] 5/16 5/17 14/15 17/10 17/10 17/17 19/15 59/20 60/15 98/13 104/20 104/22 107/25 114/6 126/10 126/19 133/24 133/25 155/19 159/6 163/8 163/9 163/9 163/10 168/1 183/7 185/6 201/2 201/5 201/7 201/11 202/12 206/19 220/7
sample [1] 156/5
SAN [3] 1/24 67/16 140/25
save [1] 79/22
saw [10] 15/23 94/25 104/10 109/5 123/2 125/1 155/16 170/11 193/14 206/10
say [53] 21/10 49/23 57/18 76/8 79/6 79/21 85/25 94/10 97/7 97/13 97/19 99/8 99/9 99/10 100/14 102/18 106/20 107/4 109/24 113/2 116/3 117/5 117/8 122/24 122/25 124/14 132/22 137/4 140/5 140/5 147/5 151/1 153/5 153/21 154/19 160/10 160/11 160/15 160/20 160/22 164/24 165/3 165/5 166/24 169/7 185/19 186/6 186/25 187/2 197/13 198/24 200/5 206/19
saying [14] 19/9 68/19 75/11 109/5 111/15 116/15 168/9 176/14 178/10 180/6 184/7 187/4 194/9 203/4
says [32] 13/11 13/12 13/14 42/4 73/4 81/4 97/17 111/8 132/22 139/2 152/25 154/9 155/6 156/11 159/25 160/2 167/22 177/13 179/25 180/4 183/7 186/12 191/19 193/4 193/24 193/25 196/12 199/1 201/20 203/5 203/25 206/20

S

scale [2]  87/23 87/24
scanned [1]  153/6
scenario [1]  101/13
schedule [3]  33/1 217/11 217/13
schedules [1]  32/11
scheduling [1]  49/7
schlepping [2]  164/19 195/19
school [9]  39/8 62/10 71/4 74/14 78/12
  78/13 94/3 141/9 141/10
score [8]  57/13 104/11 104/15 104/16
  104/19 106/1 106/2 117/9
screen [6]  2/19 150/3 154/17 155/8
  163/14 168/20
seamlessly [1]  24/14
Sears [1]  141/15
seat [8]  22/2 22/6 22/6 22/9 42/22 43/4 45/23
  47/3 83/15
seated [12]  29/24 48/21 85/14 103/7
  103/12 119/9 136/14 139/17 139/23
  174/18 213/1 217/9
seating [1]  24/15
second [19]  12/9 14/11 34/1 36/20 38/16
  39/15 40/19 69/24 86/10 91/9 150/21
  151/11 152/3 155/4 159/8 159/10
  177/18 201/25 201/25
Secondly [1]  133/1
seconds [1]  216/24
Secretary [1]  33/19
section [5]  27/5 174/24 185/8 200/25
  201/15
security [7]  83/15 118/12 139/14 208/25
  209/17 209/25 213/5
see [53]  11/10 11/14 19/4 20/5 24/13
  50/5 55/2 67/17 67/19 67/21 78/4 90/9
  95/15 100/5 101/3 101/3 104/14 108/21
  108/24 109/22 113/20 117/13 117/13
  117/24 130/9 138/8 151/22 151/25
  152/3 152/4 152/17 155/9 156/1 156/1
  156/10 159/23 159/24 159/25 175/2
  179/4 193/16 197/4 197/8 197/22
  197/23 202/12 203/15 204/8 207/18
  208/19 210/13 211/4 212/18
seeing [4]  33/12 49/25 67/15 179/1
seek [1]  5/21
seeking [11]  10/10 16/15 16/17 16/20
  16/23 64/7 66/19 67/4 96/16 126/4
  185/15
seeks [2]  66/24 67/8
seem [3]  54/1 176/15 181/21
seems [5]  97/1 107/24 160/7 176/5
  186/10
seen [7]  50/4 67/13 67/20 77/3 79/11
  86/25 94/5
select [9]  3/24 27/14 154/9 155/25
  156/17 203/5 203/7 204/10 208/9
selected [14]  21/19 27/3 29/4 35/15
  52/16 156/2 156/8 156/22 157/1 168/21
  202/19 202/19 203/8 204/11
selection [5]  3/9 24/14 26/5 28/13 74/10
self [1]  81/11
self-help [1]  81/11
selling [1]  128/4
send [5]  79/6 97/5 105/2 115/5 161/25
sending [4]  49/10 49/14 114/21 147/24
sense [3]  182/13 186/3 187/8
sent [21]  4/23 5/11 12/18 12/22 17/15
  41/15 109/25 111/22 111/23 112/1
  116/25 123/14 125/6 125/11 138/20
  138/24 166/2 166/7 169/14 170/2

171/18
sentence [2]  87/8 95/3
sentences [4]  97/17 97/17 97/19 167/3
separate [1]  145/20
September [7]  4/16 217/19 217/20
  217/23 218/3 218/10 220/15
September 11th [1]  217/23
September 9th of [1]  4/16
serious [1]  159/7
seriously [1]  216/7
seriousness [1]  216/8
sermons [1]  78/5
serve [2]  37/17 83/25
served [9]  4/15 4/17 35/19 35/24 36/3
  51/20 53/5 84/21 88/8
serves [2]  20/16 149/19
service [22]  4/15 26/19 27/3 35/9 35/21
  36/1 36/14 36/19 36/20 37/10 69/5 69/6
  84/6 84/25 89/13 89/19 89/19 195/21
  215/25 216/21 217/3 217/6
services [5]  58/16 116/5 180/3 196/9
  213/12
serving [7]  32/8 32/13 35/12 35/23 35/25
  54/5 84/2
SESSION [1]  3/1
set [15]  4/17 41/23 43/17 45/11 48/13
  51/7 52/14 74/10 100/6 101/23 102/14
  128/2 134/20 218/7 218/7
setting [1]  35/18
settlement [1]  16/24
settling [1]  59/18
seven [5]  22/9 23/20 28/20 61/12 140/24
seven-person [1]  22/9
seventeen [1]  26/23
several [10]  33/22 36/5 75/16 88/5 94/13
  110/25 146/18 152/22 157/11 191/8
Shack [1]  77/8
shadow [2]  146/10 176/20
shadowed [1]  146/10
share [2]  40/17 72/25
shattered [1]  191/10
she [148]  4/22 4/23 4/24 6/16 7/22 7/23
  7/24 7/24 7/25 12/11 13/5 19/6 29/21
  59/20 62/10 62/10 63/13 64/6 64/11
  66/14 68/6 68/7 71/11 81/4 81/4 81/5
  81/7 81/10 81/11 81/13 81/13 81/14
  81/23 88/3 94/14 94/15 94/15 94/16
  94/17 94/18 94/18 94/19 94/19 94/20
  94/23 94/24 95/1 95/1 95/2 95/3 95/8
  95/9 95/12 95/15 95/17 95/17 96/15
  96/16 96/21 96/25 97/2 97/3 97/3 97/4
  97/5 97/6 97/19 98/4 98/4 107/12
  107/13 110/8 110/12 119/12 120/8
  120/9 127/24 128/1 128/2 128/5 128/21
  130/8 131/18 133/2 133/22 133/23
  134/17 134/18 136/17 136/18 164/2
  164/5 166/6 166/7 169/20 172/21 178/8
  179/16 182/10 185/15 191/7 191/9
  191/12 191/21 192/18 192/18 194/18
  195/10 196/16 196/21 196/22 196/22
  198/5 198/9 198/10 198/10 198/10
  198/12 198/12 198/13 198/14 198/14
  198/15 198/15 198/25 199/2 199/2
  199/14 199/17 199/17 199/18 199/18
  199/21 199/21 199/21 199/22 199/22
  200/2 200/3 202/14 203/11 205/4
  205/15 205/18 206/15 207/4 211/6
  218/13
she'd [1]  136/21

she's [17]  20/9 62/1 81/6 94/24 97/3
  107/12 124/6 176/18 176/18 176/20
  179/13 179/13 182/2 189/3 198/24
  200/1 214/24
sheet [1]  161/10
shifts [1]  32/25
shipped [2]  69/4 69/5
shocked [4]  64/21 94/18 104/7 106/6
Shopping [3]  13/16 114/2 129/16
short [3]  34/23 135/25 190/2
shorter [1]  183/7
Shorthand [1]  220/3
shortly [1]  148/3
shot [1]  183/10
shots [2]  2/19 150/3
should [6]  6/20 9/5 11/4 33/25 49/8
  80/11 86/1 86/2 86/15 88/11 88/16
  88/18 91/11 91/12 91/15 91/20 91/24
  91/25 103/19 120/9 124/14 133/15
  138/12 156/20 156/22 156/22 156/25
  159/17 168/22 172/24 185/17 191/20
  199/11 200/24 202/19 203/3 204/8
  205/12 206/12 206/15 207/19 207/21
  213/23 214/15 218/25
shouldn't [3]  81/17 159/5 206/12
show [28]  5/5 12/15 13/8 16/4 16/7
  18/22 21/5 21/9 31/24 92/15 94/9 94/12
  97/15 99/4 99/21 100/17 100/19 101/8
  133/24 149/15 180/6 182/3 182/21
  182/22 183/2 196/12 197/2 216/6
showed [3]  71/23 129/13
showing [1]  197/24
shows [3]  13/14 192/24 194/22
shy [1]  135/16
sic [8]  30/1 125/5 131/14 134/10 153/18
  188/18 189/17 197/3
sick [1]  128/21
side [16]  13/12 13/13 21/21 29/11 57/16
  60/9 87/25 88/6 90/2 91/22 92/13 146/7
  146/7 183/19 192/14 195/8
side-by-side [1]  146/7
sidebar [1]  40/13
sides [9]  11/17 49/25 50/4 50/5 50/16
  52/10 61/9 87/23 93/14
sidetracked [1]  180/11
sigh [1]  82/13
sign [1]  209/11
signed [2]  50/25 214/17
significance [1]  89/3
significant [2]  26/24 195/10
signs [1]  67/13
silence [1]  198/2
similar [1]  9/4
similarly [1]  7/8
simple [3]  72/17 94/14 160/8
simpler [2]  72/3 159/25
simply [6]  29/9 72/3 92/17 123/17
  169/16 204/5
since [12]  4/7 16/1 38/11 64/7 111/1
  131/25 140/19 141/13 142/5 163/25
  190/14 210/12
sincere [1]  84/13
single [2]  165/15 191/5
sir [22]  32/15 32/21 36/2 37/24 38/18
  39/15 39/16 40/8 40/20 41/8 43/4 45/4
  45/6 47/6 61/14 120/22 139/16 164/21
  165/24 168/2 172/18 213/3
sit [6]  35/15 42/10 52/16 125/9 126/7
  130/22
site [1]  104/14

sitting [2] 43/8 209/1
situation [11] 4/7 6/7 62/5 62/22 63/7 66/18 66/22 167/5 169/6 191/3 204/5
situations [1] 211/15
six [4] 75/14 117/6 165/6 165/8
size [1] 31/22
Slight [1] 49/7
slip [1] 167/7
slipped [5] 139/7 165/12 169/12 170/4 191/24
slow [1] 56/13
slurs [1] 96/14
small [3] 139/3 140/11 202/21
so [287]
social [2] 71/1 71/2
society [1] 96/8
software [2] 69/1 145/10
sold [2] 120/7 127/25
sole [1] 52/7
solely [6] 52/18 52/22 87/2 90/9 90/25 129/21
solemnly [1] 85/6
solicit [1] 28/12
some [90] 4/1 4/20 6/5 10/18 17/16 18/23 19/21 26/23 27/25 29/1 29/7 35/18 35/18 38/6 38/21 48/19 50/1 51/18 53/25 54/19 54/20 57/17 57/19 59/1 60/25 62/10 62/11 63/8 63/8 66/12 76/15 76/21 79/13 79/19 79/22 80/12 81/16 84/4 84/23 85/15 86/19 87/15 92/6 94/3 94/20 95/3 95/24 96/14 96/14 96/14 96/22 96/25 98/13 103/24 104/1 105/17 105/24 108/5 108/6 108/9 108/22 108/24 109/13 113/20 116/3 116/4 117/10 129/13 137/5 147/23 148/19 151/1 158/17 158/22 160/17 160/20 181/15 181/25 182/10 182/11 191/10 194/18 196/1 196/3 196/21 202/22 208/16 210/9 217/3 218/1
somebody [12] 55/18 66/10 66/15 73/5 95/17 96/1 96/2 106/1 192/5 205/25 212/9 212/18
somebody's [1] 43/3
somehow [2] 24/9 134/14
someone [3] 56/7 56/19 57/21 58/18 68/1 80/7 112/10 115/16 134/18 144/24 149/3 205/24 210/23
something [42] 9/5 11/15 14/3 24/17 32/23 42/3 59/23 61/5 65/15 67/7 71/23 73/6 79/13 79/14 82/17 87/21 95/22 96/15 96/16 97/14 98/15 101/7 104/12 107/7 127/16 128/2 129/14 143/20 148/20 162/3 163/13 163/16 166/14 169/13 170/15 183/13 183/13 184/12 194/8 198/13 200/5 211/11
sometimes [10] 29/1 31/23 79/3 92/10 108/10 108/14 112/16 130/20 170/19 206/22
somewhat [3] 87/24 157/24 177/9
somewhere [2] 42/18 209/2
son [2] 78/13 95/9
son's [2] 78/12 78/13
Song [1] 73/17
soon [3] 70/18 130/25 183/13
sophisticated [1] 193/15
sorry [57] 8/6 22/19 24/8 25/3 40/21 43/1 55/25 56/14 59/12 59/14 67/23 84/3 98/9 99/1 99/14 101/12 101/16 108/3 108/4 108/15 112/13 119/13

119/23 122/15 122/25 129/16 131/13 132/20 136/17 138/8 138/20 138/25 154/19 154/21 154/22 154/23 154/25 155/3 155/5 159/18 161/8 168/15 172/24 177/4 177/23 178/13 178/23 180/22 183/22 187/4 189/3 189/5 189/24 202/21 205/1 206/22
sort [20] 8/25 11/2 43/21 54/24 57/15 60/13 66/12 79/19 96/14 99/15 108/5 108/6 108/9 111/16 162/21 181/11 181/13 185/15 193/22 202/12
sorts [1] 76/12
sought [5] 185/12 185/13 196/7 213/10 214/2
sound [2] 108/16 211/25
sounds [5] 14/4 60/12 140/4 211/19 218/20
source [1] 90/12
Sparks [1] 5/20
Sparks' [2] 5/17 6/3
speak [7] 4/9 56/13 58/18 90/5 108/11 129/1 216/12
speaking [1] 129/4
special [10] 32/8 37/17 187/15 204/5 213/9 213/15 213/22 214/1 214/7 214/14
specialist [1] 203/11
specific [28] 4/21 7/3 15/18 18/18 20/8 46/11 113/11 123/21 124/8 124/11 125/5 125/15 131/6 131/8 144/25 145/1 150/16 156/7 157/16 158/16 163/7 167/14 179/22 179/25 187/21 193/18 195/1 196/2
specifically [14] 7/9 15/16 18/6 124/4 124/15 133/19 134/5 163/18 168/7 170/1 172/6 186/12 187/14 203/12
specifics [2] 190/25 192/13
speculate [1] 91/24
speed [1] 12/4
spell [1] 140/5
spend [1] 137/23
split [1] 183/19
splitting [1] 189/15
spoken [1] 24/18
sports [4] 73/6 73/13 76/15 119/2
spot [2] 112/14 202/12
spouse [1] 89/11
spring [2] 77/4 118/2
stage [1] 21/12
stake [1] 192/11
stamina [1] 190/21
stand [7] 29/21 30/21 85/5 96/13 176/7 198/12 198/22
standard [3] 53/7 53/19 198/2
standpoint [1] 191/1
start [6] 65/14 72/23 97/9 102/2 106/9 136/19
started [5] 14/9 77/22 102/20 141/14 141/24
starting [3] 95/8 132/10 217/18
starts [1] 145/13
state [3] 33/19 37/2 68/8
stated [3] 9/22 53/25 128/24
statement [14] 6/2 24/13 34/21 92/16 92/21 93/20 107/20 110/9 136/18 136/20 137/1 175/7 190/19 195/22
statements [10] 2/5 24/15 84/11 86/9 92/13 93/7 93/12 178/14 199/6 199/11
states [4] 1/1 26/16 153/7 220/11
station [5] 73/2 73/6 73/18 75/18 76/13

stations [2] 75/9 75/20
statue [1] 249 of 253
status [2] 12/16 13/5 16/15 147/19 161/1 181/12 181/14 187/16
statute [2] 201/2 206/21
statutory [16] 14/25 100/1 100/2 185/20 186/13 186/16 186/23 187/2 205/20 205/22 213/17 213/23 213/24 214/9 214/15 214/17
stay [8] 28/20 62/3 82/15 84/11 136/3 208/19 208/19 210/9
stayed [1] 142/2
staying [1] 136/5
stenography [1] 1/21
stenotype [1] 220/7
step [6] 130/5 136/3 136/6 136/9 155/23 172/14
steps [1] 170/10
stepson [1] 95/9
stick [2] 32/22 82/20
sticker [8] 73/3 73/23 74/1 74/14 74/24 78/7 78/9 78/12
stickers [8] 73/11 73/24 74/11 75/10 75/22 76/12 77/10 77/23
still [15] 6/16 7/1 7/2 24/22 60/18 117/15 117/16 117/22 159/13 172/4 178/23 182/3 184/13 209/3 212/9
stipulate [1] 86/6
stole [1] 55/18
stood [1] 219/11
stop [2] 67/14 147/5
stopped [5] 171/21 172/2 201/10 204/11 205/4
store [8] 51/1 69/5 69/5 74/25 128/5 128/7 128/9 128/14
stores [1] 51/4
story [6] 94/12 95/21 96/25 101/20 137/4 200/2
straight [1] 183/16
straightforward [1] 208/12
strategy [1] 142/2
Street [2] 122/10 126/12
strict [7] 57/3 89/6 181/1 181/17 182/2 182/11 182/18
strike [5] 20/17 20/19 124/19 168/24 169/2
strikes [6] 22/9 28/16 54/7 54/9 82/10 83/12
striking [1] 19/3
stronger [1] 95/25
struck [1] 181/18
stuck [1] 6/8
student [7] 40/23 58/25 59/4 70/22 70/23 211/3 211/5
study [1] 70/25
stuff [14] 65/16 70/17 71/20 75/6 75/16 76/11 79/7 96/14 127/24 180/5 192/10 195/17 196/3 198/20
styled [1] 27/14
subject [5] 16/4 48/9 69/24 178/3 201/23
submission [2] 187/14 187/15
submit [8] 11/12 119/10 187/23 187/25 188/20 188/22 188/24 206/14
submitted [5] 23/19 85/11 174/13 188/9 188/15
subsequent [1] 201/9
Subsequently [1] 93/1
subsidiaries [1] 141/1
substantial [3] 64/23 121/12 199/17
succeeded [1] 94/11

## S

such [9]   34/17 81/23 87/6 89/17 90/13
92/7 92/8 206/4 209/13
sue [1]   68/2
sued [8]   38/21 39/20 67/25 171/23
172/4 191/18 191/21 194/12
suffer [1]   32/7
suffered [8]   121/8 121/12 121/15 121/18
199/14 199/17 199/22 205/19
sufficiency [1]   185/3
sufficient [2]   13/21 180/5
suggest [6]   179/20 181/11 200/13 201/4
204/23 218/10
suggested [3]   182/11 202/4 217/13
suggesting [2]   181/19 182/3
suggestion [3]   175/21 205/2 211/16
suggests [2]   20/22 21/15
suing [1]   38/8
suited [1]   50/7
suits [1]   65/24
sum [2]   213/22 214/14
summarize [1]   92/15
summary [22]   5/23 6/20 7/22 8/1 8/7
8/23 9/1 9/6 9/10 10/23 13/22 20/16
20/20 21/11 33/15 34/23 52/10 131/7
134/4 173/13 174/23 175/3
summer [1]   74/9
summons [1]   84/15
super [1]   81/5
super-friendly [1]   81/5
supplement [3]   177/16 177/17 177/18
Supplemental [4]   2/18 143/16 154/5
168/18
support [3]   18/12 58/6 94/10
supporting [4]   14/24 18/15 18/16 18/18
suppose [1]   14/9
supposed [9]   8/11 76/7 100/7 100/14
114/23 127/23 207/10 207/15 207/16
sure [41]   7/24 11/18 12/2 15/24 43/15
44/9 45/10 49/15 62/3 66/22 67/6 69/10
69/17 102/7 103/22 106/25 107/22
110/23 123/7 125/22 135/15 137/24
138/14 141/4 142/8 145/8 146/8 151/5
163/18 168/17 175/20 176/25 178/25
179/5 180/13 182/8 184/15 185/5
190/21 202/7 217/17
surety [5]   1/7 26/4 31/11 33/18 33/18
surprise [2]   8/14 55/14
surprised [2]   74/22 218/1
surprises [1]   56/3
surprising [1]   55/5
suspense [1]   47/4
sustain [2]   91/23 166/9
sustained [5]   86/16 124/21 175/24 176/9
185/9
swear [1]   85/6
sworn [8]   28/20 85/5 85/15 103/8 103/10
139/18 139/20 210/1
sympathy [1]   207/16
Synchrony [27]   131/23 134/13 134/14
150/21 150/25 151/1 151/8 151/9
151/14 174/25 175/8 175/15 175/24
177/2 177/4 177/16 178/4 178/18 179/3
179/6 179/9 179/18 187/22 197/20
198/1 198/22 207/5
system [12]   18/23 101/6 137/23 145/10
145/25 148/17 148/22 150/3 154/15
155/7 163/12 168/20

## T

tab [3]   142/24 143/14 155/6
table [2]   29/24 30/22
take [45]   11/23 19/14 25/21 32/6 42/22
43/4 47/3 60/19 62/23 68/13 81/17 82/8
82/23 84/14 91/5 91/7 91/9 91/10 95/12
95/20 102/17 105/8 118/9 124/23
130/19 130/20 130/24 135/6 135/8
139/4 142/19 148/1 150/1 168/17 174/7
183/9 183/20 183/24 185/18 197/12
207/10 208/7 210/14 216/7 216/16
taken [17]   25/25 39/8 58/12 60/4 83/3
86/1 93/14 116/1 119/19 123/9 142/19
170/9 176/18 184/17 207/22 210/19
212/21
takes [3]   21/18 47/4 61/21
taking [3]   32/10 72/15 91/6
talk [30]   12/4 19/19 35/21 53/1 67/22
71/11 71/21 73/13 78/5 79/10 82/25
94/7 99/16 99/24 100/12 118/12 118/20
118/23 119/1 119/1 119/2 119/3 144/10
144/11 195/25 201/13 205/14 207/4
216/14 218/16
talked [7]   54/20 106/8 109/18 157/21
166/13 173/11 199/5
talking [16]   10/25 15/16 19/13 45/4
65/14 73/1 81/11 96/10 99/23 159/2
175/23 175/23 177/21 182/20 186/2
186/7
targeted [1]   40/11
task [1]   94/14
tattoo [1]   77/4
taxes [1]   112/22
TCDA [1]   211/8
team [12]   39/22 144/20 146/7 146/10
146/15 146/15 157/13 157/14 163/3
163/5 163/7 163/19
teams [2]   163/2 163/2
technical [6]   58/6 99/24 192/9 195/17
196/3 206/23
technically [1]   185/25
technician [1]   49/12
technology [1]   89/15
telephone [4]   89/17 125/15 153/11
164/4
telephones [2]   90/13 125/5
tell [58]   4/4 4/6 5/15 10/11 25/13 50/12
55/17 60/1 62/25 73/1 73/8 79/15 82/14
84/17 84/18 84/18 84/21 94/11 94/24
95/5 95/21 97/3 97/13 99/6 99/15
100/11 101/19 103/25 117/19 140/12
141/8 142/8 142/9 142/24 143/15
144/15 149/12 149/13 150/2 150/16
150/17 150/24 150/25 151/4 151/10
152/19 154/1 164/22 165/10 181/3
186/15 200/25 201/3 201/6 201/8 202/9
205/10 208/25
telling [5]   25/8 50/14 57/8 197/14 200/1
tells [3]   10/2 198/16 207/15
temporary [1]   141/24
ten [6]   25/21 25/23 78/14 113/2 182/20
210/11
ten-minute [2]   25/21 210/11
term [1]   53/16
terminated [2]   158/25 159/11
terms [1]   145/5
test [3]   69/2 158/13 158/15
tested [7]   69/3 157/23 158/6 158/7
158/8 162/21 190/22
testified [15]   103/11 122/17 123/1

124/25 131/18 139/21 165/5 165/15
172/20 202/6 203/6 203/11
205/15 206/12
testify [5]   20/4 20/10 137/8 142/16
191/17
testimony [49]   7/21 8/1 12/8 13/4 13/5
17/3 19/5 19/20 20/22 21/17 21/17
51/24 52/1 52/1 52/2 52/9 52/9 86/4
86/22 87/6 87/14 88/16 89/1 89/4 89/7
91/1 91/17 93/3 102/17 132/3 133/21
134/9 137/6 138/4 165/4 166/3 166/5
166/6 169/20 173/10 175/12 175/16
179/13 185/15 186/1 197/14 198/21
198/25 204/15
testing [5]   158/1 158/4 162/18 162/23
204/17
TEXAS [23]   1/1 1/24 5/6 18/10 18/16
18/19 21/4 26/18 26/22 33/19 33/22
41/18 122/11 126/12 131/1 131/11
133/18 141/3 141/5 201/2 206/19
206/20 220/12
than [49]   20/24 32/6 32/10 32/19 32/24
35/6 43/22 48/17 53/13 53/19 60/23
63/16 66/3 66/6 66/11 67/9 87/21 90/6
91/16 95/25 97/8 119/2 128/20 130/16
130/21 133/3 133/8 156/13 156/23
159/4 160/22 166/22 167/20 168/10
168/13 168/14 172/1 172/2 176/24
177/21 179/17 191/21 201/6 202/12
202/25 203/5 206/11 214/16 218/10
thank [116]   3/18 3/19 3/22 8/3 14/7
14/20 16/13 20/12 20/14 21/13 25/24
26/14 26/20 27/12 29/25 30/11 30/20
30/23 31/2 31/6 31/14 31/19 32/4 33/2
33/4 33/9 33/14 35/8 36/18 37/14 37/15
37/18 38/14 39/5 39/24 40/10 41/3
42/23 43/25 44/19 44/20 45/17 46/16
47/6 48/24 50/17 51/12 51/13 51/17
52/25 53/21 54/14 63/22 65/4 74/18
79/17 80/16 83/24 84/24 85/14 98/20
101/23 102/3 102/23 103/21 105/6
118/7 120/13 120/18 122/6 129/25
130/6 131/4 132/7 132/9 133/11 135/19
136/11 136/12 136/14 136/15 136/23
139/9 139/16 139/16 139/24 142/7
164/19 172/14 172/15 173/1 173/16
173/25 174/18 181/8 184/16 184/24
189/13 190/1 190/21 195/19 195/20
207/25 210/16 210/17 212/20 213/1
213/5 215/24 216/21 217/5 218/23
219/1 219/8 219/9 219/10
thanks [2]   84/13 165/2
that [1200]
that's [126]   4/5 7/18 8/12 9/5 9/17 11/6
11/23 12/22 15/10 16/21 20/24 21/1
22/25 24/6 25/1 25/9 30/1 30/10 40/13
40/22 45/16 48/23 63/19 66/6 66/15
66/17 70/9 70/17 71/7 72/2 72/16 73/11
73/21 76/21 78/6 78/9 78/15 81/10
81/13 81/24 93/17 95/17 97/10 99/16
100/6 100/12 100/19 101/18 102/2
102/15 106/16 107/17 107/18 108/2
108/14 110/8 111/7 120/23 124/2
124/13 124/18 126/3 128/2 128/13
128/19 129/14 131/16 132/23 136/8
137/16 138/16 147/9 150/25 154/23
154/4 155/7 156/2 159/19 160/23
161/15 161/23 162/13 164/13 167/13
167/25 168/23 170/22 175/1 175/17
175/19 175/25 176/2 177/13 178/5

that's... [32]  178/19 180/20 180/23
182/15 184/13 187/12 188/1 188/15
189/2 192/5 192/12 193/11 196/11
196/12 196/23 197/6 197/22 200/14
201/7 202/21 203/3 204/25 206/21
207/9 211/3 211/7 211/15 211/20 216/2
217/20 218/6 218/12

their [76]  3/17 4/9 5/3 10/12 13/4 13/18
13/20 13/24 16/5 17/21 17/23 18/7
18/10 18/12 18/22 18/23 19/2 20/2
21/16 22/6 27/12 28/24 30/17 31/16
34/20 34/21 41/19 50/10 52/5 52/10
52/11 54/7 56/8 56/18 63/10 63/10
66/12 69/19 77/4 78/22 83/12 86/12
93/5 98/14 100/13 100/13 100/23
100/23 101/4 108/3 132/1 132/2 132/14
132/20 133/24 133/25 137/15 138/14
149/7 157/23 158/2 159/16 160/18
175/24 176/16 177/17 177/18 179/22
190/13 191/7 193/21 194/22 195/13
203/20 207/11 211/21

theirs [1]  14/18

them [82]  5/4 5/8 5/14 6/20 8/19 9/9
9/19 10/10 10/19 18/5 18/7 18/9 18/11
18/20 23/7 23/25 31/13 42/13 47/23
49/14 49/16 50/1 51/1 54/8 58/13 58/20
58/24 59/16 60/25 60/25 66/10 67/16
67/20 67/21 72/12 84/21 88/6 92/23
93/1 94/20 94/20 95/2 100/13 100/20
104/6 104/25 106/17 108/11 108/13
109/11 113/14 113/14 113/22 114/22
115/9 116/13 116/13 124/14 127/25
128/1 129/1 129/5 129/6 137/24 140/18
143/25 146/6 157/12 157/13 186/15
186/20 193/8 194/6 197/2 198/10
202/16 202/24 202/25 203/8 203/20
203/24 212/2

themselves [1]  82/25

then [106]  10/12 11/21 11/22 12/24 14/8
14/9 15/3 15/22 16/6 16/23 21/20 22/24
25/25 28/2 28/3 28/16 29/9 29/10 37/2
39/17 39/18 39/25 41/15 41/20 44/22
48/11 50/7 50/13 57/25 66/23 67/7
75/24 80/10 85/22 88/3 92/22 93/4
93/18 98/15 102/21 109/11 112/17
113/23 116/5 119/18 119/19 124/23
128/4 132/5 135/4 136/20 142/1 142/3
145/22 146/10 146/12 147/13 147/22
148/2 155/15 156/3 157/2 158/2 158/17
163/21 164/9 167/4 170/9 171/20
174/10 174/11 175/24 176/25 177/18
179/11 181/17 182/9 183/3 183/10
183/14 183/16 183/23 184/17 186/6
186/24 188/21 188/25 191/4 191/8
191/9 191/13 194/9 196/1 201/9 201/12
204/8 208/9 210/14 210/19 212/2
212/21 218/13 218/14 218/18 218/19
219/11

there [160]  4/20 5/16 5/25 7/5 10/6 11/3
12/3 12/16 13/11 17/6 18/5 20/17 23/4
24/3 24/16 24/20 27/20 28/9 32/9 32/12
35/1 36/14 37/10 43/6 43/8 44/15 45/23
47/3 47/13 51/1 53/14 53/18 55/1 55/5
57/15 58/22 59/14 60/5 60/6 60/16
60/17 60/18 60/19 60/22 61/4 61/5
64/19 64/24 66/16 66/18 67/15 68/16
68/18 71/12 72/17 76/2 79/12 81/24
87/4 90/16 93/25 94/15 94/19 94/25
99/2 99/7 99/18 99/19 99/19 104/1

106/6 106/10 108/5 108/21 110/24
110/25 111/7 112/1 113/6 114/7
114/18 115/19 117/15 117/16 119/22
122/17 123/1 130/22 132/5 132/12
134/16 139/14 140/11 141/6 142/2
142/24 144/12 144/13 144/14 144/23
146/18 147/5 148/21 153/10 153/10
153/13 156/1 158/1 159/1 160/8 160/25
162/21 162/25 163/1 163/12 164/1
164/4 165/11 167/1 168/21 169/13
174/22 175/12 176/10 176/20 176/22
180/4 180/5 181/4 182/9 182/10 185/11
185/18 185/21 185/25 186/15 188/4
192/20 193/13 193/23 196/19 198/21
202/14 202/25 203/2 203/12 203/15
203/22 203/23 205/12 205/17 206/17
207/19 210/15 211/4 212/10 212/11
212/18 216/25 217/1

there's [46]  13/14 17/8 19/4 24/10 38/7
42/5 58/14 58/17 63/9 68/25 69/3 69/6
69/7 70/16 72/3 79/13 79/13 79/14 94/3
95/24 96/6 99/15 100/6 100/25 108/6
108/9 111/5 133/5 133/17 169/19
169/20 176/18 179/12 181/25 185/8
185/10 186/15 186/16 187/19 188/15
188/19 188/19 188/22 198/19 207/18
212/9

therefore [2]  88/11 89/6

these [35]  6/9 11/4 28/2 29/7 42/21
46/25 50/9 55/25 79/22 79/24 87/9
90/24 92/10 93/12 94/19 95/18 105/1
117/10 120/25 128/5 134/14 137/23
150/3 183/8 192/6 193/13 194/5 194/19
196/12 197/1 198/18 204/14 206/25
207/14 211/15

they [320]

they'll [1]  158/25

they're [36]  9/23 9/23 9/24 9/24 10/10
13/1 13/24 17/18 23/12 23/18 24/7 47/5
48/8 58/25 64/7 96/10 97/12 97/12
99/23 100/11 100/12 100/17 100/19
111/11 112/10 116/10 135/3 137/16
142/15 157/9 160/19 170/15 195/13
207/20 210/8 210/13

they've [6]  12/9 12/10 76/19 134/12
182/8 207/22

Thief [1]  78/11

thing [27]  5/18 12/3 12/9 12/10 96/24
97/8 97/10 100/16 114/6 133/1 138/21
139/5 151/21 159/16 168/10 183/7
186/11 190/24 195/4 195/6 201/11
204/13 205/10 205/14 206/19 207/24
219/2

things [59]  3/25 4/25 6/7 6/9 7/9 7/16
8/22 9/1 9/12 11/4 12/4 42/6 45/9 54/20
57/11 59/2 61/2 61/3 62/2 67/23 75/17
79/13 86/5 86/8 94/2 94/19 94/25 95/15
96/11 96/25 100/12 101/13 105/24
108/19 109/4 109/5 110/12 112/17
113/10 113/13 114/4 128/17 130/21
138/12 160/11 163/9 168/9 169/6
182/16 183/11 192/6 192/13 193/24
194/4 195/15 197/2 199/10 203/2
207/14

think [125]  4/5 5/2 6/15 6/18 6/19 6/20
6/25 10/6 10/6 10/8 10/25 13/2 14/2
15/10 16/22 19/23 21/14 23/7 28/17
35/4 36/17 39/4 40/8 41/22 43/9 43/12
43/24 45/15 46/14 48/25 49/22 50/2
50/6 50/7 50/19 51/7 58/19 60/10 62/3

63/18 63/19 64/13 64/23 65/2 66/9
67/7 67/24 80/6 75/3 80/10 81/7 81/9
81/20 81/22 81/24 81/25 82/12 93/24
95/1 96/4 96/12 98/12 99/21 101/18
102/16 107/23 107/25 113/13 113/20
113/21 114/23 115/8 117/2 120/9 127/8
127/16 137/3 141/20 159/13 160/16
165/8 167/15 167/22 170/21 170/22
176/6 176/8 179/8 181/22 181/24 182/6
182/6 182/25 183/7 183/18 185/10
185/14 185/15 185/17 186/4 186/5
186/11 186/18 187/8 187/12 187/23
187/23 187/25 188/18 188/19 190/2
190/25 191/1 194/20 195/10 198/19
198/24 200/2 200/3 207/1 207/17
210/12 211/19 212/11 219/2

thinking [2]  79/20 102/14

thinks [1]  64/13

third [4]  34/3 86/22 145/23 158/2

thirteen [5]  22/7 27/16 27/19 28/1 28/14

thirty [1]  95/7

this [377]

thorough [2]  145/2 145/18

those [94]  4/22 5/2 5/19 7/9 7/16 8/22
9/12 9/13 10/19 22/4 22/22 23/17 23/18
23/22 24/4 24/23 24/24 26/25 28/3 28/4
28/12 28/17 30/19 35/12 37/16 39/1
39/25 40/2 40/5 41/24 43/18 44/12
44/15 45/9 45/10 48/20 53/4 54/8 57/19
67/13 67/15 67/17 67/19 71/7 74/4 77/5
82/12 83/12 84/17 85/22 88/8 88/13
96/21 100/9 101/13 104/23 107/9
107/23 110/12 115/11 115/23 118/19
119/12 119/12 122/1 122/21 129/20
134/1 134/22 137/12 142/14 150/2
150/24 151/22 162/8 163/11 165/10
167/2 175/17 176/15 177/20 183/11
188/3 188/5 188/16 188/20 188/23
189/3 189/4 193/17 198/13 199/9
199/10 219/6

though [9]  8/16 25/14 32/23 130/3
130/22 172/5 180/25 209/4 216/23

thought [7]  24/8 38/7 63/15 66/14 130/8
183/21 219/4

thousand [1]  195/9

thousands [2]  191/6 195/13

threatening [1]  205/25

three [26]  5/16 6/24 12/21 18/20 19/13
22/2 22/7 22/9 22/13 41/10 41/16 72/23
89/20 137/15 137/23 144/23 147/3
147/21 152/12 163/5 164/23 197/10
197/17 213/21 214/13 218/14

threshold [2]  132/5 135/2

thriller [1]  74/7

Thrones [1]  74/19

through [55]  11/22 12/11 14/8 14/10
16/5 23/20 41/2 45/16 56/16 58/24
59/17 62/10 62/22 72/11 72/14 82/15
84/1 84/11 111/12 123/16 128/5 137/22
139/7 142/2 144/25 145/1 145/4 145/5
145/9 145/17 145/25 146/11 146/21
147/12 147/16 147/16 154/6 154/7
157/22 158/20 158/23 161/8 161/17
161/18 162/15 165/1 165/12 166/14
167/7 168/16 169/13 170/4 191/24
193/20 204/16

throughout [3]  140/24 141/1 158/1

throw [1]  75/24

thus [2]  213/14 214/5

ticket [2]  73/12 212/16

**T**

tickets [1]  112/19
time [103]  5/13 7/6 8/9 8/10 8/19 9/2 9/7
9/12 9/25 11/10 11/13 11/24 16/12
17/25 18/25 19/25 20/2 20/3 20/6 23/13
23/18 23/25 25/2 29/8 32/9 32/10 32/14
34/13 35/6 35/18 53/22 53/24 54/10
58/15 60/2 60/15 66/12 68/13 69/18
72/13 74/12 84/15 85/1 91/18 91/18
92/3 92/3 95/5 95/12 95/12 100/15
102/14 105/20 105/21 106/19 109/3
111/1 112/24 113/15 115/1 118/6
118/17 120/16 123/20 125/11 125/16
126/2 131/5 132/4 134/19 139/11
142/21 143/5 144/2 144/23 150/6
158/20 159/10 161/17 163/1 168/1
168/17 171/13 182/7 183/18 183/20
184/14 184/22 185/4 185/6 188/22
189/1 190/22 191/23 192/2 203/5 204/1
206/10 208/4 208/22 209/13 209/17
218/8
times [10]  92/10 117/19 157/9 157/11
157/17 158/7 164/23 179/7 195/7
204/16
timing [2]  10/1 118/8
Tinti [1]  78/11
tip [1]  87/24
title [4]  68/8 74/8 142/5 174/24
titled [1]  153/19
today [35]  3/22 4/10 9/20 10/7 10/8 10/9
10/11 10/20 26/19 26/24 27/7 27/13
30/4 30/9 32/2 32/24 34/20 35/6 35/7
35/23 35/25 50/11 84/7 116/9 125/9
126/7 144/18 196/3 202/22 208/15
215/25 216/4 216/6 216/20 217/2
today's [1]  142/4
together [1]  183/12
told [23]  6/6 86/23 94/16 110/5 110/12
123/20 123/24 124/10 124/16 126/1
135/15 137/17 138/6 141/21 189/6
196/16 197/6 198/10 199/6 199/8
203/10 206/3 207/14
Tolls [1]  41/18
tomorrow [3]  32/25 208/18 208/20
ton [2]  193/12 193/13
tongueitis [1]  131/13
too [9]  7/19 10/2 27/20 56/12 68/14 94/1
158/7 185/3 206/24
took [10]  39/16 55/22 72/1 72/12 72/12
84/18 141/16 176/21 216/8 219/4
tools [1]  89/15
top [4]  152/16 159/20 169/22 197/23
topic [1]  167/20
total [2]  211/9 214/17
totally [1]  52/2
touched [1]  80/11
touching [1]  90/14
toward [1]  46/11
towards [1]  149/21
towed [1]  45/8
track [1]  62/5
tracking [1]  175/22
traffic [3]  38/21 38/22 112/19
tragic [1]  192/6
train [1]  143/21
trained [2]  143/3 145/16
training [36]  2/18 39/9 39/12 44/2
137/22 143/17 143/23 144/25 145/1
145/2 145/5 145/9 145/13 145/14
145/14 145/17 145/19 145/21 145/22

145/23 146/7 146/12 154/5 157/21
158/2 158/25 158/25 159/12 160/12
161/18 162/15 162/18 163/1 163/22
168/19 204/16
transaction [5]  180/2 196/8 213/11 214/4
214/5
transcript [4]  1/11 1/21 88/25 218/17
transcription [1]  1/21
transfer [1]  142/1
transferred [2]  147/12 147/20
transfers [1]  59/2
transportation [1]  61/19
travel [1]  164/22
traveled [1]  26/24
traveling [1]  164/25
Travis [1]  26/23
treat [1]  86/17
treats [1]  164/11
trial [46]  1/11 3/9 6/9 14/5 20/1 20/5
22/1 26/5 32/19 33/13 35/22 35/24
52/18 52/23 63/11 83/4 84/11 85/7
85/17 86/1 88/17 88/23 89/8 89/8 91/2
91/5 91/18 92/2 92/12 93/8 101/23
119/20 122/3 131/9 184/18 198/25
208/12 210/20 212/22 216/1 217/10
217/12 217/23 218/3 219/6 219/11
trials [3]  142/16 165/3 165/6
tried [2]  80/7 104/9
tries [2]  119/4 216/14
trouble [10]  43/11 50/13 58/17 58/17
62/9 62/11 78/18 79/4 108/7 158/16
troubles [1]  195/10
true [18]  53/13 53/13 85/8 122/4 125/4
126/5 126/7 158/11 214/25 215/2 215/5
215/8 215/11 215/14 215/17 215/20
218/6 220/8
truth [2]  78/7 110/11
try [22]  8/25 11/16 13/24 32/6 43/12
46/13 54/19 56/13 69/18 90/11 92/8
94/9 94/10 99/12 100/11 100/17 105/17
108/11 134/21 170/19 190/23 191/10
trying [15]  8/25 15/24 49/16 94/23 95/19
96/15 96/23 99/25 115/8 129/6 130/22
139/5 160/13 194/18 196/20
TUESDAY [2]  1/12 31/24
turn [3]  100/22 143/14 186/23
twelve [1]  32/25
twelve-hour [1]  32/25
twenty [1]  21/21 41/17 53/24 77/1
twenty-minute [1]  41/17
twice [1]  200/13
twirps [1]  198/2
two [42]  7/5 7/9 7/16 8/22 12/6 12/16
23/11 32/6 32/19 32/22 33/1 33/8 55/3
74/2 87/4 117/6 118/17 145/14 145/17
150/4 158/1 161/6 163/4 165/4 165/9
167/2 168/9 168/21 168/21 169/6 169/9
182/22 185/18 187/19 188/1 193/24
194/4 203/7 203/23 209/2 210/22
218/13
two-week [3]  145/14 145/17 158/1
type [13]  20/23 48/9 58/9 58/10 75/16
108/19 111/21 126/4 160/17 163/8
193/10 193/18 194/23
types [1]  59/15 145/15
typewritten [1]  220/7
Typically [2]  35/17 170/14

**U**

U.S [1]  36/4

Uh [10]  58/8 76/24 113/1 113/17 116/22
123/2 123/6 166/19 212/1
Uh-huh [10]  58/8 76/24 113/1 113/17
116/22 123/3 123/25 159/21 166/19
212/1
ultimately [1]  98/15
um [2]  59/19 66/8
Um-hum [1]  66/8
unable [2]  52/21 53/14
unanimous [1]  209/9
unanswered [1]  91/24
unbiased [1]  43/13
unclear [1]  175/7
unconventional [1]  22/12
under [25]  10/1 12/24 15/19 17/21 70/5
85/11 86/13 88/25 89/2 131/10 135/9
142/24 143/15 168/14 168/14 168/15
168/20 174/24 179/24 185/7 188/1
201/2 211/8 217/15 219/4
underlying [2]  15/7 161/6
underpants [1]  74/3
understand [17]  12/12 15/20 15/21
22/25 29/2 32/9 65/1 81/18 92/17 93/13
107/24 109/23 116/10 160/8 182/5
182/7 182/14
understanding [7]  4/6 9/17 34/22 175/20
177/1 186/19 201/19
understands [1]  182/8
understood [1]  202/7
undisputed [2]  132/20 174/24
undue [2]  32/7 32/12
unduly [1]  91/13
unfair [1]  89/25
unfortunate [1]  10/7
Unfortunately [3]  94/15 95/3 162/13
unintentional [1]  193/7
union [3]  56/24 56/25 104/4
UNITED [3]  1/1 26/16 220/11
unless [6]  10/11 23/5 81/18 194/25
209/12 212/14
unlikely [1]  31/22 82/18
unnecessarily [1]  54/3
unobjected [2]  12/23 23/22
unopposed [1]  16/22
unresolved [1]  162/3
unresponded [3]  7/9 10/13 11/10
unresponded-to [2]  10/13 11/10
unsure [3]  57/24 125/9 177/5
until [19]  5/22 6/3 12/21 15/23 16/3
88/19 89/8 89/22 89/24 90/22 102/2
102/21 118/20 129/10 136/18 158/15
162/6 209/13 210/8
unusual [1]  31/21
unwilling [1]  52/22
up [71]  3/20 5/23 6/3 6/4 6/20 8/8 8/19
9/11 9/11 10/5 12/5 24/21 26/25 28/6
28/11 28/19 31/24 40/14 41/20 42/22
43/3 50/25 51/2 52/3 54/19 56/19 59/14
59/16 61/3 62/17 67/14 71/23 74/10
81/6 81/19 84/7 84/9 84/22 87/12 91/8
100/7 104/4 104/5 104/6 104/9 106/1
107/1 110/20 116/2 128/2 128/4 128/12
130/21 134/18 134/24 141/18 146/16
147/14 148/17 148/17 155/8 168/13
168/19 183/11 183/20 195/11 202/15
209/1 213/24 216/6 216/19
update [1]  154/8
updated [2]  145/15 160/25
updates [1]  163/10
upgrades [1]  163/11

**U**

upon [9]   12/8 24/20 34/23 80/11 91/19
131/25 147/22 157/10 166/17
urgent [1]   76/6
urging [1]   9/19
us [49]   5/4 8/17 17/25 19/1 19/24 20/4
20/7 21/18 23/7 27/21 50/8 55/17 57/8
58/23 59/1 59/9 60/1 63/3 71/22 79/10
79/11 79/15 79/15 82/18 93/25 94/11
94/22 102/22 103/25 118/9 126/1
130/22 140/20 141/8 142/9 145/4 149/9
152/19 154/1 160/19 161/24 165/10
170/16 170/16 183/10 183/21 189/6
189/8 212/7
use [14]   5/9 21/5 71/20 90/12 90/18
113/23 114/12 114/15 128/13 128/16
129/21 133/10 198/18
used [21]   20/8 50/25 58/20 59/3 59/20
84/7 84/9 133/4 134/8 137/4 143/20
143/23 162/12 173/11 173/12 175/10
192/16 192/19 192/22 192/23 200/12
uses [1]   98/14
using [4]   1/21 11/2 110/11 116/20
usually [3]   75/5 79/4 207/15
UT [1]   42/7

**V**

vacation [1]   217/18
vague [1]   170/19
validity [1]   15/7
value [1]   57/13
values [2]   156/11 168/21
variance [1]   75/25
variation [1]   16/3
variety [4]   21/15 40/24 75/15 75/19
various [3]   141/1 144/11 163/2
veniremen [1]   26/1
verbal [7]   67/18 146/20 153/15 164/5
164/7 164/11 218/21
verdict [36]   2/21 24/21 36/12 37/8 52/17
52/21 52/22 63/11 80/14 85/9 86/2
88/25 89/22 131/6 132/4 134/20 135/5
208/7 208/14 208/23 209/9 209/11
209/22 211/14 211/25 213/2 214/25
215/3 215/6 215/9 215/12 215/15
215/18 215/21 215/25 219/4
verification [2]   146/22 146/23
verified [1]   155/13
verify [2]   161/6 162/14
versed [1]   145/11
version [1]   182/1
versus [5]   3/8 26/4 27/15 164/25 213/8
very [66]   3/18 19/15 19/18 20/12 21/13
24/11 26/14 27/2 32/4 33/4 33/14 36/18
37/4 38/14 39/5 41/3 42/21 42/23
45/17 46/17 48/24 51/12 51/13 51/17
57/3 57/12 62/5 62/6 63/4 76/19 79/23
80/16 81/6 82/18 82/22 84/16 84/24
89/6 118/7 133/11 145/1 145/2 145/18
145/18 147/23 154/25 159/7 159/20
170/15 179/25 184/16 191/3 191/3
191/4 193/15 195/21 196/1 197/8
197/23 200/1 207/3 207/5 210/23 217/5
219/1 219/5
veterinary [1]   49/12
via [3]   146/19 146/20 153/8
vicariously [1]   62/19
views [3]   45/13 81/16 183/11
violate [2]   19/15 201/25
violated [4]   5/5 33/21 64/17 100/9

violation [23]   18/8 18/10 18/13 18/15
18/20 18/23 31/20 98/23 166/23 193/5
193/6 193/8 193/10 194/10 194/21
195/3 202/1 202/3 213/17 213/18 214/9
214/10 214/16
violations [1]   211/10
Virginia [3]   140/14 140/14 140/23
virtually [1]   20/25
visit [2]   41/17 90/17
Vista [2]   122/11 126/12
vital [1]   27/8
voice [2]   101/13 101/14
voir [8]   2/2 21/18 21/19 21/20 21/21
28/22 54/16 65/11

**W**

wait [4]   23/24 23/24 210/13 216/24
waiting [2]   120/1 209/3
waived [2]   24/5 59/2
waiving [1]   107/14
walk [4]   139/14 145/4 145/4 168/1
want [69]   3/25 6/10 26/19 27/12 29/10
33/15 34/23 35/9 35/21 50/6 53/1 54/10
59/8 63/2 63/9 65/14 71/21 73/1 79/3
83/6 83/24 94/7 96/5 98/17 99/22 99/23
102/14 107/22 109/23 115/4 116/13
116/14 120/19 126/6 130/16 136/2
137/6 139/1 151/21 153/17 159/23
160/17 160/22 163/17 175/20 180/17
185/2 185/18 185/20 189/10 190/24
192/7 195/6 195/11 197/2 203/20
205/10 206/15 208/16 208/18 208/19
209/16 212/15 216/5 216/9 216/15
216/18 216/21 218/21
wanted [13]   18/1 20/11 21/5 23/24 24/18
49/23 64/8 127/25 128/2 128/23 174/19
183/12 216/20
wanting [3]   117/9 195/9 212/14
wants [2]   181/15 218/13
warning [4]   189/9 189/10 189/11 204/21
was [444]
wasn't [17]   7/24 15/24 37/6 39/22 42/1
95/4 95/5 100/22 138/21 168/5 171/1
177/16 185/15 196/20 198/16 205/6
205/16
way [52]   7/13 10/22 10/23 19/21 22/4
27/16 27/17 29/11 42/11 42/17 45/18
46/1 50/3 51/7 56/24 57/6 59/17 60/4
60/17 63/12 67/9 68/14 72/3 72/17
72/18 74/9 78/7 80/5 81/23 81/24 84/1
88/19 104/24 110/16 130/17 135/5
148/1 161/17 164/19 166/11 171/23
181/9 181/10 181/18 181/21 182/10
183/7 185/24 186/14 203/3 208/19
218/7
ways [4]   33/22 146/17 146/18 160/12
we [258]
we'll [29]   11/23 22/4 22/7 24/14 25/20
25/23 33/17 40/14 82/23 84/23 130/24
135/18 136/9 151/25 170/19 174/9
183/9 183/9 183/14 183/16 183/23
188/24 188/25 208/19 210/14 210/17
212/3 217/13 218/19
we're [51]   4/1 10/20 10/25 11/1 11/1
22/1 22/1 23/8 23/25 23/25 27/14 31/4
38/8 42/22 48/23 94/9 94/10 95/22
100/16 101/17 110/10 110/11 118/10
119/18 130/19 130/23 135/15 136/10
136/16 136/19 145/15 145/16 145/6
151/20 154/2 159/2 159/13 159/20

160/13 161/23 174/4 174/7 175/23
181/22 193/22 196/3 205/1 209/3
210/12 212/17
we've [12]   14/9 19/2 54/20 56/2 62/8
72/12 94/11 166/12 167/11 169/11
190/22 210/22
weapons [1]   36/4
weather [2]   3/21 119/1
weather-related [1]   3/21
web [1]   75/5
websites [1]   94/25
week [9]   84/21 145/14 145/17 145/23
157/11 158/1 158/2 218/3 218/24
weekly [5]   163/1 163/5 163/6 163/8
163/20
weeks [12]   12/21 35/18 41/16 137/15
137/23 148/1 152/12 197/10 197/17
217/4 218/13 218/14
weight [3]   51/23 52/5 91/15
welcome [3]   26/19 84/10 93/23 164/21
212/17
well [62]   3/14 5/9 5/12 6/2 6/21 11/21
13/2 13/23 15/2 24/23 43/16 45/10
45/16 46/10 48/16 48/23 50/7 59/17
66/15 68/25 73/16 74/20 77/17 82/20
87/10 93/7 93/14 94/18 104/25 105/10
105/19 105/23 107/6 114/20 115/8
115/21 116/9 125/23 133/1 142/6
147/18 149/12 160/7 163/19 166/1
168/11 170/6 171/22 175/14 177/21
179/19 185/16 186/6 186/24 189/11
195/4 198/16 201/5 212/15 217/25
219/1 219/5
went [18]   60/5 63/12 71/25 72/11 81/10
94/14 94/22 94/24 95/14 104/3 104/4
104/9 104/10 105/23 106/18 128/21
171/10 204/16
were [154]   3/3 4/17 5/16 5/25 7/9 8/16
9/2 12/16 13/7 15/24 18/5 19/13 22/16
22/21 23/4 28/6 36/8 37/4 44/5 45/4
46/9 46/11 47/13 48/12 48/21 55/7 57/8
60/25 62/13 67/15 72/11 72/11 72/17
76/7 77/17 80/5 84/8 84/14 84/20 87/22
90/16 94/2 94/3 94/19 94/20 94/21 95/1
95/15 98/7 104/1 104/13 104/14 104/15
106/10 108/19 108/19 109/4 109/4
109/5 109/25 110/2 110/6 110/12
110/17 110/23 110/24 110/24 111/22
112/17 113/3 113/4 113/20 114/23
115/8 115/10 115/19 115/20 115/23
115/25 115/25 116/1 116/4 116/4 117/9
117/11 122/17 122/21 122/23 122/24
123/1 123/5 124/15 125/2 125/8 125/14
125/23 125/24 125/24 126/4 127/20
129/7 129/8 129/8 129/12 134/6 134/21
137/14 144/23 145/6 145/25 146/4
150/4 150/16 150/17 153/10 153/10
153/16 162/12 162/12 162/21 165/10
175/13 177/6 177/15 177/19 178/2
178/3 178/4 179/8 186/7 186/8 188/11
188/14 188/16 188/21 190/9 192/19
192/20 192/22 192/23 193/9 193/17
193/21 194/12 194/23 196/9 196/12
196/20 198/13 200/4 202/5 203/10
213/12 216/1
weren't [7]   48/12 60/24 77/16 83/25 94/1
114/22 137/11
WESTERN [8]   1/1 1/7 26/4 26/17 26/22
31/11 33/18 220/12
what [241]

# W

what's [12] 25/8 38/5 58/3 58/4 68/23 75/20 94/23 155/23 159/16 176/4 185/23 185/25
whatever [12] 29/13 41/23 45/12 50/10 98/17 106/7 136/21 164/10 175/22 177/11 189/10 196/22
whatsoever [5] 91/3 106/5 164/3 193/16 197/19
when [95] 6/4 8/10 10/2 11/3 24/20 33/24 34/4 34/8 39/20 50/24 51/1 62/7 62/10 64/21 66/9 66/14 76/13 86/12 89/24 94/10 94/15 97/10 97/11 97/14 99/4 100/8 100/14 100/24 104/13 106/8 106/8 106/16 106/20 107/4 108/18 109/11 109/15 109/17 109/18 109/18 109/19 109/21 114/17 114/20 115/12 116/12 116/23 117/3 117/5 117/12 124/25 129/1 129/13 136/10 138/24 140/5 141/20 144/24 147/5 148/7 148/8 148/10 148/24 150/15 151/10 153/9 155/11 168/11 168/23 170/14 170/18 171/20 183/25 186/11 188/11 191/21 191/23 192/1 193/23 194/13 197/22 198/6 198/9 199/2 199/2 199/9 200/21 202/16 207/2 207/22 208/6 213/17 214/9 216/23 218/3
whenever [3] 106/6 124/14 199/5
where [54] 4/15 6/7 11/6 36/6 42/8 44/5 46/11 56/18 61/3 61/14 63/7 64/9 66/18 66/22 68/6 71/4 71/8 71/16 77/3 95/12 101/19 112/16 123/23 127/24 132/13 133/18 133/19 133/20 133/22 140/12 146/13 155/5 155/6 155/17 156/1 156/2 159/1 159/2 159/24 160/2 160/8 161/7 161/10 167/19 168/8 168/9 168/12 169/6 175/2 175/19 179/7 182/15 200/12 205/25
Whereas [1] 52/6
Whereupon [26] 25/25 83/2 83/9 85/2 119/7 119/19 120/5 131/1 136/13 143/7 143/12 144/4 144/8 150/8 150/13 165/19 174/16 184/17 190/4 190/9 210/5 210/19 212/21 212/24 217/7 219/11
wherever [1] 59/22
whether [41] 6/14 8/19 8/20 9/3 12/11 14/3 14/4 15/9 15/13 17/16 18/1 24/6 28/7 32/7 35/11 37/19 39/7 39/25 40/15 41/4 43/5 43/17 44/22 47/7 49/5 51/14 51/16 85/23 91/7 100/9 110/12 110/24 125/9 131/9 181/1 203/12 205/17 208/13 210/8 210/13 214/25
which [94] 7/21 8/22 12/13 12/17 13/4 13/15 13/17 13/18 16/21 18/24 19/2 20/1 22/8 23/12 26/1 33/12 34/18 34/21 52/14 53/11 54/7 54/8 73/12 75/8 80/11 80/12 80/13 81/5 82/9 86/3 87/7 87/12 87/13 88/6 88/9 88/22 92/14 92/17 93/9 93/11 99/2 100/13 110/2 110/6 110/16 111/21 113/3 113/4 131/24 132/15 132/15 132/24 132/24 133/18 134/11 143/17 145/9 145/17 146/21 150/1 152/25 153/19 155/25 156/16 167/12 167/12 168/19 169/22 176/14 177/19 179/1 179/3 180/2 181/3 181/22 184/3 187/16 187/17 193/18 195/10 196/8 197/10 197/15 197/16 197/20 198/17 199/1 202/17 203/9 203/21 206/6 206/21 213/11 216/8

while [8] 34/5 92/7 95/22 119/2 148/4 180/24 185/16 188/8
whisper [1] 130/21
who [60] 5/5 5/13 8/4 20/8 26/25 28/4 28/4 28/14 28/17 28/20 29/18 29/24 30/17 31/1 31/24 31/25 35/13 37/16 48/25 50/9 51/15 51/20 53/5 53/14 53/18 56/8 57/19 57/21 61/21 65/16 65/21 65/22 68/1 73/9 83/13 83/25 84/14 84/18 88/8 95/9 95/17 106/20 110/16 124/15 126/10 129/7 129/8 129/11 132/22 137/25 138/6 146/8 146/8 148/11 148/15 149/6 157/10 192/6 198/22 209/18
whoever [1] 212/13
whole [8] 5/25 6/1 8/15 43/12 168/3 200/1 204/18 205/22
whom [2] 89/11 119/13
whoops [1] 100/15
why [27] 5/15 6/4 6/23 10/22 19/24 45/16 55/8 76/1 76/25 79/25 80/6 93/24 97/7 105/18 116/10 160/8 161/16 161/17 167/5 167/6 171/1 171/3 186/6 186/7 186/24 191/25 196/15
wide [2] 75/15 75/19
wife [6] 38/23 61/22 62/6 62/14 67/24 68/5
wife's [1] 67/25
will [151] 5/15 11/8 16/25 17/1 19/4 21/17 21/18 21/20 21/20 22/2 22/3 22/5 22/8 22/9 23/9 24/21 24/22 25/1 25/12 27/18 27/24 27/24 27/25 28/2 28/3 28/4 28/5 28/11 28/14 28/15 28/19 28/19 28/20 29/10 29/12 29/18 29/20 30/9 30/21 31/24 32/5 34/20 43/4 45/14 45/18 50/9 50/13 51/10 52/12 52/14 52/17 52/21 53/22 54/8 55/13 61/22 73/8 83/15 84/3 84/17 84/18 85/5 85/8 85/15 85/18 85/20 85/22 86/3 86/4 87/12 87/14 88/4 88/5 88/9 88/12 88/14 88/23 89/1 90/25 92/8 92/12 92/13 92/15 92/16 92/22 92/25 93/4 93/11 94/10 96/11 96/20 99/21 100/5 100/20 101/8 102/17 105/5 108/12 108/16 115/1 118/17 119/5 119/16 137/6 137/11 138/13 138/23 143/14 145/22 147/19 148/4 148/14 148/15 159/10 163/8 163/21 164/9 174/11 174/12 180/11 183/13 184/2 184/20 189/1 189/2 189/8 189/17 189/18 190/12 190/15 195/18 197/4 197/8 201/8 202/9 207/3 207/12 207/13 207/17 208/18 209/4 209/18 209/18 209/21 210/2 211/11 212/2 217/10 217/14 218/18 219/6
willfully [1] 34/8
willing [2] 52/17 57/18
willingness [1] 216/6
window [3] 76/19 76/23 202/15
windows [1] 163/13
winning [1] 84/7
wish [6] 11/2 30/2 60/16 60/19 62/23 85/1
withdraw [2] 22/13 22/22
withhold [1] 23/16
within [5] 118/13 148/2 154/13 157/23 210/11
without [9] 49/5 54/4 56/9 91/2 135/10 143/11 144/7 150/12 199/11
witness [29] 9/3 16/5 19/25 20/6 23/10

30/9 37/21 37/23 89/1 89/7 91/24 102/4 102/23 105/10 130/2
witness' [4] 52/1 52/2 87/14 89/4
witnesses [18] 2/8 30/7 31/3 51/23 51/24 52/4 86/4 87/12 87/13 87/15 90/3 90/22 92/22 92/25 93/2 93/10 130/10 172/16
woman [1] 46/12
won't [5] 17/6 84/2 96/7 148/21 209/1
wonder [1] 186/7
wondering [1] 180/25
word [5] 150/25 160/7 184/7 185/20 198/1
worded [1] 181/10
words [7] 88/15 98/13 160/12 167/14 181/12 192/15 193/7
work [42] 11/11 13/25 13/25 32/18 32/25 39/17 39/21 41/2 47/17 49/16 50/1 57/11 57/14 58/6 59/22 61/14 61/15 62/11 64/9 64/24 68/1 68/6 68/20 70/10 70/21 71/8 71/16 71/17 78/23 79/8 89/12 94/2 95/8 95/13 113/23 146/13 147/1 180/20 204/24 216/3 217/13 218/25
workable [1] 49/8
worked [10] 39/9 47/11 51/15 51/16 56/23 58/4 62/17 69/12 69/23 141/15
worker [2] 71/1 71/2
working [7] 39/12 41/11 60/25 62/18 110/6 113/14 163/4
works [3] 56/24 68/7 68/14
world [2] 42/12 141/2
worried [2] 63/2 73/13
worry [1] 81/17
worst [1] 205/24
worth [1] 195/13
would [241]
wouldn't [9] 6/5 61/6 82/24 84/8 96/5 130/23 177/4 181/20 212/6
write [5] 61/6 97/2 97/3 97/7 211/7
writers [1] 73/9
writing [5] 148/7 148/8 148/10 164/11 209/19
written [15] 34/1 88/25 139/7 146/18 146/19 148/19 149/21 153/19 154/8 161/16 177/7 177/14 185/24 209/10 209/17
wrong [7] 7/14 9/25 42/5 76/7 134/6 135/4 184/7
wrongful [2] 182/23 183/3
wrote [1] 7/17

# X

XX [1] 38/1
XXX [2] 36/23 83/22
XXXX [7] 36/3 39/16 45/21 46/23 71/21 78/1 83/23
XXXXX [45] 36/3 36/23 36/24 38/1 38/19 41/9 42/24 42/25 43/1 43/1 43/9 43/9 45/6 45/20 46/24 49/3 49/3 50/23 65/17 65/20 66/4 67/2 67/17 68/5 69/21 71/7 71/13 72/9 73/25 74/6 75/2 75/11 75/12 76/17 77/21 78/10 78/19 78/22 78/24 83/18 83/18 83/19 83/20 83/20 83/22
XXXXXX [21] 32/16 36/23 41/9 42/24 42/25 47/10 49/2 50/23 67/19 70/10

## X

XXXXXX... [11] 70/19 71/11 74/13 77/7
78/19 83/16 83/19 83/21 83/22 83/23
211/1
XXXXXXX [11] 32/16 45/21 46/23 46/24
49/2 72/24 76/3 76/4 83/17 83/21 211/1
XXXXXXXX [9] 38/19 39/16 45/6 45/21
47/10 67/23 68/19 74/16 74/17

## Y

y'all [3] 95/23 96/20 107/5
yeah [30] 10/2 14/6 47/1 57/15 59/10
61/7 61/23 74/17 81/2 102/16 107/17
108/14 109/10 111/8 113/13 117/4
118/3 120/8 135/18 136/8 160/1 179/11
182/7 183/23 187/8 199/1 211/2 211/18
217/22 218/1
year [4] 54/23 106/4 123/9 164/23
years [18] 35/19 36/5 38/21 39/17 41/10
44/4 49/9 55/3 55/18 60/11 77/1 94/13
95/7 113/2 113/21 165/4 165/6 165/9
yellow [2] 155/6 155/6
yes [170] 4/11 4/13 9/21 10/17 11/25
14/2 17/5 22/11 23/2 24/8 24/10 29/25
31/4 32/15 36/2 36/13 36/22 37/3 37/24
37/25 38/4 38/18 39/15 40/20 41/8 44/3
44/14 45/4 45/6 45/25 47/10 47/24
50/22 54/14 55/12 55/16 58/2 59/7
59/19 62/20 63/24 65/18 66/13 67/1
68/15 68/18 68/22 69/11 69/15 69/20
69/22 69/25 70/7 70/20 70/24 71/3
71/15 71/20 72/5 72/7 72/16 72/21 77/6
78/25 93/19 97/22 102/5 102/13 104/3
108/2 109/7 110/18 111/5 111/8 111/23
112/2 112/12 113/9 114/3 114/8 115/18
115/22 115/25 116/7 116/17 120/12
122/12 122/20 122/23 123/10 123/12
123/19 124/22 124/23 125/3 125/7
126/24 127/8 127/14 129/3 129/19
135/21 140/7 142/22 142/25 143/4
143/19 143/23 144/14 146/25 147/8
150/20 151/9 151/19 152/2 152/18
153/4 153/22 155/13 155/18 155/20
156/8 156/15 156/21 156/24 157/6
157/24 158/10 159/21 161/2 161/4
161/12 162/9 162/17 162/19 163/15
163/20 170/25 171/9 172/20 172/22
173/1 173/4 176/2 178/17 178/22 179/6
182/8 183/24 184/10 187/7 189/13
189/18 189/25 205/12 211/23 213/3
213/14 213/21 214/6 214/12 214/22
215/4 215/7 215/10 215/13 215/16
215/19 215/22 217/24
yesterday [4] 3/21 94/3 129/10 129/11
yet [4] 27/20 56/2 66/11 80/11
you [1256]
you'd [2] 130/10 139/13
you'll [8] 100/8 139/14 183/10 189/11
191/2 194/20 197/23 202/12
you're [52] 8/3 8/10 10/11 47/2 70/23
71/13 84/10 84/12 85/19 87/2 94/4
97/10 100/21 101/2 101/2 101/19
116/15 118/19 118/21 119/3 137/3
137/9 137/18 137/21 137/25 138/5
138/8 138/18 139/2 139/17 140/12
158/17 159/6 159/7 163/3 164/21
164/25 166/20 166/24 167/22 168/4
170/21 183/18 185/4 188/10 197/21
201/10 207/15 208/14 210/10 212/14
212/17

you've [26] 4/7 6/16 35/4 48/13 57/16
79/10 79/18 81/8 84/8 85/6 90/13
90/22 91/4 118/9 126/7 138/4 167/11
168/2 189/5 190/6 192/9 193/3 209/2
209/9 216/4 217/2
young [2] 74/2 123/11
your [382]
yours [2] 94/3 155/4
yourself [3] 30/22 60/6 71/25

## Z

Zambrano [1] 209/23
zero [3] 133/5 176/19 192/21
ZIMMER [14] 1/15 3/13 20/13 26/10
30/3 30/17 164/15 189/15 190/15 202/4
202/6 205/21 208/1 212/13