UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES, | § | |
| | § | |
| PLAINTIFF | § | CASE NUMBER: 1:16-cv-00572-RP |
| | § | |
| v. | § | |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, and WESTERN SURETY CO., | § § | Honorable Robert Pitman |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR NEW TRIAL

Now comes Plaintiff, Jean Jones ("Plaintiff" or "Jones"), by and through her attorneys, and for her Response to Defendant's Motion for New Trial states as follows:

## INTRODUCTION

Plaintiff brought this action against Portfolio Recovery Associates, LLC and Western Surety Co. (together "Defendants") under the Federal Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Practices Act ("TDCPA") alleging that Defendants failed to report a debt as disputed and respond to Plaintiff's dispute, as required by the respective statutes. Dkt. #1, Plaintiff's Complaint, ¶ 1, 22.  On August 29, 2017, this case went to trial by jury. The jury found in favor of Plaintiff and awarded her $61,000.00 in statutory damages: $1,000.00 for her FDCPA claim, and $60,000.00 for her TDCPA claim.  Dkt. #83, Jury Verdict Form. Defendants now bring a Motion for a New Trial ("Motion") alleging the jury's verdict was excessive; against the great weight of the evidence; and fueled by passion and prejudice.

## **LEGAL STANDARD**

"The decision to grant a new trial under Rule 59 rests soundly within the discretion of the district court." *McKissack v. Wal-Mart Stores, Inc.*, 2004 WL 212930 at *4 (W.D. Tex. 2004). "To be entitled to a new trial, [a party] must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence." *Opportunity Aviation, LLC v. Flight Options, LLC*, 2008 WL 113339997 at *2 (W.D. Tex. Nov. 25, 2008). A jury's verdict "must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Id.* (citations omitted).

### **The Jury's Verdict Was Not Against the Great Weight of the Evidence.**

"[W]hen a motion for a new trial is based on evidentiary grounds, the court should not grant a new trial unless 'the verdict is against the great weight of the evidence.'" *McKissack v. Wal-Mart Stores, Inc.*, 2004 WL 212930 at *5 (W.D. Tex. 2004) (citations omitted). "[A] judgment should not be set aside except for substantial reasons." *Id.* at *4 (citations omitted). Generally, the Fifth Circuit "favors the jury verdict and requires that the verdict stand on a motion for new trial." *Id.*

Defendant has failed to show that the jury's verdict was against the great weight of the evidence. Defendant repetitiously argues that Plaintiff did not prove that the "alleged debt" was a consumer debt under the FDCPA and the TDCPA. *See* Dkt. #90, Defendants' Motion for New Trial. Defendant claims that Plaintiff's testimony that she had never incurred a debt in relation to any business, tax, or ticket fines was not enough to show that it was a consumer debt. Dkt. #90, Exhibit A, Trial Transcript, at 112:16-23. Plaintiff also testified that she never made any charges that were not related to her person or her household in the ten years prior to 2015. *Id.* at 113:2-6.

The crux of a jury's role involves "credibility determinations and the resolution of disputed facts." *Hardy v. Wal-Mart Stores, Inc.*, 2000 WL 1701826 at *1 (5th Cir. 2000). The reasonable jury would – and did -- infer from the testimony at trial that Plaintiff was credible, and that the debt she incurred was for personal or household reasons. Dkt. #90, Exhibit A at 113:2-6. This inference is especially justifiable given that Defendant's witness provided no testimony whatsoever that Plaintiff's debt was <u>not</u> incurred for personal or household reasons. The jury's finding that Plaintiff's debt was a consumer debt is not against the "great weight" of the evidence. Defendant seems to imply that merely because Plaintiff did not recite the purpose behind every single transaction she made, she did not prove her case. However, this implication is impractical and unsupported by case law. The jury's verdict should stand.

**Defendant's Failure to Object to the TDCPA Portion of the Jury Instructions Resulted in a Waiver.**

Defendants argue that submitting the TDCPA claim to the jury was improper because Plaintiff did not seek actual damages and her admission read into the record stated that she did not suffer actual damages. Defendants cite to various case law in their Motion stating that actual damages are necessary in order to have standing under the TDCPA. Even assuming, *arguendo*, that this is true, Defendants do not account at all for Plaintiff's testimony about her mental anguish resulting from Defendants' actions. "Actual damages are those damages recoverable under common law, such as direct or consequential damages. *Tejero v. Portfolio Recovery Associates, LLC*, 2017 WL 3217101 at *4 (W.D. Tex. July 27, 2017). "Under Texas law, mental anguish is a form of actual damages." *Id.* Plaintiff did indeed suffer actual damages in this case, as she testified to being "nervous" and confused for many months as a result of Defendants' actions. Dkt. #90, Exhibit A at 116:8-11. Defendants offered no evidence supporting their

specious assertion Plaintiff did not suffer mental anguish. Therefore, Plaintiff did suffer actual damages in this case, and Defendants' argument must fail.

### Defendant's failure to object to the jury instructions bars their objections to the TDCA damages as calculated by the jury.

Defendants do not mention the copious amounts of case law holding that a failure to object to jury instructions results in a waiver of the objection. *Burdis v. Texas & P. Ry. Co.*, 569 F.2d 320, 324 (5th Cir. 1978); *see also SJD-CC, LLC v. Marsh USA, Inc.*, 2010 WL 1489723 at *1 (E.D. L.A. Apr. 13, 2010) ("Failure to object at trial to jury instructions results in a waiver of objections to such instructions."); *Idom v. Natchez-Adams School District*, 178 F. Supp.3d 426, 436 (S.D. Miss. 2016) ("Failing to timely object to a jury instruction 'until after the verdict had been returned and the jury had been discharged' [waives objections] to any alleged error with the instruction.") (quoting *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir. 1987)).

Defendants cannot now assert that submitting the TDCPA damages issue to the jury was improper and prejudicial. Defendants' counsel did not object to this particular portion of the instructions at trial, nor made any argument about the properness of submitting the TDCPA claim at all when she presented her motion for directed verdict. Dkt. #90, Exhibit A at 131-135, 180-189. Therefore, due to the failure of Defendants to object to these jury instructions at trial, Defendants waived this issue and their Motion should be denied on this issue.

Additionally, Defendants argue that the jury charge should have "included an interrogatory to determine the number of supposed violations of the TDCPA that occurred." Dkt. #90, Def. Mtn., pg. 11. However, for the same reasons above, Defendants' claim is unsuccessful. The proper venue to object to the jury instructions was at trial, not in a post-trial motion.

**Jury's Verdict Was Not Excessive, and Was Not Fueled by Passion or Prejudice.**

Defendant also argues that the jury's verdict was excessive because it was fueled by passion and prejudice due to Plaintiff's counsel's allegedly improper closing argument. They allege that plaintiff's counsel's reference to the respective financial statuses of both parties was prejudicial to Defendants. Plainly, Defendants' argument is a stretch. First, Defendants are precluded from even bringing this argument in the first place. If a party does not object to an opposing counsel's improper closing argument, the argument is considered waived upon review. *See Nissho-Iwal Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988). Here, Defendants' counsel did not object at all during Plaintiff's closing argument.  Dkt. #90, Exhibit A at 190-95.  It is well-settled in the Fifth Circuit that issues of reversible error, such as an improper jury verdict based on prejudicial closing remarks, must be objected to at trial in order to be preserved. *Uhl v. Echols Transfer Co.*, 238 F.2d 760, 765 (5th Cir. 1956) ("We understand the general rule to be that the remarks of counsel to the jury on the merits, to constitute reversible error, *must be objected to at the time*. . .) (quoting *Alabama G.S. Ry. Co. v. Carroll*, 84 F. 772, 784 (5th Cir. 1898)) (emphasis added). Defendants' argument must fail on their lack of objection alone. If Plaintiff's counsel closing was so improper and erroneous that it should constitute the granting of a new trial, Defendants should have objected at trial.

Further, Defendants attempt to rely on case law that is so far attenuated from the circumstances here to rightfully apply.  Defendants first cite to *Edwards*.  There, the Fifth Circuit found that counsel's closing argument at a wrongful death trial was "grossly improper and prejudicial." *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 284-85 (5th Cir. 1975). The court stated that this was due to counsel's 1) injecting evidence into his argument that had not been brought out at trial, 2) estimating what his own son might value his life at, 3) invoking his

5

own personal connection to the deceased victim, 4) evoking the image of the deceased children crying at the funeral and asking when their father would return, and 5) asking for retributive payments from the defendants. *Id.* at 285. It is obvious that counsel's actions there are far removed from counsel's actions in the instant case. Plaintiff's counsel did not inject new evidence during closing, insert himself into the argument, or evoke heart-wrenching imagery in the jury's minds such as what happened in *Edwards*. It is difficult to logically equate a David and Goliath reference and a passing acknowledgement of Defendants' financial status to counsel's actions in *Edwards*. This argument must fail.

  Next, Defendant mentions *Foster*, where the Third Circuit found that plaintiff's counsel closing remarks were improper and granted a new trial to the defendant. *Foster v. Crawford Shipping Co., Ltd.*, 496 F.2d 788, 792 (3rd Cir. 1974). There, plaintiff's counsel played heavily on the financial status of the defendant company, implying to the jury that it could have afforded to present a better witness; should pay for the victim's injuries so he would not be a burden on taxpayers; and implied the defendant's prestige due to its foreign ownership. *Id.* This is not parallel with Plaintiff's counsel's remarks in the instant case. Counsel made mere passing references to Defendants' financial status. He briefly mentioned that Defendants had "can afford a couple of grand [i.e. $2000]." Dkt. #90, Exhibit A at 195:14-15. Further, upon reading the record as a whole, counsel's references to Plaintiff as "poor" were not in the context of her finances at all, but rather her state of being wronged by the Defendants. *Id.* at 191:7, 194:18. Plaintiff's counsel framed his closing argument morally, not financially. Therefore the instant case is not on par with *Foster*.

  Further, Defendant's reliance on *Koufakis* must also fail. There, counsel made multiple references to the defendant's wealth at various junctures during trial. *Koufakis v. Carvel*, 425

F.2d 892, 902 (2nd Cir. 1970). Counsel made multiple references to the defendant as a millionaire and even asked a witness upon cross-examination if he had been to "all" of the defendant's houses. *Id.* The court ultimately said that statements like these could be grounds for a new trial. *Id.* However, the court relied on other legitimately prejudicial errors made by counsel -- including analogizing the defendant to a Mafia boss, injecting evidence into closing that had not been presented during trial, and overly commenting on the defendant's failure to testify, among other errors. *Id.* at 901-04. Here, again, counsel's behavior here is not anywhere near similar to counsel's behavior in *Koufakis*. Counsel made an oblique reference to Defendant's stature as a large corporation once, during closing argument, as part of a moral argument about how Defendant harmed the Plaintiff while she was grieving from the loss of her husband and children. Nowhere else during trial did counsel bring up the financial differences between the parties. Mere mention of financial differences of parties during closing argument is not automatically prejudicial to justify a new trial. *See Domeracki v. Humble Oil & Refining Co.*, 312 F.Supp. 374, 377 (E.D. Penn. 1970).

Addtionally, *Koufakis* is easily distinguishable as here, it was Defendant PRA's corporate witness who, in direct response to her counsel's questioning, referred to the great success and size of Defendant.

The last argument that Defendants make is that the jury had to have been influenced by passion and prejudice because of the size of the jury verdict. Defendants rely on *Westbrook* in their argument, but do so in error. In *Westbrook*, the plaintiff was suing a tire company due to the company's tires going out on a truck that the man was driving. *Id.* Although the plaintiff's physical injuries had healed and had now only suffered from discomfort, the jury awarded him $925,000 in emotional distress and/or punitive damages. *Id.* The court stated that the verdict

likely stemmed from plaintiff's counsel making a "community conscience" argument to the jury, framing an "us-against-them" ideology against the foreign corporation defendant. *Id.* The court remanded the case to trial as to damages, finding the jury was influenced by passion and prejudice. *Id.* Here, Defendants cannot assert conclusory arguments that the jury must have been influenced by passion and prejudice because of the verdict. The $925,000 verdict in *Westbrook* is nowhere near the $60,000 statutory damages verdict awarded here.[12] Plaintiff's counsel did not make any sort of "community conscience" appeal to the jury here unlike counsel in *Westbrook*. An award of statutory damages – as the jury gave Plaintiff here -- should not be confused with an award of punitive damages which might merit scrutiny for excessiveness.  The TDCA provides for statutory damages of not less than $100.00; and there is no maximum limit on statutory damages in the TDCA.  TDCA § 392.403(e).  There is no case law cited by Defendant supporting a limitation on statutory damages that is not found anywhere in the statute itself.  The cases cited by Defendant all apply to limitations on punitive damages, not statutory damages.  In fact, the jury instructions do not show any question submitted on the issue of punitive damages.

Furthermore, The Supreme Court long ago declared that damages awarded pursuant to a statute violate due process only if they are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." St. Louis, I. M. & S. Ry. Co. v.

---

[1] Additionally, Defendants cite to the Fifth Circuit's ruling in *Worsham* where a district judge found a $400,000 jury verdict to be excessive in a wrongful termination case, where the duration of the termination was only one month. *See Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989).  Here, the Defendant failed to report Plaintiff's debt as disputed repeatedly over the course of several months and even after being sued, Defendant still did not correct its violation.  A $60,000.00 judgment in the instant case is not excessive compared to a verdict of $400,000.00.
[2] Defendants also cite to *Capitol Records, Inc.* where a judge found a $1.92 million dollar verdict excessive. *Capitol Records, Inc. v. Thomas-Rasset*, 680 F.Supp.2d 1045 (D. Minn. 2010).  The instant verdict does not compare by scale alone, nor is there any factual similarity to the instant case – *Capitol* dealt with large-scale intellectual property theft; this case is about a debt collector abusing a grieving consumer.

Williams, 251 U.S. 63, 67, 40 S.Ct. 71, 64 L.Ed. 139 (1919).  And, the Supreme Court has never held that the "punitive damages guideposts" are applicable in the context of statutory damages. See *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 586-88 (6th Cir. 2007).

Due process prohibits excessive punitive damages because "`[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.'" *Campbell*, 538 U.S. at 417, 123 S.Ct. 1513 (quoting *Bmw of N. Am. v. Gore*, 517 U.S. at 574, 116 S.Ct. 1589).  This concern about fair notice does not apply to statutory damages, because the authorizing statute gives notice.  And, the punitive damages guideposts would be absurd if applied to statutory damages.  "It makes no sense to consider the disparity between "actual harm" and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012)

All in all, Plaintiff's closing argument was not prejudicial.  The jury's verdict granting an award of statutory damages (not punitive damages) was not excessive.  And, the jury award was neither fueled by passion nor prejudice – just the evidence presented.

### Defendants Are Not Entitled To Remittur

Due to the aforementioned reasons, Defendants are also not entitled to Remittur. The amount awarded in statutory damages– authorized by the FDCPA and TDCA -- is not excessive. The jury instructions and interrogatories did not contemplate that Plaintiff was requesting actual damages under either the FDCPA or the TDCPA. Defendant should have objected to the inclusion of the TDCPA jury charges at trial.  However, because they did not, their objections should be waived and the jury's verdict should not be disturbed.

## **CONCLUSION**

For the above-mentioned reasons, Plaintiff respectfully requests that this court deny Defendants' Motion for New Trial, and uphold the jury's verdict.

Respectfully submitted,

By: ___/s/ *Robert Zimmer*

Robert Zimmer
**Zimmer & Associates**
707 West 10th Street
Austin, TX  78701
Phone: (512) 434-0306
Fax: (310) 943-6954
zimmerlawTX@gmail.com

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
University Park
3300 N. Interstate Hwy 35, Suite 7018
7th Floor
Austin, TX 78722
Phone: (512) 524-9352
Fax: (512) 593-5976
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

Amy Beth Clark, Esq.
**Amy Clark Law**
11801 Domain Blvd.
3rd Floor
Austin, Texas 78758
Phone / Fax: 512-850-5290

ATTORNEYS FOR PLAINTIFF