# EXHIBIT F

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES, | § | |
| | § | |
| PLAINTIFF | § | CASE NUMBER: 1:16-cv-00572-RP |
| | § | |
| v. | § | |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | Honorable Robert Pittman |
| LLC, and WESTERN SURETY CO., | § | |
| | § | |
| DEFENDANTS. | § | |

## DECLARATION OF DANIEL BROWN

Daniel Brown, being first duly sworn on oath, deposes and states as follows:

1. I am appellate counsel for Jean Jones, plaintiff in the above-captioned case.

2. I represented Jones in connection with her appeal to the Fifth Circuit Court of Appeals of this Court's order granting Defendants' motion for judgment as a matter of law.

3. I have been admitted to the practice of law in the State of Illinois since October 2009.

4. I am admitted to practice in the United States District Courts for the Northern District of Illinois.

5. I am also admitted to practice in the Seventh Circuit Court of Appeals, the Fifth Circuit Court of Appeals, and the Ninth Circuit Court of Appeals.

6. I am a member of the Trial Bar of the United States District Court for the Northern District of Illinois since 2017.

7. I am a member of the National Association of Consumer Advocates since 2016.

8.      I graduated from Harvard Law School *cum laude* in 2009. Thereafter I worked as an associate in the bankruptcy group at Kirkland & Ellis, LLP. While at Kirkland I primarily represented debtors in large chapter 11 reorganizations. By 2011, my hourly rate was over $480. I left Kirkland in October 2011 and joined the bankruptcy department at Baker & McKenzie, LLP, also as an associate. At Baker, I represented various types of creditors in chapter 7 and chapter 11 cases, as well as smaller debtors in chapter 11.

9.      In March 2012, I left Baker to start my own firm, Brown Legal Advisors, LLC. At this firm, I represented (a) distressed debt investors in chapter 7 and chapter 11 proceedings around the country, (b) chapter 11 debtors in bankruptcy cases and related litigation, and (c) chapter 7 trustees in contested creditor litigation. I also provided consulting services to investment firms for investment opportunities that involved litigation and potential bankruptcy proceedings. In addition, I served as the trustee of a litigation trust established for the benefit of bankruptcy creditors in the case of *In re Imperial Capital Bancorp, Inc.* Case No. 09-bk-19431 (Bankr. S.D. Cal.).

10.     In August 2012, in the case of *In re Imperial Capital Bancorp, Inc.*, 09-bk-19431, my 2012 hourly rate of $400 was approved by the U.S. Bankruptcy Court for the Southern District of California.

11.     In September 2014, in the case of *In re FirstFed Financial Corp.*, 2:10-bk-12927, my 2012 hourly rate of $400 was approved by the U.S. Bankruptcy Court for the Central District of California.

12.     In October 2013, in the case of *In re AmericanWest Bancorporation*, 10-nk-06097, my 2013 hour rate of $450 was approved by the U.S. Bankruptcy Court for the Eastern District of Washington.

13. While running Brown Legal Advisors, my regular hourly rate in 2012 was $400, which clients routinely paid. In 2013 I increased my hourly rate to $450, which clients routinely paid in 2013 and 2014.

14. I have previously billed and been paid by clients for appellate work at an hourly rate of $450.

15. In January 2015 I left Brown Legal Advisors and started a new firm focused on consumer protection litigation, now called Main Street Attorney, LLC.

16. I have substantial experience in federal court litigation, financial litigation, bankruptcy litigation, FDCPA litigation, mortgage fraud litigation, and other consumer fraud litigation involving the banking and financial sector, which are the main focus of my practice.

17. When I started Main Street Attorney, LLC, I reduced by hourly rate to $425 to reflect my transition from representing chapter 11 debtors, trustees, and investors to representing consumers.

18. At all relevant times, my hourly rate for federal court litigation and federal appellate litigation was $425.

19. In 2018, my hourly rate of $425 was approved in *Bishop-Lillegard v. Unifund CCR, LLC, et al.*, Case No. 16-cv-8075 (N.D. Ill.).

20. My hourly rate of $425 is less than the median rate charged by consumer law attorneys in Chicago, Illinois with similar experience, as reported in the United States Consumer Law Attorney Fee Survey Report 2015-2016 for Chicago, Illinois, available online at https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf (last accessed March 24, 2020).

21. My hourly rate of $425 is less than the median rate charged by consumer law attorneys in Austin, Texas with similar experience, as reported in the United States Consumer Law Attorney Fee Survey Report 2015-2016 for Austin, Texas, available online at https://www.nclc.org/images/pdf/litigation/tools/atty-fee-survey-2015-2016.pdf (last accessed March 24, 2020).

22. As reflected in the attached time records, I wrote off 5.9 hours of time spent on clerical tasks such as formatting the table of contents and table of authorities for the appellate briefing, preparing and filing my appearance in the appellate case, and filing other documents.

23. In addition, I exercised my billing judgment and did not bill for approximate 5 additional hours of time spent on this case because such time was unproductive (i.e., dead-end research); redundant (reviewing arguments made in prior briefing); or otherwise non-billable (i.e., emails about dates, deadlines, and scheduling, and time spent drafting administrative portions of the brief, such as the caption or certificates of compliance).

24. All time billed for conferring with Plaintiff's other attorneys was purely spent discussing legal strategy and tactics. I did not bill for any time conferring about administrative items or non-billable matters or tasks.

25. I came into this case solely as appellate counsel. I was brought onto the team because of my skills and experience with federal appeals, as well as my background in complex and high-stakes financial litigation. Me joining the ensured that no attorneys were "learning on the job" and that Plaintiff's appeal had the highest likelihood of success.

26. I did not duplicate the efforts of any other attorney on this case. Instead, I drew from the robust record that litigation and trial counsel had created to provide a clear picture to the Fifth Circuit Court regarding the jury's verdict in this case. I also adopted a novel strategy based

on the district court's rulings and the factual and legal issues that I believed would persuade the Fifth Circuit Court and that I believed were not adequately addressed in the district court proceedings.

27.     Trial counsel and litigation counsel assisted in this endeavor by answering specific questions about the underlying proceedings and the district court's disposition, identifying key documents without making me scour the record, and providing edits and comments to clarify and improve the draft briefing. In my opinion, none of this work was redundant, duplicative, or excessive. Even if trial or litigation counsel had handled the appeal, I believe they would have expended similar time to complete these tasks.

28.     The attached time and work records are true and correct copies of my time and billing records in this matter.

Pursuant to 28 U.S.C. § 1746(2), I, Daniel Brown, hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: April 6, 2020          /s/ *Daniel Brown*
                                              Daniel Brown