IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES<br>　*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Case No. 1:16-cv-00572-RP |
| PORTFOLIO RECOVERY ASSOCIATES,<br>LLC and WESTERN SURETY COMPANY<br>　*Defendant.* | §<br>§<br>§<br>§ | |

## DEFENDANT PORTFOLIO RECOVERY ASSOCIATE, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

COMES NOW, Defendant Portfolio Recovery Associates, LLC ("PRA") and files its Response to Plaintiff's Motion for Attorneys' Fees:

## INTRODUCTION

1. Plaintiff has requested $106,101.50 in attorneys' fees. Due to block billing, interoffice communications, improper billing for paralegal work and rates show the fees requested are excessive. Accordingly, this Court should only award $26,041.00 for the reasons stated herein.

## ARGUMENT AND AUTHORITIES

**A.　Standard of Law in Calculating Fees.**

2. The Court must determine the reasonableness of the attorney's fees sought. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To do so, the Court must employ a three-part analysis. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1092 (5th Cir. 1982). First, the Court determines the nature and extent of services provided. *Id*. As such, the Court determines "whether the attorneys demonstrated adequate billing judgment by '[w]riting off unproductive, excessive or redundant hours.'" *Jones v. White*, 2007 WL 2427976, at *2 (S.D. Tex. Aug. 22, 2007).

3. In the second step the Court sets a value on the "services according to the customary fee and quality of the legal work[.]" *Copper Liquor*, 684 F.2d at 1092. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000). An Here, the Court computes the results of steps one and two into the "lodestar" amount, i.e., multiply the reasonable hours spent by the reasonable rate. *Copper Liquor*, 684 F.2d at 1092-93.

4. In the third step the Court adjusts the calculation using the *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). factors. *Copper Liquor*, 684 F.2d at 1092.

**B.     Plaintiff's Attorneys Have Failed to Demonstrate Adequate Billing Judgment.**

5. In step one, the court must ensure proper "billing judgment" was used when calculating the hours reasonably spent by counsel seeking fees. *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). Billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). To analyze "billing judgment", specific tasks are examined to see if they are properly chargeable. *Id.* Next, the court examines the hours expended per task to determine reasonableness. *Id.*

6. Plaintiff's counsel presents scant evidence for "billing judgment". Their Motion cites 32 hours written off (Doc. 108 at 3) but gives no explanation as to what. Neither the court nor experts opining on the fee request can determine if billing judgment was used. "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson*, 488 F.2d at 717. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Id*. Numerous entries for excessive time, clerical tasks, paralegal tasks, and interoffice

communications show a complete disregard of billing judgment, something Plaintiff's experts failed to address. As such, PRA proposes the court reduce any overall fee calculation by 20%.

### 1. Plaintiff should not recover for interoffice communications

7. Plaintiff seeks $6,891.90 in fees for interoffice communications with scant reason. Ex. C. Some courts have flat out ruled "[h]ours for intra-office communications are not appropriate billable charges." *Jolivette v. Colvin*, 2015 WL 338970, at *1 (W.D. La. Jan. 23, 2015), *aff'd*, 615 F. App'x 201 (5th Cir. 2015). Others hold "[t]hese types of billings are disfavored, and are subjected to close scrutiny to prevent abuse." *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1269 (S.D. Ala. 2013). This case demonstrates why such billing is disfavored.

8. "[C]ourts have tended to reduce fee awards for an inordinate number of interoffice conferences, or when more than one attorney bills for the same conference." *In re Pape*, 2014 WL 2567443, at *4 (Bankr. S.D. Tex. June 6, 2014). "[E]ntries indicating a conference—whether intraoffice or otherwise—must include sufficient information to permit the court to evaluate the necessity of the service provided, the reasonableness of the time spent on the service, and the reasonableness of the fee charged for the service—including the need for a conference." *In re Office Prod. of Am., Inc.*, 136 B.R. 964, 976 (Bankr. W.D. Tex. 1992). Also, "[t]he district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).

9. Abuse is prevalent in this case. None of the billing entries for conferences indicate why the conference is necessary or reasonable. Ex. C. Most of the "conferences" are relatively short, rebutting the necessity to the case. More egregious is the numerous times multiple attorneys bill for the same conference as shown by Ex. C. There are problems with the longer conferences as well. The longer ones, such as the ones on January 7, 2019, February 19, 2019, and February 20,

2019 should be specifically denied. *Id.* Each of these entries contain zero substance as to the events that actually occurred during these "conferences" or why multiple conferences were needed.

10. Interestingly, February 19, 2019, Wood and Chatman billed 1.3 hours for a call with Zimmer and Brown, but Zimmer billed only one hour (Brown had no entry). On February 20, 2019, Wood and Chatman conferred with Brown billing one hour, but Brown only billed .4. <u>Ex. C</u>. This calls into question the accuracy and reliability of their billing records.

11. Plaintiff presents no rationale for the necessity or benefit for any of these interoffice communications. It is hard to imagine counsel asking their client to pay for these, yet asks PRA should be forced to do so. Any award should be reduced by $6,891.90.

<u>2. Plaintiff cannot recover for paralegal and clerical work at attorneys' rates</u>

12. Jones' attorney's records contain numerous instances of attorneys billing for paralegal and clerical tasks. The Supreme Court has held that legal and non-legal work must be distinguished and just because a lawyer does it does not enhance the value of nonlegal work. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) Consequently, a fee applicant cannot recover an attorney rate for paralegal work. Plaintiff's counsel seeks $2,765.30 for paralegal tasks done by attorneys. <u>Ex. D</u>. $2,244.50 billed by Chatman was purely for drafting discovery responses, while the remaining $520.80 was billed by Wood for reviewing and finalizing the discovery responses. *Id.* PRA requests this Court deny the $2,440.50 requested and impose a 10% penalty to their overall award.

13. "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. at 288 n. 10. Paralegal fees can be recovered "only to the extent that the paralegal performs work traditionally done by an attorney." *Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir. 1982). Likewise, when an attorney performs clerical work it is not recoverable at an attorney's rate. *Johnson,* 488 F.2d at 717.

14. Many billing entries are wholly clerical. Ex. E. Some entries intertwine clerical activities with compensable work. These entries show a lack of "billing judgment." *Id*. Plaintiff's experts' also failed to recognize this which diminishes the weight of their testimony. This Court should exclude $1,753.00 for clerical work and reduce their overall award by an additional 10%.

       3. Plaintiff's Block Billing Impedes the Court's Analysis.

15. "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on particular tasks, and the court is hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.,* 2005 U.S. Dist. LEXIS 34557, at *11 (N.D. Tex. Dec. 20, 2005). Attached hereto is a table of block billed entries. Ex. A. Block billing impedes this Court's analysis and makes it impossible to tell whether the number of hours spent and claimed was reasonable. Therefore, PRA proposes a 20% reduction in the total award.

**C.**     **Plaintiff's Billing Records Show Various Inefficiencies in Billing.**

16. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Walker v. U.S. Dept. of Housing*, 761, 768 (5th Cir. 1996). In Ex. B, the excessive time taken on certain tasks, specifically reading, is impressive. On March 28, 2017, Chatman billed an hour each to "Read & Review & Take Note" on Defendant's Motion to Strike (Doc. 35) and Defendant's Motion for Leave to File Sur-Reply (Doc. 36). Defendant's Motion to Strike totaled 11 pages, and its Motion for Leave four (4) pages. On August 14, 2017, Chatman billed 1.3 hours to draft an extension of time to file pre-trial materials, which contained 1.5 pages of content. Besides being excessive, PRA should not be required to pay for opposing counsel's inability to meet longstanding deadlines. On September 26, 2017, Chatman billed two (2) hours to read PRA's 13-page Motion for Judgment as a Matter of

Law (Doc. 89) and three (3) hours to read PRA's 14-page Motion for New Trial (Doc. 90). This works out to over 11 minutes to read each page. On July 27, 2019 Chatman billed 1.3 hours to read this Court's six (6) page order Granting PRA's Motion for Judgment (Doc. 99). Last, on December 27, 2019, Wood billed 1.4 hours to "read, Review & Take Note on Appellee's Petition for Re-hearing En Banc." Ex. B. The Petition was 9 pages. Such excessive overbilling should result in the Court adjusting any award to Plaintiff's counsel downward by 5%.

**D.      Plaintiff seeks rates higher than the prevailing market rate.**

17.     Reasonable hourly rates are to be calculated according to the prevailing market rates in the community. *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011). Prevailing market rates for similar services by similar lawyers in the relevant legal community is the basis to determine a reasonable hourly rate. *Villegas v. Regions Bank*, 2013 WL 76719, at *3 (S.D. Tex. Jan 4, 2013)

  1. Every hourly rate requested by Plaintiff's counsel is unreasonable and unsupported.

18.     Plaintiff's attorneys seek the following rates: Wood: $372/hr; Chatman: $335/hr; Zimmer: $325/hr; Clark: $400/hr; Brown: $425/hr. The evidence offered by plaintiff fails. Plaintiff's attorneys cite to numerous Northern District of Illinois cases for Wood and Chatman's rates. Doc. 108 at 5-6. However, the Chicago area is not the relevant community. The argument for Zimmer's rate is scant, (he litigated over 50 FDCPA, defended dozens of individuals sued by creditors, and spoke at a convention in 2018). *Id.* at 6. Clark's experience is described similarly, while stating a much lower rate of $330 was approved by California court in 2013. *Id.* at 6-7. The argument for Brown's rate only cites cases from out of state awarding a rate less than requested. *Id.* at 7.

19.     Plaintiff's attorneys also rely upon the U.S. Consumer Law Attorney Fee Survey Report for 2015-2016. Doc. 108-10. Interestingly, there is a more recent, 2017-2018 version available from the same source, that provides lower rates than every hourly rate Plaintiff's counsel requests.

Even going to the website producing the survey, http://www.attorneyfeestudy.com, or the website cited by Plaintiff, https://www.nclc.org, the 2015-2016 is not even readily accessible. Rather, the 2017-2018 survey is prominently linked. Ex. G.[1] It does not seem surprising the older survey is relied upon to justify higher than market rate—but this justification must be rejected.

20. Plaintiff's Motion included a table of each attorney, their years of experience, the 2015-2016 average hourly rate of the Austin, Texas area, and then their requested rate. Doc. 108 at 8. Below, is the same table, with the more recent average hourly rates from the same study:

| Attorney | Years of Exp. | Avg. Rate (per Austin, TX survey data 2015-2016) | Requested Rate | Avg Rate (per Austin, TX survey data 2017-2018) |
|---|---|---|---|---|
| Michael Wood | 6 | $375 | $372 | $350 |
| Celetha Chatman | 5 | $350 | $335 | $283 |
| Robert Zimmer | 5 | $350 | $325 | $283 |
| Amy Clark | 18 | $550 | $400 | $363 |
| Daniel Brown | 11 | $510 | $425 | $375 |

21. If the U.S. Consumer Law Attorney Fee Survey Report is considered, the actual prevailing rates for the Travis County area are substantially lower than the rates Plaintiff's attorneys represented to be prevailing rates. In fact, an affidavit is best evidence for the prevailing rate for the relevant community. *Chisolm v. Hood*, 90 Fed. App'x. 709, 710 (5th Cir, 2004); Ex. G; Ex. E. PRA offers an affidavit of a disinterested third party. Ex. E at 1-3 (*Affidavit of Noack*).

    2. Plaintiff's provided Declarations fail to meet their burden of proof

22. An affidavit from a disinterested party should include the prevailing market rate in the relevant community for the type of work performed. *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985). The affidavits should contain satisfactory evidence of the factual basis for the affiant's opinion. *Id.* Testimony that is nothing more than "credentials and a subjective opinion" will not suffice as proof. *Viterbo v. Dow*

---

[1] Ex. G has been shortened to relevant pages to this matter for the Court's convenience.

*Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987). An affidavit in support of attorney's fees that merely makes conclusory statements is not sufficient support for awarding fees along those lines. *Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F. Supp. 2d 568, 578 (E.D. La. 2008).

### i. Declaration of Paula Pierce

23. Pierce's Declaration is offered as support for the rates. However, her declaration lacks evidence of experience or personal knowledge to support any prevailing rates for the local community. Pierce fails to identify handling any cases similar to the case at hand, much less any cases in this District. A search on PACER reveals she has appeared in four cases total in the Western District. Ex. F. Two of the cases, she represented defendant companies (*Wilhelmi* and *Akene*). In the other two (*Chambless* and *Dhruva*) she represented plaintiffs but not in a FDCPA case. Thus, her demonstrated experience does not match the matter at hand.

24. Just as Pierce fails to state she reviewed the claims in this case, she only provides conclusory, blanket statements. Doc. 108-7 at 3. These statements do not contain any factual basis for her opinion. Her unsupported conclusory statements should not be considered.

### ii. Declaration of Ben Bingham

25. Bingham's Declaration is offered to support the requested rates. In contrast to Pierce's affidavit, Bingham has handled many cases similar to the case at hand. However, he still provides only unsupported and conclusory statements related to the work performed and requested rates.

26. Just like Pierce, Bingham fails to state he reviewed anything besides the time and expense records. Doc. 108-8. He simply gives similar, conclusory, blanket statements which do not meet the threshold to establish the prevailing rate. *Blum*, 465 U.S. 886; *Wheeler*, 752 F.2d at 1073; *McAfee*, 738 F.3d at 91. Bingham's Declaration should be disregarded.

### 3. Plaintiff fails to establish the prevailing market rate, or out-of-town rate for Brown.

### i. Standard of law for granting out-of-town rates.

27. Out-of-town counsel may be awarded their "home" rates under limited circumstances. *Ratliff v. Mesilla Valley Trans., Inc.*. Out-of-town rates is appropriate, if (1) hiring out-of-town counsel was reasonable in the first instance; and (2) if the rates sought by the out-of-town counsel are reasonable for an attorney of his or her degree of skill, experience, or reputation. *Id*. "To determine whether it was reasonable to hire of out-of-town counsel, courts in the fifth Circuit regularly consider the necessity of hiring out-of-town counsel—whether local counsel were readily available and capable of taking the case." *Id*. Given that Plaintiff was able to hire in-town counsel to handle the trial, there is no evidence or rationale for the necessity of hiring out-of-town counsel.

### ii. Bardo's declaration does not meet the standard.

28. Bardo's Declaration is offered to justify an award of out-of-town rates for Brown. Doc. 108-9. But it lacks any statement that out-of-town counsel was reasonable or necessary. Without such, using a theory of out-of-town rates to justify Brown's rate, or even Chatman or Wood for that matter fails. Bardo's declaration offers only credentials and a subjective opinion with insufficient conclusory statements re the work performed and rates requested. *Viterbo*, 826 F.2d at 424; *Prime Ins. Syndicate, Inc.*, 547 F. Supp. 2d at 578. Referencing fee awards in the Northern District of Illinois and Central District of California fails to establish prevailing market rates in Austin, Texas. Doc. 108-9; *Blum*, 465 U.S. 886; *Wheeler*, 752 F.2d at 1073; *McAfee*, 738 F.3d at 91. Bardo fails to establish the prevailing rates in the Western District of Texas. Doc. 108-9.

29. Bardo relies on the same outdated 2015-2016 Consumer Law Attorney Fee Survey Report despite the 2017-2018 Consumer Law Attorney Fee Survey Report identifies a lower hourly rate for Chicago attorneys. Ex. G at 52-55. Bardo fails to indicate she reviewed any of the pleadings, claims and other materials in this case. There is nothing in the declaration to say she reviewed the

claims at hand, the issues on appeal, the trial record, or anything else to judge the complexity of the case, the experience level required. Bardo's Declaration should not be considered by this Court.

30.     PRA attaches the declaration a Texas attorney licensed for more than 19 years, as evidence that Plaintiff's application of out-of-town rates would be unreasonable. Noack has decades of experience in litigation in the Travis County area, including consumer and bankruptcy work. Noack's affidavit affirms that the issues here do require hiring "specialized" out of town lawyers. <u>Declaration of Noack</u> at 3. He attests there are "there are many attorneys in the Western District of Texas and the Austin area who would be ready, willing, and able to handle this matter at rates appropriate to this market." *Id.* The out-of-town rates should be denied.

>    *iii. PRA proposes the following rates.*

31.     With the lack of need for out-of-town counsel and the rates which exceed the prevailing market rates for the district in which this court is located, PRA proposes this Court use these rates: Wood: $200/hr, Clark: $300/hr, Chatman: $200/hr, Zimmer: $200/hr, and Brown: $250/hr. These proposed rates are much closer to the average hourly rates suggested by the 2017-2018 Fee Survey Report[2] and are higher than the actual prevailing market in the relevant community. PRA believes these rates to be fair and requests the Court use them for its analysis.

**F.     The *Johnson* Factors Warrant a Downward Adjustment of Plaintiff's Fees.**

As for the *Johnson* factors, this case is, at its core, an FDCPA case brought on well-trod ground. There were no novel issues, no particularly difficult briefing, and a day-long trial. Billing with a meter running on five separate attorneys at the requested rates is both unusual and unnecessary.

**G. Plaintiff's Costs Should be Reduced as Well.**

---

[2] PRA notes this is not a concession to the reliability of the United States Consumer Law Attorney Fee Survey Report.

32.     Plaintiff is entitled to costs under 28 U.S.C § 1920. However, Plaintiff does nothing to substantiate the costs above filing and service. PRA admits that Plaintiff is entitled to costs for filing and service of the Complaint; $625, as shown by Plaintiff. Doc. 108-1 at 7. There is nothing shown in the Fee Petition to support another nearly $1,000 in costs. *Id*. PRA recommends lowering the costs awarded to a total cost award of $625.00.

**H.     PRA's Recommendation.**

In light of the foregoing, PRA proposes the calculation found in Ex. I attached, and award $25,416.00 in fees and $625.00 in costs for a total of $26,041.00. This is based on adjusting each attorney's rate to the suggested rate *supra*, remove all time contained in the attached Exhibits[3] that was clerical, paralegal in nature, excessive, or block billed, multiply remaining hours by the new hourly rate, and reduce the overall award by 40% for the absence of billing judgment.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Portfolio Recovery Associates, LLC, respectfully requests that this Court reduce Plaintiff's attorneys' fees to $26,041.00 and Plaintiff's costs to $625.00, for a grant total of $26,666.00.

Dated:  May 22, 2020                                        Respectfully submitted,

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

---

[3] Some entries may be found in multiple charts, however due to the lack of billing judgment and this occurrence, it would be a very daunting task to parse out each instance, identify, and segregate to not include more than once.

**MALONE FROST MARTIN PLLC**

*/s/ Robbie Malone*
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
**MALONE FROST MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
T: 214-346-2630 | F: 214-346-2631

***COUNSEL FOR DEFENDANT
PORTFOLIO RECOVERY ASSOCIATES, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion has been forwarded through the **CM/ECF** system on this 22nd day of May, 2020, to all attorneys of record in this matter.

*/s/ Robbie Malone*
ROBBIE MALONE