UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JEAN JONES, | § | |
| | § | |
| PLAINTIFF | § | CASE NUMBER: 1:16-cv-00572-RP |
| | § | |
| v. | § | |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, | § | Honorable Robert Pittman |
| LLC, and WESTERN SURETY CO., | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND COSTS**

On March 27, 2020, Plaintiff's attorneys sent PRA's attorneys a copy of their time records for the case.[1] The purpose of providing this advance copy was to allow PRA and Plaintiff to negotiate a fee award without further litigation. But PRA never responded to Plaintiff. PRA chose to fight, but offers no evidence or legal authority to counter Plaintiff's well-supported fee motion.

I. **The evidence submitted shows that Plaintiff's attorneys exercised appropriate billing judgment**

Plaintiff's explained precisely what hours they cut. *See* (Dkt # 108-2, ¶¶18-19); (Dkt. # 108-3, ¶¶16-17); (Dkt. #108-4, ¶11); (Dkt. # 108-5, ¶6); and (Dkt. # 108-6, ¶¶22-23). Plaintiff's attorneys also testified that all time billed for co-counsel communications was spent discussing legal strategy and tactics. (Dkt. # 108-2, ¶20; Dkt. # 108-3, ¶18; Dkt. # 108-4, ¶12; Dkt. # 108-5, ¶9; Dkt. # 108-6, ¶24). Courts in the Fifth Circuit have long recognized that co-counsel can and should be compensated for conferences among co-counsel. *See Rebollar v. Ortega Med. Clinic*, P.L.L.C., 2019 U.S. Dist. LEXIS 142695, at *11 (S.D. Tex. Aug. 22, 2019) (allowing fees for co-counsel meetings); *United States ex rel. McNeil v. Jolly*, 2020 U.S. Dist. LEXIS 58833, at n. 6 (E.D. La. Apr. 3, 2020) (same).

PRA's remaining quibbles about interoffice communications are similarly frivolous. The reasonableness and necessity of each conference is apparent on the face of each entry. PRA also misreads the entries for the February 19 and February 20 calls. Brown does indeed have an entry for the February 19 call: "prepare for and confer with working group re revised brief and related strategy issues (.5)" (Dkt. # 108-1, p. 12). As for the alleged time discrepancy—not all of the attorneys participated in the entirety of the conference. Wood and Chatman work in the same office and conferred amongst themselves before bringing in Zimmer.[2] Brown joined the meeting for a shorter time because he was working under a looming deadline. *See* (Ex. A; Ex. B).

---

[1] *See* Supplemental Declaration of Daniel Brown, attached hereto as **Exhibit A**.
[2] *See* Supplemental Declaration of Celetha Chatman, attached hereto as **Exhibit B**.

1

PRA's Exhibit D identifies time spent by Plaintiff's attorneys drafting discovery. This is not paralegal work. Each of these documents request an attorney's signature. Drafting discovery requests requires the application of legal skills, and it is appropriately billed by an attorney. Other courts have rejected the notion that discovery must be drafted by paralegals. *See, e.g.*, *M & NM & N Aviation, Inc. v. United Parcel Service, Inc.*, 2014 U.S. Dist. LEXIS 37383, at *23 (D.V.I. Mar. 21, 2014). PRA argues that the entries identified in its Exhibit E are for clerical tasks. The entry for March 26, 2020, involved four hours expended by Wood to compile time and expense records. Time and expense entries must be reviewed for attorney-client privilege, appropriateness for inclusion in a fee request, and clarity. This is not clerical work. For the remaining 0.9 hours of time, Plaintiff agrees to remove this time from her fee request. Further reductions are not warranted. PRA points to just of 0.9 hours of time—out of 279.1 hours billed in total. A blanket reduction of 10% is unsupported.

PRA's Exhibit A does not show any block billing. "The term block billing refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 34557, *10 (N.D. Tex. Dec. 20, 2005) (citations omitted). None of Plaintiffs' attorneys' entries lump together an entire days' work into a single block of time. The prohibition on block billing does not demand that an attorney take a discrete task and break it up into further "sub-tasks".

PRA's Exhibit B shows work that included research and analysis. *See* (Ex. B). As for the August 14, 2017 entry—Plaintiff filed the motion because she believed it was necessary to securing a victory at trial. Preparing the motion involved a series of tasks required to proceed with such a motion. *See* (Ex. B). These tasks all take time, and 1.3 hours to complete them is reasonable.

II.     **Plaintiff's requested hourly rates are reasonable and consistent with prevailing market rates**

### A. The 2015-2016 study provides more reliable data because 2017-2018 includes judicial decisions that distorts market-based data

Plaintiff's citation to 2015-2016 fee study was entirely appropriate because the 2017-2018 study does not report accurate market data. The 2017-2018 study includes changes to market fees made by courts. The introduction to the 2017-2018 study states, in relevant part, that "[T]his edition of the Survey Report provides data that is based on reported data from participants **and also actual fee decisions made by courts and agencies in the United States during 2017 and 2018**." (Dkt. # 118-1, at p.40, under the heading "What's New") (emphasis added). Thus, the 2017-2018 survey data is distorted by judicial decisions regarding fee requests, as opposed to purely market data. The 2015-2016 survey, by contrast, reports only the rates that attorneys charge in the marketplace, without the distortion of judicial reductions. As such, the 2015-2016 survey is a better data source for a market-rate analysis.

### B. The supporting declarations from disinterested attorneys are competent evidence that supports the requested hourly rates

PRA provides no basis to disregard Plaintiff's supporting declarations. Pierce has practiced law in Texas for over 30 years and has handled consumer cases for her whole career. (Dkt. # 108-7, ¶2). She need not be a volume filer in this District to speak on the issue of reasonable fees. Pierce's declaration clearly lays out that she reviewed each of Plaintiffs' attorneys' time records and declarations. (Dkt. # 108-7, ¶¶4-7). She based her opinion testimony on her review of these documents. *Id.* Her opinions are founded on the relevant facts: the qualifications and experience of the attorneys; the work the attorneys performed; the time expended on such work; and the hourly rate charged. Her testimony is not "conclusory" or merely a "subjective opinion." Bingham's declaration is also supported by his review of the relevant evidence and his extensive experience in the field (which PRA does not dispute). (Dkt. # 108-8, ¶¶2-8). His opinion is thus not "conclusory," and the Court must consider it as competent evidence supporting the requested

hourly rates. PRA makes similar arguments regarding the Bardo declaration. PRA again fails to explain why Bardo's review of Brown's time records is insufficient to inform her opinion. Bardo need not read trial transcripts and extensive briefing to make this determination, and PRA cites no authority that creates such a restrictive standard.

PRA's cited cases do not support disregarding Plaintiff's supporting declarations. In *Blum v. Stenson*, 465 U.S. 886 (1984), a prevailing litigant sought an increase in his attorneys' regular hourly rates but made this request in a brief with no supporting evidence. *Id.* at 898. The trial court accepted the argument and approved the increase, but the Supreme Court reversed for lack of an evidentiary basis. *Id.* In *Wheeler v. Mental Health & Mental Retardation Authority*, 752 F.2d 1063 (5th Cir. 1985), the plaintiff offered no third-party declarations to support the requested rate, and instead relied only on his attorneys' declaration. *Id.* at 1073. Lastly, in *McAfee v. Boczar*, 738 F.3d 81 (5th Cir. 2013), the trial court approved requested hourly rates of $585 and $365 based on "the affidavits of two experts" submitted by the plaintiff. *Id.* at 91. The Fifth Circuit declined to second-guess the trial court's decision, even though the rates were high. *Id.* None of these cases supports disregarding Plaintiff's supporting declarations.

**C. Noack is a collection-industry insider and lacks the relevant knowledge and experience to opine on fees charged by consumer plaintiff's attorneys**

PRA's reliance on the Noack declaration is unwarranted. Noack is not a consumer plaintiff's attorney, and never has been. He worked in house attorney at Midland Credit Management and Asset Acceptance, both of which are high-volume debt buyers. It is worth noting his former employer has a documented history of submitting false affidavits to courts, including during Noack's tenure. In September 2015, Midland, Asset Acceptance, and their parent company entered into a Consent Order with the Consumer Financial Protection Bureau (the "CFPB"). *See*, Consent Order, *In the Matter of Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., and Asset Acceptance Capital Corp.*, Administrative Proceeding No.

4

2015-CFPB-0022 (the "CFPB Consent Order").³ In particular, the CFPB reported that the companies had "routinely submitted affidavits . . . in which the affiant swears that he or she has reviewed account-level business records concerning the Consumer's account when that is not the case" and had, "in numerous instances from at least 2009 to 2011 . . . submitted affidavits in which affiants misrepresented that they had personal knowledge of facts contained in affidavits, including that the Consumer owed a Debt." (Ex. C, at ¶¶58, 64). Given this well-documented history of false affidavits when Noack held a key leadership position, this Court need not credit Noack's testimony.

Further, Noack's hourly-rate opinions are unsupported by relevant evidence. Other than the flawed 2017-2018 fee survey, Noack cites only to the 2015 Texas Bar Hourly Rate Fact Sheet. But this document lacks relevant information. The Fact Sheet identifies a "median rate" of $275 for the category "consumer," but does not define what "consumer" encompasses. The cited average includes attorneys that practice high-volume collection work, either on the plaintiff or defendant side. Such work is not comparable to contingent, federal court litigation, which require a different set of skills and substantial risk of non-payment. The Supreme Court has observed that the rates charged by lawyers with contingency risk will be higher than those charged by lawyers who are paid regardless of the result. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### III. PRA offers no justification for reducing Plaintiffs' costs

PRA objects to Brown's reported costs of $851.49. Brown incurred these costs to book travel for oral argument on Plaintiff's appeal to the Fifth Circuit. The Fifth Circuit cancelled the oral argument a week before the scheduled ate. (Ex. A). Brown likewise cancelled his travel, but still incurred expenses from his original travel booking that were nonrefundable. (Ex. A).

---

³ A copy of the CFPB Consent Order is attached hereto as **Exhibit C** for easy reference. Plaintiff requests that this Court take judicial notice of the contents of the CFPB Consent Order per FRCP 201.

Respectfully submitted,
By: */s/ Celetha Chatman*
One of Plaintiff's Attorneys

Celetha Chatman
Michael Wood
**Community Lawyers, LLC.**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
P: (312)757-1880
F: (312)476-1362
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

Robert Zimmer
**Zimmer & Associates**
707 W. Tenth Street
Austin, TX 87801
P: 512.434.0306
F: 310.943.6954
zimmerlawTX@gmail.com

Amy E. Clark
State of Texas Bar Number: 24043761
**Amy Clark**
Texas RioGrande Legal Aid
4920 N. IH-35
Austin, TX 78751
P: (512) 850-5290
F: (626) 737-6030
amy@amyclarklaw.com

## CERTIFICATE OF SERVICE

I, , an attorney, hereby certify that on May 29, 2020, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Celetha Chatman*
Celetha Chatman